UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARVIN KEY, | : | |
| | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:03CV144 (RNC) |
| | : | |
| v. | : | |
| | : | |
| WAL-MART, INC. and | : | |
| DR. ANTHONY GORDON, | : | |
| | : | |
| Defendants. | : | OCTOBER 23 2003 |

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO COMPEL
RESPONSES TO HIS SECOND SET OF DISCOVERY REQUESTS**

Plaintiff, by and through his undersigned counsel, submits this memorandum of law in support of his motion to compel discovery to his second set of discovery requests and for reimbursement of the fees and expenses incurred. Plaintiff has previously filed a motion to compel responses to his first set of discovery requests and hereby incorporates the facts, law and argument contained in his memorandum of law and two affidavits of counsel in support of that motion, supplementing it as follows.

**Background**

On August 29, 2003, Plaintiff served his Second Set of Interrogatories and Requests for Production of Documents ("IRFP II") (Exhibit A to 10/22/03 Affidavit of Counsel served herewith[1]) upon Defendant, Wal-Mart, in the captioned matter. (10/22 Aff. of Counsel, ¶ 2).

On October 1, 2003, Plaintiff received objections and responses to IRFP II from Wal-Mart (10/22 Aff. of Counsel, Exhibit B.) Wal-Mart objected to Request for Production No. 2, which requested disciplinary records of employees about whom customers have complained (Wal-Mart asserts Plaintiff was discharged due to a customer complaint), by incorporating objections to prior requests, which claimed attorney-client privilege, and that the request was unduly burdensome, harassing and irrelevant. Wal-Mart also objected to Interrogatory Nos. 3 and 4, as well as Request for Production Nos. 5 and 6, which requested information and documents regarding financial arrangements between Wal-Mart and Dr. Gordon, claiming that the requests were irrelevant. (10/22 Aff. of Counsel, ¶ 4.)

On October 8, 2003, Plaintiff's counsel wrote to Wal-Mart's counsel letter (10/22 Aff. of Counsel, Exhibit C) expressing disagreement with Wal-Mart's objections and explaining the relevance of the requested information. (10/22 Aff. of Counsel, ¶ 5.) Plaintiff's counsel requested that the information be provided "in time to prepare for the October 14 depositions of the Wal-Mart managers." (10/22 Aff. of Counsel, Exhibit C.)

---

[1] Hereinafter "10/22 Aff. of Counsel".

On October 10, 2003, Wal-Mart's counsel responded to Plaintiff's counsel's letter by telephone, and stated that Plaintiff was "getting bupkus" from Wal-Mart in response to IRFP II. (10/22 Aff. of Counsel, ¶ 6.) Despite being advised that Plaintiff was "getting bupkus," Plaintiff's counsel proceeded to discuss each numbered paragraph of the October 8, 2003 letter with Wal-Mart's counsel, as follows (with respect to IRFP II):

1. <u>Paragraph No. 3</u>: Wal-Mart's counsel stated that he was open to persuasion as to the discovery requests regarding the financial arrangements between Wal-Mart and Dr. Gordon, but that otherwise, the request was "so far beyond the pale," that Wal-Mart was not obliged to respond. In effect, Wal-Mart's counsel was asking that Plaintiff prove his wrongful discharge claim before agreeing to provide any potentially relevant information. Wal-Mart's counsel stated that there is a limit to what Plaintiff gets through discovery, and that limit had been exceeded.

2. <u>Paragraph No. 4</u>: In response to Plaintiff's request for information regarding customer complaints and related employee discipline, Wal-Mart's counsel stated that Wal-Mart already provided the only customer complaint it has, i.e., the customer report regarding Plaintiff and that it does not maintain records of customer complaints. Plaintiff's counsel suggested that if an employee was disciplined because of a customer complaint, a copy of the complaint would be found in the employee's personnel file. Wal-Mart's counsel agreed and stated that he would advise Wal-Mart to look into it. Later, during a second telephone conversation that same day, Wal-Mart's counsel disagreed and suggested that Plaintiff pursue this subject with Roger Noll

(North Windham Store Manager) at his deposition on October 14, 2003. (10/22 Affidavit of counsel, ¶ 7).

**Discovery Issues Relevant To IRFP II Still In Dispute**

The following items remain in dispute:

I.     Interrogatories

3.     Describe the process, method and/or procedure for calculating gross sales receipts and transferring funds between Wal-Mart and Dr. Anthony Gordon, pursuant to any understanding and agreement between them, including but not limited to the License Agreement between Wal-Mart and Dr. Gordon dated July 1, 2001.

4.     Specify the dollar amount, or dollar value of goods or services, exchanged between Wal-Mart and Dr. Gordon since Dr. Gordon began performing services at the vision center at the North Windham Wal-Mart store.

Related Requests for Production

2.     Any and all documents, which constitute, refer or relate to discipline of employees identified in response to Interrogatory No. 12A of Plaintiff's First Set of Interrogatories.

5.     Any and all documents, which constitute, refer or relate to any process, method or procedure described in response to Interrogatory No 3, *supra*.

6.     Any and all documents, which constitute, refer or relate to any exchanges of money, goods or services between Wal-Mart and Dr. Gordon identified in response to Interrogatory No. 4, *supra*.

Why Disclosure Should Be Compelled

Plaintiff claims that his discharge was motivated, in part, by his revelation in the presence of a Wal-Mart customer that personnel conducting vision pre-testing on patients of the resident Optometrist were not qualified to do so. By law, such testing can only be conducted by

paraoptometric employees of the "independent" resident Optometrist and not Opticians employed by Wal-Mart as Plaintiff was. Plaintiff further claims that this practice violates the Connecticut Unfair Trade Practices Act because it is used by Wal-Mart to give it an unfair economic advantage over competitors in the vision-related retail market who do not use Opticians to perform the work of paraoptometric employees who must be, under Connecticut law, employed by the independent resident Optometrist. Plaintiff is clearly entitled to basic information concerning the financial arrangements between Wal-Mart and its resident "independent" optometrists to evidence the financial and unfair competitive motivation behind this practice.

II.     Request for Production

2.      Any and all documents, which constitute, refer or relate to discipline of employees identified in response to Interrogatory No. 12A of Plaintiff's First Set of Interrogatories.

This request seeks documents relating to customer complaints about Wal-Mart employees and the discipline and discharge of those employees, the most basic and relevant area of inquiry in this suit charging discriminatory, retaliatory and wrongful (public policy) termination of Plaintiff who it is claimed by Wal-Mart was discharged for a customer complaint. Wal-Mart does not have the right or authority to decide that Plaintiff may seek obviously relevant information by deposition but not through interrogatory and production request. Rule 26(a)(5) provides that:

> Parties may obtain discovery by one or more of the following methods: depositions upon oral examination or written questions; written interrogatories; production of documents or things....

Moreover, Plaintiff sought information as to treatment of other employees about whom customers had complained from Roger Noll as suggested by Wal-Mart's counsel and obtained the following response:

> Q.  Okay. Other than the customer complaints regarding Mr. Key, to your knowledge, have there been any, or have there been any other complaints directed to you regarding any Vision Center associates?
>
> MR. REILLY: Customer complaints?
>
> Q.  Customer complaints?
>
> A.  Customer complaints, not to my knowledge.
>
> Q.  Have you been involved in the termination of any associates at the Vision Center other than Mr. Key?
>
> A.  No.
>
> Q.  Have you been involved in the termination of any employees outside the Vision Center that involved customer complaints?
>
> A.  I'm sure I have. I'm sure I have.
>
> Q.  And how many cases would you say?
>
> A.  I don't know.
>
> Q.  Can you give me an approximation? Would it be more than five?
>
> A   I don't know.

> Q.  Are there any of those that you can give me the specifics of?
>
> A.  No.

(Deposition of Roger Noll taken October 14, 2003, p. 27, copy attached as Exhibit 1).

This is a stark illustration of why the rules permit discovery by *one or more* methods.

Wal-Mart has engaged in so many tactics, including the imposition of such broad and far-ranging limitations on the information it will produce with regard to discipline and discharge of other employees – only employees at the North Windham store; only employees in the Vision Center; only employees employed during the time Plaintiff was employed, etc. – that the only documents relating to the discipline and discharge of Wal-Mart employees that Plaintiff has received despite two series of comprehensive discovery requests are documents relating to his own discipline and discharge. Moreover, although Wal-Mart identified an employee who met all its criteria and was discharged and Plaintiff has entered into a stipulation of confidentiality per Wal-Mart's request, no documents have been received regarding that discharge. Although deposition testimony of the Vision Center manager who had supervised Plaintiff revealed that another employee who also met all the criteria had been disciplined, Plaintiff has received no information regarding that discipline (the Vision Center manager could not recall any of the details of that disciplinary action). Wal-Mart will no doubt claim that no information or documents were provided as to that case because it did not involve a customer complaint. As set forth in the supplemental Affidavit of Counsel in support of Plaintiff's motion to compel responses to his first set of discovery requests (which were first propounded in May 2003), by

withholding most of what has been requested and by not providing what it has agreed to provide until just a few days prior to the discovery cutoff which forced Plaintiff to wait until *after* the discovery cutoff to take the managers' depositions, Wal-Mart has effectively precluded Plaintiff from making even the most basic but indispensable follow up discovery requests. Wal-Mart should be compelled to produce what has been requested and Plaintiff should be allowed additional time for follow up disclosure once it has done so. Wal-Mart's discovery tactics should be sanctioned and the fees and costs incurred by Plaintiff in attempting to navigate his way through the mire they have created should be awarded.

### Conclusion

Based upon the foregoing, Plaintiff's Motion To Compel Responses To His Second Set of Discovery should be granted in all respects.

Done at Bridgeport, Connecticut this 23rd day of October, 2003.

Pamela J. Coyne
DURANT, NICHOLS, HOUSTON,
HODGSON & CORTESE-COSTA, P.C.
1057 Broad Street
Bridgeport, CT 06604
(203)366-3438
Federal Bar No. ct3984

ATTORNEYS FOR PLAINTIFF

## CERTIFICATION

This is to certify that I have caused to be served the foregoing via U.S. Mail, certified mail, return receipt requested, this 23rd day of October, 2003, to all counsel and pro se parties as follows:

Gregory Reilly, Esq.
Brown Raysman Millstein Felder & Steiner
900 Third Avenue
New York, NY 10022

_____
Pamela J. Coyne

P:\lit\pjc\523818\001\00036406.DOC

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

------------------------------x
MARVIN KEY,                    :
    Plaintiff,                 : Civil Action No.
      -v-                      : 3:03 CV 144 (RNC)
WAL-MART, INC., AND,           :
DR. ANTHONY GORDON,            :
    Defendants.                :
------------------------------x

    Deposition of ROGER NOLL, taken pursuant to the Federal Rules of Civil Procedure, at the law offices of Durant, Nichols, Houston, Hodgson & Cortese-Costa, 1057 Broad Street, Bridgeport, Connecticut, before James A. Martone, LSR and Notary Public, in and for the State of Connecticut, on October 14, 2003 at 4:38 p.m.

AL-MART

October 14, 2003

Page 27

  A. Yes.

  Q. Okay. Other than the customer complaints regarding Mr. Key, to your knowledge, have there been any, or have there been any other complaints directed to you regarding any Vision Center associates?

  MR. REILLY: Customer complaints?

  Q. Customer complaints?

  A. Customer complaints, not to my knowledge.

  Q. Have you been involved in the termination of any associates at the Vision Center other than Mr. Key?

  A. No.

  Q. Have you been involved in the termination of any employees outside the Vision Center that involved customer complaints?

  A. I'm sure I have. I'm sure I have.

  Q. And how many cases would you say?

  A. I don't know.

  Q. Can you give me an approximation? Would it be more than five?

  A. I don't know.

  Q. Are there any of those that you can give me the specifics of?

  A. No.

# CERTIFICATE

I hereby certify that I am a Notary Public, in and for the State of Connecticut, duly commissioned and qualified to administer oaths.

I further certify that the deponent named in the foregoing deposition was by me duly sworn and thereupon testified as appears in the foregoing deposition; that said deposition was taken by me stenographically in the presence of counsel and reduced to print under my direction, and the foregoing is a true and accurate transcript of the testimony.

I further certify that I am neither of counsel nor related to either of the parties to said suit, nor am I interested in the outcome of said cause.

Witness my hand and seal as Notary Public this _____ day of _____, 20 03

_____
NOTARY PUBLIC

My Commission Expires:

4/2008