UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARVIN KEY, | : CIVIL ACTION NO. |
| | : 3:03CV144(RNC) |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| WAL-MART, INC. AND | : |
| DR. ANTHONY GORDON, | : |
| | : |
| Defendants. | : OCTOBER __, 2003 |

### PLAINTIFF'S LOCAL RULE 56(a)1 STATEMENT

Plaintiff, Marvin Key, by and through his undersigned counsel, submits this statement pursuant to Local Rule 56 (a)1 in support of his Motion for Summary Judgment.

1. Plaintiff is an Optician licensed by the State of Connecticut. (Parties' Rule 26(f) Report, Undisputed Facts, ¶ 4).[1]

2. Defendant, Wal-Mart, Inc., is a retail company, incorporated in Delaware, doing business in Connecticut. Wal-Mart operates several vision centers within Connecticut including at its North Windham store. (26(f) Undisputed Facts, ¶¶ 1 and 2).

3. Plaintiff was employed by Wal-Mart as an Optician in the North Windham vision center from February 7, 2000 to April 30, 2001.

---

[1] Hereinafter referred to as "26(f) Undisputed Facts, ¶ __".

4. Defendant, Anthony Gordon is an independent licensed Optometrist who provided optometry services in Wal-Mart's North Windham store while Plaintiff was employed there. (26(f) Undisputed Facts, ¶ 3).

5. Pursuant to an agreement between Wal-Mart and Dr. Gordon, Wal-Mart provided its own employees to perform vision screenings for customers and vision pre-testing for Dr. Gordon's patients. (License Agreement between Wal-Mart and Dr. Anthony Gordon, attached as Exhibit 1,[2] p. 3 [D00483]; Deposition transcript of Dr. Anthony Gordon, p. 31[3]).

6. Wal-Mart received 10 percent of Dr. Gordon's gross sales receipts in exchange for, inter alia, its provision of "Para-Optometric Services," i.e., provision of Wal-Mart employees for vision testing of Dr. Gordon's patients. (License Agreement, p. 3 [D00483]; Gordon Dep., p. 109).

7. Dr. Gordon did not employ anyone in his optometry practice at Wal-Mart (Gordon Dep., pp. 33-34).

8. Wal-Mart requires its vision center employees (including Plaintiff) to perform two types of vision examinations. (Wal-Mart's Supplemental Response to Plaintiff's First Set of Interrogatories, attached as Exhibit 3, #10).

---

[2] Hereinafter referred to as "License Agreement".
[3] Hereinafter referred to as "Gordon Dep., p. ___" (cited pages attached as Exhibit 2).

9. Vision screenings are done utilizing: (1) an autorefractor; (2) an eye chart; or (3) a vision screening machine. (*Id.*)

10. According to Wal-Mart's Academy of Vision training manual, vision screenings are performed to "educate the customer about their eye health." (Wal-Mart Vision Academy Training Manual, p. 160, cited pages are attached as Exhibit 4).

11. Vision center employees (including Plaintiff) are also required to perform vision pre-testing. These are performed to gather information to assist the Optometrist in his exam and evaluation of a patient. (Wal-Mart's Supplemental Response to Plaintiff's First Set of Interrogatories, #10).

12. Pre-testing requires the following tests: (1) autorefractor; (2) visual field; (3) ocular pressure (to check for glaucoma); (4) color testing; and (5) depth perception (stereopsis). (*Id.*)

13. Jerome Ellis was the North Windham vision center manager for Wal-Mart during Plaintiff's employment.

14. Ellis targeted vision center employees to perform between 80 and 100 vision screenings each week during Plaintiff's employment there. (Transcript of deposition of Jenilu Zboray, Wal-Mart Apprentice Optician, p. 55[4]; Transcript of deposition of Jerome Ellis, p. 58[5]).

---

[4] Hereinafter referred to as "Zboray Dep., p.___" (cited pages attached as Exhibit 5).
[5] Hereinafter referred to as "Ellis Dep., p. ___." (cited pages attached as Exhibit 6)

15. Ellis created a flyer (attached as Exhibit 7) which was distributed to Wal-Mart customers by vision center employees (Gordon Dep., pp. 56-58; Ellis Dep., pp. 53-55) captioned "The Doctor Is In" and offered, at the bottom, a coupon which stated: "Complimentary Vision Screening: If your vision isn't as clear as it used to be, take this certificate to the Vision Center for a complimentary screening. It only takes a few minutes to check your vision to ensure it as good as it can be."(Ellis Dep., pp. 52-54). The flyer did not disclose that the screenings would be done by Wal-Mart vision center employees not the referenced "Doctor." (See Exhibit 7).

16. Ellis testified that the vision screenings were virtually meaningless. (Ellis Dep., pp. 55-56).

17. Ellis testified that all vision center employees are told to ask the Optometrist questions whenever they are unsure about vision testing. (Ellis Dep., pp. 29-30). The Wal-Mart Academy of Vision training manual directs employees to "discuss the doctor's preferences prior to beginning the pre-testing process." (Exhibit 4, p. 162).

18. On April 27, 2001, while performing a stereopsis test on one of Dr. Gordon's patients, Plaintiff attempted to ask Dr. Gordon questions about the testing. (Gordon Dep., pp. 103-04).

19. According to Dr. Gordon, Plaintiff inquired "Am I doing this right? Is this what you want? Is this what I'm supposed to do?" and Dr. Gordon did not respond to his questions. (Gordon Dep., pp. 103-104).

20. Dr. Gordon thereafter informed Ellis that the parent of his patient had an issue with Plaintiff. (Gordon Dep., p. 71).

21. Ellis paged Edgar Morales, the store co-manager at North Windham. (Ellis Dep., p. 83).

22. Morales spoke with the parent, Huong Nguyen. (Gordon Dep., p. 81; Deposition Transcript of Edgar Morales, pp. 9-10[6]).

23. Thereafter, Nguyen made a written report about Plaintiff (attached as Exhibit 9). The report stated that: "I was here last year for my oldest daughter. I was impressed with [the] service your company provided to us. So today (4/27/01) I had [an] appointment for my twins but I was very worr[ied] because Marvin gave me the impression that he does not know what he's doing. First he asked me who's Kimi and who's Harrison? (my twins are boy and girl). Second, he started to exam Kimi's eyes but he asked Doctor Gordon all the questions even before he started with Kimi [and] I was very concern[ed] because Marvin had his optical license tag on but to me I was too concern[ed] I had to ask Dr. Gordon in front of Marvin that he knew

---

[6] Hereinafter referred to as "Morales Dep., p. ___" (cited pages are attached as Exhibit 8).

what's he doing. Last, while Dr. Gordon started to exam Kimi, he [had] to go back and forth to ask Marvin questions. In my mind I was going to walk out and will go back to [sic] Dr. Omolk in Glastonbury. But I [was] very glad that Dr. Gordon brought this matter to the managers. Thank you." (Nguyen report, attached as Exhibit 9).

24. Nguyen testified that she brought her twins to Wal-Mart for eye exams and glasses because it was cheaper than at other vision stores. (Deposition Transcript of Huong Nguyen,[7] pp. 38-39, 73)

25. On Monday, April 30, 2001, Plaintiff was told that his employment was being terminated because of Nguyen's report. (Morales dep., pp. 23-24; Exit Interview Form, attached as Exhibit 11).

26. Wal-Mart claims that Roger Noll, Store Manager of the North Windham store, made the decision to terminate Plaintiff's employment. (Deposition Transcript of Roger Noll, p. 19[8]).

27. Noll did not review Plaintiff's personnel file in making his decision, but did read Nguyen's report. (Noll Dep., pp. 20-24).

28. It is not Wal-Mart's policy to discharge or discipline employees for customer complaints when the employee acted as instructed by Wal-Mart. (Morales Dep., pp. 34-35).

---

[7] Hereinafter referred to as "Nguyen Dep., p. ___" (cited pages are attached as Exhibit 10).
[8] Hereinafter referred to as "Noll Dep., p. ___" (cited pages attached as Exhibit 12).

29. Wal-Mart views private Optometrists as competitors of their vision centers. (Wal-Mart Academy of Vision training manual, p. 18, attached as part of Exhibit 4).

Done at Bridgeport, Connecticut, this 30th day of October, 2003.

*Loraine M. Cortese-Costa*
Loraine M. Cortese-Costa, Esq.
DURANT, NICHOLS, HOUSTON,
HODGSON & CORTESE-COSTA, P.C.
1057 Broad Street
Bridgeport, CT 06604
Tel. No. (203) 366-3438
Federal Bar No. ct03984
ATTORNEYS FOR PLAINTIFF

## CERTIFICATION

This is to certify that I have caused to be served, this 30th day of October, 2003, the above and foregoing via U.S. Mail, Certified Mail, Return Receipt Requested, to the following counsel and pro se parties of record:

Gregory Reilly, Esq.
Brown Raysman Millstein Felder & Steiner, LLP
900 Third Avenue
New York, NY 10022

*[signature]*
Loraine M. Cortese-Costa, Esq.

P:\lit\pd\523818\001\00036428.DOC