Dr. Gordon made the alleged comment, there are two reasons this does not suffice to meet Plaintiff's burden of showing pretext.

First, it is undisputed that Defendant Gordon played no role in Plaintiff's termination and he was not Plaintiff's manager, supervisor or even co-worker. Therefore, Defendant Gordon's alleged comment is a "stray remark," which cannot stand in the way of Defendants' motion for summary judgment. Second, the alleged comment on its face does not reflect discriminatory animus considering it was made by another African-American.

> (a) Dr. Gordon's Statement is a "Stray Remark" Which Cannot Be Used to Show Pretext

Even assuming, *arguendo,* that Dr. Gordon made the comment alleged by Plaintiff, the comment is of no probative value in showing pretext for race discrimination. It is undisputed that Dr. Gordon's only role in Plaintiff's termination was his reporting to Vision Center Manager Jerry Ellis that a customer had a complaint. Dr. Gordon was not Plaintiff's manager, supervisor or even co-worker. Dr. Gordon played no role in Plaintiff's performance evaluations, he never prepared nor attended Plaintiff's prior coachings, and he was not consulted concerning whether Wal-Mart should discipline Plaintiff or terminate his employment.

For an alleged discriminatory remark to show pretext it must be made by a decision-maker and it must be related to the decisional process. *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 56 (2d Cir. 1998); *See also O'Connor v. Viacom, Inc.*, 93 Civ. 2399, 1996 WL 194299 at *5 (S.D.N.Y. Apr. 23, 1996) (three isolated remarks by supervisor insufficient to establish pretext; stray remarks "without a demonstrated nexus to the complained of personnel actions, will not defeat" the employer's summary judgment motion), *aff'd mem.*, 104 F.3d 356 (2d Cir. 1996). *Burrell v. Bentsen*, 91 Civ. 2654, 1993 WL 535076 at *8 (S.D.N.Y. Dec. 21, 1993) ("stray remarks in the workplace, statements by nondecisionmakers, and statement by

decisionmakers unrelated to the decisional process are not by themselves sufficient to satisfy plaintiff's burden of proving pretext."), *aff'd mem.*, 50 F.3d 3 (2d Cir. 1995). Without some nexus between the comments and the adverse employment action, "[e]vidence of a supervisor's occasional or sporadic use of a slur directed at an employees' race, ethnicity, or national origin is generally not enough to support a claim under Title VII." *Hong v. Children's Mem. Hosp.*, 993 F.2d 1257, 1266 (7th Cir. 1993), *cert. denied*, 511 U.S. 1005 (1994); *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992), *cert. denied*, 510 U.S. 826 (1993) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight . . . ."). Here, Defendant Gordon's alleged remark was not related in any way to the decision-making process. Accordingly, Plaintiff cannot show pretext by reliance on Dr. Gordon's alleged comment.

      (b)    <u>Dr. Gordon's Statement Is, At Best, Ambiguous</u>

According to Plaintiff, Dr. Gordon stated words to the effect that he is "tired of black people messing up." If credited, Dr. Gordon's comment sounds like it was made out of exasperation rather than condemnation. *Tighe v. All Brand Importers, Inc.*, 814 F. Supp. 237, 241 (D. Conn. 1992) (ambiguous statement "not probative [of pretext] because it permits several different interpretations). There is no suggestion in the comment that Dr. Gordon would discriminate or seek to discriminate against African-Americans. Indeed, Plaintiff himself seems reluctant to label the comment as discriminatory because he refers to it as "abusive" rather than discriminatory. Key Dep. at 59, 179, 200. There is, of course, no law prohibiting an "abusive" work environment – only a discriminatory one. Finally, the fact that Dr. Gordon is African-American himself creates an inference (which Plaintiff does not rebut) that Dr. Gordon had no discriminatory intent in making the alleged statement. *See, e.g., Davis v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996); *Strohmeyer*, 989 F.Supp. 455, 460 (W.D.N.Y. 1997); *Chi*

27

*Ho Lin v. New York City Admin. For Children's Services*, 2003 WL 21973361, *2, n. 2, (S.D.N.Y.Aug 19, 2003).

### 4. <u>Plaintiff's Claim that He Is the Victim of Retaliation Should Be Dismissed</u>

Plaintiff's allegation of retaliation is flawed. To establish a *prima facie* case of retaliation Plaintiff must show: (1) participation in a protected activity that is known to the employer; (2) an employment decision or action disadvantaging the employee; and (3) a causal connection between the protected activity and the adverse decision. *See, e.g., Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996). The undisputed material facts show that Plaintiff cannot make out even a *prima facie* case of retaliation.

The alleged genesis for this claim is that after Defendant Gordon made his "abusive" remark, Plaintiff complained to Wal-Mart managers or supervisors. Plaintiff acknowledges, however, that he cannot identify the persons to whom he complained and he is not certain of their job titles. Roger Noll, the store manager who made the decision to terminate Plaintiff's employment, was not aware of Plaintiff's alleged complaint about the "abusive" remark until after the decision was made to terminate Plaintiff's employment. Even Plaintiff acknowledged in his deposition that he did not know whether he was terminated based on the Nyguen incident, his race or because of his alleged complaint about the "abusive" remark. Key Dep. at 131, 203-04; Key Dep. II at 136. Therefore, there is no link between Plaintiff's alleged complaint and his termination, and Wal-Mart is entitled to judgment as a matter of law.

*   *   *

Plaintiff cannot dispute the above facts, let alone show they are false. Plaintiff's subjective opinion that he is a victim of discrimination or retaliation cannot overcome Wal-Mart's showing that it terminated him because it was fed up with his poor performance and poor

handling of customers.[17] In sum, Plaintiff has no evidence admissible under Rule 56(e) that Wal-Mart engaged in discrimination or retaliation. For all these reasons, the Court should grant Wal-Mart summary judgment dismissing Plaintiff's race discrimination claims in Counts Four and Five.

F.  **COUNT SIX – THE COURT SHOULD GRANT SUMMARY JUDGMENT DISMISSING PLAINTIFF'S CLAIM AGAINST DEFENDANT DR. GORDON FOR ALLEGED AIDING AND ABETTING OF RACE DISCRIMINATION**

Like Plaintiff's other claims, his claim against Dr. Gordon is without merit. Plaintiff's allegation against Dr. Gordon states simply that "Dr. Gordon aided and abetted Wal-Mart's pretextual discharge of Mr. Key in violation of the CFEPA, Conn. Gen. Stat. § 46a-60(1)(5)." Complaint, 21.

The "aiding and abetting" prohibition of Connecticut's Fair Employment Practices Act provides that:

> (a) It shall be a discriminatory practice in violation of this section:
>
> *   *   *
>
> (5) For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or to attempt to do so.

Conn. Gen. Stat. § 46a-60(1)(5). Shifting the undisputed material facts over the grid of the above statutory provision demonstrates the futility of Plaintiff's "aiding and abetting" claim against Dr. Gordon.

---

[17] An employee's subjective belief that he was discriminated against is insufficient to support a discrimination claim. *See Fisher v. Vassar College*, 114 F.3d 1332, 1335-1336 (2d Cir.1997), *cert. denied*, 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998); *Rosengarten v. J.C. Penney Co., Inc.*, 605 F. Supp. 154, 157 (E.D.N.Y. 1985) ("It is the perception of the decision-maker, and not that of the plaintiff himself, which is relevant.") (citing *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980)). Plaintiff's conclusory speculation that the real reason that he was fired was because of his race is insufficient to defeat summary judgment.

First, as a preliminary matter, Dr. Gordon cannot be held liable for aiding or abetting when, as shown, no material facts support Plaintiff's contention that Wal-Mart engaged in "a discriminatory employment practice." Conn. Gen. Stat. § 46a-60(1)(5).

Second, even assuming, *arguendo,* that Wal-Mart engaged in discrimination – which it did not – Dr. Gordon cannot be held liable under the statute because he did not do anything to "aid, abet, incite, compel or coerce" the alleged discrimination. The undisputed material facts show that *Defendant Gordon played no role in the decision-making process resulting in Plaintiff's termination.* At most, all Dr. Gordon did was bring Nuygen's complaint to the attention of Wal-Mart management. There is no dispute (nor can there be) that Ms. Nuygen had a complaint. Nuygen Dep. at 21-22; Ngyen Ex. 1. Dr. Gordon neither made up this complaint nor concocted Plaintiff's pre-existing record of poor performance and disciplinary write-ups. Moreover, what Wal-Mart decided to do with Nuygen's complaint was up to Wal-Mart, and Dr. Gordon played no role in that process or decision. Dr. Gordon Dep. at 87-88; Noll Dep. at 20-21; Noll Dec., ¶1.

Therefore, Dr. Gordon cannot be held liable under the CFEPA for alleged "aiding and abetting," and Count Six should be dismissed as against Dr. Gordon.

### IV.  THE COURT SHOULD DENY PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

As described above, Plaintiff's entire complaint should be dismissed on summary judgment because of the fatal flaws in his legal claims. Therefore, it is odd to be confronted with a motion by Plaintiff seeking partial summary judgment with respect to his wrongful termination in violation of public policy claim (Count One) and his negligent misrepresentation claim (Count Three). The Court should deny Plaintiff's ill-conceived motion, which ignores and/or misrepresents the applicable law and relies on immaterial facts.

A.   **The Court Should Deny Plaintiff's Motion for Summary
     <u>Judgment With Respect to Count One of the Complaint</u>**

Plaintiff's motion for summary judgment with respect to Count One of his Complaint is pure bootstrapping, which should be denied by the Court. There is a logical disconnect to Plaintiff's argument. Here is Plaintiff's argument:

- Wal-Mart operated the Store's Vision Center in violation of "important" public policies set forth in Connecticut's optometry licensing statute and CUPTA, specifically, it required Plaintiff to perform vision screenings and pre-testing;

- Wal-Mart was allegedly fearful that Plaintiff would complain of its alleged legal violations;

- Wal-Mart terminated Plaintiff after a customer complained about Plaintiff when he was performing a pre-test that is allegedly in violation of Connecticut's optometry licensing statute; and

- Therefore, Plaintiff's termination was in violation of public policy.

There are two fundamental problems with this argument that require the Court to deny Plaintiff's motion.

First, as described *supra*, Wal-Mart's Vision Center operations are not in violation of any state laws or important public policies. <u>See</u> <u>supra</u> at 16-19. Plaintiff has cited no case law to the contrary.

Second, even assuming, *arguendo*, that Wal-Mart violated some public policy, Plaintiff makes no showing (nor can he) that his termination was related in any way to the public policy violation. It is undisputed that Plaintiff was terminated after a customer complained about how Plaintiff was providing her service. It is undisputed that the customer's complaint (and Plaintiff's documented history of performance problems) resulting in his termination had nothing to do with an alleged public policy violation. And, it is undisputed that Plaintiff did not complain to Wal-Mart management of the alleged illegal activities or protest in any other way (such as refusing to perform such duties) as is required to have a viable claim in Connecticut for

31

wrongful termination in violation of public policy.[18] Finally, there is no evidence that Wal-Mart was "fearful" that Plaintiff would complain that he was being asked to do pre-tests and vision screenings. Indeed, there could not be because Plaintiff himself did not come up with this theory of an alleged public policy violation until *after* he was terminated – and, as such, he certainly did not complain to Wal-Mart management about it or take any other action in protest.

Considering the reasons above, Defendant Wal-Mart respectfully requests that the Court deny Plaintiff's motion for summary judgment with respect to Count One of the Complaint.

### B. The Court Should Deny Plaintiff's Motion for Summary Judgment With Respect to Count Three of the Complaint

The Court also should deny Plaintiff's motion with respect to Count Three of the Complaint, which alleges negligent misrepresentation. For the reasons set forth, *supra*, it is actually Wal-Mart that is entitled to summary judgment on this claim because the material facts show that no misrepresentations were made, Plaintiff cannot show justifiable reliance and

---

[18] Unlike in this case, in each of the legal decisions cited in Plaintiff's Memorandum the termination was found to have been in violation of public policy after an employee either complained of the alleged public policy violation or took some action that was protected by the public policy. Pl. Mem. at 7-10 citing, *Thibodeau v. Design Group One Architects, LLC*, 260 Conn. 691 (2002) (employee notified employer of pregnancy prior to discharge); *Burhnam v. Karl and Gelb, P.C.*, 252 Conn. 153 (2000) (employee alleged termination for reporting alleged violation of law relating to dental services); *Daley v. Aetna Life and Cas. Co.*, 249 Conn. 766 (1999) (employee alleged she was terminated because she complained about employer's family friendly policies); *Faulkner v. Sikorsky Aircraft, United Technologies Corp.*, 240 Conn. 576 (1997) (employee refused to participate in employer's alleged scheme to defraud government); *Parsons v. United Technologies Corp.*, 243 Conn. 66 (1997) (employee terminated after he refused assignment based on alleged unsafe conditions); *Carbone v. Atlantic Richfield Co.*, 204 Conn. 460 (1987) (no wrongful termination when employee did not complain or take action related to important public policy); *Schmidt v. Yardney Electric Corp.*, 4 Conn. App. 69 (1985) (employee terminated after he helped to bring employer's insurance fraud to light); *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471 (1980) (prior to firing the employee had insisted that the employer comply with federal Food, Drug and Cosmetic Act).

The other cases Plaintiff cites in that section of his brief dealing with his wrongful discharge claim are either unrelated to or fail to elaborate upon the dimensions of Connecticut's exception to the at-will doctrine for terminations in violation of public policy. Pl. Mem. at 7-10 *citing, Cimochowski v. Hartford Public Schools*, 261 Conn. 287 (2002) (only considered school's discretion in terminating assistant superintendent as a matter of public policy; no wrongful discharge claim presented by the plaintiff); *Antinerella v. Rioux*, 229 Conn. 479 (1994), *overruled on other grounds by Miller v. Egan*, 265 Conn. 301 (2003) (merits of wrongful discharge claim not before the court); *Tomlinson v. Board of Education*, 226 Conn. 704 (1993) (wrongful discharge claim not considered because waived when not raised prior to appeal); *Morris v. Hartford Courant Co.*, 200 Conn. 676 (1986) (no underlying important public policy issue at stake where employer allegedly falsely accused employee of criminal activity); *Magnan v. Anaconda Industries, Inc.*, 193 Conn. 558 (1984) (no public policy claim at issue).

Plaintiff cannot show that he suffered any damages as a result of his alleged detrimental reliance. For any one of these reasons, Wal-Mart is entitled to summary judgment on Count Three.

The only alleged misrepresentation set forth in Plaintiff's original complaint was that "the Wal-Mart representatives who recruited and hired Mr. Key knew or should have known at the time of hiring that he would be required to perform duties inconsistent with those of a Licensed Optician, but failed to disclose that fact to him." Complaint, ¶15. However, Plaintiff's motion does not seek summary judgment on the basis of this factual allegation, but instead on the newly alleged basis that it was represented to Plaintiff that he could ask questions of the resident Optometrist, Plaintiff relied on this representation and he was allegedly fired after asking the optometrist questions. Amended Complaint, ¶¶17-18.

Even on cursory inspection, Plaintiff's new argument cannot aid him in overcoming Wal-Mart's motion (or obtaining summary judgment for himself). First, to be sure, Plaintiff was allowed to ask questions of the optometrist. Ellis Dep. at 29-30. However, a representation (assuming it occurred) concerning this is immaterial because Plaintiff's reliance on such a representation did not cause him any detriment. The undisputed material facts show that Plaintiff was terminated as a result of a history of performance problems, and the complaint of Ms. Nguyen was simply the straw that broke the camel's back. Moreover, the mere fact that Plaintiff was allowed to ask questions, does not logically mean that anytime he asked questions he was protected from discipline or termination. Plaintiff's reliance on the alleged representation must be reasonable. Here, Plaintiff is asking multiple questions in front of a customer, which caused Ms. Nguyen to question Plaintiff's competency. Plaintiff had conducted these pre-tests throughout his employment and, therefore, such questions were not necessary. Moreover, even if they were arguably necessary they could have been asked of Dr. Gordon outside the earshot of the patient.

Finally, we note that Plaintiff did not request the Court's permission to file a motion for summary judgment with respect to Count Three – only Counts One and Two. Reilly Aff., Ex. A (August 15, 2003 letter to the Court from Loraine Cortese-Costa). For these reasons, Wal-Mart respectfully requests that the Court deny Plaintiff's motion for summary judgment with respect to Count Three and grant Wal-Mart's motion for summary judgment with respect to this claim.

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their motion for summary judgment in its entirety, dismissing the Complaint with prejudice, awarding Defendants their reasonable costs and attorneys' fees, and providing Defendants such other and further relief as the Court deems appropriate. Defendant Wal-Mart further requests that Plaintiff's motion for partial summary judgment be denied in its entirety.

Dated: December 5, 2003

> Brown Raysman Millstein Felder
> & Steiner LLP
> 900 Third Avenue
> New York, New York 10022
> (212) 895-2000
>
> By: _____
> Gregory B. Reilly (ct07101)
>
> Cityplace II
> 185 Asylum Street
> Hartford, CT 06103
> (860) 275-6400
>
> Attorneys for Defendant
> Wal-Mart Stores, Inc.

## **CERTIFICATION**

This is to certify that a copy of the foregoing Memorandum of Law in Support of Defendants' Motion for Summary Judgment and in opposition to Plaintiff's Motion for Partial Summary Judgment has been sent by overnight courier this 5th day of December, 2003 to:

> Loraine M. Cortese-Costa
> Durant Nichols
> 1057 Broad Street
> Bridgeport, CT 06604
>
> Attorney for Plaintiff
> Marvin Key

Dated: December 5, 2003

_____
Gregory B. Reilly
(Federal Bar No.: ct07101)