FILED

2003 DEC 22 P 3: 2?

U.S. DISTRICT COURT
HARTFORD, CT.

## UNITED STATES DISTRICT COURT
### FOR THE
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARVIN KEY,<br>    PLAINTIFF, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | TRIAL BY JURY DEMANDED |
| WAL-MART, INC. AND DR. ANTHONY | ) | ON ALL CLAIMS |
| GORDON, | ) | |
|    DEFENDANTS. | ) | NOVEMBER _14_, 2003 |

### FIRST AMENDED COMPLAINT

**The Parties**

1.      Defendant, Wal-Mart, Inc. ("Wal-Mart" or "Company"), is a retail Company incorporated under the laws of the State of Delaware and doing business in Connecticut.  Wal-Mart owns and/or operates optical stores within several of its retail establishments in Connecticut including one in North Windham, Connecticut.

2.      Defendant, Anthony Gordon ("Dr. Gordon"), is a licensed Optometrist who, at all relevant times, was practicing in the Wal-Mart store in North Windham, Connecticut.

3.      Plaintiff, Marvin Key ("Mr. Key"), is a licensed Optician by the State of Connecticut, resident of Norwich, Connecticut, and Black.  Mr. Key was employed by Wal-Mart in its North Windham, Connecticut store from February 9, 2000 through April

30, 2001 when he was terminated just three days after complaining to Wal-Mart management that Dr. Gordon, who is also Black, had commented that he was "sick of Black people messing up."  Dr. Gordon's comment was made after a customer had stated in the presence of Dr. Gordon that Mr. Key did not appear qualified to give her son a vision screening test which, under Connecticut law, may only be performed by licensed Optometrists or Opthamologists or specially qualified personnel employed by them.

**Jurisdiction**

4.     This Court has jurisdiction over Mr. Key's Complaint 1) pursuant to 28 U.S.C. § 1332 based upon diversity of citizenship and an amount in controversy, exclusive of interest and costs, exceeding $75,000 and 2) pursuant to 28 U.S.C. § 1331 based upon a federal question under Title VII of the Civil Rights Act of 1964 ("Title VII").

**Background**

5.     Wal-Mart is in the practice of operating optical stores for the sale of prescription lenses in some of its retail stores. In Connecticut, an optical store may not be opened without the employment of a licensed Optician at the store.  As part of its effort to secure a licensed Optician to open the optical department in its North Windham, Connecticut store, Wal-Mart hired Mr. Key as a licensed Optician in that store.  Once Mr. Key was hired, Wal-Mart was able to begin operating its optical

department there and to recruit and hire other licensed Opticians, all of whom were White.

6.    Mr. Key accepted employment with Wal-Mart and gave up a position providing a good salary, benefits and job security which he had held for close to two years with another company.  He did so based upon Wal-Mart's offer to hire him as a licensed Optician in its North Windham store with commensurate salary and benefits. When Mr. Key inquired about the position to Wal-Mart management with whom he interviewed for the position, no one indicated to Mr. Key that he would be expected or required to perform vision screenings and testing for eye health (glaucoma), which is unlawful for anyone but licensed Optometrists and Opthamologists to conduct under Connecticut law.   Nevertheless, soon after his hiring, Wal-Mart required Mr. Key to perform such tests.

7.    After some attempts by Wal-Mart managers to create a disciplinary record against Mr. Key, he was issued an annual performance review in January, 2001 that rated him as meeting expectations and awarded him a merit increase.  Under areas for improvement, the manager who prepared the evaluation specifically noted "vision screenings" which Mr. Key and other employees had been required to conduct despite their lack of an appropriate license.  Indeed, despite the licensing requirement, Wal-Mart required its optical store employees to solicit a minimum number of customers each

month and perform vision screenings and to undertake pretesting of the Optometrist's patients, including glaucoma testing.  The purpose of this was to increase Wal-Mart's business and profits in its optical stores.  Customers were enticed by the pretense that they would be receiving vision and eye health testing by professionals authorized and competent to perform them when in fact the optical store employees were not professionally trained or authorized to conduct such testing.

8.      Wal-Mart optical store employees were directed by their supervisors and Wal-Mart optical store training materials to question the Optometrist if they were unsure about performance of the vision pre-testing.  On or about Friday, April 27, 2001, Mr. Key was required to perform pre-testing on a minor patient of Dr. Gordon's who was accompanied by his mother.  When Mr. Key was unsure of how to next proceed in the screening, he inquired of Dr. Gordon what Dr. Gordon wanted done.  The patient's mother asserted that although Mr. Key had a badge (that indicated "Licensed Optician"), he did not look qualified.  Afterwards, Dr. Gordon, in the patient waiting area and, in the presence of customers, Mr. Key, one of his co-workers and Jerry Ellis, Wal-Mart's manager of the North Windham optical store, proclaimed that he was "sick of Black people messing up."  Mr. Ellis took no action to admonish Dr. Gordon so Mr. Key reported the remarks and complained of the patently discriminatory behavior to other managers at the North Windham store.  Mr. Ellis contacted another Wal-Mart manager who obtained a written report from the patient's mother which noted that Mr. Key had

- 4 -

asked questions of Dr. Gordon making her feel that Mr. Key was not qualified to do the pre-testing. At the end of his shift the following Monday, Mr. Key was informed that he was being discharged due to a customer complaint which, he was told, was in writing, although it was never shown to him. Neither was any such Complaint provided by Wal-Mart to the Connecticut Commission on Human Rights and Opportunities ("CHRO") in its response to the charge of discrimination filed by Mr. Key on July 30, 2001.

9.      When Mr. Key filed for unemployment compensation, Wal-Mart asserted that he had voluntarily quit and forced him to appear for hearings which it did not attend.

**Count One– Discharge In Violation of Public Policy**

10.      Wal-Mart's practice of inducing customers to submit to vision screenings and pre-testing, including glaucoma testing, by unlicensed personnel under the pretense that such individuals are competent and lawfully able to perform such screenings in order to increase business and profits in its optical stores and undermine the business of competing optical stores violates the public policy expressed in the applicable Connecticut licensing statutes, Conn. Gen. Stat. §20-138a, and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §42-110b.

11.      Discharging Mr. Key, in part, as a result of its practice and for fear that Mr. Key might report it to the Connecticut Department of Public Health or other oversight agencies violates public policy and is not otherwise subject to vindication.

## Count Two - Breach of Contract

12.     Mr. Key's hiring was pursuant to an implied contract with job duties consistent with those that may be lawfully performed by a licensed Optician under Connecticut law.

13.     Wal-Mart breached the implied contract with Mr. Key by requiring him to perform vision screenings including glaucoma testing which only licensed Optometrists or Opthamologists may perform under Connecticut law.

14.     Wal-Mart's breach of the implied contract with Mr. Key resulted, in part, to the termination of Mr. Key's employment.

## Count Three – Negligent Misrepresentation

15.     Wal-Mart representatives who recruited and hired Mr. Key knew or should have known at the time of hiring that he would be required to perform duties inconsistent with those of a Licensed Optician, but failed to disclose that fact to him.

16.     Mr. Key relied upon the information provided by those individuals in resigning his position with another employer to accept employment with Wal-Mart and from which he was subsequently discharged, in part, for not performing those undisclosed duties to Wal-Mart's satisfaction.

17.     Mr. Key was directed by Wal-Mart to ask the Optometrist questions in connection with the pre-testing he was required to perform but failed to disclose to him that he could be discharged as a result of doing so.

18.    Mr. Key relied upon Wal-Mart's directives in asking Dr. Gordon questions for which he was subsequently discharged, in part.

## Count Four – Title VII

19.    Mr. Key's services were terminated by Wal-Mart, in part, because he is Black and in retaliation for his complaining of discriminatory remarks by Dr. Gordon in violation of Title VII of the Civil Rights Act.

20.    Before bringing this suit, Mr. Key filed a timely charge of discrimination under federal law with the Equal Employment Opportunity Commission.

## Count Five  -  Connecticut Fair Employment Practices Act ("CFEPA")

21.    Mr. Key's services were terminated by Wal-Mart, in part, because he is Black and in retaliation for his complaining of discriminatory remarks by Dr. Gordon in violation of the CFEPA.

22.    Mr. Key filed a timely charge of discrimination with and has received a Release of Jurisdiction from the CHRO (copy attached) authorizing him to bring this suit against Wal-Mart.

## Count Six  -  CFEPA

23.    Dr. Gordon aided and abetted Wal-Mart's pretextual discharge of Mr. Key in violation of the CFEPA, Conn. Gen. Stat. §46a-60(a)(5).

24.    Mr. Key filed a timely charge of discrimination with and has received a Release of Jurisdiction from the CHRO (copy attached) authorizing him to bring this suit against Dr. Gordon.

## **DEMAND FOR RELIEF**

WHEREFORE, Mr. Key claims the following relief:

1.    Lost pay and benefits;

2.    Front pay and benefits;

3.    Compensatory damages;

4.    Punitive damages;

5.    Attorney's fees and costs;

6.    Interest; and

7.    Such other and further relief as the Court deems just and proper in law or in equity.

Done at Bridgeport, Connecticut, this 14th day of November, 2003.

Loraine M. Cortese-Costa
DURANT, NICHOLS, HOUSTON,
HODGSON & CORTESE-COSTA, P.C.
1057 Broad Street
Bridgeport, CT  06604
203-366-3438
Federal Bar No. ct03984

ATTORNEYS FOR PLAINTIFF

P:\lit\LCC\523818\001\00036880.DOC

## CERTIFICATION

This is to certify that I have caused to be served, this 14Th day of November, 2003, the above and foregoing via U.S. Mail, Certified Mail, Return Receipt Requested, to the following counsel and pro se parties of record:

Gregory Reilly, Esq.
Brown Raysman Millstein Felder & Steiner, LLP
900 Third Avenue
New York, NY 10022

Loraine M. Cortese-Costa, Esq.

P:\lit\LCC\523818\001\00036880.DOC

## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

### RELEASE OF JURISDICTION

FORM 500(3)

COMMISSION ON HUMAN RIGHTS AND
OPPORTUNITIES, ex rel.

<u>Marvin Key</u>
Complainant

Date: October 28, 2002

vs.

<u>Wal-Mart</u>
Respondent

CCHRO CASE NO.: 0240041
EEOC CASE NO.:    16aa14314

## <u>RELEASE OF JURISDICTION</u>

Pursuant to Complainant's and/or Complainant's attorney(s) request dated **October 15, 2002**, the Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above numbered and captioned complaint in accordance with Section 46a-101 of the Connecticut General Statutes.  Also, in accordance with Section 46a-100, C.G.S. Complainant is hereby authorized to commence a civil action against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the Respondent transacts business.  If this action involves a state agency or official, it may be brought in the Superior Court for the Hartford-New Britain judicial district.

**Please be advised that, pursuant to CONN. GEN. STAT. §46a-103, the Complainant or Complainant's attorney <u>must</u> <u>serve</u> on the Commission, at the same time all other parties are served, a copy of any civil action filed pursuant to this release.  The Commission must be so served because it has a right to intervene in any action filed based on a release of jurisdiction.**

In granting this release, the Commission expressly finds, in accordance with Sections 46a-100 and 46a-101(b) of the C.G.S., that all conditions precedent to the issuance of the release of jurisdiction have been complied with inasmuch as the complaint was timely filed in accordance with 46a-82 of the C.G.S. and the complaint has been pending for a period of not less than 210 days, inasmuch as it was filed on **July 30, 2001** and is still pending on October 28, 2002, a period in excess of two hundred and ten (210) days.

Rev. 2/6/02

- 2 -

Moreover, there is no reason to believe that the complaint will be resolved within a period of thirty (30) days from **October 17, 2002**, the date the Commission received Complainant's request for the Release of Jurisdiction, nor is the complaint currently scheduled for public hearing. [see Section 46a-101(c) of the Connecticut General Statutes].

The complainant must bring an action in Superior Court within ninety (90) days of receipt of this release and within two (2) years of the date of filing the complaint with the Commission. The Superior Court shall have such authority as is conferred upon it by Section 46a-104 of the C.G.S., and other laws of the State of Connecticut.

Concurrently, with the issuance of this Release of Jurisdiction, the Commission hereby administratively dismisses this complaint in accordance with Section 46a-101(d) of the Connecticut General Statutes. Furthermore, said dismissal is not subject to administrative judicial review.

Cynthia Watts Elder
Executive Director

By: _____
Donald E. Newton
Chief of Field Operations

Dated and entered of record in the Commission's Administrative Office in Hartford, Connecticut on this 28th day of October, 2002.

cc: Complainant:  Marvin Key
    Complainant's Attorney:  Attorney David M. Fabricant
    Receipt for Certified Mail 7099 3400 0008 5559 8011
    Respondent(s):  Wal-Mart
    Respondent's Attorney:  Cara Rose, Paralegal, Legal Team, Wal-Mart
    Regional Manager: James Flynn, Regional Manager,
    Eastern Regional Office

Rev. 2/6/02

COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

## RELEASE OF JURISDICTION

FORM 500(3)

COMMISSION ON HUMAN RIGHTS AND
OPPORTUNITIES, ex rel.

Marvin Key
Complainant

Date: October 28, 2002

vs.

Anthony Gordon, Optometrist
Respondent

CCHRO CASE NO.: 0240042
EEOC CASE NO.:    00

RELEASE OF JURISDICTION

Pursuant to Complainant's and/or Complainant's attorney(s) request dated
**October 15, 2002**, the Commission on Human Rights and Opportunities hereby releases
its jurisdiction over the above numbered and captioned complaint in accordance with
Section 46a-101 of the Connecticut General Statutes. Also, in accordance with Section
46a-100, C.G.S. Complainant is hereby authorized to commence a civil action against the
Respondent in the Superior Court for the judicial district in which the discriminatory
practice is alleged to have occurred or in which the Respondent transacts business. If
this action involves a state agency or official, it may be brought in the Superior Court
for the Hartford-New Britain judicial district.

**Please be advised that, pursuant to CONN. GEN. STAT. §46a-103, the Complainant or
Complainant's attorney must serve on the Commission, at the same time all other
parties are served, a copy of any civil action filed pursuant to this release. The
Commission must be so served because it has a right to intervene in any action filed
based on a release of jurisdiction.**

In granting this release, the Commission expressly finds, in accordance with Sections
46a-100 and 46a-101(b) of the C.G.S., that all conditions precedent to the issuance of the
release of jurisdiction have been complied with inasmuch as the complaint was timely
filed in accordance with 46a-82 of the C.G.S. and the complaint has been pending for a
period of not less than 210 days, inasmuch as it was filed on
**July 30, 2001** and is still pending on **October 28, 2002**, a period in excess of two hundred
and ten (210) days.

Rev. 2/6/02

- 2 -

Moreover, there is no reason to believe that the complaint will be resolved within a period of thirty (30) days from **October 17, 2002**, the date the Commission received Complainant's request for the Release of Jurisdiction, nor is the complaint currently scheduled for public hearing. [see Section 46a-101(c) of the Connecticut General Statutes].

<u>The complainant must bring an action in Superior Court within ninety (90) days of receipt of this release and within two (2) years of the date of filing the complaint with the Commission.</u>  The Superior Court shall have such authority as is conferred upon it by Section 46a-104 of the C.G.S., and other laws of the State of Connecticut.

Concurrently, with the issuance of this Release of Jurisdiction, the Commission hereby administratively dismisses this complaint in accordance with Section 46a-101(d) of the Connecticut General Statutes. Furthermore, said dismissal is not subject to administrative judicial review.

Cynthia Watts Elder
Executive Director

By
Donald E. Newton
Chief of Field Operations

Dated and entered of record in the Commission's Administrative Office in Hartford, Connecticut on this <u>28th</u> day of <u>October, 2002</u>.

cc: Complainant:  Marvin Key
  Complainant's Attorney:   Attorney David M. Fabricant
  Receipt for Certified Mail 7099 3400 0008 5559 8028
  Respondent(s):  Anthony Gordon, Optometrist
  Respondent's Attorney:  N/A
  Regional Manager: James Flynn, Regional Manager,
  Eastern Regional Office

Rev. 2/6/02