UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------- X
MARVIN KEY,                              :
                                         :   CIVIL ACTION NO.:
            Plaintiff,           :   3:03CV144(RNC)
                                         :
      v.                                 :
                                         :
WAL-MART, INC. AND DR. ANTHONY           :
GORDON,                                  :
                                         :
            Defendants.          :   MARCH 8, 2004
---------------------------------------------------------- X

**MEMORANDUM OF LAW
IN SUPPORT OF WAL-MART STORES, INC'S MOTION
FOR A PROTECTIVE ORDER OF THE PERSONNEL FILE OF DALE CENEVIVA**

      Pursuant to Fed. R. Civ. P. 45(c) and D. Conn. L. Civ. R. 37(a)(2), the defendant, Wal-Mart Stores, Inc. ("Wal-Mart"), respectfully moves this Court for a protective order to protect the personnel file of Dale Ceneviva, which was subpoenaed by the plaintiff on February 27, 2004.[1] A copy of the subpoena is attached hereto as Exhibit A.

**I.    FACTS**

      Plaintiff Marvin Key ("plaintiff"), a former optician at the Vision Center in Wal-Mart's North Windham, Connecticut store, claims, in relevant part, that he was terminated in violation of Title VII of the Civil Rights, 42 U.S.C. §§2000e et seq., and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§46a-60, et seq. on the basis of his race (African American) and color (Black), and/or in violation of Connecticut public policy because he allegedly expressed

---

[1] This subpoena compelled the personnel files and related material of six (6) Wal-Mart employees or former employees. Wal-Mart has agreed with plaintiff upon terms for producing personnel file material for five (5) of these individuals.

1

concerns regarding Wal-Mart's internal Vision Center policies. The instant dispute centers on plaintiff's demand for the confidential personnel file records of Dale Ceneviva, a Vision Center Manager in Wal-Mart's Bristol, Connecticut store who did not work with or oversee the plaintiff.[2]

On December 17, 2003, plaintiff issued his Third Set of Interrogatories and Requests for Production, requesting, inter alia, the personnel files of six current or former Vision Center employees, David Peterson (non-exempt, certified optician), Phyllis Parmenter (non-exempt, certified optician), Jeff Krol (non-exempt, certified optician), Jenilu Zboray (non-exempt, intern), Jerry Ellis (exempt, Vision Center Manager) and Ceneviva. All of these individuals are Caucasian. Other than Ceneviva and Ellis, all of these employees were non-managerial employees at the North Windham store during the time of plaintiff's employment. Wal-Mart objected to the plaintiff's request for these files based on relevancy, and because Connecticut statute protects confidential personnel file information from disclosure absent certain conditions that were not present here.[3]

On February 24, 2004, Wal-Mart received a letter from plaintiff's counsel requesting that the parties come to an agreement with regard to Wal-Mart's objection regarding the personnel files. (See Affidavit of Kristi E. Mackin, ("Mackin Aff."), ¶ 5, Ex. 2. The Affidavit and annexed exhibits are attached hereto as Exhibit B). This letter explained that production of the personnel records was sought on the grounds that the six individuals "were employed as opticians or optician apprentices by Wal-Mart, and according to Wal-Mart's previous discovery responses were the subject of customer complaints and/or various forms of discipline, but not discharged as Plaintiff

---

[2] It should be noted that the personnel file at issue, as well as that of Ellis has not yet been located. (Mackin Aff., ¶ 12, FN1). Wal-Mart has been able to recreate some personnel file information from Wal-Mart's human resources database, People Soft. Wal-Mart informed plaintiff's counsel of this on March 3, 2004 (Ellis) and March 4, 2004 (Ceneviva). (Id.) Thus, regardless of whether Ceneviva's personnel records are compelled to be produced, Wal-Mart may only be able to produce Ceneviva's rate increase history. As an additional note, Ceneviva's employment with Wal-Mart recently was terminated. (Id.).
[3] See Conn. Gen. Stat. § 31-128f.

2

was." (Mackin Aff., ¶ 6, Ex. 2). The letter indicated that Wal-Mart must respond by March 1, 2004, which plaintiff represented as his deadline to file a Motion to Compel with regard to his third set of discovery. (Mackin Aff., ¶ 7).

On February 25, 2004, Wal-Mart counsel Kristi Mackin spoke with plaintiff's counsel Pamela Coyne to determine whether an agreement could be reached with regard to production of the files. (Mackin Aff., ¶ 8). Initially, however, the parties addressed the timeline of plaintiff's request. The plaintiff's March 1, 2004 deadline left three and a half (3 ½) working days for Wal-Mart to respond and/or produce the files, which did not provide sufficient time for Wal-Mart to meaningfully discuss plaintiff's request internally, or even obtain copies of the files. (Mackin Aff., ¶ 8). Wal-Mart suggested and plaintiff agreed to move to extend his time to file a Motion to Compel until March 8, 2004 which at the same time effectively gave Wal-Mart one week to review plaintiff's request. (Mackin Aff., ¶ 8).

Therefore, Wal-Mart's counsel was surprised when on February 27, 2004 plaintiff served upon Wal-Mart a subpoena demanding that it produce "[t]he personnel files, as well as any and all records of investigations and discipline that are not included in the personnel files, for the following employees, Dale Ceneviva, Jerry Ellis, Phyllis Parmenter, Dave Peterson and Jenilu Zboray, and [sic] Jeffrey Kroll" by March 5, 2004.[4] (Exhibit A).

On March 3, 2004, counsel spoke by telephone to discuss the subpoena and production of the personnel files. (Mackin Aff., ¶ 11).Wal-Mart volunteered that it would produce for discovery purposes agreed upon portions of the personnel files of Peterson, Parmenter, Krol, Ellis, and

---

[4] This subpoena surprised Wal-Mart for two reasons. First, despite the plaintiff's previous agreement to narrow his original request, the subpoena did not reflect this agreement. Second, Wal-Mart understood that plaintiff would provide adequate time for Wal-Mart to determine what files, if any, would be produced, and then plaintiff would issue the subpoena in order to ensure Wal-Mart was properly complying with the mandates of Connecticut's personnel file statute, Conn. Gen. Stat. §31-128f. (Mackin Aff. ¶ 10). On March 3, 2004, the parties agreed that plaintiff would again narrow the request to documents relating to the individuals' related performance evaluations, discipline, customer comments or complaints, and licensing issues. (Mackin Aff., ¶ 11). At Wal-Mart's request, plaintiff agreed to adjourn the subpoena until Monday March 8 instead of Friday, March 5.

3

Zboray for purposes of discovery. (Mackin Aff., ¶ 12). In the interest of compromise, Wal-Mart gave plaintiff all benefit of the doubt as to what personnel files would be produced.

With regard to Ceneviva's personnel file, however, there was no clear showing or logic as to why plaintiff deemed her to be a relevant comparator, since Ceneviva worked in a different position with greater responsibility, in a different store, with different people, under different decision makers. Wal-Mart therefore asked plaintiff's counsel to articulate plaintiff's exact reasoning behind the request for Ceneviva's file. (Mackin Aff., ¶ 13). During this phone conversation, plaintiff's counsel adhered to plaintiff's previous position that Ceneviva's personnel records were necessary because she was similarly situated to plaintiff as an optician in one of Wal-Mart's Vision Centers and because she is a Caucasian individual who was not terminated. (Mackin Aff., ¶ 14).

On March 4, 2004, counsel for the parties further discussed Ceneviva's personnel records. (Mackin Aff., ¶ 15). Although plaintiff's counsel had agreed to revisit the request, there was no change in position. (Id.). This time, however, plaintiff's counsel claimed plaintiff needed Ceneviva's file because plaintiff believes Ceneviva was terminated, and that at some point she allegedly complained about the legality of opticians performing certain duties at Wal-Mart's Vision Centers.[5] (Id.). Plaintiff's counsel further suggested that the same decision makers involved in plaintiff's termination were also involved in Ceneviva's. (Id.).

As set forth below, there is no support for either of plaintiff's two positions, that (1) Ceneviva is similarly situated to plaintiff for purposes of his claim of racial discrimination or (2) Ceneviva was terminated by the same individual(s) who terminated plaintiff after making complaints about the legality of Wal-Mart's use of opticians, thus allegedly establishing a pattern

---

[5] We note that the Connecticut Department of Health has looked into these alleged "illegalities" and has neither cited Wal-Mart for improper policies, corrected Wal-Mart policies, or otherwise found any concerns with the manner in which the Vision Centers are run. (Mackin Aff., ¶ 20, Ex. 6, ¶¶ 5-6).

and practice of such terminations.[6] The following will demonstrate that Ceneviva was not similarly situated to plaintiff in any meaningful respect, nor was she subject to an adverse employment action by the same decisions makers for the same reasons as plaintiff. Indeed, plaintiff conceded that during his employment with Wal-Mart he never complained about the legality of opticians performing certain duties, and did not even think to question whether there was any concern regarding performing these functions. Thus, Ceneviva cannot be comparable to plaintiff. Wal-Mart now moves to protect Ceneviva's confidential personnel file, as plaintiff's February 27, 2004 subpoena was returnable in too short a time to be enforced, and Ceneviva's personnel files are not relevant or necessary to plaintiff's claims.

## II.    LAW AND ARGUMENT

### A.    Plaintiff's Subpoena Is Defective Because It Does Not Provide Adequate Time for Compliance.

Rule 45(c)(3)(A) of the Federal Rules of Civil Procedure requires that on a timely motion, the court by which a subpoena was issued must quash or modify the subpoena if it fails to allow reasonable time for compliance or subjects a person to undue burden. Fed. R. Civ. P. 45(c)(2)(B)(i), (iv). Further, the Federal Rules suggest that a reasonable time to comply with a subpoena is within fourteen (14) days after service. See Fed.R.Civ.P. 45(c)(2)(B).

In this case, Plaintiff served his subpoena on February 27, 2004, commanding the production of personnel files on March 5, 2004 – only a week later. A Fortiori, the subpoena fails to provide sufficient notice or to allow reasonable time for compliance, which by itself is sufficient grounds to grant a protective order.

---

[6] Plaintiff has not alleged such a pattern or practice, nor would such a small number of terminations on this basis, even if true, establish such a pattern and practice.

5

### B. Dale Ceneviva's Personnel File Is Irrelevant to Plaintiff's Claims Because She Is Not Similarly Situated, and Therefore Her File Must Be Protected.

Plaintiff has not provided a valid reason why the confidential personnel file of Dale Ceneviva should be disclosed. Discovery is only allowed if the information requested relates to the claims or defenses of any party to the litigation. Fed. R. Civ. P. 26(b)(1). The discoverability of information should be given additional scrutiny when the information sought is of a confidential and sensitive nature, such as an employee's personnel file as defined by Conn. Gen. Stat. §§31-128a through 31-128a; see also Donaldson v. Sheffield, CV990433074S, 2002 Conn. Super. LEXIS 2534 at *4 (July 30, 2002)("disclosure of such personnel information must be carefully tailored to a legitimate and demonstrated need for such information … no [party] has the right to conduct a general 'fishing expedition' into the personnel records of another").

In determining whether to disclose the personnel records, courts must weigh the relevancy and benefits of disclosure against needless invasion of privacy on a case-by-case basis. See, e.g., Rosado v. Bridgeport Roman Catholic Diocesan Corp., et al., CV93-0300272S, 1994 Conn. Super. LEXIS 3144 at *9 (Dec. 8, 1994), citing State v. Januszewksi, 182 Conn. 142, 172-73 (1980), cert denied, 453 U.S. 922 (1981) (regarding attempt to subpoena police officer's personnel file to impeach police officer's credibility at trial); Donaldson, supra, 2002 Conn. Super. LEXIS 2534 at *4.

Plaintiff's request here amounts to no more than a fishing expedition, as evidenced by plaintiff's inability to demonstrate a consistent reason for his request for Ceneviva's file. In plaintiff's February 24, 2004 letter, plaintiff claimed that Ceneviva was a relevant comparator for purposes of plaintiff's race discrimination claims because she was employed as an optician "and according to Wal-Mart's previous discovery responses [was] the subject of customer complaints and/or various forms of discipline, but not discharged as Plaintiff was." (Mackin Aff., ¶ 6, Ex. 2).

6

On March 4, 2004, however, plaintiff reversed this position, arguing that Ceneviva's file was necessary because she had allegedly complained about the legality of opticians performing certain duties at Wal-Mart's Vision Centers. (Mackin Aff., ¶ 15). Plaintiff himself apparently does not even know why he needs Ceneviva's file. Regardless, as discussed in detail below, neither one of plaintiff's purported reasons for requested Ceneviva's personnel records is meritorious or justifies production.

    **1.    Plaintiff Is Not Similarly Situated To Ceneviva for Purposes of His Claims of Race Discrimination.**

Ceneviva's personnel records are not related to plaintiff's claims because she is not similarly situated to plaintiff. Therefore, there is no cause to override the public policy protecting an employee's privacy by disclosing her confidential personnel file. "To be 'similarly situated,' the individuals with whom [plaintiff] attempts to compare [himself] must be similarly situated in all material respects." Shumway v. United Parcel Services, 118 F. 3d 60, 64 (2d Cir. 1997) (emphasis added). In other words, while plaintiff need not show that comparators are identical, he must show "a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases ... ." Graham v. Long Island RR, 230 F.3d 34, 40 (2d Cir. 2000). "Employees are not 'similarly situated' merely because their conduct might be analogized," Hunter v. Henderson, No. 3:91CV396(EBB), 1999 U.S. Dist. LEXIS 16096 at *24-25 (D. Conn Aug. 17, 1999)(employees with different disciplinary history not similarly situated). Rather, a review of the facts must demonstrate, when viewed with the eye of reason, that the employee is comparable. See Graham, 230 F. 3d at 40, citing Conward v. Combridge Sch. Comm., 171 F.3d 12, 20 (1st Cir. 1999) (explaining that "reasonableness is the touchstone" of the analysis).

Employees with different responsibilities are generally not valid comparators. See Roa v. Norame Mineta, et al., 51 Fed. Appx. 896, 899 (2d. Cir. 2002) (employees working for same

supervisor in same department not comparable when one employee had more complicated and broader duties). Moreover, employees are generally not comparable unless they are governed by the same decision makers. Shumway, 118 F.3d at 64 (managerial employee with same duties but different supervisors are not similarly situated); Hunter, 1999 U.S. Dist. LEXIS 16096 at *9-12; compare Banks v. John E. Potter, Postmaster General, 253 F. Supp. 2d 335, 343 (D. Conn. 2003) (comparators not under same decision maker, but in comparable positions and under Bridgeport Postmaster).

A review of the facts here shows that Ceneviva bears no "reasonably close resemblance" to plaintiff at all. In fact, plaintiff's own testimony debunks his theory that Ceneviva is comparable for purposes of his discrimination claim. According to plaintiff, Ceneviva was a manager at the Wal-Mart store located in Bristol, Connecticut. (Mackin Aff., ¶ 17, Ex. 3, p. 45). Plaintiff testified that he did not work with Ceneviva at the North Windham Wal-Mart or any other Wal-Mart, but at a Sun Glass Hut before either one was employed with Wal-Mart. (Id.). Plaintiff did not claim that he had direct involvement with Ceneviva during his employment with Wal-Mart.

Roger Noll, the decision maker in plaintiff's case, did not make any decisions regarding Ceneviva's employment. (Mackin Aff., ¶¶ 18-19, Ex. 4, pp. 19-20 and Ex. 5, ¶¶ 1,4; Affidavit of Roger Philip Noll ("Noll Aff.,") ¶ 4. Noll's affidavit is attached hereto as Exhibit C). In fact, Noll does not even know who Ceneviva is, or where she worked. (Noll Aff., ¶ 5). She was not in his chain of command, and to his knowledge never has been. (Noll Aff., ¶ 5). There is a complete disconnect between Ceneviva and plaintiff, and plaintiff cannot show a "close resemblance of the facts and circumstances" of their employment. In other words, what happened or did not happen to Ceneviva under completely different circumstances is irrelevant to plaintiff's claim, and plaintiff should not be allowed to peruse through her personnel records just because plaintiff knew her from a previous employer and she worked at Wal-Mart.

8

2. **Plaintiff's Claim That Ceneviva Was Terminated For Complaining About Wal-Mart's Vision Center Policies Is Unsupported And Irrelevant.**

In a shift from his original position, plaintiff now claims he has a right to Ceneviva's confidential personnel records because she was terminated, and at some point prior to her termination had allegedly made complaints regarding Wal-Mart's use of opticians in its Vision Centers.[7] Even if Ceneviva was ultimately able to show she was terminated because she questioned internal policy, this has no bearing on plaintiff's claims since Ceneviva is not similarly situated to plaintiff. As noted above, Noll testified that he made the decision to terminate plaintiff. (Mackin Aff., ¶ 18, Ex. 5, ¶1; Noll Aff., ¶ 4.) During plaintiff's deposition, plaintiff did not dispute that Noll made the decision to terminate him, and did not claim that other individuals were involved in his termination. Rather, plaintiff conceded that he did not know who made the decision to terminate him. (Mackin Aff., ¶ 17, Ex. 3, pp. 19-20). Noll did not participate in the decision to terminate Ceneviva. (Noll Aff., ¶ 7). As a store manager in North Windham, Noll would generally not have input on decisions involving employees in another store. (Noll Aff., ¶ 6). Thus, plaintiff cannot attribute Ceneviva's termination to the same decision maker, and the cause of her termination is of no assistance to plaintiff here.

Even if evidence appeared indicating that Ceneviva had been terminated for complaining about the Vision Centers' policies, and even if the decision makers had been the same in this matter, her personnel records would still be of no assistance to plaintiff because *plaintiff did not complain about the Vision Center policies until after he had been terminated.* (Mackin Aff., ¶ 15, Ex. 3, pp. 63-64). In fact, plaintiff admitted in his deposition that he did not even have reason to believe that Wal-Mart's policies were improper until after his termination. Plaintiff had performed

---

[7] There is no evidence on the record that Ceneviva made complaints regarding the legality of Wal-Mart's opticians' duties. (Mackin Aff., ¶ 15). Plaintiff does not dispute this. (Id.). The discovery period closed on December 31, 2003.

### III. CONCLUSION

Because there is no substantial need for plaintiff to obtain the personnel file of Dale Ceneviva, this court should grant Wal-Mart's protective order so that disclosure is not mandated.

DEFENDANTS WAL-MART STORES INC. and
DR. ANTHONY GORDON

By: /s/ Kristi E. Mackin
Mitchell L. Fishberg (ct19661)
Kristi E. Mackin (ct23394)
Brown Raysman Millstein Felder & Steiner LLP
185 Asylum Street, 10th Floor
Hartford, CT 06103
(860) 275-6400

Joel L. Finger (ct06114)
Brown Raysman Millstein Felder & Steiner LLP
900 3rd Avenue
New York, NY 10022

## CERTIFICATE OF SERVICE

This is to certify that on this 8th day of March, a true copy of the foregoing was sent via telefax and first-class mail, postage prepaid, to:

Loraine M. Cortese-Costa, Esq.
Pamela Coyne, Esq.
Durant, Nichols, Houston,
  Hodgson & Cortese-Costa, P.A.
1057 Broad Street
Bridgeport, CT  06804

_____
Kristi E. Mackin

12