# Exhibit A

AO 88 (Rev. 1/94) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

DISTRICT OF Connecticut

Marvin Kay,

Plaintiff,

V.

Wal-Mart, Inc., & Dr. Anthony Gordon,

Defendants.

**SUBPOENA IN A CIVIL CASE**

CASE NUMBER: 3:03CV144(RNC)

TO: Kristi Mackin, Esq.
Brown Raysman, et al
CityPlace II, 10th Floor, 185 Asylum Street
Hartford, CT 06103

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

The personnel files, as well as any and all records of investigations and discipline that are not included in the personnel files, for the following employees, Dale Ceneviva, Jerry Ellis, Phyllis Parmenter, Dave Peterson and Janilu Zboray, and Jeffrey Kroll.

| PLACE | DATE AND TIME |
|---|---|
| Durant, Nichols, Houston, Hodgson & Cortese-Costa, PC 1057 Broad Street, Bridgeport, CT 06604 | March 5, 2004 11:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* Attorneys for Plaintiff | 2/27/04 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Pamela J. Coyne, Esq., Durant, Nichols, Houston, Hodgson & Cortese-Costa, PC, 1057 Broad Street, Bridgeport, CT 06604  203-386-3438

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

200 @

## Exhibit B

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

------------------------------------------------------- X

MARVIN KEY,                           :

                                      :        CIVIL ACTION NO.:
                        Plaintiff,    :        3:03CV144(RNC)

                                      :

            v.                        :

                                      :

WAL-MART, INC. AND DR. ANTHONY        :
GORDON,                               :

                                      :

                        Defendants.   :        MARCH 8, 2004
------------------------------------------------------- X

## AFFIDAVIT OF KRISTI E. MACKIN

1.    I am over the age of eighteen (18) and I understand and believe in the obligations of an
      oath.

2.    I am one of the attorneys for Wal-Mart Stores, Inc. ("Wal-Mart") in the above
      captioned action.

3.    I submit this affidavit in support of Wal-Mart's Motion for Protective Order of the
      Personnel File of Dale Ceneviva.  The accompanying Memorandum of Law (the
      "Memorandum") is submitted as well.

4.    On December 17, 2003, plaintiff issued his Third Set of Interrogatories and Requests
      for Production, requesting, inter alia, the personnel files of six current or former Vision
      Center employees, David Peterson (non-exempt, certified optician), Phyllis Parmenter
      (non-exempt, certified optician), Jeff Krol (non-exempt, certified optician), Jenilu
      Zboray (non-exempt, intern), Jerry Ellis (exempt, Vision Center Manager) and Dale
      Ceneviva (exempt, Vision Center Manager).  A copy of the discovery requests is

1

attached hereto as Exhibit 1.  See Request for Production No. 3.  Wal-Mart objected to

the plaintiff's request for these files based on relevancy, and because Conn. Gen. Stat.

31-128f prohibited disclosure of these files absent certain conditions Wal-Mart did not

believe were met in this case.

5.    On February 24, 2004, Wal-Mart received a letter from plaintiff's counsel requesting

that the parties come to an agreement with regard to Wal-Mart's objection regarding

the personnel files.  A copy of this letter is attached hereto as Exhibit 2.

6.    This letter explained that plaintiff was seeking the production of the personnel records

on the grounds that the six individuals "were employed as opticians or optician

apprentices by Wal-Mart, and according to Wal-Mart's previous discovery responses

were the subject of customer complaints and/or various forms of discipline, but not

discharged as Plaintiff was."  (Exhibit 2).

7.    The letter indicated that Wal-Mart must respond by March 1, 2004, which plaintiff

represented as his deadline to file a Motion to Compel with regard to his third set of

discovery.  (Exhibit 2).  The letter also agreed to narrow the request to personnel

information concerning relevant reviews, customer comments or complaints,

disciplines, and any documents regarding licensing issues.  (Exhibit 2).

8.    On February 25, 2004, I spoke with plaintiff's counsel, Pamela Coyne, to determine

whether an agreement could be reached with regard to the production of the files.  A

primary concern, however, was the timeline of plaintiff's request.  The plaintiff's

March 1, 2004 deadline left three and a half (3 ½) working days for Wal-Mart to

respond and/or produce the files.  This did not provide sufficient time to review the

plaintiff's request, obtain the files that were not in my possession, and meaningfully

discuss the matter with Wal-Mart. Thus, I suggested that plaintiff move to extend his time to file a Motion to Compel until March 8, 2004 to give Wal-Mart one week to review plaintiff's request. Plaintiff agreed.

9.      During this conversation, Attorney Coyne and I addressed the issue of whether or not Wal-Mart could produce the files absent a court order or valid subpoena. Although the parties took different positions regarding the meaning of Conn. Gen. Stat. §§ 128f, the parties agreed that once Wal-Mart was able to discuss the matter internally and hopefully come to an agreement with plaintiff, plaintiff would then subpoena the agreed upon files so Wal-Mart would be compliant with the statute.

10.     On February 27, 2004 plaintiff served upon Wal-Mart a subpoena demanding that it produce "[t]he personnel files, as well as any and all records of investigations and discipline that are not included in the personnel files, for the following employees, Dale Ceneviva, Jerry Ellis, Phyllis Parmenter, Dave Peterson and Jenilu Zboray, and [sic] Jeffrey Kroll" by March 5, 2004. The subpoena is attached to Wal-Mart's Memorandum as Exhibit A. Although I realized plaintiff's counsel would be serving a subpoena at a later date, the subpoena surprised me because it did not reflect the parties' agreement to narrow the discovery requests. Also, we had agreed that plaintiff would allow Wal-Mart additional time to review the matter, and then would subpoena the personnel file material that Wal-Mart agreed to produce in order to make sure Wal-Mart was complying with the mandates of Conn. Gen. Stat. 31-128f.

11.     On March 3, 2004, I spoke with Attorney Coyne about the subpoena and production of the personnel files. Attorney Coyne agreed that she would narrow the scope of the subpoena to the documents she had described in the February 24, 2004 letter.

12. During this conversation, I agreed that Wal-Mart would produce for purposes of discovery, the agreed upon portions of the personnel files of Peterson, Parmenter, Krol, Ellis and Zboray.[1]

13. With regard to Ceneviva's personnel file, however, there was no clear showing or logic as to why plaintiff deemed her to be a relevant comparator. Wal-Mart therefore asked plaintiff's counsel to articulate plaintiff's exact reasoning behind the request for Ceneviva's file.

14. During the March 3 phone conversation, plaintiff's counsel maintained that Ceneviva's personnel records were necessary because she was similarly situated to plaintiff as a an optician in one of Wal-Mart's Vision Centers, and because she is a Caucasian individual who had customer complaints but had not been terminated. Plaintiff's counsel, however, agreed to revisit the matter.

15. On March 4, 2004, plaintiff's counsel and I discussed the Ceneviva's personnel records again. Plaintiff decided to continue his pursuit of Ceneviva's file. This time, however, plaintiff's counsel claimed plaintiff needed Ceneviva's file because plaintiff believes Ceneviva was terminated, and that at some point she allegedly complained about the legality of opticians performing certain duties at Wal-Mart's Vision Centers. Plaintiff's counsel also claimed that the same decision makers involved in plaintiff's termination were also involved in Ceneviva's. Plaintiff's counsel admitted that there was no

---

[1] Since receiving plaintiff's February 24, 2004 letter, Wal-Mart has sought to locate the personnel files of Ellis and Ceneviva. To date, the complete files of these individuals have not been located. Wal-Mart is able to recreate the time and amount of their wage increases through Wal-Mart's human resources software, People Soft. Wal-Mart was also able to locate a recent performance review of Ellis. Thus, wage increase records may be all Wal-Mart is able to provide if Ceneviva's personnel file is compelled. I informed plaintiff's counsel of Wal-Mart's current inability to locate these records on March 3, 2004 (Ellis) and March 4, 2004 (Ceneviva). The other files requested by plaintiff were located. Also, I been informed by Wal-Mart that Ceneviva's employment was recently terminated.

4

evidence to this effect on the record, but that this situation made Ceneviva comparable to plaintiff.

16. For the reasons discussed at length in Wal-Mart's Memorandum, we disagreed with plaintiff's view.

17. Plaintiff was deposed in connection with his claims in this action on July 24, 2003 and again on August 13, 2003. A true and correct copy of the relevant portions of plaintiff's testimony as it relates to the issues of this Motion for Protective Order is attached hereto as Exhibit 3.

18. On October 14, 2003 and again on February 6, 2004, Roger Noll, the Manager of the North Windham Store, also gave testimony in connection with this matter. A true and correct copy of the relevant portions of Mr. Noll's testimony as it relates to the issues of this Motion for Protective Order is attached hereto as Exhibit 4.

19. In conjunction with Wal-Mart's December 5, 2003 Motion for Summary Judgment, Wal-Mart filed a Declaration of Roger Noll. A true and correct copy of the Declaration is attached hereto as Exhibit 5.

20. In conjunction with Wal-Mart's December 5, 2003 Motion for Summary Judgment, Wal-Mart also filed a Declaration of Christopher Adkins, the District Manager overseeing, among other stores, Wal-Mart's the North Windham Vision Center. A copy of this Declaration is attached hereto as Exhibit 6.

WHEREFORE, your deponent respectfully requests that the Court issue the protective relief

sought.

_____
Kristi E. Mackin

Signed and sworn to before me
this 8th day of March 2003.

Notary Public/ MARY W BONNER
~~Commissioner of Superior Court~~

MARY L. BONNER
*NOTARY PUBLIC*
MY COMMISSION EXPIRES JAN. 31, 2006

6

**EXHIBIT 1**

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARVIN KEY, | : | **CIVIL ACTION NO.** |
| | : | **3:03CV144 (RNC)** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WAL-MART, INC. AND | : | |
| DR. ANTHONY GORDON, | : | |
| | : | |
| Defendants. | : | **DECEMBER 17, 2003** |

## PLAINTIFF'S THIRD SET OF INTERROGATORIES
## AND THIRD REQUEST FOR PRODUCTION OF DOCUMENTS
## DIRECTED TO WAL-MART STORES, INC.

Plaintiff, Marvin Key, by and through undersigned counsel and pursuant to Rules 33 and

34 of the Federal Rules of Civil Procedure, *et seq.*, hereby requests that Defendant, Wal-Mart, Inc.,

answer the following interrogatories under oath and produce legible copies of all requested

documents in the Defendant's possession, custody, or control for inspection and/or copying at the

office of the undersigned counsel, or at such other time and place as may be mutually agreed upon

by counsel for the purposes of inspection and copying by the Plaintiff.

### DEFINITIONS AND INSTRUCTIONS

A.      Sufficient blank space for inserting a typed response has been provided following each Interrogatory and Production Request. If the space provided should prove insufficient for your entire answer, please retype the Interrogatory or Production Request and provide the entire answer on a separate sheet of paper.

B.      With respect to each Interrogatory and Production Request, in addition to supplying the information requested by identifying the specific document referred to, please identify all documents which you consulted or to which you referred in preparation of your answer.

C.    In lieu of identifying any document in the manner hereinafter prescribed, you may attach the document and all non-identical copies thereof to your answers, and make them available for inspection and copying at the time and place to be agreed upon among counsel for the parties. If this procedure is followed, however, each Interrogatory and Production Request or portion thereof to which the document is intended to respond should be specified in the case of each such document.

D.    Unless otherwise indicated, each Interrogatory and Production Request is not restricted to a particular time period. If the answer to any Interrogatory or Production Request is different for different time periods, please so indicate and answer separately for each such time period.

E.    If any document identified in an answer to an Interrogatory or Production Request was in your possession or subject to your custody or control, but is no longer, or it was known by you to exist, but is no longer in existence, please state what disposition was made of it and its present location, if known.

F.    For the purpose of these Interrogatories, the following definitions shall apply:

1.    "Defendant" means Wal-Mart Stores, Inc. and all persons acting or purporting to act on its behalf whether collectively or individually.

2.    The terms "documents," "record" and the like mean any kind of written, printed, typed, recorded or graphic material however produced or reproduced of any kind or description, including originals, all copies, and all drafts. These terms include, by way of illustration, but are not limited to, the following items, whether printed, recorded, stored or reproduced by any electronic or mechanical process, or written or produced by hand: Agreements, communications, state and federal governmental hearings and reports, correspondence, telegrams, studies, notices, reports, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, graphs, reports, notebooks, charts, plans, drawings, sketches, maps, books, pamphlets, newspaper and periodical articles and clippings, accounting records, invoices, canceled checks, receipts, forms, minutes, computer printouts, microfilm, microfiche, tape recordings, summaries of records or meetings or conferences, summaries or reports of consultants, photographs, motion picture films, brochures, advertisements, circulars, press releases, drafts, letters, any marginal comments appearing in any document and    other pertinent

information stored in any information storage or retrieval system, whether mechanical, magnetic, electronic, or otherwise, and all other writings.

3.    "Identify," when used with respect to a document, means:

    a.    To specify the nature of the document (e.g., letter, memorandum, etc.);

    b.    to state the date appearing on the document or, if no date appears, the date on which the document was prepared;

    c.    to state the date on which the document was transmitted to each recipient;

    d.    to state the number of pages of the document;

    e.    to give a brief description of the contents of a document;

    f.    to identify each person who wrote, signed, dictated, submitted, reviewed, approved, or otherwise participated in the preparation of the document;

    g.    to identify each person who received the document or was an addressee thereof and each person who received a copy of a document;

    h.    if the document now exists, to give its location and to identify each person who has custody of it;

    i.    if the document does not now exist to state the disposition that was made of it including the date, time, place and method of such disposition, and to identify the person who disposed of it;

    j.    to identify separately each attachment to the document in the manner provided in this instruction.

4.    "Identify," when used with respect to a person, means to state the person's name, home and business address, home and business telephone numbers, title and dates of employment or contractual relationship with Wal-Mart.

5.    The singular shall include the plural and the plural shall include the singular.

6.    A masculine, feminine or neuter pronoun shall not exclude the others.

## INTERROGATORIES

1.    Identify each individual who assisted with Defendant's response to these Interrogatories and Requests for Production, by name, title, address and telephone number, indicating which Interrogatories and/or Requests for Production each individual assisted with.

ANSWER:

2.    Describe the investigations, if any, conducted by Wal-Mart into allegations of poor customer service and/or misconduct, including violations of Wal-Mart's rules, policies and/or procedures, as well as any and all disciplinary action taken against, the following employees:

      a.    Dale Ceneviva;

      b.    Jerry Ellis;

      c.    Jeffrey Kroll;

      d.    Phyllis Parmenter;

      e.    Dave Peterson; and

      f.    Jenilu Zboray.

ANSWER:

3.      Identify any and all Wal-Mart Connecticut vision center employees who expressed concern, inquired or complained about performing vision screenings and/or pre-testing and the date(s) upon which they did so.  Please describe any and all subsequent disciplinary action taken against the employee, including discharge and state the reason for such disciplinary action.

ANSWER:

4.      Identify any and all resident optometrists and/or independent contractors performing services in Wal-Mart's Connecticut vision center stores who expressed concern, inquired or complained about Wal-Mart employees performing vision screenings and/or pre-testing.

ANSWER:

5.      Identify and describe any and all steps taken by Wal-Mart to ensure that its use of Connecticut vision center employees to perform vision screenings and pre-testing complied with state law in Connecticut, including state licensing requirements.

ANSWER:

6.      Identify and explain when Chris Adkins and Mike Zimmerman first learned of any consideration being given to the discharge of Plaintiff, the reason(s) given to Mr. Adkins and Mr. Zimmerman for such consideration, how they were notified and by whom, and their responses.

ANSWER:

7.      State when Chris Adkins and Mike Zimmerman first learned of Plaintiff's discharge, how they were notified and by whom, and the reason(s) given at that time.

ANSWER:

## **REQUESTS FOR PRODUCTION**

1.      Any and all documents referred to in responding to Defendant's Third Set of Interrogatories.

- 6 -

2.      The personnel files, as well as any and all records of investigations and discipline that are not included in the personnel files, for the following employees:

      a.      Dale Ceneviva;

      b.      Jerry Ellis;

      c.      Jeffrey Kroll;

      d.      Phyllis Parmenter;

      e.      Dave Peterson; and

      f.      Jenilu Zboray.

3.      Any and all documents, which constitute, refer or relate to Wal-Mart vision center employees who expressed concern, inquired or complained about performing vision screenings and/or pre-testing identified and/or referred to in response to Interrogatory No. 3, *supra*.

4.      Any and all documents, which constitute, refer or relate to steps taken by Wal-Mart to ensure that its vision centers complied, and comply, with state law in Connecticut, including state licensing requirements.

5.     Any and all documents, which constitute, refer or relate to Defendant's response to Interrogatory No. 6.

Done at Bridgeport, Connecticut this 17th day of December, 2003.

_Pamela J. Coyne_
Pamela J. Coyne
DURANT, NICHOLS, HOUSTON,
HODGSON & CORTESE-COSTA, P.C.
1057 Broad Street
Bridgeport, CT  06604
(203)366-3438
Federal Bar No. ct22941
ATTORNEYS FOR PLAINTIFF

## **CERTIFICATION**

This is to certify that I have caused to be served the foregoing via U.S. Mail, certified

mail, return receipt requested, this 17th day of December, 2003 to all counsel and *pro se* parties

as follows:

      Gregory Reilly, Esq.
      Brown Raysman Millstein Felder & Steiner
      900 Third Avenue
      New York, NY  10022

*Pamela J. Coyne*

P:\lit\pjc\523818\001\00037427.DOC

**EXHIBIT 2**

# DURANT, NICHOLS, HOUSTON,
# HODGSON & CORTESE-COSTA, P.C.

ATTORNEYS AT LAW

Loraine M. Cortese-Costa**
Natale V. Di Natale**
E. Terry Durant*
Lisa Grasso Egan
Christopher M. Hodgson
Donald F. Houston
David J. Kelly**
Pamela J. Coyne
Peter Dagostine

Also admitted in Virginia*
Also admitted in New York**

1057 Broad Street
Bridgeport, Connecticut 06604-4219
Tel. (203) 366-3438    Fax (203) 384-0317
www.durantnic.com

Of Counsel
George N. Nichols

Paralegals
Clara Cuneo Koczi
Megan L. Krom

February 24, 2004

*Via Facsimile/U.S. Mail*
212-895-2900

Joel Finger, Esq.
Brown Raysman Millstein Felder & Steiner LLP
900 Third Avenue
New York, NY 10022

  Re: Key v. Wal-Mart, Inc., et al.
     Civil Action No.: 3:03CV144(RNC)

Dear Attorney Finger:

  This letter is in response to Wal-Mart's objections and responses to Plaintiff's Third Set of Interrogatories and Third Request for Production of Documents, and specifically Wal-Mart's objection to Request for Production No. 2. As Attorney Reilly may have informed you, Plaintiff has informally requested (in at least one telephone conversation with Attorney Reilly, and in person on February 10, 2004), and is now formally requesting reconsideration of Wal-Mart's objections to his request for "personnel files, as well as any and all records of investigations and discipline" for several employees, based on Conn. Gen. Stat. § 31-128f and relevancy.

  First of all, Wal-Mart's objection based on Connecticut's Personnel Files Act, stating that it is prohibited from disclosing such files without the subjects' consent misses the several exceptions cited within the statute, and specifically the exception for defending "personnel-related complaints against the employer." Conn. Gen. Stat. § 31-128f(2). This exception is directly on-point herein. As I am sure you know, there is a wealth of precedent supporting disclosure of personnel files particularly where, as here, the parties have a protective order in place.

  As to Wal-Mart's objection based on relevancy, the request is patently relevant to both Plaintiffs' claim of discrimination and wrongful discharge, each of which may be supported by a showing of differential treatment. Each of the employees named in Plaintiff's Request for Production No. 2: (a) Dale Ceneviva, (b) Jerry Ellis, (c) Jeffrey Kroll, (d) Phyllis Parmenter, (e) Dave Peterson; and (f) Jenilu Zboray, were employed as opticians or optician apprentices by Wal-Mart, and according to Wal-Mart's previous discovery responses were the subject of

Joel Finger, Esq.
February 24, 2004
Page 2

customer complaints and/or various forms of discipline, but not discharged as Plaintiff was. The personnel files of these individuals would likely indicate whether they were treated more favorably than Plaintiff under comparable circumstances and/or other information subject to discovery.

Notwithstanding the foregoing, and in order to resolve this dispute without court intervention, Plaintiff will agree to limit his request to all records (1) related to performance evaluations, including the actual evaluations and all notes and/or documents related to performance; (2) related to discipline, including all formal documentation and all notes and/or documents related to any and all forms of disciplinary action, including notes of verbal coachings and/or informal discussions of any kind; (3) all records related to customer comments, positive and negative, whether formal letters or informal notes or memoranda; and (4) all records related to licensing issues, including actual copies of licenses, and/or informal notes or documents regarding licensing issues.

Because Plaintiff must file a motion to compel related to this request by Monday, March 1, 2004, your prompt response would be appreciated. Thank you for your consideration.

Very truly yours,

Pamela J. Coyne

P:\General\pjc\52381\8\001\00038532.DOC

# **EXHIBIT 3**

Key vs. Wal-Mart

Marvin Key

Page 20

1      A.    Okay.

2      Q.    Mr. Key, is this the letter you

3   were just referring to in your testimony that

4   you said you had reviewed this morning?

5      A.    Yeah.

6      Q.    Okay.  Now, the question for you

7   is:  To your knowledge, what did -- what role

8   did Dr. Gordon have in Wal-Mart's decision to

9   terminate your employment?

10     A.    I don't know.

11     Q.    Do you know if Dr. Gordon made the

12  decision to terminate your employment?

13     A.    Well, Dr. Gordon made the decision

14  to bring this to the manager's attention.

15     Q.    And when you say "this," are you

16  referring to the complaint referenced in Key

17  Exhibit 10?

18     A.    That's what it says.

19     Q.    Do you know who made the decision

20  to terminate your employment?

21     A.    I haven't known all the

22  decision-makers.

23     Q.    My question is:  Do you know who

24  made the decision to terminate your

25  employment?

3ab7dac2-d82e-4441-92c0-7d411

Key vs. Wal-Mart

Page 21

```
 1        A.    No.
 2        Q.    Do you know if Dr. Gordon even
 3   spoke with the person who made the decision
 4   to terminate your employment concerning
 5   whether you should be terminated or not?
 6        A.    Well, he brought this to the
 7   managers, and I guess some manager -- I'm not
 8   sure who the decision-makers was, but he had
 9   to talk to somebody, because he delivered
10   this.
11        Q.    Understood.  Mr. Key.  Please
12   listen to what I'm asking, okay?
13             What I'm asking is simply this:  Do
14   you know -- and I'm going to rephrase it a
15   different way.  Hopefully, it will be more
16   straightforward.
17             Do you know if Dr. Gordon had any
18   influence whatsoever on Wal-Mart's decision
19   to terminate your employment?
20        A.    I wasn't there.  I don't know.
21        Q.    Okay.  Now, earlier this morning,
22   you said that Dr. Gordon -- strike that.
23             Before you came into the deposition
24   today, did you have the opportunity to read
25   the transcript from your previous day of
```

00045

1  something, close names.  He was just reading.  He

2  was like -- he wasn't -- it seemed to me he didn't

3  know what was going on or it seemed like it -- I

4  don't know.

5      Q    Okay.  Anything else that you recall that

6  you haven't testified about regarding your

7  discussions with Mr. Smith?

8      A    I can't -- I don't remember right now.

9      Q    You also said you spoke with Dale

10  Ceneviva?

11     A    Yes.

12     Q    Okay.  When was the last time you spoke to

13  Miss Ceneviva?

14     A    Dale?  Oh, maybe about -- maybe about

15  three weeks ago, approximately.

16     Q    And Miss Ceneviva, you described her

17  earlier as a store manager?

18     A    Yes, just like you --

19     Q    For what store?

20     A    Bristol.

21     Q    And how do you know Miss Ceneviva?

22     A    I used to work with her.

23     Q    Where?

24     A    Sunglass Hut.

25     Q    And when you say store manager, is she the

8/13/2003                                                           Marvin Key

Page 63

1    perceive you weren't licensed to perform in

2    the Vision Center?

3        A.   I didn't think it was proper for me

4    to make medical record entries.

5        Q.   And when you say "medical record

6    entries," what are you referring to?

7        A.   Well, the customer's files --

8    optometry files.

9        Q.   Okay.  Let's go back a little bit.

10           By the way, anything else other

11   than the medical records entries now?

12       A.   I can't recall right now.

13       Q.   Okay.

14       A.   Oh, I told you about depth

15   perception, right, that means stereo --

16   stereopsis, I think.

17       Q.   Okay.  Here is what I would ask:

18   With respect to these four tests -- the

19   Glaucoma, visual fields, color

20   discrimination, depth perception -- isn't it

21   the case you were asked to record the results

22   of the patient's tests?

23       A.   Yeah, I think so.

24       Q.   Okay.  And who asked you to do that?

25       A.   I guess -- I'm trying to remember.

3ab7dac2-d82e-4441-92c0-7d411fd8c91a

Key vs. Wal-Mart

8/13/2003                                                                                    Marvin Key

Page 64

1       Q.    Isn't it true Mr. Ellis asked you

2    to do this?

3       A.    Well, the doctor wanted it done.

4       Q.    Who asked you to perform these

5    tests?

6       A.    Well, I remember I was in the room

7    with the doctor one time, and he was telling

8    me how to do it.

9       Q.    Let me go backwards a little bit.

10          Who was your supervisor in the

11    Vision Center?

12       A.    Jerry Ellis.

13       Q.    And as your supervisor, wasn't he

14    responsible for directing your work

15    activities?

16       A.    Basically.

17       Q.    Okay.  Now, after you conducted the

18    tests, isn't it the case that you recorded

19    the results of the tests?

20       A.    Should have, yeah.

21       Q.    Isn't it also the case that you

22    were not responsible for interpreting the

23    results of the tests?

24       A.    We would have to -- what do you

25    mean by "interpret"?

3ab7dac2-d82e-4441-92c0-7d411fd8c91a

**EXHIBIT 4**

1    related testing being performed within the North

2    Windham store?

3        A.    Yes.

4        Q.    Are you aware of customers receiving free

5    screenings for vision?

6        A.    Yes.

7        Q.    And where have those been conducted?

8        A.    I assume in the Vision Center.

9        Q.    Was there ever a time at the North

10   Windham store, when they were being conducted at

11   the entrance to the store?

12       A.    I don't know.

13       Q.    And were you involved in any way with the

14   termination of Marvin Key's employment from the

15   North Windham store?

16       A.    Yes, I was.

17       Q.    And what was your involvement with that?

18       A.    I made the final decision.

19       Q.    How was it brought to your attention that

20   there was an issue involving Mr. Key that required

21   you to make a decision as to his termination?

22       A.    Edgar Morales came to me with the

23   complaint.

24       Q.    And what kind of complaint was that?

25       A.    That a customer was upset in the Vision

October 14, 2003

Page 20

1    Center, in the way they were treated.

2          Q.    And what did Mr. Morales say to you when

3    he came to you with that complaint?

4          A.    He was upset that Marvin had not given

5    good customer service, and wanted to terminate him.

6          Q.    I'm sorry?

7          A.    And wanted to terminate him.

8          Q.    Did he say anything else?

9          A.    I don't remember.  Exact details.

10          Q.    Did you say anything in response?

11          A.    I don't recall exactly what I said.

12          Q.    Is there anything that would help you to

13    recall that?

14          A.    I --

15          Q.    Did you take any notes of anything

16    involving Mr. Key?

17          A.    No.

18          Q.    Is there anything else that might help

19    you recall that?

20          A.    Possibly.

21          Q.    And what might that be?

22          A.    I don't know.

23          Q.    So after Mr. Morales brought you the

24    complaint, did you take any action?

25          A.    We discussed his termination.

**EXHIBIT 5**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                      :
MARVIN KEY,                           :
                                      :
                    Plaintiff,        :    CIVIL ACTION NO.:
                                      :    3:03CV144(RNC)
                                      :
         v.                           :
                                      :    NOVEMBER 20, 2003
WAL-MART, INC. and DR. ANTHONY        :
GORDON,                               :
                                      :
                    Defendants.       :
                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
```

## DECLARATION OF ROGER NOLL

I, Roger Noll, deposes and says:

1.      I am the Store Manager at Defendant Wal-Mart, Inc.'s ("Wal-Mart") North Windham, Connecticut store.  I have been the North Windham store's manager since its opening in year 2000.  As the North Windham store's manager I am responsible for managing the entire store, including its employees.  I alone made the decision to terminate the employment of Plaintiff Marvin Key ("Plaintiff").  Defendant Dr. Gordon played no role in this process, and I did not consult with him concerning my decision.  I am fully familiar with the facts set forth herein.

2.      I understand that Plaintiff asserts in this case that he is the victim of race discrimination because he is an African-American.  During the time that Plaintiff worked at my store, there were no other legal complaints or administrative charges filed by any African-American employees alleging race discrimination.

3.    Likewise, I understand that Plaintiff claims he complained of an alleged abusive remark by Defendant Dr. Gordon shortly before his termination. Plaintiff never raised this issue with me prior to his termination, or during his exit interview. Likewise, I was not made aware of Dr. Gordon's alleged abusive remark (or Plaintiff's complaint about it) from any other source before I made the decision to termination Plaintiff's employment.

4.    I also understand that Plaintiff asserts that he was terminated in violation of public policy because Wal-Mart required him to perform duties that he alleges were beyond the scope of his Connecticut optician license. To my knowledge, Plaintiff never raised this issue prior to his termination, and he never refused to perform his job duties on this basis.

5.    Wal-Mart has a progressive discipline policy which it uses to handle employee discipline and performance issues. When necessary, Wal-Mart progressively disciplines its employees first through a verbal warning, followed by a written warning, followed by a "decision making day," followed by termination. The decision-making day is a day off with pay in which employees are asked to consider their commitment to Wal-Mart employment, and to prepare a plan of action for correcting their employment problems. If, after the decision-making day, an employee's problems persist, then the next and last step in the process is termination of employment.

6.    Plaintiff went through each of the above steps in the progressive disciplinary process prior to his termination. By the time Plaintiff reached the decision-making day, I was concerned enough about Plaintiff's conduct, including customer service problems, that I provided Plaintiff with a book to read on how to improve his customer relations.

7.    I understand Plaintiff lodged a complaint with the Connecticut Department of Health ("CTDOH") concerning opticians at the store being required to allegedly perform duties

outside the scope of their optician license.  To my knowledge, the CTDOH has taken no action

against Wal-Mart.

## VERIFICATION PURSUANT TO 28 U.S.C §1746

I declare on this 20th day of November, 2003, under the penalty of perjury that the

foregoing is true and correct.

_____
Roger Noll

**<u>EXHIBIT 6</u>**

## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
MARVIN KEY,                                             :
                                                        :    CIVIL ACTION NO.:
                        Plaintiff,                      :    3:03CV144(RNC)
                                                        :
            v.                                          :
                                                        :    DECEMBER 3, 2003
WAL-MART, INC. and DR. ANTHONY                          :
GORDON,                                                 :
                                                        :
                        Defendants.                     :
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

## DECLARATION OF CHRISTOPHER ADKINS

I, Christopher Adkins, deposes and says:

1.  I am a Vision Manager for Wal-Mart in Virginia. Prior to my transfer to Virginia, I was a District Manager for Wal-Mart Vision in Connecticut responsible, among other things, for overseeing Vision Center operations at Wal-Mart's North Windham store (the "Store") where Plaintiff Marvin Key ("Plaintiff") was employed as an optician. I was the District Manager at the time of Plaintiff's termination from the Store. I am fully familiar with the facts set forth herein.

2.  During the course of my duties, I spoke with Plaintiff on several occasions.

3.  I understand that Plaintiff asserts in this case that he is the victim of race discrimination because he is an African-American. During Plaintiff's employment with Wal-Mart, Plaintiff never once complained to me of alleged race discrimination.

4.  Likewise, I understand that Plaintiff asserts that he was terminated in violation of public policy because Wal-Mart required him to perform duties he alleges were beyond the scope

of his Connecticut optician license. During Plaintiff's tenure at the North Windham store Plaintiff never raised such an allegation with me (or anyone else as far as I know), and he certainly never refused to perform his assigned job duties on this basis.

5.    I do know, however, that one of Plaintiff's co-workers, Optician Jeff Kroll ("Kroll") had earlier raised the issue of whether Wal Mart's opticians could perform pre-tests and vision screenings. Kroll had raised the issue in early 2001 prior to Plaintiff's termination. I response, I investigated the issue by contacting the Connecticut Department of Health ("CTDOH"). CTDOH representatives advised me that Wal Mart could have its opticians (and optician trainees) perform both pre-tests and vision screenings.

6.    I also was advised by the CTDOH representatives that the only restriction was that an optometrist, such as Dr. Gordon, had to be available in the Vision Center to instruct and supervise the pre-testing as necessary. I cannot recall the names of all the CTDOH personnel I spoke with.

## VERIFICATION PURSUANT TO 28 U.S.C §1746

I declare on this 3rd day of December, 2003, under the penalty of perjury that the foregoing is true and correct.

Christopher Adkins
Christopher Adkins

# Exhibit C

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------- X

MARVIN KEY,                          :
                                     :         CIVIL ACTION NO.:
                    Plaintiff,       :         3:03CV144(RNC)
                                     :
         v.                          :
                                     :
WAL-MART, INC. AND DR. ANTHONY       :
GORDON,                              :
                                     :
                    Defendants.      :         MARCH 5, 2004
------------------------------------------------------- X

## AFFIDAVIT OF ROGER PHILIP NOLL

1. I, Roger Philip Noll, am over the age of eighteen (18) and understand the obligations of an oath.

2. I am the Store Manager of the Windham, Connecticut Wal-Mart, and have worked in this capacity for ten (10) years. I have worked with Wal-Mart Stores, Inc. for over eighteen (18) years.

3. I have personal knowledge of the matters attested to herein.

4. As I testified in my deposition of October 14, 2003, I made the final decision to terminate the employment of Marvin Key. At the time I made the decision to termination Mr. Key's employment, I was not aware of any alleged complaints made by him regarding Wal-Mart's Vision Center and/or the legality of the duties assigned to or performed by opticians.

5. I do not know who Dale Ceneviva is. I do not recall having ever met him or her. He or she is not an employee under my chain of command and, to my knowledge, has never been. If he or she works for Wal-Mart, I do not know where.

6. As the Store Manager of the North Windham Store, I would not participate in, or even be privy to, terminations of employees in other stores. Under normal circumstances, I would not have any decision-making authority over employees of other stores.

7. I did not make participate in or render any decisions regarding Dale Ceneviva's employment.

_____
Roger Philip Noll

Signed and sworn to before me
this 5th day of March 2003.

_____
Notary Public/
Commissioner of Superior Court

**CHRISTINE LATAILLE-SANTIAGO**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES FEB. 28, 2009

HARTFORD 83589v1