FILED

2004 APR 12  A 10: 13

U.S. DISTRICT COURT
HARTFORD, CT.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARVIN KEY, | : |
|     Plaintiff, | : CIVIL ACTION NO. |
| | : 3:03CV144 (RNC) |
| v. | : |
| | : |
| WAL-MART AND DR. GORDON, | : |
| | : |
|     Defendants. | : APRIL 8, 2004 |

### MEMORANDUM OF LAW IN OPPOSITION
### TO DEFENDANT'S MOTION TO PRECLUDE AND/OR TO STRIKE

Plaintiff hereby submits this Memorandum of Law in Opposition to Defendants' Motion to Preclude and/or to Strike[1] certain affidavits submitted by Plaintiff in support of his Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and in Reply to Defendants' Opposition to Plaintiff's Motion for Summary Judgment.

**I.   BACKGROUND**

Plaintiff filed his Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and in Reply to Defendants' Opposition to Plaintiff's Motion for Summary Judgment[2] on March 15, 2004. Plaintiff attached three affidavits to his memorandum, including an affidavit by David M. Fabricant and an affidavit by Pamela J. Coyne. Following receipt of Plaintiff's memorandum, Defendants demanded that Plaintiff revoke these two affidavits in

---

[1] hereinafter "Def. mem."
[2] hereinafter "Plaintiff mem."

conjunction with threat of disciplinary proceedings and sanctions against Attorneys Fabricant, Coyne and the firm of Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. Defendants also demanded production of various documents and the opportunity to depose Attorney Coyne. Defendants sent their "demand" to Plaintiff's counsel via facsimile on March 29, 2004 at 1:46 p.m. and further demanded a response by 3:00 p.m. the following day. (*See* Letter from Kristi E. Mackin dated March 29, 2004 attached hereto as Exhibit A.) Plaintiff's counsel responded to Defendants' demands on March 31, 2004, by advising Attorney Mackin that the memorandum of law would not be revised, and that no documents would be produced. (*See* Letter from Loraine M. Cortese-Costa dated March 31, 2004, attached hereto as Exhibit B.) Thereafter, Defendants filed the instant Motion to Preclude and/or Strike.

## II. ARGUMENT

### A. David M. Fabricant's Affidavit Is Appropriately Included With Plaintiff's Memorandum Of Law

Contrary to Defendants' threats and unfounded allegations of impropriety, Plaintiff's inclusion of David M. Fabricant's Affidavit in support of his memorandum was appropriate, and the contents thereof are admissible at trial.

#### 1. Plaintiff's Disclosure Of David M. Fabricant As A Witness Was Timely

Defendants' claims that they are prejudiced by Plaintiff's disclosure of Attorney Fabricant as potential fact witness on March 9, 2004 are unfounded. Defendants have known of Attorney Fabricant's involvement with this matter since June 19, 2001. (*See* Plaintiff's Disclosures, Nos.

10, 29, 34-38, attached hereto as Exhibit C.)  Further, Plaintiff referred to Attorney Fabricant several times in his Memorandum of Law in Support of Motion to Compel Discovery and For Related Relief on August 22, 2003.  (*See* Exhibit D)  Finally, despite Attorney Mackin's accusations of wrongdoing, the fact is that the subject of Jeffrey Krol's meeting with Attorney Fabricant and the connection to the instant matter came to light because of Defendants' assertions regarding Mr. Krol in their Motion for Summary Judgment.  (*See* Letter from David M. Fabricant dated February 9, 2004, attached hereto as Exhibit E.)  Plaintiff's prompt disclosure on March 9, 2004 of Attorney Fabricant and the notes of his meeting with Mr. Krol was appropriate under any standard.

**2.     Defendants Have No Basis For Asserting The Attorney-Client Privilege In Connection With Attorney Fabricant's Notes**

Similar to Defendants' unfounded allegations regarding timeliness, the attempt to assert the attorney-client privilege on Mr. Krol's behalf lacks a basis in fact and in law.  First of all, it is clear from the content of Attorney Fabricant's notes that Mr. Krol was not seeking legal advice in connection with his discussion of Plaintiff and comments made by Plaintiff's supervisor.  Secondly, Wal-Mart lacks standing to assert the privilege on Mr. Krol's behalf.

The attorney-client privilege is narrowly construed.  Because "the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose."  *Shew v. Freedom of Information Comm'n*, 245 Conn. 149, 157 (1998).  Exceptions will be made "when the reason for disclosure outweighs the potential chilling of

essential communications." *Id.*, at 36. Importantly, the only portion of the Attorney Fabricant's notes relied on by Plaintiff in his memorandum was the racist remark by his immediate supervisor. (*See* Pl. mem., p. 28.) Defendants mistakenly claim that all communications between a client (or potential client) are privileged, which is clearly not the case. *See Maine v. United States Dep't of the Interior*, 298 F.3d 60, 71-72 (1st Cir. 2002). The attorney-client privilege will attach only where it is clearly established that the client intended the communication to be kept in confidence. *See id.* It is inconceivable how one could construe Mr. Krol's disclosure of facts regarding Mr. Key and Mr. Ellis' racist remark to be even remotely connected to his seeking legal advice or that he expected the facts to be held in confidence. Further, although not clear from the face of the affidavit, it is abundantly clear from the notes that Mr. Krol did confer with Attorney Fabricant, both as a potential client and as a potential witness for Mr. Key, and fully expected that his statements regarding Plaintiff would be disclosed.

Notwithstanding the foregoing, even if Mr. Krol's entire discussion with Attorney Fabricant was for the purpose of seeking legal advice and protected by the attorney-client privilege, which it clearly was not, Wal-Mart lacks standing to assert the privilege. *See Doyle v. Reeves*, 112 Conn. 521, 525, 152 A. 882 (1931) (stating that the attorney-client privilege is designed for the protection of the client, not those who may become party to a suit following his death). *See also Tunick v. Day, Berry & Howard*, 40 Conn. Supp. 216, 219, 486 A.2d 1147

(1984) (stating "[t]he burden of proving facts essential to the privilege is on the person asserting it").

### 3. Attorney Fabricant's Notes Are Properly Considered For Purposes Of Summary Judgment And Are Admissible At Trial

As stated in Plaintiff's memorandum, Mr. Ellis' racist remark is admissible evidence as an admission and because he made the statement as a Wal-Mart manager acting within the scope of his duties.[3] Fed. R. Evid. 801(d)(2)(D). *See Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 313 (2d Cir. 1997). Attorney Fabricant's notes are admissible under the residual exception to the hearsay rule, because they bear the required "guarantees of trustworthiness," and are clearly offered as evidence of a material fact, i.e., Wal-Mart's discriminatory motive for terminating Plaintiff's employment. Fed. R. Evid. 807. Further, because Mr. Krol is deceased, this is the only source available to Plaintiff, and the nature of the statements speaks for itself -- the interests of justice will be served by admitting the statement. *Id.*

Defendants' baseless allegations of Mr. Krol's misrepresentations to Attorney Fabricant and Attorney Fabricant's inability to take accurate notes, in support of their claim that Attorney Fabricant's affidavit is inadmissible hearsay, is misplaced and irrelevant. (*See* Def. mem., pp. 12-13.) It is without question that "the nonmoving party [need not] produce evidence in a form

---

[3] Attorney Mackin's assertion that Attorney Coyne's conversations with Dale Ceneviva were with a "party," because she "like Ellis, is a Vision Store Manager," once again misstates the record. (*See* Def. mem., p. 12 n.12.) As Wal-Mart well knows, Ms. Ceneviva is an hourly associate and is not a party. (*See id.*; Coyne aff., ¶ 9, attached to Def. mem., as Exhibit 2.)

5

that would be admissible at trial in order to avoid summary judgment." *Richardson v. Metropolitan Dist. Comm'n*, No. 300CV1062(JCH), 2003 WL 21727781, at * 9 (D. Conn. July 23, 2003) (copy attached) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). Accordingly, whether Plaintiff's proffered evidence would be admissible at trial is irrelevant at this stage.

Plaintiff respectfully requests this Court to find that his submission of Attorney Fabricant's affidavit was appropriate and that its contents are admissible at trial and deny Defendants' Motion to Preclude and/or Strike.

### B. PAMELA J. COYNE'S AFFIDAVIT WAS APPROPRIATELY SUBMITTED AND SHOULD NOT BE STRICKEN

Attorney Coyne's affidavit was submitted for the sole purpose of establishing that Dale Ceneviva was a true comparator to Plaintiff with respect to his wrongful discharge claim. Defendants cannot dispute that Ms. Ceneviva objected to performing pretesting and vision screenings, was later terminated, and following discussion between Attorney Coyne and Defendant's counsel regarding her status as a comparator to Plaintiff, was immediately reinstated. Attorney Coyne did not accuse Wal-Mart of wrongdoing with respect to Ms. Ceneviva's reinstatement but merely recites the facts as they were relayed to her. Nonetheless, Wal-Mart's reaction to the recitation of facts is interesting to say the least.

Defendants' demands for Attorney Coyne's files, including her notes, regarding Ms. Ceneviva are outrageous, as such documents are clearly protected from disclosure by the work

6

product doctrine. It is perfectly clear that Plaintiff's attorney conducted an investigation on behalf of her client by interviewing Ms. Ceneviva, and Defendants are not entitled to Plaintiff's attorneys' work product. *See* Fed. R. Civ. P. 26(b)(3). *See also Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677 (1981) (stating an attorney's work product based on oral statements "cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship," but requires a "far stronger showing of necessity and unavailability by any other means"). Defendants have not and cannot make the requisite showing, as they are free to conduct their own investigation. (This is especially true in this case, where the witness is employed by Wal-Mart.) There is no reason to allow Defendants' counsel to rely on Plaintiff's diligence by requiring his attorneys to open up their files or be deposed.

Further, although there is no reason to doubt that the underlying facts, i.e., Ms. Ceneviva's objection to pretesting and vision screening, her subsequent termination and reinstatement, will be admissible at trial, as stated above, the party opposing a motion for summary judgment is not required to produce evidence admissible at trial, and any evidence of a material fact in dispute is sufficient at this stage. *See Richardson,* 2003 WL 21727781, at * 9.

Accordingly, Plaintiff requests this Court to deny Defendants' Motion to Preclude and/or Strike in its entirety, and to issue a protective order prohibiting Defendants from deposing Attorney Coyne and from requesting production of her files.

### III. **CONCLUSION**

It is abundantly clear that Defendants' Motion to Preclude and/or Strike portions of Plaintiff's memorandum is nothing more than a baseless attempt to attack the messenger in order to further delay Plaintiff's prosecution of his claims. While Defendants make threats in conjunction with a demand that Plaintiff's counsel revoke a meritorious and appropriate motion in opposition to summary judgment, the instant motion is clearly frivolous, filed in bad faith, and Defendants deserve to be sanctioned for their conduct, by way of reimbursement to this Court for wasting its time and to Plaintiff's counsel for having to respond to the motion. Accordingly, Plaintiff requests this Court to deny Defendants' motion in its entirety and to further order reimbursement of his costs in responding to Defendant's frivolous motion.

Done at Bridgeport, Connecticut, this 8th day of April, 2004.

*Pamela J. Coyne*
Pamela J. Coyne
Federal Bar No. ct22941
DURANT, NICHOLS, HOUSTON,
HODGSON & CORTESE-COSTA, P.C.
1057 Broad Street
Bridgeport, CT 06604
(203) 366-3438
ATTORNEYS FOR PLAINTIFF

## CERTIFICATION

I hereby certify that I have caused to be served this 8th day of April, 2004, the above and foregoing by United States mail, postage paid, return receipt requested, on the following counsel and pro se parties of record:

Joel Finger, Esq.
Brown Raysman Millstein Felder & Steiner, LLP
900 Third Avenue
New York, NY 10022

Kristi Mackin, Esq.
Mitchell L. Fishberg, Esq.
Brown Raysman Millstein Felder & Steiner, LLP
City Place II
10th Floor
185 Asylum Street
Hartford, CT 06103

_____
Pamela J. Coyne

P:\lit\pjc\523818\001\00039260.DOC

Not Reported in F.Supp.2d
(Cite as: 2003 WL 21727781 (D.Conn.))

Page 4

Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.

Tammy D. RICHARDSON, Plaintiff
v.
METROPOLITAN DISTRICT COMMISSION, et al., Defendants.

No. Civ.A.300CV1062(JCH).

July 23, 2003.

RULING ON MOTION FOR SUMMARY JUDGMENT [DKT. NO. 62] AND MOTION TO STRIKE
[DKT. NO. 69]

HALL, J.

I. INTRODUCTION

*1 This case concerns claims for money damages and equitable relief brought pursuant to 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 ("Title VII"), the Family Medical Leave Act of 1993 ("FMLA"), and the state common law of intentional infliction of emotional distress. The plaintiff, Tammy D. Richardson ("Richardson"), alleges that the defendants, the Metropolitan District Commission ("MDC"), [FN1] unlawfully discriminated and retaliated against her on the basis of her race, religion, and sex.

> FN1. In addition to the Metropolitan District Commission, the plaintiff also names Norman LeBlanc, Jeffrey Johnson, John J. McAuliffe, Dawn Fiorentino and Margaret Roughan as defendants. Each of these individuals are sued solely in their official capacities, because the court previously dismissed, for lack of proper service, the plaintiff's claims against these named defendants in their individual capacities. [Dkt. No. 19].
> The Supreme Court has held that official capacity suits are "only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo,* 502 U.S. 21, 25 (1991) (quoting *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)). Thus, suits against state officials in their official capacity should be treated as suits against the state. *Id.* "[A]n official-capacity suit against a state officer 'is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself." *Id.* at 26.

On August 7, 2002, the court granted partial summary judgment for the defendants on some of the plaintiffs claims. [Dkt. No. 58]. The plaintiff subsequently moved for reconsideration of the court's grant of partial summary judgment for the defendants. [Dkt. No. 59]. In its ruling on the plaintiff's motion for reconsideration, the court found that the earlier dismissal of the plaintiff's section 1983 sexual discrimination claim was in error. The court found that the issue of sexual discrimination under Section 1983 had not been adequately briefed by the parties, and *sua sponte,* granted the defendants leave to file a motion for summary judgment solely on the plaintiff's section 1983 sex discrimination claim. As a consequence, the defendants filed their current motion for summary judgment on the section 1983 sexual discrimination claim. Richardson opposes their motion.

II. FACTUAL BACKGROUND [FN2]

> FN2. According to the parties' Rule 9(c) Statements, these facts are undisputed for purposes of the motion for summary judgment.

Richardson is an African-American woman, who is a practicing Jehovah's Witness. On February 26, 1996, Metropolitan District Commission ("MDC") hired Richardson as a clerk typist in the Treasury Department. On or about October 26, 1996, MDC promoted Richardson to Account Clerk.

On September 20, 1997, Richardson was involved in a non-work-related automobile accident that resulted in a 22% disability of the lower back. Richardson Aff. [Dkt. No. 46], Ex. A, at 5. As a result of the accident, Richardson was out from work from September 20, 1997 through December 8, 1997. On several occasions between 1998 and 1999, Richardson took medical absences because of the injuries sustained in the accident.

In October 1998, Richardson received an evaluation that rated her performance as unsatisfactory, based in part on her absences from work, and her annual increment was withheld. MDC placed Richardson on a six-month probationary period. The comment section of the evaluation referenced Richardson's use of FMLA absences, but noted that her lack of

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2003 WL 21727781, *1 (D.Conn.))

Page 5

attendance beyond the FMLA absences resulted in an inconsistent volume of work. All Richardson's prior evaluations were satisfactory.

On March 31, 1999, Richardson left work on a medical leave of absence because of pain from the September 1997 accident. On June 1, 1999, MDC processed an FMLA certification from Richardson's chiropractor that stated the need for medical leave. On June 4, 1999, MDC acknowledged receipt of the chiropractor's certification, but sent a letter to Richardson requesting additional medical documentation that projected the length of absence necessary and described Richardson's ability to return to work.

*2 On July 1, 1999, Richardson attempted to return to work, but her supervisor, Jeffrey Johnson ("Johnson"), sent her home. On July 1, 1999, Richardson's chiropractor faxed a "Return to Work" form to MDC that explained that Richardson could return to regular duties with a few limitations: she could not lift or carry more than ten pounds; she should work half-days until further notice; and she requires chiropractic care twice a week. On July 9, 1999, when she returned from the March 31, 1999 medical leave, MDC reduced Richardson's responsibilities at work and elevated a less qualified white employee to her position. Richardson filed another "Return to Work" form on July 13, 1999 that stated she should only work part-time until July 23, 1999.

On July 23, 1999, Richardson attended a religious convention. Richardson had requested the day off in March, and Johnson approved the use of vacation time. On the day before the convention, Johnson informed Richardson that he revoked his approval. When Richardson returned to work on July 26, 1999, MDC suspended her for two days without pay for her absence on July 23 and part-time attendance from July 12 through July 21. On August 6, 1999, Richardson filed a complaint with the Connecticut Commission on Human Rights and Opportunities.

Because of her medical absences, Richardson's six-month probationary period extended until August 1999. On August 30, 1999, MDC reviewed Richardson's performance and concluded that it continued to be unsatisfactory. Accordingly, MDC denied Richardson a step increment.

Richardson took a medical absence for injuries from the accident and job-related stress on November 3, 1999, until her voluntary resignation on December 7, 1999. On December 2, 1999, Richardson had received a letter from Northeast Utilities System confirming her employment starting December 13, 1999.

While Richardson was employed at MDC, her supervisor, Jeffrey Johnson ("Johnson"), swore at her and called her names. She complained about his conduct to the Director of Human Resources and the president of her union.

III. DISCUSSION

A. *Summary Judgment Standard*

Summary judgment is only appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Hermes Int'l v. Lederer de Paris Fifth Ave, Inc.,* 219 F.3d 104, 107 (2nd Cir.2000). The burden of showing that no genuine factual dispute exists rests upon the moving party. *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 133 (2d Cir.2000) (citing *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir.1994)). However, "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 288 (1968)) (alteration in original and internal quotations omitted). If little or no evidence supports the non-moving party's case, there is no genuine issue of material fact and summary judgment may be appropriate. *Gallo,* 22 F.3d at 1223-24.

*3 In assessing the record to determine if genuine issues of material fact exist, all ambiguities must be resolved, and all inferences drawn, in favor of the party against whom summary judgment is sought. *Anderson,* 477 U.S. at 255; *Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 721 (2d Cir.1994). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson,* 477 U.S. at 255. When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. *Sologub v. City of New York,* 202 F.3d 175, 178 (2d Cir.2000).

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

B. *Section 1983 Hostile Work Environment and Sex Discrimination*

Richardson claims that section 1983 was violated as a result of the hostile work environment created by Jeffrey Johnson, her supervisor, and by the adverse employment actions which were taken as a result of her complaints regarding Johnson's sex discrimination. The Supreme Court declared twenty-four years ago that individuals have a constitutional right under the equal protection clause to be free from sex discrimination in public employment. *Annis v. County of Westchester. N.Y.,* 36 F.3d 251, 254 (2d Cir.1994) (citing *Davis v. Passman,* 442 U.S. 228, 234-35 (1979)). Harassment that transcends coarse, hostile and boorish behavior can rise to the level of a constitutional tort. *Id.* (citing *Gierlinger v. New York State Police,* 15 F.3d 32, 34 (2d Cir.1994) ( "[I]n some circumstances a § 1983 claim may be properly grounded on a violation of the Equal Protection Clause of the Fourteenth Amendment based on sexual harassment in the workplace."). When sexual harassment includes conduct evidently calculated to drive someone out of the workplace, the harassment is tantamount to sex discrimination. *Id.*

1. *Hostile Work Environment*

A claim for harassment which creates a hostile work environment is cognizable under section 1983. *Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 143-44 (2d Cir.1993). Workplace harassment claims brought under section 1983 parallel those brought under Title VII, and therefore, courts have applied the same requirements of severity and pervasiveness. *See, e.g., McPhaul v. Board of Com'rs of Madison County,* 226 F.3d 558, 566 n. 6 (7th Cir.2000) ("Because section 1983 claims generally follow the contours of Title VII claims, we will apply the same hostile environment standard that is applied in Title VII cases."); *Rafiy v. Nassau County Medical Center,* 218 F.Supp.2d 295, 305 (E.D.N.Y.2002) (requiring harassment to be severe and pervasive to be cognizable under the equal protection clause); *Lange v. Town of Monroe,* 213 F.Supp.2d 411, 423 (S.D.N.Y.2002) (same); *Ericson v. City of Meriden,* 113 F.Supp.2d 276, 290 (D.Conn.2000) (same).

To establish a hostile work environment, the plaintiff must show that she was subjected to harassment "sufficiently severe or pervasive to alter the conditions of [her] employment and create a hostile working environment," *Harris v. Forklift Systems,* 510 U.S. 17, 21 (1993), and that the harassing conduct occurred because of her sex, *Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir.2002). In order for the harassment of the plaintiff to be actionable, the harassing conduct must have been "so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Id.* at 373. The workplace must have been both objectively and subjectively hostile.

> *4 Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Harris,* 510 U.S. at 21-22. In determining whether a workplace is hostile or abusive, the finder of fact must look to the totality of the circumstances of the workplace and the alleged harassment, circumstances which may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." ' *Alfano,* 294 F.3d at 374 (quoting *Perry v. Ethan Allen. Inc.,* 115 F.3d 143, 149 (2d Cir.1997)).

As evidence of a hostile environment, Richards cites to the fact that after her automobile accident in 1997, Johnson began a campaign of harassment which included but was not limited to "belittling the plaintiff, verbally abusing plaintiff and constantly calling her a 'bitch' and repeatedly threatening to terminate the plaintiff's employment." Am. Compl. [Dkt. No. 15] ¶ 22. Richardson testified in her deposition that Johnson punctuated his references to her with phrases such as "fuck this, or you're going to do whatever the fuck I tell you to do." Richardson Depo. Def.'s Memo. in Supp. of Summ. J. [Dkt. No. 63] Ex. C at 27. Richardson argues that she specifically informed the human resources department that Johnson constantly referred to her and other women in the office as a "bitch" or "bitches" and that the language was offensive and distressing. Am. Compl. [Dkt. No. 15] ¶ 28. Based on this evidence, Richardson has created a material issue of fact as to whether Johnson's conduct created a hostile work environment.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2. *Sex Discrimination*

Richardson also argues that she suffered sexual discrimination. The initial burden in a sex discrimination claim is on the plaintiff to establish a prima facie case of discrimination. To do so, the plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she experienced an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 (2d Cir.2000) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)). Once a plaintiff has established a prima facie case, a rebuttable presumption of discrimination arises and the burden shifts to the defendants to offer a legitimate, non-discriminatory reason for its actions. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981). Upon the articulation of such a non-discriminatory reason for the employment action, the presumption of discrimination which arose with the establishment of the prima facie case drops out. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510-11 (1993).

*5 Once a defendant offers a legitimate, non-discriminatory reason for its actions, the burden shifts back to the plaintiff to fulfill her ultimate burden of proving that the defendant intentionally discriminated against her in the employment decision. *Reeves v. Sanderson Plumbing Products. Inc.,* 530 U.S. 133, 143 (2000). In order to satisfy this burden, the plaintiff may attempt to prove that the legitimate, non-discriminatory reason offered by the defendants was not the employer's true reason, but was a pretext for discrimination. *Id.* As the Supreme Court explained in *Reeves:*
> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.... Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.

530 U.S. at 147 (citations omitted). Evidence that an employer's reason is false, combined with the evidence presented to establish a prima facie case, in some cases, can be enough to sustain a plaintiff's burden, and a plaintiff need not have independent evidence of discrimination. *Id.; see also Zimmerman v. Assoc. First Capital Corp.,* 251 F.3d 376, 381-82 (2d Cir.2001). A finder of fact may consider the strength of the prima facie case, the probative value of the proof that the defendant's reason is pretextual, and any other evidence presented in the case when determining if the plaintiff has sustained her burden. *Zimmerman,* 251 F.3d at 381-82.

Richardson's status as a woman places her in a protected class for a sex discrimination claim, thereby satisfying the first prong of a prima facie case. The second prong, that Richards was qualified for the position, has not been disputed by MDC, and is therefore satisfied. As for the third prong, that she suffered an adverse employment action, Richardson cites to the denial of step increases on two occasions, the reassignment of her job responsibilities, and the denial of a vacation day to attend, and suspension for attending, a religious convention. Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. [Dkt. No. 67] at 4-5. Such evidence is sufficient to satisfy the third prong of a prima facie case. *Howley v. Town of Stratford,* 217 F.3d 141, 150 (2d Cir.2000). Richardson has also satisfied the fourth prong, that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. For instance, Richardson alleges that "[o]n or about October 13, 1998, [she] was denied a merit pay increase as a result of a poor performance evaluation given to her by Johnson." Am. Compl. [Dkt. No. 15] ¶ 23. Richardson also alleges that as a result of the complaints she filed concerning Johnson's conduct she was denied a step increment in her pay. *Id.* ¶ 29(a). She further states that prior to her complaints against Johnson she was granted reasonable accommodation of her religious beliefs, but that after her complaint, the defendants acted in a retaliatory and malicious manner to deny her request to attend a religious convention. *Id.* ¶ 29(e). Richardson also argues that the fact that she filed a complaint against Johnson with the defendants' Human Resources Department on or about March 26, 1999, demonstrates that Roughan, LeBlanc, Fiorentino and McAuliffe [FN3] were aware of the unconstitutional conduct of Johnson. Pl.'s Local 9(c)(2) Statement [Dkt. No. 54] ¶ 10. After Richardson filed a report with Roughan addressing Johnson's conduct, Roughan responded by asking, "what do you want us to do about it?" Richardson Depo. Def.'s Memo. in Supp. of Summ. J. [Dkt. No. 63] Ex. C at 27. Taking the facts in the light most favorable to the plaintiff,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d  
(Cite as: 2003 WL 21727781, *5 (D.Conn.))

Page 8

Richardson has established a prima facie case as to whether she suffered an adverse employment action as a result of Johnson's sex discrimination. The defendants do not specifically articulate a non-discriminatory reason for the employment actions taken against Richardson, but rather dispute that she suffered sex discrimination at all, and also dispute that MDC, as a municipal entity, can be held liable for the actions of any of the named individuals. Richardson has, however, established a material issue of fact as to whether she suffered sex discrimination, and therefore summary judgment is not appropriate on this ground. As for municipal liability, the court will address this argument next.

> FN3. Johnson was Richardson's immediate supervisor in the treasury department. Def.'s Statement of Material Facts Local 9(c)(1) Statement [Dkt. No. 41]. Margaret Roughan was the Director of Human Resources and reported directly to the District Manager *Id.* LeBlanc was the Manager of Treasury, and reported directly to the District Manager *Id.* McAuliffe was the Customer Accounting and Risk Services Administrator and reported to LeBLanc. *Id.* Fiorentino was the Risk Services Analyst and reported to McAuliffe, until his retirement on July 1, 1999, and which point she was elevated to his position. *Id.*

C. *Municipal Liability*

*6 Although Richardson has created a prima facie case as to whether she was forced to work in a hostile work environment and suffered sex discrimination, MDC may not be held liable under section 1983 for the actions of individuals solely on a theory or respondeat superior. *Jeffes v. Barnes,* 208 F.3d 49, 56-57 (2d Cir.2000) (citing *Monell v. Department of Social Services,* 436 U.S. 658, 694 (1978)). MDC may only be held liable if the conduct that caused the constitutional violation was undertaken pursuant to an MDC policy or custom. *Id.* As Richardson's suit is properly characterized as one against the state, she may only recover if a policy or custom played some part in the discrimination. *Hafer,* 502 U.S. at 25. The defendants argue that Richardson's complaint fails, because she cannot demonstrate that the alleged violations of section 1983 occurred as a result of a policy or custom of MDC. Richardson, however, argues that a local government unit may be liable when the person was injured by a local government official or employee with final policy making authority. Pl.'s Memo. In Opp'n to Mot. for Summ. J.

[Dkt. No. 67] at 2.

The Second Circuit has found that a municipality may be held liable under section 1983 when the injury was inflicted by its "lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Jeffes,* 208 F.3d at 57. Additionally, a supervisor's acquiescence to the actions of his subordinates may amount to a policy or custom, if the subordinate's "discriminatory practice [is] so manifest as to imply the constructive acquiescence of senior policy-making officials." *Wimmer v. Suffolk County Police Department,* 176 F.3d 125, 137 (2d Cir.1999) (citing *Sorlucco v. New York City Police Department,* 971 F.2d 864, 870 (2d Cir.1992). When a subordinate's decision is subject to review by the municipality's authorized policy makers, "their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988). Thus, to determine whether MDC can be held liable for the discrimination suffered by Richardson, the court must decide who had policymaking authority at MDC and must determine if there is a material issue of fact as to whether this person, or group, participated in, or ratified the discriminatory conduct.

Determining whether an official had final policymaking authority is a legal question, to be answered on the basis of state law. *Jeffes,* 208 F.3d at 57. "The matter of whether the official is a final policymaker under state law is 'to be resolved by the trial judge *before* the case is submitted to the jury." ' *Id.* (quoting, *Jett v. Dallas Independent School District,* 491 U.S. 701, 737 (1989) (emphasis original). Mere discretion in the performance of his duties is not sufficient. However, the official need only have the power to make official policy on a particular issue. *Id.* For example, in *Jeffes,* the Second Circuit found that a county sheriff had final policymaking authority with respect to matters of personnel because there was no provision of state or local law that required the sheriff to answer to any other entity in the management of his jail staff. *Id.*

*7 MDC is a municipal corporation chartered under the laws of the state of Connecticut, and it performs water supply maintenance, sewer services, and resource recovery. Second Am. Compl. [Dkt. No. 15]. It is composed of eight member towns in Connecticut that include Hartford, West Hartford, East Hartford, Rocky Hill, Wethersfield, Newington, Bloomfield, and Windsor. The affairs of the MDC are managed by a board of commissioners, which is

Not Reported in F.Supp.2d                                                                                     Page 9
(Cite as: 2003 WL 21727781, *7 (D.Conn.))

composed of twenty-nine electors. Def.'s Ex. A [Dkt. No. 65] Part 1 at §§ 2-1, 2-2. Upon a review of the charter and by-laws of the MDC, it is clear that the board is the policymaking authority for MDC. Officers and employees of MDC may be removed by the board at pleasure, and the board may also appoint to any deputy any powers as the board deems necessary. *Id.* at §§ 2-8, 2-9. Further, the board is responsible for the development and implementation of policy concerning personnel matters. *Id.* Part 3 at § B6g. Although MDC has a Personnel, Pension and Insurance Committee ("Committee"), consisting of eleven commissioners of the district, this Committee only makes recommendations to the Board on matters related to salaries and wages. *Id.* Part 3 at § B3h. As such, it is the Board that is the policymaking authority for MDC. *See Mandell,* 316 F.3d at 385 ("Here, plaintiff challenges as retaliatory employment decisions made by Gallagher, who, as the Suffolk County police commissioner, had authority to set department-wide personnel policies."); cf. *Looby v. City of Hartford,* 152 F.Supp.2d 181, 188 (D.Conn.2001) (finding no evidence that defendant fire chief had power to create policy with respect to employment decisions); *DeLeon v. Little,* 981 F.Supp. 728, 741 (D.Conn.1997) (finding no municipal liability where defendant had "lack of final decision making authority over employment/personnel matters"). George Sparks, the Chief Executive Officers and Chief Operating Officer for MDC, confirms that it is the Board that has the policymaking authority. "The District Board is responsible for the development and implementation of policy concerning personnel matters." Sparks Aff. Def.'s Addendum to Rule 9(c) Stat. [Dkt. No. 64] ¶ 9.

The defendants argue that, because Johnson, Roughan, LeBlanc, McAuliffe, and Fiorentino are not members of the board, and because all personnel policy must be authorized by the board, MDC can not be held liable for the individual actions of any of the named defendants. *Id.* Despite the defendants' argument that none of the individuals who Richardson alleges were responsible for the discriminatory conduct were in a position of policymaking authority, MDC may nonetheless be liable if the board ratified the discriminatory conduct and the discriminatorily-based personnel recommendations of these individuals. *City of St. Louis,* 485 U.S. at 127 ("ratification would be chargeable to the municipality because their decision is final").

Taking the facts in the light most favorable to the plaintiff, there is a material issue of fact as to whether the continued harassment by Johnson was ratified by and acquiesced to by the board. The Second Circuit has previously ruled that "a municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials ... and that 'municipal inaction such as the persistent failure to discipline subordinates who violate [persons'] civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct," ' *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995) (citing *Batista,* 702 F.2d at 397). *See also Ricciuti,* 941 F.2d at 123 (policy may be inferred from "evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that police officers had used excessive force in violation of the complainants' civil rights"); *Turpin,* 619 F.2d at 201 ("where senior personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps, the municipality may be held liable for a subsequent violation if the superior's inaction amounts to deliberate indifference or to tacit authorization of the offensive acts").

*8 The facts presented by Richardson show that she complained about Johnson's conduct, that his supervisors knew of the problem, but that no disciplinary or corrective action was taken. Pl.'s Mem. in Opp'n to Def's Mot. for Summ. J. [Dkt. No. 67] at 3. Richardson also stated that no actions were ever taken by MDC regarding complaints as to Johnson's behavior, and that Johnson "himself told me that because he was Mr. Johnson and that his mother was the commissioner, they were not going to do shit to him and that I was only making it worse for myself." *Id.* at 72. Richardson also claims that, after she filed a grievance, MDC refused to hold a hearing or to process her grievance at all. Pl.'s Mem. in Opp'n to Def's Mot. for Summ. J. [Dkt. No. 51] at 33. The MDC Charter specifically states that the board is responsible for investigating any charges brought against any employee, and that the board is responsible for disciplining employees. Charter [Dkt. No. 65] § 2-17 ("The district board shall have power to supervise and investigate all ... employees ... and to inquire into any charges preferred against any of the ... employees...."). Given the facts presented by Richardson detailing the complaint she filed against Johnson, there is a material issue of fact as to whether the board knew of the complaint lodged against Johnson, and whether the board ratified Johnson's conduct by failing to investigate or appropriately discipline him after this formal complaint had been filed.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2003 WL 21727781, *8 (D.Conn.))

Page 10

As evidence that the board ratified the sexual discrimination by Johnson, Richardson cites to the fact that on April 1, 1999, five days after her complaint against Johnson was filed, she was denied a step-increment. Pl.'s Rule 9(c) Statement [Dkt. No. 54] ¶ 12. She also states that her job responsibilities were reassigned, and that she was denied a previously approved vacation day. Pl's Mem. in Opp'n to Def.'s Mot. for Summ. J. [Dkt. No. 67] at 4-5. Richardson argues that "[s]hortly after [she] was forced to file a formal complaint because of Johnson's continued harassment, she was disciplined, suspended without pay, threatened with termination, and ultimately forced to quit her position." *Id.* at 7. It was Johnson who was responsible for supervising Richardson, and Johnson who also evaluated her performance. Second Am. Compl. [Dkt. No. 15] ¶ 15. It was Johnson's poor evaluations of Richardson which contributed to Richardson's denial of a step increment. Pl.'s Rule 9(c) Statement [Dkt. No. 54] ¶ 5. Richardson has established a material issue of fact that the board had actual or constructive knowledge of Johnson's sexual discrimination, but nevertheless accepted his recommendations as a basis for denying Richardson a step increment. Such knowledge, if proven at trial, would create liability of the board. *City of St. Louis,* 485 U.S. at 127.

The MDC by-laws state that *all* employment decisions, including the salary classification levels of employees, are decided by the board. Def.'s Ex. A [Dkt. No. 65] Part 3 at §§ B3h, B4b. Therefore, taking the facts in the light most favorable to the plaintiff, there is a material issue of fact as to whether the adverse employment actions, such as the decision to deny Richardson pay increases, to suspend her, and to reduce her job responsibilities, were based on Johnson's discriminatorily-based recommendations, and whether the board knew of this basis, but nonetheless ratified his recommendations. *St. Louis,* 485 U.S. at 127 ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.").

V. MOTION TO STRIKE

*9 The plaintiff has also moved to strike the defendants' motion for summary judgment, arguing that the motion was untimely served upon the plaintiff, and that the defendants failed to attach a Local Rule 9(c)(1) statement. "A motion to strike is the correct vehicle to challenge materials submitted in connection with a summary judgment motion." *Newport Elec., Inc. v. Newport Corp.,* 157 F.Supp.2d 202, 208 (D.Conn.2001). The moving party must be specific in regards to what it is seeking to have stricken and must set forth reasons for why the materials should not be considered by the court. *E.g., FDIC v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986). A party can make a motion to strike affidavits if they are not made on the basis of personal knowledge. *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 643 (2d Cir.1988). A motion to strike can also be used to challenge documentary evidence that has not been properly authenticated. *E.g., Dedyo v. Baker Eng'g N.Y., Inc.,* 1998 WL 9376, at *4 (S.D.N.Y. Jan. 13, 1998). However, "the nonmoving party [need not] produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324-25 (1986).

The plaintiff's motion to strike is hereby denied. The court does not find that the plaintiff was prejudiced by the defendants' untimely service of their motion upon the plaintiff, nor does the court find that the plaintiff was prejudiced by the defendants' reference to their earlier-filed 9(c)(1) statement. The defendants did file their motion within the time limit set by the court in its ruling on the motion for reconsideration, [Dkt. No. 61], and the plaintiff's request to file her Rule 9(c) statement out of time was granted by the court. [Dkt. No. 66]. Further, the court does not find that the defendants' reference to their earlier filed Rule 9(c) statement was prejudicial to the plaintiff, as the plaintiff had already responded to the defendants' earlier filed statement of facts. [Dkt. No. 54].

VI. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment [Dkt. No. 62] is DENIED. The plaintiff's motion to strike [Dkt. No. 69] is also DENIED.

SO ORDERED.

2003 WL 21727781 (D.Conn.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works