UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------- X
MARVIN KEY,                                              :
                                                         :   CIVIL ACTION NO.:
                        Plaintiff,                       :   3:03CV144(RNC)
                                                         :
        v.                                               :
                                                         :
WAL-MART, INC. AND DR. ANTHONY                           :
GORDON,                                                  :
                                                         :
                        Defendants.                      :   APRIL 15, 2004
---------------------------------------------------------- X

### DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR PROTECTIVE ORDER

Defendants Wal-Mart Stores, Inc. ("Wal-Mart") and Dr. Anthony Gordon (collectively, the "defendants") hereby reply to Plaintiff Marvin Key's Opposition to Motion for Protective Order.

In his Opposition to Motion for Protective Order (the "Opposition"), plaintiff not only ignores the applicable legal standards but also fails to address or counter the arguments set forth by defendants in their brief in support of their request for a protective order. Instead of attacking the motion on the merits, plaintiff relies on (1) a recitation of criticisms of Wal-Mart that have no bearing on the issue at hand and (2) unsupported and conclusory "statements" as to why the personnel file of Dale Ceneviva should be disclosed. Neither approach succeeds in justifying the disclosure of confidential personnel file material, and, as such, defendants' Motion for Protective Order (the "Motion") should be granted.

1

A.     **Plaintiff's Attempt to Obscure the Issues Should Be Disregarded**

It could be said that when a party has neither law nor facts to support his or her position, resort to misdirection is inevitable. This is what plaintiff does in his Opposition. Rather than attack the Motion on the merits in his Opposition, plaintiff harps back to prior discovery disputes in an attempt to paint a portrait of Wal-Mart as an abuser of the discovery process. Although not relevant to the resolution of the issue raised in the Motion, defendants will respond to them in summary fashion in the interest of clarifying the record before the Court.

First, plaintiff claims that he could not request the personnel files of his co-workers earlier because of "continued delays" by Wal-Mart. Plaintiff at no time in his Opposition articulates or otherwise identifies what these "delays" actually are, or how they served to impede him. The reason he offers no facts in support of this allegation is simple -- there were no such delays. The fact that plaintiff had co-workers was no secret to him. He knew of them well before the commencement of this action. There was no need to wait until his Third Set of Requests for Production to ask for their personnel files if he believed they were relevant. However, to the extent plaintiff was somehow delayed from filing his Requests for Production, any delay after this point was caused by, and only by, plaintiff's failure to follow up on Wal-Mart's timely objection to the production of the personnel files.[1] Plaintiff claims he discussed the objections with Attorney Greg Reilly. Defendants do not dispute that such a discussion did take place. However, this "discussion" was merely a mention to Attorney Reilly that plaintiff had not forgotten about the issue and would be addressing it. Plaintiff never followed up with Attorney Reilly, verbally or in writing, and did not follow-up with new counsel until weeks later.

---

[1] Defendants objected to plaintiff's request for 6 personnel files of other Wal-Mart employees based on relevance and Conn. Gen. Stat. § 31-128f.

2

Second, plaintiff devotes a large portion of his Opposition attempting to establish that defendants have failed to cooperate. For instance, plaintiff claims he attempted to obtain "a written commitment from Wal-Mart outlining the steps it was willing to take to resolve the dispute to avoid the necessity of filing a motion to compel, but Attorney Mackin refused to commit to steps by Wal-Mart." This statement is misleading at best. After receiving plaintiff's February 25, 2004 letter demanding the personnel files of six Wal-Mart employees and threatening to file a motion to compel within a few days, defendants initiated a conversation in an attempt to resolve the issue. Plaintiff repeatedly insisted that Wal-Mart send plaintiff a letter stating that it would comply with plaintiff's request in order to avoid a motion to compel. Wal-Mart certainly would not and could not make such a promise without having time to review plaintiff's recently disclosed reason for wanting the personnel files,[2] discussing the matter internally, and obtaining any needed materials. It would have been completely irresponsible for defendants' counsel to instantly succumb to plaintiff's demands without reviewing the appropriateness of disclosing the requested information and discussing the matter with their clients. Indeed, while defendants agreed to provide the material plaintiff requested for 5 of the 6 individuals – hardly a show of refusal to cooperate – plaintiff has at no time been able to articulate a consistent reason for obtaining the personnel files sufficient to overcome the privacy interests Conn. Gen. Stat. §31-128f was enacted to protect.

Plaintiff similarly criticizes defendants' previous filing of motions for extension of time. (See Pl.'s Opposition, fn 5). Not only is this irrelevant to resolution of the instant Motion, but a review of the file shows that both parties have requested and received various extensions of time.

---

[2] Despite plaintiff's claim that it put Wal-Mart on notice of his need for the files ten weeks earlier, plaintiff's February 24, 2004 letter was the first time that plaintiff articulated a reason why he believed the personnel files were discoverable or otherwise gave Wal-Mart reason to reconsider its previous objection on the basis of relevancy and Conn. Gen. Stat. §31-128f.

3

In fact, throughout the course of this litigation, defendants have filed eight motions for extensions of various matters, while plaintiff has filed seven. These are only a few of the points raised by plaintiff in his attempt to take the focus off of the relevant issue -- whether Ms. Ceneviva's file should be discoverable. Accordingly, defendants submit that, for purposes of the Motion, the allegations regarding Wal-Mart's failure to cooperate, prior discovery disputes and other ancillary matters be disregarded.

### B. Plaintiff Fails to Show the Relevancy of Ms. Ceneviva's Personnel File or the Necessity of Disclosure

There can be no dispute that an employer has a statutory responsibility to protect personnel file information from disclosure. See Conn. Gen. Stat. §§ 31-128 et seq. As defendants stated in their Motion, Conn. Gen. Stat. §§ 31-128f sets forth a minimum requirement that must be met before Wal-Mart could turn over the personnel files of its current and former employees. Thus, although the subpoena served by plaintiff for the personnel files may have allowed Wal-Mart to turn over the files and comply with Conn. Gen. Stat. §§ 31-128f, defendants must still make an independent judgment whether the personnel files requested to be disclosed are discoverable.[3] Defendants determined that five of the six personnel files were discoverable and sought a protective order with respect to the file it deemed not subject to disclosure.

In his Opposition, plaintiff cites to black letter law on discovery standards, completely ignoring the fact that personnel file materials, deemed confidential pursuant to Conn. Gen. Stat.

---

[3] Plaintiff makes much of the timing of the subpoena. While plaintiff agreed to send a subpoena, and later indicated he would do so for all of the files, Wal-Mart had told plaintiff that the point of the subpoena was not to allow plaintiff unfettered access to personnel files but to allow Wal-Mart to conform to Conn. Gen. Stat. § 31-128f without the need to resort to the courts. The purpose was to agree on what would be produced first, and then allow plaintiff access to it. Plaintiff's claim that Wal-Mart requested plaintiff to subpoena *all* of the personnel file material – even that which Wal-Mart knew it could not produce – makes no sense. Wal-Mart would be (and was) left in the position of filing a protective order, whereas the burden of moving for the materials should have been plaintiff's.

§§ 31-128a through 31-128g, are not subject to the liberal disclosure standards governing other, less invasive types of discovery. Thus, plaintiff's references to liberal discovery standards simply do not fit the issue presented by defendants' Motion.

Plaintiff also fails to provide any explanation for his complete reversal regarding his position as to why Ms. Ceneviva's personnel file is relevant to his case. Originally, plaintiff claimed her file was relevant because she was a comparator on the issue of his racial discrimination claim. Specifically, plaintiff criticized Wal-Mart for not terminating Ms. Ceneviva, who is Caucasian, despite what plaintiff described as numerous "customer complaints and/or various forms of discipline." (See plaintiff's February 25, 2003 correspondence, attached to defendant's Motion for Protective Order, Mackin Aff., Ex. 2). Now, plaintiff claims Ms. Ceneviva's personnel file is relevant to his wrongful termination claim, alleging that her termination was discriminatory (although plaintiff himself previously believed she should have been terminated). Plaintiff's ever-changing basis for seeking Dale Ceneviva's personnel file is not worthy of credence.

Rather than tackle the legal issues or the arguments set forth in the Motion, plaintiff instead lists several "factual" reasons why Ms. Ceneviva's personnel file is "relevant." Some of the statements are completely unsupported. Many if not all are irrelevant. None provide a valid reason for disclosure of the personnel file material. They are addressed below in the same order as plaintiff set them out in his Opposition.

- Ceneviva's "good reviews." As discussed above, plaintiff's ever changing opinion of Ms. Ceneviva's performance does not justify overriding the privacy interests as set forth in § 31-128f.

- Ceneviva's termination. Plaintiff claims the mere fact that Ms. Ceneviva worked for Wal-Mart and was terminated makes her a comparator. If this were the only factor, thousands of Wal-Mart employees with no relation to this matter would be comparators.

5

As set forth more specifically in defendant's Motion and below, plaintiff provides no consistent or credible basis to link Ceneviva's termination to plaintiff's for purposes of making her file discoverable.

- Jeffrey Krol's termination. Plaintiff likewise claims the fact that Mr. Krol (Caucasian) was terminated is a basis for obtaining Ms. Ceneviva's file. There is a complete disconnect between these two employees. First, since plaintiff does not claim that his termination involves a pattern or practice of discrimination, why Mr. Krol or other employees were terminated is not relevant to plaintiff's termination. Similarly, to the extent that Mr. Krol was a comparator because he worked with plaintiff under the same decision makers, his personnel file information has already been provided. Moreover, as plaintiff is well aware, Mr. Krol was terminated after three Wal-Mart Vision Store employees complained in writing about Mr. Krol's abusive and unprofessional behavior – not because he may have complained to the Connecticut Department of Health some time earlier and without incident.

- Plaintiff's fabricated conclusions: Plaintiff summarily opines, "[e]ach and every Vision Center employee in the State of Connecticut, who raised the issue of the legality of these pre-tests and screenings, or who Wal-Mart suspect might raise the issue, was eventually terminated." This conclusion is a fabrication. It is telling that plaintiff provides no support for this assertion. Plaintiff did not even seek information about what other employees may have complained of during discovery.

- Christopher Adkins. Plaintiff notes that Christopher Adkins is a Regional Manager overseeing Connecticut. This is correct. It is also irrelevant. Mr. Adkins does not directly supervise or make decisions regarding the employment of a particular store's employees. Such decisions are generally left for store managers. Plaintiff has presented no evidence to the contrary, other than speculation. Thus, the fact that Christopher Adkins is a Regional Manager overseeing Connecticut is unrelated to the decision makers in each Wal-Mart store and provides no justification for viewing Ms. Ceneviva as a comparator.

As set forth in defendants' Motion for Protective Order, plaintiff's claims that Ms. Ceneviva is comparable, generously construed, are little more than conclusory assumptions that fail to provide a valid reason sufficient to overcome the privacy concerns articulated in Conn. Gen. Stat. §§ 31-128a through 31-128f. Wal-Mart worked diligently under tight timelines in good faith, and agreed to provide personnel file information for five of the six individuals plaintiff has asked for giving plaintiff's claims of relevancy full benefit of the doubt. Because

6

plaintiff has presented no valid basis for the disclosure of Ms. Ceneviva's personnel file, the file should be protected from disclosure.

                    DEFENDANTS WAL-MART STORES INC. and
                    DR. ANTHONY GORDON,

By: _____
     Mitchell L. Fishberg (ct19661)
     Kristi E. Mackin (ct23394)
     Brown Raysman Millstein Felder & Steiner LLP
     185 Asylum Street, 10th Floor
     Hartford, CT 06103
     (860) 275-6400
     Joel L. Finger (ct06114)
     Brown Raysman Millstein Felder & Steiner LLP
     900 3rd Avenue
     New York, NY 10022

## CERTIFICATE OF SERVICE

This is to certify that on this 15th day of April 2004, a true copy of the foregoing was sent via facsimile and first-class mail, postage prepaid, to:

Loraine M. Cortese-Costa, Esq.
Pamela Coyne, Esq.
Durant, Nichols, Houston,
  Hodgson & Cortese-Costa, P.A.
1057 Broad Street
Bridgeport, CT 06804

_____
Kristi E. Mackin

HARTFORD 84673v2