UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------X
MARVIN KEY,                              :
                                         :   CIVIL ACTION NO.:
                    Plaintiff,           :   3:03CV144(RNC)
                                         :
         v.                              :
                                         :
WAL-MART, INC. AND DR. ANTHONY           :
GORDON,                                  :
                                         :
                    Defendants.          :   APRIL 23, 2004
---------------------------------------------------------X

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION
TO MOTION TO STRIKE AND/OR TO PRECLUDE**

Defendants Wal-Mart Stores, Inc. ("Wal-Mart") and Dr. Anthony Gordon (collectively, the "defendants") hereby reply to Plaintiff Marvin Key's Opposition to Motion to Strike and/or to Preclude (the "Opposition"). As demonstrated below, plaintiff's attempts to counter or rebut the points made by defendants in their Motion to Strike and/or to Preclude (the "Motion") do not succeed. Accordingly, the defendants' Motion should be granted.

I.  **The Court Should Preclude David Fabricant's Affidavit and Attorney-Client Meeting Notes.**

   A.  **Plaintiff Fails to Articulate a Good Faith Reason for His Untimely Disclosure of David Fabricant as a Fact Witness and the Attorney-Client Meeting Notes.**

Plaintiff never explains or justifies his late disclosure. Despite plaintiff's conclusory statement that his disclosure of Mr. Fabricant and his notes was timely, a review of its timing demonstrates it most certainly is not. It is telling that plaintiff does not even attempt to address in his Opposition the fact that he disclosed David Fabricant and the notes from his meeting with Jeff

1

Krol a full two months after discovery closed and only days before submitting his brief in opposition to defendants' motion for summary judgment (the "summary judgment opposition").[1]

Rather than address this core issue, plaintiff attempts to shift the blame to defendants by claiming that they should have anticipated that Mr. Fabricant, plaintiff's former counsel, could be a fact witness because his name appeared in various documents throughout this litigation. Not only is plaintiff's claim not persuasive (as addressed in more detail below), but it still fails to provide an explanation as to why plaintiff made the disclosure so late.

Plaintiff claims that he learned of Mr. Fabricant and his meeting with Mr. Krol back in early December 2003. Despite this knowledge, plaintiff did not disclose the notes at that point. In addition, plaintiff's Exhibit E, a letter from Mr. Fabricant to plaintiff's present counsel, is dated February 9, 2004 – a full month before plaintiff made the disclosure in issue.[2] Plaintiff cannot be permitted to use material disclosed in an untimely fashion to his advantage.

Plaintiff's argument that it is proper for him to use Mr. Fabricant's notes in his papers opposing summary judgment because defendants were on notice that Mr. Fabricant may be a fact witness is similarly flawed. Plaintiff provides no evidence that would suggest that defendants should have anticipated plaintiff's use of Mr. Fabricant as a fact witness at any point prior to March 9. In support of his position, plaintiff submits several letters between Wal-Mart and Mr. Fabricant dating back to June 2001, well before the institution of this litigation. (See Opposition, Ex. C). The fact that defendants knew or should have known that Mr. Fabricant at one point represented plaintiff adds no support to plaintiff's position. The issue is not whether defendants knew of Mr.

---

[1] Indeed, it is interesting that plaintiff's counsel continues to grumble about the lateness of defendants' disclosure of Jerry Mr. Ellis' notes, which occurred during the discovery period, while plaintiff accepts no responsibility for the late disclosure of Mr. Fabricant and the Jeff Krol interview notes months after the discovery period ended.

[2] This letter, addressed to "Lorraine," states "I noticed that the subject of Jeffrey Mr. Krol (now deceased) has come up." How Attorney Fabricant "noticed" that the subject has "come up" is not explained, nor is it explained why if Mr. Fabricant is apparently involved enough in the matter to "notice" its developments, or why he has suddenly become a fact witness.

2

Fabricant or his relationship to plaintiff, but whether they would have had any reason to believe he might have been a fact witness. Obviously, defendants did not. It is clear from plaintiff's Opposition that no evidence of Mr. Fabricant's expected appearance as a fact witness exists.[3]

### B. Plaintiff Should not Be Allowed to Benefit from the Submission of Privileged Material Merely Because the Subject of the Disclosure is Unable to Assert His Rights.[4]

In defense of his disclosure of attorney-client privileged material that he had no right to reveal, plaintiff completely switches his position mid-argument. At first, plaintiff, through Mr. Fabricant, claimed Mr. Krol "sought [Mr. Fabricant's] services and assistance," and went to Mr. Fabricant's "offices to discuss his employment, and termination from employment, with Wal-Mart." (Fabricant Aff., ¶ 4). At no point in his affidavit does Mr. Fabricant claim that he met with Mr. Krol to obtain testimony in support of plaintiff's claim. Now, in an attempt to justify disclosure, plaintiff claims that Mr. Krol met with Mr. Fabricant as not only a client but "as a potential witness for Mr. Key." (Opposition, p. 5). This certainly did not appear to be Mr. Fabricant's take on the matter at the time he signed his affidavit under oath. (See Fabricant Aff., ¶ 4).

Plaintiff not only fails to explain the direct contradiction between the argument he makes in opposition to the instant motion and the contents of Mr. Fabricant's affidavit, but he also fails to provide any support for his claim that the contents of the meeting should not be protected pursuant to the attorney-client privilege. Generally, individuals expect that the contents of what they say during meetings with their attorneys will be kept confidential. Indeed, it seems doubtful that Mr.

---

[3] Indeed, given that plaintiff claims that defendants should have been able to anticipate the possibility that Mr. Fabricant could be a fact witness in this case since 2001, plaintiff offers no explanation as to why he waited until well after the close of discovery to disclose him as a witness and produce the interview notes.

[4] Plaintiff claims that "the only portion of the Attorney Fabricant's [sic] notes relied upon by plaintiff in his memorandum was the racist remark by his immediate supervisor." (Opposition, p. 4). Defendants understand, then, that the only issue in the notes is this remark and that the other statements are not at issue.

3

Fabricant would agree that the contents of his meetings with prospective clients could be disclosed at the whim of others.[5]

The law does not support plaintiff's claim that defendants lack standing to seek preclusion of Mr. Fabricant's affidavit and notes concerning his meeting with Mr. Krol. Indeed, the very case plaintiff relies on in support of his contention, Doyle v. Francis to Reeves, 112 Conn. 521 (1931), actually supports defendants' position. In Doyle, a matter involving the interpretation of a will, the Connecticut Supreme Court reviewed whether Doyle, a housekeeper employed by the decedent, could rely upon testimony of the decedent's attorney and the attorney's draft of a never executed will to prove that the decedent intended Doyle to receive a portion of the estate. The Court held that *Doyle could not breach the privilege existing between the decedent and his counsel for her benefit,* even after the decedent's death. Indeed, "it has become a settled rule of evidence, that the confidential attorney, solicitor, or counsel can never be called as a witness to disclose papers committed to communications made to him in that capacity, unless the client himself consents to such disclosure." Id. at 523-526. The Court did not, as plaintiff claims, hold that the party opposing the submission of attorney-client privileged information did not have standing to oppose improperly admitted information. Here, as in Doyle, plaintiff is attempting to breach another person's privilege merely to benefit himself. He has no standing to do this. See id. at 524 (internal citations omitted). Therefore, while plaintiff is correct in opining that Doyle is dispositive of this issue, his claim that it is dispositive in his favor is incorrect.[6]

---

[5] If there were no such expectation of privacy during this meeting, surely plaintiff would not have been so opposed to providing Mr. Fabricant's file in this matter.

[6] Plaintiff also cites Tunick v. Day, Berry & Howard, et al. 40 Conn. Supp. 216 (1984) in an attempt to support his theory that defendant cannot challenge plaintiff's inappropriately submitted material. Tunick primarily involves whether attorney-client privileged documents containing information concerning the party seeking their disclosure as well as other individuals could be properly disclosed in a malpractice action. That case has no relevance to the issues raised in the instant motion.

4

C. **The Fabricant Notes are Inadmissible Hearsay.**

The statements made in Mr. Fabricant's notes are comprised entirely of hearsay. Nothing in plaintiff's Opposition provides any reason why these statements should not be considered hearsay, or otherwise fall under an established hearsay exception. Indeed, plaintiff's Opposition fails to demonstrate that (1) Mr. Ellis' alleged statement is a statement binding Wal-Mart made in the course of his employment or (2) that Mr. Krol's comments to his attorney during the course of planning a suit against Wal-Mart are inherently reliable.

Plaintiff claims that Mr. Ellis' remark is admissible as a party admission on the basis that he made a statement as a Wal-Mart manager acting within the scope of his duties. (Opposition, p. 5). When a party seeks to rely upon hearsay statements, the party seeking admission of statements has the burden of showing that the prerequisites for its admissibility are met. Brundidge v. City of Buffalo, 79 F. Supp. 2d 219, 222 (W.D.N.Y. 1999), citing Potamkin Cadillac Corp. v. B.R.I. Coverage Corp., 38 F.3d 627, 632 (2d Cir. 1994). Here, plaintiff's conclusory assertions that Mr. Ellis' alleged statements constitute a party admission for purposes of a hearsay exception falls woefully short of meeting this burden. First, Mr. Ellis' statement, if made, certainly was not made in the scope of his duties as a Wal-Mart manager.[7] Second, as one of hundreds if not thousands of Vision Store managers, there is no evidence that Mr. Ellis had the authority to bind Wal-Mart to any of his statements.

Similarly, plaintiff fails to show that Mr. Krol's statements bear the required guarantees of trustworthiness sufficient to justify admission. Although plaintiff boldly pronounces in his

---

[7] Plaintiff summarily relies on Stern v. Trustees of Columbia University, 131 F.3d 305, 313 (2d Cir. 1997), to prove this point, although Stern offers no actual discussion or analysis on the issue. Rather, in Stern, the Court concluded that the comments of two University Search Committee members, charged with the task and authority of finding a candidate for the Director of Spanish Languages position, about their search for the position, could be admissible. It is quite obvious in Stern that the search committee members speaking about aspects of the search were made by individuals with authority over the matter in the scope of executing their search duties. This case does not support the proposition that a lower level manager making statements outside of the scope of his duties and for which he had no real authority is a party admission.

5

Opposition that Mr. Krol's notes are trustworthy as a matter of fact, plaintiff fails to articulate a single reason in support of his conclusion. Indeed, for all the reasons set forth in defendants' Motion papers, the statements attributable to Mr. Krol in Mr. Fabricant's affidavit and meeting notes are inherently lacking in guarantees of trustworthiness. Because plaintiff provides nothing of substance requiring response on this point, the defendants respectfully refer the Court to its Motion to Preclude and/or to Strike, p. 13.[8] Since the statements are inherently unreliable and comprised solely of inadmissible hearsay, and would be unduly prejudicial if admitted, any references to Mr. Krol's alleged statement contained in Mr. Fabricant's notes and/or to Mr. Fabricant's recollection of them must be stricken.

## II.     Plaintiff's Counsel's Affidavit is Inappropriate.

It defies logic how an attorney's invocation of conclusion and speculation as to facts to which she claims personal knowledge can be properly submitted. This, however, is what plaintiff attempts to accomplish here.

### A.     Attorney Coyne's Affidavit Should be Precluded to the Extent it Relies Upon Hearsay.

Pamela Coyne's affidavit relies upon hearsay, directly citing statements made to her by an individual out of court in an attempt to prove the matters they assert. Ms. Coyne does not need to testify as to these statements. If there were any facts to which Dale Ceneviva could testify that were relevant, she herself is available. Thus, to the extent that Ms. Coyne's affidavit relies on hearsay, it must be stricken.

---

[8] Even if plaintiff could possible overcome the hurdles of hearsay upon hearsay, they still cannot overcome the fact that Mr. Fabricant's notes are, in and of themselves, a hearsay rendition of the hearsay upon hearsay statements. Indeed, regardless of whether Mr. Fabricant may be perfectly capable of taking notes, there are still no guarantees of complete accuracy or that complete accuracy was even intended or required at the time. It is for this reason that hearsay documents are not admissible – they are not inherently reliable. Thus, in addition to the reasons set forth above, Mr. Fabricant's notes should be stricken.

**B.   Attorney Coyne's Affidavit Is Improper Because It Is Speculative and Conclusory, and Seeks to Submit Fact Testimony from an Advocate.**

Plaintiff's counsel is certainly at liberty to present *argument* about what evidence exists and what the evidence means. However, plaintiff's attempt to create an issue of fact by submitting his counsel's theories as evidence, as opposed to argument, is not appropriate. Stated otherwise, Ms. Coyne's affidavit, which contains factual testimony, crosses the line between her role as a zealous advocate and fact witness. Indeed, in his Opposition to defendant's summary judgment motion, plaintiff cites to his own counsel's affidavit (and opinions contained therein) as if it were a matter of fact, not just argument. (See e.g. plaintiff's opposition to defendants summary judgment motion, p. 10). The only logical reason plaintiff has filed Ms. Coyne's affidavit (rather than including the contents of her affidavit as argument in the body of the Opposition) is so he could make an "evidentiary" citation by citing to the affidavit, attempting to create an "issue of fact" sufficient to overcome summary judgment.[9] It is the factual representations contained in Ms. Coyne's affidavit – not the argument – that is improper.

Even if Coyne had cold hard fact to present to the Court, she, as counsel, cannot overstep her role as advocate in order to provide factual testimony for her client. Plaintiff does not truly address this point, and, as such, defendants refer the Court to its motion papers, pp. 16-17.

**C.   Ms. Coyne has Waived any Privilege Protecting her Work Product**

Plaintiff claims, without analysis or legal authority, that any meetings or discussions she had with Ms. Ceneviva, or any materials related to those discussions, constitute attorney work product and

---

[9] No doubt, if defendants were to submit evidence contradicting plaintiff's theories as to Dale Ceneviva's termination and re-hire (as they are quite incorrect), plaintiff would certainly claim this is an issue of fact that should preclude summary judgment. Thus, it defies logic that plaintiff now claims that Ms. Coyne's affidavit is not being relied upon as evidence.

7

thus are not subject to discovery or disclosure. (See Opposition, p. 7).[10] While Fed. R. Civ. P. 26(b)(3) protects from disclosure documents prepared by or for a party in anticipation of litigation, or that reflect the mental impressions, conclusions, opinions, or legal theories of an attorney concerning the litigation, see United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998), the work product doctrine does not shield what has already been the subject of voluntary disclosure or testimony – here, by the very attorney that now seeks to protect it. See, e.g., Black and Decker, Inc. and CIC Int'l Corp. v Hoover Service Center, et al., CVH-87-851(WWE), 1990 U.S. Dist. LEXIS 15599, *9-11 (D. Conn. Nov. 5, 1990) (party cannot "inject [privileged] testimony into the proceedings for its benefit and then assert a claim of privilege as to those same issues"). Ms. Coyne cannot simultaneously use her conversation(s) with Ms. Ceneviva as "evidence," yet attempt to shield it under the rubric of work product.[11] Frankly, defendants do not believe that Ms. Coyne's thoughts, conclusions or other opinions have the slightest bit of evidentiary weight in this matter, which is why, of course, defendants have moved to preclude this "evidence." However, to the extent that it remains in this case for the Court's consideration, defendants should be entitled to fully review the "evidence," cross-examine Ms. Coyne on the complete conversation and take any other proper course of action to probe the accuracy of Ms. Coyne's testimony.

Plaintiff claims that a party need not rely upon actual evidence in order to overcome a properly supported summary judgment motion. As set forth in defendants' motion papers, p. 6, this

---

[10] Plaintiff claims that his counsel's contact with Dale Ceneviva cannot be considered an ex-parte contact because Ms. Ceneviva is not currently a manager. Ms. Ceneviva was a manager. (Deposition of Plaintiff, p. 16, attached hereto as Exhibit A). Defendants had not previously challenged plaintiff's contact with Ms. Ceneviva, but plaintiff had not, at that time, taken the position that a Vision Store Manager was a sufficiently high position as to bind the entire company for purposes of a party admission. To extent plaintiff now claims that a statement made by Mr. Ellis, a Vision Store Manager, constitutes a party admission, plaintiff must live with the logical ramifications of this position – namely that Dale Cenviva, as an individual who was once within this group, would be of sufficient authority to bind Wal-Mart. Thus, to the extent plaintiff actually believes that Mr. Ellis can bind Wal-Mart, plaintiff also must believe that Ceneviva can bind Wal-Mart, and therefore should have never contacted her.

[11] Whether Wal-Mart can speak to Ms. Ceneviva is not dispostive of this matter. Plaintiff's counsel has taken it upon herself to offer testimony as to her conversations with her. Thus, to the extent that plaintiff's counsel has had discussions, part of which she has revealed, Wal-Mart should be allowed to explore these in the event Ms. Coyne's testimony is not precluded.

8

is not true. Plaintiff relies on <u>Richardson v. Metropolitan District Commission, et al.</u>, 3:00CV1062(JCH), 2003 U.S. Dist. 12757, *9 (D. Conn., July 23, 2003). This case does not say what plaintiff says it says. Rather, <u>Richardson</u> provides that *admissible evidence need not* be *in the same form* it must be at the time of trial in order to be considered on summary judgment. <u>Id.</u> For example, a properly supported Fed. R. Civ. P. 56(a) statement (formerly Fed. P. Civ. P. 9(c) as cited in <u>Richardson</u>), can be relied upon on summary judgment when the form of the evidence therein may be presented differently at trial. <u>Richardson</u> does not say, as plaintiff claims, that a party can rely upon inadmissible evidence to overcome summary judgment.

    In sum, plaintiff's Opposition fails to set forth any law or facts sufficient to justify his attempts to submit improper, conclusory, and untimely material in an attempt to obfuscate the issues and stave off summary judgment. These attempts should not be allowed by this Court, and the defendants' Motion to Preclude and/or to Strike should be granted.

                                DEFENDANTS WAL-MART STORES INC. and
                                DR. ANTHONY GORDON

                By: _____
                                Mitchell L. Fishberg (ct19661)
                                Kristi E. Mackin (ct23394)
                                Brown Raysman Millstein Felder & Steiner LLP
                                185 Asylum Street, 10th Floor
                                Hartford, CT 06103
                                (860) 275-6400
                                Joel L. Finger (ct06114)
                                Brown Raysman Millstein Felder & Steiner LLP
                                900 3rd Avenue
                                New York, NY 10022

## CERTIFICATE OF SERVICE

This is to certify that on this 23rd day of April 2004, a true copy of the foregoing was sent via facsimile and first-class mail, postage prepaid, to:

Loraine M. Cortese-Costa, Esq.
Pamela Coyne, Esq.
Durant, Nichols, Houston,
   Hodgson & Cortese-Costa, P.A.
1057 Broad Street
Bridgeport, CT  06804

_Kristi E. Mackin_
Kristi E. Mackin

HARTFORD 84960v3

# EXHIBIT A

```
00001
 1      UNITED STATES DISTRICT COURT
        DISTRICT OF CONNECTICUT
 2
                Case No:  3:03CV144(RNC)
 3

 4  MARVIN KEY,

 5      Plaintiff

 6  VS.

 7  WAL-MART, INC., and ANTHONY GORDON,

 8      Defendants

 9

10      DEPOSITION OF: MARVIN KEY
        DATE: JUNE 24, 2003
11      HELD AT: BROWN, RAYSMAN, MILLSTEIN, FELDER & STEINER
        CITYPLACE II, 185 ASYLUM ST., HARTFORD, CT
12

13  APPEARANCES:

14  Representing the Plaintiff

15  DURANT, NICHOLS, HOUSTON, HODGSON & CORTESE-COSTA
    1057 Broad Street
16  P.O. Box 351
    Bridgeport, CT  06601
17  BY:  Loraine Cortese-Costa, Esq.

18  Representing the Defendants

19  BROWN, RAYSMAN, MILLSTEIN, FELDER & STEINER
    CityPlace II
20  185 Asylum Street
    Hartford, CT  06103
21  BY: Gregory Reilly, Esq.

22  ALSO PRESENT:  Anthony Gordon and Jerry Ellis

23      Reporter:  JUDITH L. FREER, RPR LSR#403
        BRANDON SMITH REPORTING SERVICE
24          44 Capitol Avenue
        Hartford, Connecticut  06106
25          (860) 549-1850
```

00016
1    A    Chris Smith, vision center. I think he
2 was the district manager or Jerry's boss at the
3 time.
4    Q    Anybody else?
5    A    Dale Ceneviva.
6    Q    What was Mr. Ceneviva's position?
7    A    Dale. It's a girl.
8    Q    What was her position?
9    A    Store manager.
10   Q    Anybody else?
11   A    Dimitri Roythman. He was a professional
12 licensed opposition.
13   Q    Anybody else?
14   A    Let's see. Can you read back who I have
15 said so far?
16        MS. CORTESE-COSTA: I can show you.
17   A    Jenny Lou Zboray. And, let's see --
18   Q    Are those the names of all the people you
19 can recall speaking with concerning your lawsuit?
20   A    That are Wal-Mart employees or something,
21 yes. Yes.
22   Q    Okay. Mr. Knoll, what's his race?
23   A    What's his what?
24   Q    Race?
25   A    I think he would probably, if I asked him,