# EXHIBIT G

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------- x
MARVIN KEY,

        Plaintiff,

        v.

WAL-MART, INC. and DR. ANTHONY GORDON,

        Defendants.
---------------------------------------- x

CIVIL ACTION NO.:
3:03CV144(RNC)

DECEMBER 3, 2003

## DECLARATION OF CHRISTOPHER ADKINS

I, Christopher Adkins, deposes and says:

1. I am a Vision Manager for Wal-Mart in Virginia. Prior to my transfer to Virginia, I was a District Manager for Wal-Mart Vision in Connecticut responsible, among other things, for overseeing Vision Center operations at Wal-Mart's North Windham store (the "Store") where Plaintiff Marvin Key ("Plaintiff") was employed as an optician. I was the District Manager at the time of Plaintiff's termination from the Store. I am fully familiar with the facts set forth herein.

2. During the course of my duties, I spoke with Plaintiff on several occasions.

3. I understand that Plaintiff asserts in this case that he is the victim of race discrimination because he is an African-American. During Plaintiff's employment with Wal-Mart, Plaintiff never once complained to me of alleged race discrimination.

4. Likewise, I understand that Plaintiff asserts that he was terminated in violation of public policy because Wal-Mart required him to perform duties he alleges were beyond the scope

of his Connecticut optician license. During Plaintiff's tenure at the North Windham store Plaintiff never raised such an allegation with me (or anyone else as far as I know), and he certainly never refused to perform his assigned job duties on this basis.

5. I do know, however, that one of Plaintiff's co-workers, Optician Jeff Kroll ("Kroll") had earlier raised the issue of whether Wal Mart's opticians could perform pre-tests and vision screenings. Kroll had raised the issue in early 2001 prior to Plaintiff's termination. In response, I investigated the issue by contacting the Connecticut Department of Health ("CTDOH"). CTDOH representatives advised me that Wal Mart could have its opticians (and optician trainees) perform both pre-tests and vision screenings.

6. I also was advised by the CTDOH representatives that the only restriction was that an optometrist, such as Dr. Gordon, had to be available in the Vision Center to instruct and supervise the pre-testing as necessary. I cannot recall the names of all the CTDOH personnel I spoke with.

## VERIFICATION PURSUANT TO 28 U.S.C §1746

I declare on this 3rd day of December, 2003, under the penalty of perjury that the foregoing is true and correct.

Christopher Adkins