FILED

2004 OCT 15 P 12: 02

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARVIN KEY, | : |
| | : CIVIL ACTION NO. |
| Plaintiff, | : 3:03CV144 (RNC) |
| | : |
| v. | : |
| | : |
| WAL-MART AND DR. GORDON, | : |
| | : |
| Defendants. | : OCTOBER 14, 2004 |

**PLAINTIFF'S MOTION FOR RECONSIDERATION**

Plaintiff, Marvin Key, by and through his undersigned counsel, hereby moves for reconsideration of this Court's Order dated September 29, 2004 (the "Order"), granting Defendants' Motion for Summary Judgment with respect to Count One (discharge in violation of public policy) and Count Three (negligent misrepresentation). The grounds for reconsideration are fully set forth below.

**I.    COUNT ONE -- DISCHARGE IN VIOLATION OF PUBLIC POLICY**

   A.    **No Connecticut Court Has Ever Held That A Public Policy Must Be "Clearly Established" To Sustain A Wrongful Discharge Claim Based On That Policy**

The Order granting Wal-Mart's motion for summary judgment as to Count One stated that "Connecticut recognizes a cause of action for wrongful discharge under the 'public policy exception' to at-will employment if the discharge derives from a violation of 'important' and 'clearly established' public policy." (*See* Order at p. 3, *purporting to quote, Thibodeau v. Design*

*One Architects*, 260 Conn. 691, 701 (2002)). However, the Connecticut Supreme Court in *Thibodeau* did not state that the public policy must be "clearly established," only that it must be "clearly articulated." *See Thibodeau*, 260 Conn. at 701.[1] The *Thibodeau* court cited several cases which were rejected for failure to state a claim for wrongful discharge "predicated upon an employer's violation of an important and clearly articulated policy," and found that "[i]n each such instance, we found no *statutorily based expression of public policy* sufficient to warrant an exception to the at-will employment doctrine." *Id.* (emphasis added).

Indeed, it was not clearly established under Connecticut law that a military employer's direction to its employee to provide training at a military installation overseas could be considered violative of a Connecticut public policy requiring employers to provide a safe workplace when the Connecticut Supreme Court so decided in *Parsons v. United Technologies Corp.*, 243 Conn. 66, 80 (1997) (citing cases from other states in support of its recognition of public policy under Connecticut law).

Further, a 2003 decision by this Court found the Rules of Professional Conduct to be a sufficient source of public policy to support a claim for wrongful discharge by an attorney, despite the fact that the rules "explicitly state that they are not intended to be a basis for civil liability," and "no Connecticut cases provide[ed] guidance on the issue." *Lewis v. Nationwide Mut. Ins. Co.*, No. 3:02CV512(RNC), 2003 WL 1746050, at * 1-2 (D. Conn. Mar. 18, 2003)

---

[1] Research has uncovered no case in which the Connecticut Supreme Court or any Connecticut Court has held that the public policy advanced in support of a wrongful discharge claim must be "clearly established."

(copy attached). Just as the Rules of Professional Conduct "embody a public policy of sufficient clarity or consequence to justify a claim for wrongful discharge against a lawyer's employer," the licensing laws governing Optometrists and Opticians and their attempt to delineate what duties are appropriate for each to perform and under what circumstances embody a public policy that is both "important" and "clearly articulated" enough to support a claim for wrongful discharge if a plaintiff can provide evidence that he was discharged as a result of his employer's desire to override them which Plaintiff has.[2]

Similarly, the Connecticut Unfair Trade Practices Act ("CUTPA") clearly articulates the public policy of this State against "unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. §42-110b(a). If a plaintiff, as here[3], points to evidence that his discharge was a direct result of an employer's commission of such acts, Connecticut precedent does not require that his wrongful discharge claim be dismissed because it has not been "clearly established" that the deceptive and unfair acts which Plaintiff alleges and has pointed to evidence of constitute a violation of CUTPA. Whether there is sufficient evidence at trial to prove that the acts violate the public policies expressed in the licensing statutes and/or CUTPA and resulted in Plaintiff's discharge are questions for the jury. *Parsons*, 243 Conn. at 86.

---

[2] *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and in Reply to Defendants' Opposition to Plaintiff's Motion for Summary Judgment, pp. 11-12 (hereinafter "Pl. Opp., p. __"). *See also* Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, pp. 12-13 (hereinafter "Pl. Mem., p. __").

[3] *See* Pl. Opp., pp. 17-19; Pl. Mem., pp. 13-17.

### B.    Plaintiff's Wrongful Discharge Claim Is Not Covered By Conn. Gen. Stat. § 31-51m

Apparently recognizing that Plaintiff has pointed to sufficient evidence of a claim that he was discharged due to Wal-Mart's fear that he would make a report to the Connecticut Department of Health[4], the Order further states that Plaintiff could have pursued that claim under Connecticut's Whistleblower statute, thereby preempting his wrongful discharge claim on that basis (Order, p. 4).

Connecticut's Whistleblower Statute provides:

> No employer shall discharge, discipline or otherwise penalize any employee because the employee, or a person acting on behalf of the employee, *reports*, verbally or in writing, a violation or a suspected violation of any state or federal law or regulation or any municipal ordinance or regulation to a public body. . . .

---

[4] It has been held that an employer's fear that an employee would report its wrongdoing to the proper authorities is sufficient for a wrongful discharge public policy claim. *See Taylor v. Hall Neighborhood House, Inc.*, No. CV98356027S, 1999 WL 185142, at * 1 (Conn. Super. Mar. 17, 1999) (copy attached). Plaintiff herein presented sufficient evidence regarding Wal-Mart's fear that he either had reported, or would make a report, to the Department of Public Health ("DPH"). *See* Pl. Opp., p. 6-8, 10-11. First, on January 5, 2001, Plaintiff's supervisor, Jerry Ellis gave him a favorable performance evaluation for the period through February 7, 2001. (*See* Exhibit 4 to Ellis dep., attached as Exhibit 3 to Pl. Opp., and attached hereto as Exhibit A) Second, on February 14, 2001, Mr. Ellis wrote in his Day Planner/diary:

> * Phyllis told me that the dept of Public health called at 7PM inquiring what time an optician worked today and what time they left. Phyllis asked why they were inquiring. They said they were doing a servey [sic]. (Marvin?) Marvin and Dave knew no optician wasn't [sic] going to be in Wed morning because they wouldn't come in to cover the shift.

(Wal-Mart doc. no. 974; Exhibit 5 to Pl. Opp., and attached hereto as Exhibit B) Third, on April 6, 2001, Jerry Ellis noted in his Day Planner that "[w]e need to make sure all CT stores are at state standards for when Marvin (Plaintiff) gets terminated he doesn't cause any trouble." (Wal-Mart doc. no. 1089; Exhibit 5 to Pl. Opp., and attached hereto as Exhibit C). Fourth, on April 27, 2001, Plaintiff was terminated allegedly due to a customer report regarding his performance of some of the very duties at issue in his wrongful discharge public policy claim.

- 4 -

Conn. Gen. Stat. § 31-51m(b) (emphasis added). This statute by its terms protects only those employees who are disciplined or discharged after having actually reported an employer's violation, or suspected violation to a public body. There is no dispute that Plaintiff made no such report prior to his discharge, but there is evidence that Wal-Mart feared he would. Under these circumstances, the whistleblower statute never applied to Plaintiff and cannot preempt his wrongful discharge claim. *Cf. Taylor, supra* (plaintiff's public policy discharge claim sustained based upon public policy against discharge for fear that employee would complain to the oversight agency about agency's management; claim not preempted by statutes which require an actual expression of complaint).

## II. THE COURT OVERLOOKED PLAINTIFF'S EVIDENCE OF THE SPECIFIC INSTRUCTIONS GIVEN BY WAL-MART IN SUPPORT OF HIS CLAIM OF NEGLIGENT MISREPRESENTATION IN COUNT THREE

In granting Wal-Mart's motion for summary judgment and denying Plaintiff's motion for summary judgment as to Count Three, the Court stated that Plaintiff failed to cite evidence in the record showing the content of the representations made to Plaintiff, "when it encouraged him to consult Gordon on questions relating to vision testing." (*See* Order, pp. 5-6 and 10). Plaintiff respectfully directs the Court's attention to his Local Rule 56(a)(2) Statement, and specifically to Paragraph 13 of his "Disputed Issues of Material Fact," which incorporates "[a]ll of the issues

raised in Plaintiff's Rule 56(a)(1) Statement to his motion for summary judgment . . . ." (Plaintiff's Local Rule 56(a)(2) Statement, ¶ 13, p. 19.[5]) Plaintiff's Local Rule 56(a)(1) Statement provides in pertinent part:

> 17. Ellis testified that all vision center employees are told to ask the Optometrist questions whenever they are unsure about vision testing. (Ellis Dep., pp. 29-30). The Wal-Mart Academy of Vision training manual directs employees to "discuss the doctor's preferences prior to beginning the pre-testing process." (Exhibit 4, p. 162).

(*See* Plaintiff's Local Rule 56(a)(1) Statement, p. 4.) (Copies of cited evidence attached hereto as Exhibits D and E.)

Wal-Mart's Academy of Vision training materials directs employees, as follows:

> Every doctor may have a different format or preference for taking a case history and the preliminary exam process. You should discuss the doctor's preferences prior to beginning to the pre-testing process.

(Wal-Mart doc. no. 656, attached hereto as Exhibit E) In addition to the training manual, Plaintiff's supervisor, Jerome Ellis testified as follows:

> Q. Do the associates that do the pretesting have any resource if they have questions regarding --
>
> A. Sure.
>
> Q. What do they do if they have any questions?

---

[5] Plaintiff acknowledges that the reference back to his Rule 56(a)(1) statement may have resulted in the oversight of Plaintiff's evidence in this regard, however, the reference back was a direct result of Wal-Mart's combining its opposition to his motion for summary judgment with its own motion for summary judgment, a maneuver which Plaintiff opposed (see Plaintiff's Memorandum In Support of Motion to Strike dated December 9, 2003, p. 5 n. 20).

- 6 -

>           A.    If they have any questions, there's other opticians there. There's also a doctor there if they need to ask him something.
>
>           Q.    Are the associates told that it's okay to ask the doctor if they have any questions?
>
>           A.    Oh, of course. Sure.
>
>           Q.    And that was true at the North Windham store as well.
>
>           A.    Sure.

(Ellis Dep., pp. 29-30, attached hereto as Exhibit D.)

Plaintiff was clearly instructed to direct "any questions" to Dr. Gordon and that it was okay to do so. Such evidence -- Wal-Mart's training materials and a manager's sworn testimony -- is clearly sufficient to establish that such representations were in fact made and what their content was. That Plaintiff was discharged as a result of a customer report which expressly states that it was made because Plaintiff asked those questions is also not in dispute. (See Defendants' Local Rule 56(a)(1) Statement, ¶ 66; Memorandum of Law in Support of Defendants' Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Partial Summary Judgment, pp. 9, 33; Reply Brief in Further Support of Defendants' Motion for Summary Judgment, p. 1; Morales dep., pp. 19-20, attached hereto as Exhibit F, and Exhibit 6 thereto, attached as Exhibit 4 to Pl. Opp., and attached hereto as Exhibit G; Noll dep., pp. 19-20, attached to Pl. Opp. as Exhibit 15, and attached hereto as Exhibit H.) Accordingly, Plaintiff respectfully requests this Court to reconsider its grant of Wal-Mart's summary judgment motion as to Count Three and its denial of Plaintiff's motion for summary judgment on that claim.

Done at Bridgeport, Connecticut, this 14th day of October, 2004.

                                          */s/ Pamela J. Coyne*
Pamela J. Coyne
Federal Bar No. ct22941
DURANT, NICHOLS, HOUSTON,
HODGSON & CORTESE-COSTA, P.C.
1057 Broad Street
Bridgeport, CT 06604
(203) 366-3438
ATTORNEYS FOR PLAINTIFF

## CERTIFICATION

I hereby certify that I have caused to be served this 14th day of October, 2004, the above and foregoing by United States mail, certified mail, return receipt requested, on the following counsel and *pro se* parties of record:

Joel Finger, Esq.
Brown Raysman Millstein Felder & Steiner LLP
900 Third Avenue
New York, NY 10022

Kristi Mackin, Esq.
Mitchell L. Fishberg, Esq.
Brown Raysman Millstein Felder & Steiner, LLP
CityPlace II
10th Floor
185 Asylum Street
Hartford, CT  06103

_____
Pamela J. Coyne

P:\lit\pjc\523818\001\00042691.DOC