# EXHIBIT F

Page 1

1   IN THE UNITED STATES DISTRICT COURT
2   FOR THE DISTRICT OF CONNECTICUT
3
4   ------------------------------x
5   MARVIN KEY,                    :
6        Plaintiff,                : Civil Action No.
7            -v-                   : 3:03 CV 144 (RNC)
8   WAL-MART, INC., AND,           :
9   DR. ANTHONY GORDON,            :
10  Defendants.                    :
11  ------------------------------x
12
13
14       Deposition of EDGAR MORALES, taken
15  pursuant to the Federal Rules of Civil Procedure,
16  at the law offices of Durant, Nichols, Houston,
17  Hodgson & Cortese-Costa, 1057 Broad Street,
18  Bridgeport, Connecticut, before James A. Martone,
19  LSR and Notary Public, in and for the State of
20  Connecticut, on October 14, 2003 at 3:20 p.m.
21
22
23
24
25

ORIGINAL

```
 1      A.    Yes.
 2      Q.    What did you say?
 3      A.    I felt that Marvin Keys should be
 4   terminated.
 5      Q.    And what were your reasons for feeling
 6   that way?
 7      A.    The customer complaint, and having
 8   coachings in the past for the same problem.
 9      Q.    And did Mr. Noll say anything else?
10      A.    He let me know that I could go forward
11   with what I wanted to do.
12      Q.    And what was the next thing that you did
13   with respect to that?
14      A.    I terminated Marvin Keys.
15      Q.    Did you speak with Mr. Key about the
16   situation prior to terminating him?
17      A.    I remember bringing him into -- asking
18   him into the office.  Explaining to him that, you
19   know, I was very sorry for what I would have to do,
20   but it was my job to do it.
21      Q.    And just going back to my question, did
22   you speak with Mr. Key about the situation before
23   you terminated him?
24            MR. REILLY:  Objection.  What
25   situation?
```

```
 1      Q.    The customer complaint?
 2      A.    I spoke to him when I brought him in to
 3   terminate him.
 4      Q.    Did you speak with anyone else regarding
 5   the customer complaint prior to terminating
 6   Mr. Key, other than what you've already testified
 7   about with respect to Mr. Noll?
 8            MR. REILLY:  And Mr. Ellis?
 9      A.    I let Mr. Ellis know as well.
10      Q.    What did you say to Mr. Ellis?
11      A.    That I'd be terminating Marvin Key.
12      Q.    Anything else?
13      A.    I can't remember everything that I told
14   him.
15      Q.    Can you remember anything else that you
16   told him?
17      A.    No.
18      Q.    And what was Mr. Ellis' response?
19      A.    He was fine with my decision.
20      Q.    And other than Mr. Noll and Mr. Ellis,
21   did you speak with anyone else before terminating
22   Mr. Key?
23      A.    I can't remember if I got ahold of the
24   district manager or regional manager.
25      Q.    And who was the regional manager at that
```

1  purpose was in doing it?
2      A.    No.
3              MS. CORTESE-COSTA:    I have nothing
4  further.  Thank you.
5
6
7              (Time noted: 4:31 p.m.)
8
9
10
11
12                    EDGAR MORALES
13
14           SUBSCRIBED AND SWORN TO BEFORE ME, the
15  undersigned authority, on this
16  the         day of                      , 2003.
17
18
19
20
21
22
23
24
25

# CERTIFICATE

I hereby certify that I am a Notary Public, in and for the State of Connecticut, duly commissioned and qualified to administer oaths.

I further certify that the deponent named in the foregoing deposition was by me duly sworn and thereupon testified as appears in the foregoing deposition; that said deposition was taken by me stenographically in the presence of counsel and reduced to print under my direction, and the foregoing is a true and accurate transcript of the testimony.

I further certify that I am neither of counsel nor related to either of the parties to said suit, nor am I interested in the outcome of said cause.

Witness my hand and seal as Notary Public this __30__ day of __October__, 20__03__

_____
NOTARY PUBLIC

My Commission Expires:

4/2008

# EXHIBIT G

Case 3:03-cv-00144-RNC   Document 140-3   Filed 10/15/2004   Page 7 of 15

WMP-20 Revised 07/00

# EXIT INTERVIEW

An Exit Interview is to be conducted for all Associates leaving the employment of Wal★Mart Stores, Inc.

Associate Name: **Marvin Key**   Social Security No.: **860-892-6302**
Associate ID No.: _____   Facility/Dept./Store #: _____   ☒ Hourly ☐ Management
Actual Last Day Worked: _____   Date of Termination: _____   Vacation Avail (Mgmt. Only): _____
Updated Address and Phone Number: _____

**Detailed Statement of Termination.** This Section Needs To Be Completed By The Associate for Voluntary Termination or By The Supervisor for Involuntary Termination. (Please be specific.)

Poor and Unproffesional Customer Service. Marvin has had a Written Coaching and a Decision-Making Day for poor Customer Service in the past and was let know that if it continued he would be terminated. I Edgar Morales - Co-Manager Recieved a complaint from a customer on Friday April 27th 2001. Customer complained of Marvins poor Customer Service and not being Proffecie[...]

### VOLUNTARY TERMINATION
(Eligible to re-apply)

- 03 ___ Not Available For Work (NVL)
- 04 ___ Failure to Return From L.O.A. (NRL)
- 05 ___ Refused Offer of Work (ROW)
- 06 ___ Job Abandonment/Three Days Unreported Absence (DUA)
- 10 ___ To Leave the Area (LTA)
- 16 ___ Child Care/Dependent Care Issues (CHI)
- 17 ___ Due to Health (DTH)
- 20 ___ Dissatisfied with Work Hours (HRS)
- 21 ___ Dissatisfied with Salary (PAY)
- 22 ___ Dissatisfied with Working Conditions (WOR)
- 24 ___ Dissatisfied with Benefits (BEN)
- 25 ___ Dissatisfied with Career Opportunities (PRM)
- 28 ___ Dissatisfied with Supervisor (SUP)
- 29 ___ Walked Off Job (WOJ)
- 30 ___ Stay at Home (SAH)
- 31 ___ Attend School (EDU)
- 85 ___ Retirement (RTD)

### INVOLUNTARY TERMINATION
(Eligible to re-apply)

- 37 ✗ Misconduct w/Coachings (CON)
- 47 ___ Excessive Absences and/or Tardies (EAT)
- 53 ✗ Insubordination (INS)
- 55 ✗ Inability to Perform Job (IPJ)
- 66 ___ 1st Violation of Fraternization Policy (FVP)
- 75 ___ Deceased (Call Profit Sharing & Life Ins.) (DEA)
- 92 ___ Lack of Work (Job Eliminated, Location Closed, Reduction in Force) (LOW)
- 97 ___ End of Temporary Assignment (ASC)

### INVOLUNTARY TERMINATION
(Mandatory No Rehire)

- 78 ___ Gross Misconduct – Integrity Issue (Theft, Violent Act, Dishonesty, Misappropriation of Company Assets)(GMI)
- 79 ___ Gross Misconduct – Other (GMO)
- 99 ___ 2nd Violation of Fraternization Policy (FRA)

Re-Hire Recommended ☐ Yes ☐ No (Explain-General Comments) _____

The following Wal★Mart property must be collected at the time of Exit Interview: (Please check all that apply)
( ) Badge   ( ) Discount Card(s)   ( ) Weight Belt   ( ) Other _____
( ) Smock   ( ) Company Credit Cards/Phone card   ( ) Box Cutter

**NOTE:** To be considered for re-employment, you must re-apply. Your previous work record with Wal★Mart will be reviewed. The Company assumes no obligation to contact you for possible re-employment.

IN PROTEST

_Marvin K_ 4/30/01   _Edgar Morales_ 4/30/01   _[signature]_ 4/30/01
ASSOCIATE / DATE   SUPERVISOR / DATE   WITNESS / DATE

MK 4-30-01

Contact phone numbers for Terminating Associates:

- COBRA — Continuation of Benefits — (800) 421-1362
- DISCOUNT CARD – RETIREE — Application Information — (501) 273-4664
- PROFIT SHARING — Automated Account Balance — (501) 273-4240
- — Customer Service — (501) 273-4664
- RESOURCES FOR LIVING — Counseling Service — (800) 825-3555
- STOCK OWNERSHIP — Account Information — (800) 438-6278
- 401K — Account Information — (888) WMT-401K / (888) 968-4015

PLAINTIFF'S EXHIBIT 630 10-14-03

# Important Exit Interview Information

- Complete an Exit Interview Form when an Associate terminates their employment with Wal-Mart (whether voluntary or involuntary).

- The Associate and a Member of Management should complete the form together. If the Associate is unable or unwilling to come to the facility to complete the form, the information should be covered with the Associate over the telephone. The Personnel Manager and a Member of Management should complete the phone call and sign the Exit Interview form. The form should be marked indicating the information was covered by phone and the Associate was not available to sign.

- **Associate ID Number** is for facilities on the PeopleLink System.

- **Actual Last Day Worked** is the last day the Associate performed work for the Company, unless it is a Leave of Absence or three days unreported absence. With an L.O.A., the last day worked is the date the Leave expires or the date the Associate notified Wal-Mart that they will not be returning, whichever comes first. The third day of a three-day unreported absence would be the date listed as the Actual Last Day Worked. In the event of death, the termination date SHOULD BE THE DATE OF DEATH, unless the Associate separates from the Company prior to death.

- **Date of Termination** is the first day the Associate is no longer employed and benefits are no longer available.

- **Detailed Statement of Termination** is to be completed by the ASSOCIATE FOR VOLUNTARY TERMINATION OR by the SUPERVISOR FOR INVOLUNTARY TERMINATION.

- **Re-hire Status** determines if the Associate is eligible to reapply. The Associate is considered eligible to reapply unless they are being terminated for **Code 78, Code 79 or Code 99**. The mandatory no re-hire status is permanent.

- **Re-hire Recommended** is the Supervisor's recommendation if the Associate should be rehired. The recommendation should be specifically based upon the Associate's work history and work performance. An Associate may be considered eligible to reapply but listed as not recommended. The facility considering a former Associate for re-hire is responsible to determine if they would rehire this person based on all the information available.

- **Gross Misconduct – Integrity** is defined as any issue related to theft, integrity, harassment, any act of violence, or misappropriation of company funds or assets. Associates terminated for Gross Misconduct will not be eligible for COBRA benefits or performance incentives. Management Associates terminated for Gross Misconduct – Integrity will not be eligible for vested Stock Options.

- **Gross Misconduct – Other** is other acts of Gross Misconduct that are not an integrity issue.

- Collect all Wal-Mart Property and Obtain Signatures.

- A copy of this Exit Interview should be given to the terminating Associate upon request.

# EXHIBIT H

Page 1

1  IN THE UNITED STATES DISTRICT COURT

2  FOR THE DISTRICT OF CONNECTICUT

3

4  ----------------------------x    **ORIGINAL**

5  MARVIN KEY,                  :

6      Plaintiff,               : Civil Action No.

7      -v-                      : 3:03 CV 144 (RNC)

8  WAL-MART, INC., AND,         :

9  DR. ANTHONY GORDON,          :

10 Defendants.                  :

11 ----------------------------x

12

13

14     Deposition of ROGER NOLL, taken

15 pursuant to the Federal Rules of Civil Procedure,

16 at the law offices of Durant, Nichols, Houston,

17 Hodgson & Cortese-Costa, 1057 Broad Street,

18 Bridgeport, Connecticut, before James A. Martone,

19 LSR and Notary Public, in and for the State of

20 Connecticut, on October 14, 2003 at 4:38 p.m.

21

22

23

24

25

SANDERS, GALE & RUSSELL                          (203)624-4157

1   related testing being performed within the North
2   Windham store?
3       A.   Yes.
4       Q.   Are you aware of customers receiving free
5   screenings for vision?
6       A.   Yes.
7       Q.   And where have those been conducted?
8       A.   I assume in the Vision Center.
9       Q.   Was there ever a time at the North
10  Windham store, when they were being conducted at
11  the entrance to the store?
12      A.   I don't know.
13      Q.   And were you involved in any way with the
14  termination of Marvin Key's employment from the
15  North Windham store?
16      A.   Yes, I was.
17      Q.   And what was your involvement with that?
18      A.   I made the final decision.
19      Q.   How was it brought to your attention that
20  there was an issue involving Mr. Key that required
21  you to make a decision as to his termination?
22      A.   Edgar Morales came to me with the
23  complaint.
24      Q.   And what kind of complaint was that?
25      A.   That a customer was upset in the Vision

```
 1   Center, in the way they were treated.
 2        Q.   And what did Mr. Morales say to you when
 3   he came to you with that complaint?
 4        A.   He was upset that Marvin had not given
 5   good customer service, and wanted to terminate him.
 6        Q.   I'm sorry?
 7        A.   And wanted to terminate him.
 8        Q.   Did he say anything else?
 9        A.   I don't remember.  Exact details.
10        Q.   Did you say anything in response?
11        A.   I don't recall exactly what I said.
12        Q.   Is there anything that would help you to
13   recall that?
14        A.   I --
15        Q.   Did you take any notes of anything
16   involving Mr. Key?
17        A.   No.
18        Q.   Is there anything else that might help
19   you recall that?
20        A.   Possibly.
21        Q.   And what might that be?
22        A.   I don't know.
23        Q.   So after Mr. Morales brought you the
24   complaint, did you take any action?
25        A.   We discussed his termination.
```

Case 3:03-cv-00144-RNC   Document 140-3   Filed 10/15/2004   Page 14 of 15

KEY v. WAL-MART                                                October 14, 2003

Page 33

```
1       A.    No.
2       Q.    And I take it records are not kept of
3  such complaints?
4       A.    No.
5             MS. CORTESE-COSTA:  That's all I
6  have.  Thank you.
7             MR. REILLY:  Thank you.
8
9             (Time noted: 5:35 p.m.)
10
11
12
13
14
15
16                  ROGER NOLL
17
18        SUBSCRIBED AND SWORN TO BEFORE ME, the
19  undersigned authority, on this
20  the       day of                    , 2003.
21
22
23
24
25
```

# CERTIFICATE

I hereby certify that I am a Notary Public, in and for the State of Connecticut, duly commissioned and qualified to administer oaths.

I further certify that the deponent named in the foregoing deposition was by me duly sworn and thereupon testified as appears in the foregoing deposition; that said deposition was taken by me stenographically in the presence of counsel and reduced to print under my direction, and the foregoing is a true and accurate transcript of the testimony.

I further certify that I am neither of counsel nor related to either of the parties to said suit, nor am I interested in the outcome of said cause.

Witness my hand and seal as Notary Public this _30_ day of _October_, 20_03_

_____
NOTARY PUBLIC

My Commission Expires:

4/2008