# CASE APPENDIX

Motions, Pleadings and Filings

United States District Court,
D. Connecticut.

Larry H. LEWIS, Plaintiff,
v.
NATIONWIDE MUTUAL INSURANCE CO., Defendant.

No. 3:02CV512 (RNC).

March 18, 2003.

*RULING AND ORDER*

CHATIGNY, J.

**\*1** Plaintiff Larry H. Lewis, a member of the Connecticut Bar, was employed by defendant Nationwide Mutual Insurance Company ("Nationwide") on a full-time basis to defend its insureds against liability claims. He brings this action alleging that in his last year with the Company, he was demoted, harassed, and eventually fired because he refused to permit the Company to interfere with his exercise of independent professional judgment on behalf of insureds. Nationwide has moved to dismiss counts one and five of the fourth amended complaint, which allege wrongful discharge in violation of public policy and intentional infliction of emotional distress. Under Fed.R.Civ.P. 12(b)(6), the issue presented by the motion is not whether Lewis is likely to succeed on his claims but whether his allegations entitle him to an opportunity to proceed. I conclude that his allegations are sufficient.

1. *Wrongful Discharge in Violation of Public Policy*

Connecticut law recognizes that an employer's discretion to terminate an at-will employee does not shield it from tort liability for terminating an employee in violation of public policy. See *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 475 (1980). This exception to the at-will rule is available to employees only when they can prove that the public policy at issue is clear and other means of vindicating the affected interests of the employee and the public are unavailable. See generally *Burnham v. Karl & Gelb, P.C.*, 252 Conn. 153, 159-60 (2000); *Morris v. Hartford Courant Co.*, 200 Conn. 676, 679-80 (1986). In such a case, the interests served by permitting the cause of action outweigh the risks of unduly infringing on managerial discretion and fomenting unwarranted litigation. See *Sheets*, 179 Conn. at 477; *Antinerella v. Rioux*, 229 Conn. 479, 492 (1994).

Plaintiff bases his cause of action on Nationwide's insistence that he compromise his duty of loyalty to insureds under Rules of Professional Conduct 1.8(f)(2) [FN1] and 5.4(c). [FN2] Nationwide contends that the Rules of Professional Conduct may not be used as a basis for civil liability, and that the Rules it allegedly violated do not provide a clear public policy mandate in the employment context. In addition, it contends that plaintiff could have vindicated any legitimate public policy concerns by filing a grievance against another in-house lawyer who allegedly pressured him to violate his professional responsibilities, and by filing a

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2
2003 WL 1746050 (D.Conn.), 19 IER Cases 1470
**(Cite as: 2003 WL 1746050 (D.Conn.))**

complaint of unfair insurance practices with the Insurance Commissioner. Plaintiff responds that Nationwide's alleged conduct plainly violates well-established public policy and neither his interest nor the public interest could be vindicated by other means.

> FN1. "A lawyer shall not accept compensation for representing a client from one other than the client unless ... [t]here is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship."

> FN2. "A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services."

Whether the Rules of Professional Conduct can provide a basis for a cause of action for wrongful discharge appears to be an open question in most jurisdictions, including Connecticut. The parties cite, and independent research discloses, no Connecticut case providing guidance on the issue. A few cases from other jurisdictions recognize that, in appropriate circumstances, a staff lawyer who is fired for refusing to violate a disciplinary rule may have a remedy against the employer in tort. See *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852 (Tenn.2002); *GTE Prods. Corp. v. Stewart*, 653 N.E.2d 161 (Mass.1995); *General Dynamics Corp. v. Rose*, 876 P.2d 487 (Cal.1994). An older line of cases, culminating in *Balla v. Gambro, Inc.*, 584 N.E.2d 104 (Ill.1991), refused to permit in-house counsel to bring such claims, primarily because of concerns about the attorney-client relationship. These cases are distinguishable from the present one insofar as Nationwide was not Lewis's client.

*2 Defendant emphasizes that the Rules of Professional Conduct explicitly state that they are not intended to be a basis for civil liability. It is true that violation of a disciplinary rule, in itself, does not give rise to a cause of action against a lawyer. But it does not follow that the Rules nowhere embody a public policy of sufficient clarity or consequence to justify a claim for wrongful discharge against a lawyer's employer. The Rules have been approved and adopted by the judges of the Superior Court to regulate the professional conduct of members of the Bar. It would be surprising if the Supreme Court were to categorically reject them as a source of public policy in the employment context, particularly when lawyers are increasingly employed full-time by corporations.

Defendant's better argument is that the Rules invoked by the plaintiff in this instance are not clear enough to notify insurers of public policy limits on their managerial discretion with regard to staff attorneys representing insureds. This argument has some force because the relationship of insurer, insured, and insurer-retained counsel can give rise to ethical problems for which the law provides no ready answers. See generally Charles Silver & Kent Syverud, *The Professional Responsibilities of Insurance Defense Lawyers*, 45 Duke L.J. 255 (1995); Sharon K. Hall, Note, *Confusion Over Conflicts of Interest: Is There a Bright Line For Insurance Defense Counsel?*, 41 Drake L.Rev. 731 (1992). When a lawyer's ethical responsibilities in a given situation are genuinely debatable, and the lawyer is terminated because he obstinately refuses to comply with directions that conflict with his personal view, the balance of interests outlined above may well dictate that the lawyer has no cause of action. It must be recognized, however, that there may be rare instances when a lawyer is fired for refusing to violate an ethical

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

responsibility that is clear and indisputable. Plaintiff apparently believes this is such an unusual case. On the present record, the possibility that a reasonable jury could agree with him cannot be excluded.

The Connecticut Supreme Court has stated that "even when an insurer retains an attorney in order to defend a suit against an insured, the attorney's only allegiance is to the client, the insured." *Met. Life Ins. Co. v. Aetna Cas. & Sur. Co.*, 249 Conn. 36, 61 (1999) (emphasis omitted). Plaintiff alleges explicitly, or by implication, that Nationwide knew he owed this duty of loyalty to insureds, yet repeatedly pressured him to violate it, then retaliated against him because he refused. Loyalty is an essential element of the attorney-client relationship and, as such, a vital part of our system. Accordingly, I conclude that the Connecticut Supreme Court would recognize the public policy violation asserted here as sufficient to support a wrongful discharge cause of action. [FN3] See *In re Petition of Youngblood*, 895 S.W.2d 322, 328 (Tenn.1995) ("Any policy, arrangement or device which effectively limits, by design or operation, the attorney's professional judgment on behalf of or loyalty to the [insured client] is prohibited by the [Rules], and, undoubtedly, would not be consistent with public policy.").

> FN3. A claim for wrongful discharge is not among the claims subject to a heightened pleading standard under Fed.R.Civ.P. 9(b), and defendant does not argue that plaintiff's claim has not been pleaded with requisite specificity. Rather, defendant argues that plaintiff cannot establish as a substantive element of his claim that he was discharged in violation of a "clear public policy mandate." Def.'s Mem. in Supp. of Mot. to Dismiss at 12-15.

**\*3** This leads to the question whether plaintiff has no cause of action because he could have filed a grievance against the other in-house lawyer or a complaint of unfair insurance practices against Nationwide. Though Nationwide's argument on this score is cast in terms of what the plaintiff could have done in the past, its position appears to be that he has no cause of action because either or both of the proceedings it suggests as alternatives to litigation would be adequate if he were to initiate them now. I do not understand defendant to be advancing an exhaustion-type argument. In other words, I do not understand it to be saying that, although its suggested alternatives may no longer be adequate, they would have been if plaintiff had invoked them as a means of resolving his disagreement with Nationwide before he was fired.

Plaintiff argues persuasively that neither of Nationwide's suggested alternatives is adequate. With respect to his individual interests, it appears to be undisputed that neither alternative could provide him with compensation for the loss of his longtime position with the Company. No Connecticut case requires an employee or the public to accept as a substitute for wrongful discharge litigation a proceeding that fails to offer the employee even the hope of at least some recovery. Cf. *Burnham*, 252 Conn. at 164-66. With regard to the public interest, a grievance would be inadequate because it would be concerned with the alleged pressure exerted by the other lawyer, not the alleged wrongdoing of Nationwide. In due course it may become apparent that an unfair insurances practices complaint could serve to vindicate the public interest to some degree. On the present record, however, it is not clear that Nationwide's alleged misconduct even falls within the scope of the unfair insurance practices condemned by Conn. Gen.Stat. § 38a-816.

*2. Intentional Infliction of Emotional Distress*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 4
2003 WL 1746050 (D.Conn.), 19 IER Cases 1470
**(Cite as: 2003 WL 1746050 (D.Conn.))**

   Claims for intentional infliction of emotional distress are often dismissed at the pleading stage for failure to allege extreme and outrageous conduct. Defendant contends that plaintiff's claim should be dismissed for the same reason. Though the question is admittedly close, I think plaintiff's allegations are at least marginally sufficient to permit a jury to find in his favor on this element of his claim.

   Plaintiff alleges that he was fired on the eve of his family's Christmas vacation, his locked office was broken into while he was away, money he kept in his office was stolen, and his office furniture and other personal possessions were dumped on his front lawn by a moving company, all in violation of an express agreement he made with Nationwide management that he would return to the office to collect his belongings after his vacation. Accepting all these allegations as true, and construing them generously in light of the entire complaint, it is not clear beyond doubt that plaintiff can prove no set of facts consistent with his allegations that would cause a reasonable juror to find in his favor. If a juror were to find that the plaintiff's reasonable expectations were knowingly violated by the Company in a malicious attempt to humiliate him and inflict emotional distress, the juror might well exclaim "Outrageous!" Since that is the test, plaintiff's allegations are sufficient to enable him to proceed with his claim.

   **\*4** For the foregoing reasons, the motion to dismiss is hereby denied.

   2003 WL 1746050 (D.Conn.), 19 IER Cases 1470


Motions, Pleadings and Filings (Back to top)


• 3:02CV00512  (Docket)
(Mar. 22, 2002)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
1999 WL 185142 (Conn.Super.)  
(Cite as: 1999 WL 185142 (Conn.Super.))  
**H**

Page 1

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

Carolyn TAYLOR,  
v.  
HALL NEIGHBORHOOD HOUSE, Inc.

No. CV 98356027S.

March 17, 1999.

Ruling on Defendant's Motion to Strike (# 101)

MOTTOLESE.

*1 *First Count*. Granted. The allegations are insufficient as a matter of law to state a cause of action for intentional infliction of emotional distress. They do not rise to the level of extreme and outrageous conduct nor are there any factual allegations that support the conclusory statement that the plaintiff suffered "extreme emotional distress." *DeLaurentis v. New Haven,* 220 Conn. 225, 266-67, 597 A.2d 807 (1991).

*Second Count.* Same as first count.

*Third Count.* Denied. Even if the employment was "at will" and even if the individual defendant harbored only a perception that the plaintiff would report her deficiencies to DCF, termination of the plaintiff's employment for that reason would violate an articulated public policy that protects an employee's job security from retaliation for reporting employer deficiencies to supervisory authorities. *Sheets v. Teddy's Frosted Foods, Inc.* 179 Conn. 471 (1980); *Morris v. Hartford Courant, Co.,* 220 Conn. 676, 679 (1986).

*Fourth Count.* Denied. It cannot be said as a matter of law that the individual defendant's conduct was not unreasonable, *Parsons v. United Technologies Corp.,* 243 Conn. 66, 88, 89, 700 A.2d 655 (1997).

*Fifth Count.* Denied. Same as fourth count.

1999 WL 185142 (Conn.Super.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.