# EXHIBIT B

# PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

**Plaintiff's Request:    Role Of The Court**

You have now heard all of the evidence in the case as well as the final arguments of the lawyers for the parties.

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you.  If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.

You should not, any of you, be concerned about the wisdom of any rule that I state.  Regardless of any opinion that you may have as to what the law may be -- or ought to be -- it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.[1]

---

[1] 1 l. Sand, *et al.*, Modern Federal Jury Instructions, Instruction 71-2.

**Plaintiff's Request:    Role Of The Jury**

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or functions as jurors. In order for you to determine the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in the objections, or in their questions is not evidence. In this connection, you should bear in mind that a question put to a witness is never evidence, it is only the answer which is evidence. But you may not consider any answer that I directed you to disregard or that I directed struck from the record. Do not consider such answers.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the Plaintiff has proven his case.

I also ask you to draw no inference from the fact that upon occasion I asked questions of certain witnesses. These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses.

You are expressly to understand that the court has no opinion as to the verdict you should render in this case.

     As to the facts, ladies and gentlemen, you are the exclusive judges.  You are to perform the duty of finding the facts without bias or prejudice to any party.[2]

---

[2] 1 L. Sand, *et al.*, Modern Federal Jury Instructions, Instruction 71-3.

**Plaintiff's Request:   What Is And Is Not Evidence**

The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, stipulations, and judicially noticed facts.

By contrast, the question of a lawyer is not to be considered by you as evidence.  It is the witnesses' answers that are evidence, not the questions.  At times, a lawyer on cross-examination may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true.  If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

Testimony that has been stricken or excluded is not evidence and may not be considered by you in rendering your verdict.  Also, if certain testimony was received for a limited purpose -- such as for the purpose of assessing a witness' credibility -- you must follow the limiting instructions I have given.

Arguments by lawyers are not evidence, because the lawyers are not witnesses.   What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict.  However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

Exhibits which have been marked for identification may not be considered by you as evidence until and unless they have been received in evidence by the court.

- 4 -

To constitute evidence, exhibits must be received in evidence. Exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness' recollection.

Finally, statements which I may have made concerning the quality of the evidence do not constitute evidence.

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and exhibits you have seen.[3]

---

[3] *Duke Laboratories, Inc. v. United States*, 222 F.Supp. 400, 405 (D. Conn. 1963); *United States v. Aluminum Co. of America*, 1 F.R.D. 62 (S.D.N.Y. 1939).

**Plaintiff's Request:  Direct and Circumstantial Evidence**

There are two types of evidence which you may properly use in reaching your verdict. Direct evidence is the testimony of one who asserts actual knowledge of a fact, such as an eye witness. Direct evidence may also be in the form of an exhibit where the fact to be proved is the exhibit's existence or condition. Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts and circumstances, where you may infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

Direct evidence of a fact is not required. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.[4]

---

[4] *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960).

**Plaintiff's Request**: **Depositions**

Some of the testimony before you is in the form of deposition testimony that has been received in evidence. A deposition is simply a procedure where the attorneys for one side may question a witness or an adverse party under oath before a court stenographer prior to trial. This is part of the pretrial discovery, and each side is entitled to take depositions. You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given at trial.[5]

---

[5] MFJI, Instruction 74-14 (as modified).

**Plaintiff's Request:  Witness Credibility**

You have had the opportunity to observe all the witnesses.  It is now your job to decide how believeable each witness was in his or her testimony.  You are the sole judges of the credibility of each witness and of the importance of his testimony.

It must be clear to you by now that you are being called upon to resolve various factual issues raised by the parties in the fact of very different pictures painted by both sides.  In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified and any other matter in evidence which may help you decide the truth and the importance of each witness' testimony.

You should use all the tests for truthfulness that you would use in determining matters of importance in your everyday life.  You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.  You should consider the opportunity the witness had to see, hear, and know the things about which he testified, the accuracy of his memory, his candor or lack of candor, the reasonableness and probability of his testimony and its consistency or lack of consistency.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given and all of the other evidence in the case.

- 8 -

Always remember that you should use your common sense, your good judgment and your own

life experience.[6]

---

[6] *Dyer v. MacDougall*, 201 F.2d 265 (2d Cir. 1952); *Arnstein v. Porter*, 154 F.2d 464, 469-70 (2d Cir. 1946); *Duke Laboratories, Inc. v. United States*, 222 F.Supp. 400, 407 (D. Conn. 1963).

**Plaintiff's Request:**    **Adverse Inference Based On Wal-Mart's Failure To Comply With Discovery Obligations**

You have heard that Wal-Mart failed to produce certain evidence as required by law, and failed to produce other evidence in a timely manner.  Mr. Key claims that the evidence was within Wal-Mart's control and argues that Wal-Mart purposely delayed production of such evidence in order to force him to incur more costs in prosecuting his claims and to gain an unfair advantage.  If you find that the evidence was within Wal-Mart's control, that it is relevant to Plaintiff's claims and proving his case, you are permitted, but not required, to infer that the evidence is unfavorable to Wal-Mart.  You may also consider whether Wal-Mart's failure or delay was reasonable and whether its explanation, if any, was satisfactory to you.[7]  The evidence includes:  Mr. Key's personnel file; Mr. Key's former co-worker's personnel files (including disciplinary records); the identity of, and disciplinary action against, similarly situated employees by job title and race/color; the report written by Ms. Nguyen regarding Mr. Key; Mr. Ellis' typewritten notes regarding Mr. Key, Mr. Ellis' Day Planner; identity of the managers to whom Mr. Key reported Dr. Gordon's discriminatory remark; and who actually made the decision to terminate Mr. Key's employment. In addition, you may infer from Wal-Mart's failure to produce certain witnesses under their control to testify at trial that such witnesses would offer

---

[7] *Zimmerman v. Associates First Capital Corp.*, 251 F.3d 376, 383-84 (2d Cir. 2001).

- 10 -

testimony unfavorable to Wal-Mart.  Any inference you decide to draw should be based on all

the facts and circumstances of this case.[8]

---

[8] *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 101 (2d Cir. 2002).

- 11 -

**<u>Plaintiff's Request</u>:   Bias**

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection which the witness may have towards one of the parties.  Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party.

It is your duty to consider whether the witness has permitted any such bias or interest to color his testimony.  In short, if you find that witness is biased, you should view his testimony with caution, weigh it with care and subject it to close and searching scrutiny.[9]

---

[9] *Duke Laboratories, Inc. v. United States*, 222 F.Supp. 400, 407 (D. Conn. 1963).

**Plaintiff's Request:    Corporations**

A corporation and all other persons stand equal before the law and must be dealt with or treated as equals in a court of justice.  When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for any of the acts and statements of its employees which are made within the scope of their duties as employees of the company.

**Plaintiff's Request:    Impeachment By Prior Inconsistent Statement**

You should also ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact; or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony he or she gave during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

**Plaintiff's Request:    Expert Witnesses**

You have heard testimony from two experts.  An expert is allowed to express his opinion on those matters about which he has special knowledge and training.  Expert testimony is presented to you on the theory that someone who is experienced in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing the expert's testimony, you may consider the expert's qualifications, his opinions, his reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness' testimony.  You may give the expert testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.  You should not, however, accept this witness' testimony merely because he is an expert.  Nor should you substitute it for your own reason, judgment, and common sense in determining the facts, as the determination of the facts in this case rests solely with you.[10]

---

[10] *United States v. Simon*, 425 F.2d 796 (2d Cir. 1969); *Duke Laboratories, Inc. v. United States*, 222 F.Supp. 400, 415 (D. Conn. 1963).

**Plaintiff's Request:    Conflicting Expert Testimony**

The experts who testified in this case did so in order to assist you in reaching a decision on the issue of economic damages.

The testimony of the experts is in conflict. The experts disagree. It may seem strange to you that you are called upon to resolve a conflict between experts who disagree. But you must remember that you are the sole trier of the facts and their testimony relates to a question of fact -- that is, the extent of Mr. Key's economic damages following termination from employment with Wal-Mart, Inc.; so it is your job to resolve the disagreement.

The way you resolve the conflict between experts is the same way that you decide other fact questions and the same way you decide whether to believe ordinary witnesses. In addition, since they gave expert opinions, you should consider the soundness of each expert's opinion, reasons for the opinion and his motive, if any, for testifying.

You may give the testimony of each expert such weight, if any, that you think it deserves in the light of all the evidence. You should not permit an expert's testimony to be a substitute for your own reason, judgment and common sense.

You may reject the testimony of any expert in whole or in part, if you conclude the reasons given in support of an opinion are unsound or, if you, for other reasons, do not believe the expert witness. The determination of the facts in this case rests solely with you.[11]

- 16 -

**<u>Plaintiff's Request</u>:   Burden Of Proof -- Preponderance Of The Evidence**

In a moment I will tell you exactly what Mr. Key must prove in order to establish a presumption that Wal-Mart violated Title VII of the 1964 Civil Rights Act (hereinafter "Title VII") and the Connecticut Fair Employment Practices Act (hereinafter "CFEPA") in terminating his employment, and that Wal-Mart negligently misrepresented that Mr. Key could ask questions of the resident Optometrist without repercussion.   Mr. Key must prove each of the elements I will list and must do so by a preponderance of the evidence.[12]   This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence which is enough to persuade you that Mr. Key's claim is more likely true than not true.

In deciding whether any fact has been proved by a preponderance of the evidence you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.[13]

---

[11] *United States v. Bohle*, 475 F.2d 872, 874 (2d Cir. 1973).
[12] *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973); *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).
[13] *Larson v. JoAnn Cab Corp.*, 209 F.2d 929, 931 (2d Cir. 1954).

**Plaintiff's Request:  Title VII -- Coverage**

You shall find that Wal-Mart is subject to the requirements of Title VII in that it is engaged in an industry affecting commerce and has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.[14]

---

[14] 42 U.S.C. § 2000e et seq.

**Plaintiff's Request:  Connecticut Fair Employment Practices Act -- Coverage**

You shall find that Wal-Mart is subject to the requirements of the Connecticut Fair Employment Practices Act in that it has more than three employees.[15]

---

[15] Conn. Gen. Stat. § 46a-51(10).

**Plaintiff's Request:    Discrimination -- Title VII And The CFEPA**

It is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race and/or color.[16]

Title VII, which is the federal law, holds employers liable for violations of the Act. An entity is an "employer" under Title VII if it is a "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year."[17] The CFEPA, which is the state law, applies to employers with three or more employees.[18] Wal-Mart is an employer under both Title VII and the CFEPA and is to be held liable for violations of either or both.

In many respects, the federal and state anti-discrimination laws are similar. If they differ, I will point out to you in what ways they differ, otherwise you should assume that the law and the standards that are to be applied are the same, and that if Mr. Key is entitled to recover under one, he is entitled to recover in the same manner under the other. The differences between the two laws may, however, require that you submit more than one verdict.

---

[16] 42 U.S.C. § 2000e-2(a)(1); Conn. Gen. Stat. § 46a-60(a)(1). The Connecticut Supreme Court looks to federal law for guidance in interpreting state employment discrimination law, and the analysis is the same under both. *Craine v. Trinity College*, 259 Conn. 625, 636-37 n.6, 791 A.2d 518 (2002) (*citing State v. Commission on Human Rights & Opportunities*, 211 Conn. 464, 469-701 (1989)).
[17] 42 U.S.C. § 2000e-2(b).
[18] Conn. Gen. Stat. § 46a-51(10)

Mr. Key accuses Wal-Mart of race and/or color discrimination. Specifically, he claims that his discharge on April 30, 2001 was the result of race and/or color discrimination.

An "adverse employment action" is one that, standing alone, actually causes damage, tangible or intangible, to an employee. The fact that an employee is unhappy with something his employer did or failed to do is not enough to make that act or omission an adverse employment action. An employer takes adverse action against an employee only if it: (1) takes something of consequence away from the employee, for example, by discharging or demoting the employee, reducing his or her salary, or taking away significant responsibilities; or (2) fails to give the employee something that is a customary benefit of the employment relationship, for example, by failing to follow a customary practice or policy of progressive discipline and investigation. Termination of employment is an adverse employment action.

Even if you were to decide that Mr. Key's discipline and eventual discharge were neither fair nor wise nor professionally handled, that would not be enough. In order to succeed on his discrimination claim, Mr. Key must persuade you, by a preponderance of the evidence, that his race and/or color played a part in Wal-Mart's decision to terminate his employment on April 30, 2001. Mr. Key is not required to prove this his race and/or color was the sole motivation or even the primary motivation for Wal-Mart's decision, merely that his race and/or color played a part, even though other factors may also have motivated Wal-Mart.

Plaintiff is not required to produce direct evidence of unlawful motive.[19]  You may infer knowledge and/or motive as a matter of reason and common sense from the existence of other facts, for example, explanations that were given that you find were really pretextual. "Pretextual" means false or, though true, not the real reason for the action taken.  You may also infer that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.

An adverse employment action by a supervisor or manager is an action of the employer. "This is because such actions are company acts that can be performed only by the exercise of specific authority granted by the employer, and thus the supervisor acts as the employer."[20]

---

[19] *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).
[20] *Burlington Ind., Inc. v. Ellerth*, 524 U.S. 742, 768, 118 S.Ct. 2257 (1998).

**Plaintiff's Request:    Presentation of Proof**

Mr. Key has the initial burden of proving by a preponderance of the evidence a *prima facie* case of discrimination.  To establish a *prima facie* case, Mr. Key must show that:

1.    He is a member of a protected class, i.e., he is Black;

2.    who was qualified for his job, i.e., per licensing requirements, etc.;

3.    who suffered an adverse employment action, i.e., discharge;

4.    under circumstances giving rise to an inference of discrimination, e.g., he was treated differently than non-Black employees or was replaced by a non-Black employee.[21]

"A showing that [Wal-Mart] treated a similarly situated employee differently is 'a common and especially effective method' of establishing a *prima facie* case of discrimination, but it 'is only one way to discharge that burden.'"[22]  Other ways of establishing a *prima facie* case of discrimination include:  (a) Replacing Mr. Key with someone outside his protected class; (b) criticism of his performance in racially degrading terms; or (c) the sequence of events leading to Mr. Key's discharge.[23]

If Mr. Key succeeds in proving a *prima facie* case, a rebuttable presumption of discrimination arises, and the burden shifts to Wal-Mart to articulate a legitimate, nondiscriminatory reason for the employment action.

---

[21] *Id.*; *Mc Donnell Douglas v. Green*, 411, U.S. 792, 802 (1973); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).  *See also McGuinness v. Lincoln* Hall, 263 F.3d 49, 53 (2d Cir. 2001); *Austin v. Ford Models, Inc.*, 149 F.3d 148, 152 (2d Cir. 1998); *Robinson v. Time Warner Inc.*, 92 F.Supp.2d 318, 329 (S.D.N.Y. 2000).

- 23 -

Wal-Mart may meet its burden of producing a legitimate nondiscriminatory reason for its adverse employment action by offering admissible evidence sufficient for the trier of fact to conclude that the adverse action was taken as a result of such stated reason. Wal-Mart's burden is one of production, not of persuasion.[24] Although any stated reason is sufficient to fulfill Wal-Mart's burden of articulating a legitimate nondiscriminatory reason for its adverse action, as the trier of fact, you must nevertheless judge whether employer's proffered explanation is a rational one in light of all the circumstances.[25]

If Wal-Mart articulates a legitimate, nondiscriminatory reason for its actions, the presumption of discrimination is rebutted. Mr. Key must then show that it is more likely than not that the employer's proffered reason is in reality a pretext for unlawful discrimination.[26] Pretext may be demonstrated either by the presentation of additional evidence, or by reliance on the evidence comprising the *prima facie* case without more.[27]

Pretext may be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in Wal-Mart's proffered reasons for its actions that a reasonable

---

[22] *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001); *Luciano v. Olsten Corp.*, 110 F.3d 210, 215 (2d Cir. 1997).
[23] *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).
[24] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).
[25] *Tarshis v. Rises Organizations*, 211 F.3d 30, 37 (2d Cir. 2000).
[26] *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).
[27] *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 38 (2d Cir. 1994).

person could rationally find them unworthy of credence and hence infer that Wal-Mart did not act for the asserted nondiscriminatory reasons.[28]

If you believe that Wal-Mart's stated reason for discharging Mr. Key is false, then you may consider Wal-Mart's dishonesty as "affirmative evidence of guilt."[29]

If you find that the stated reasons given by Wal-Mart are inconsistent or implausible or that Wal-Mart substantially deviated from its own practices or policies, then you may conclude that the offered explanation is a mere pretext, excuse, sham, or cover-up for discrimination. If you find pretext, you may also infer that race and/or color was a motivating factor in the employment decisions, through you are not required to draw such an inference.[30]

If you so find, then you must find for Mr. Key on his claim of discrimination under both state and federal law.

---

[28] *Windham v. Time Warner, Inc.*, 275 F.3d 179 (2d Cir. 2001).

[29] *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097 (2000).

[30] *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097 (2000); *Turner v. American Red Cross Tissue Servs.*, No. 00-6157, 2001 WL 280644 (10th Cir. Mar. 22, 2001).

**Plaintiff's Request:    Protected Class -- Inference**

As a matter of law, a member of a protected class can discriminate against another member of the same protected class. In other words, a Black African-American can discriminate against another Black African-American.[31]

The employer does not have to discriminate against all members of a class to illegally discriminate against a given member of that class in violation of Title VII or the CFEPA.[32]

---

[31] *Ross v. Douglas County*, 234 F.3d 391 (8th Cir. 2000).
[32] *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 321 (3rd Cir. 2000).

**Plaintiff's Request:   Discriminatory Animus -- Different Treatment**

A plaintiff under Title VII and the CFEPA may raise an inference of discriminatory animus by offering evidence comparing himself to similarly situated individuals who are not a member of that protected class, who are treated more favorably.[33]

---

[33] *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53-54 (2d Cir. 2001).

**Plaintiff's Request:   Retaliation -- Title VII And The CFEPA**

Mr. Key also claims that Wal-Mart retaliated against him by discharging him in violation of Title VII and the CFEPA.  Specifically, Mr. Key claims that his informal complaint to his supervisor and to management regarding Dr. Gordon's discriminatory remark was a factor in Wal-Mart's decision to terminate his employment.

In order to succeed on his claim of retaliation in violation of Title VII and the CFEPA, Mr. Key must prove the following elements by a preponderance of the evidence:

1.      That he engaged in protected activity, i.e., complaining about and/or reporting discrimination;

2.      That he suffered an adverse employment action, i.e., discharge; and

3.      That a causal connection exists between the protected activity and the adverse employment action.[34]

Title VII provides that:

> It shall be an unlawful employment practice for an employer to discriminate against [an employee] . . . because he has opposed any practice made an unlawful employment practice by this subchapter or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.[35]

The provisions of the CFEPA are the same.[36]

---

[34] 42 U.S.C. § 2000e-3; Conn. Gen. Stat. § 46a-60(a)(4).  *See Gonzalez v. New York State Dep't of Correctional Servs.*, 122 F.Supp.2d 335, 347 (N.D.N.Y. 2000).
[35] 20 U.S.C. § 2000e-3(a).
[36] Conn. Gen. Stat. § 46a-60(a)(4).

Informal, as well as formal, complaints to superiors constitute protected activity and may form the basis for a claim of retaliation.[37] Mr. Key does not have to prove that his complaint to his supervisor and to management had merit in order to prove the retaliation claim.[38]

In order to establish that a causal connection exists between engaging in protected activity and an adverse employment action, Mr. Key must produce evidence of circumstances that justify an inference of a retaliatory motive, such as that the adverse actions occurred proximate in time to the protected activity.[39]

Similar to the presentation of proof in discrimination claims, if Mr. Key succeeds in showing a *prima facie* case of retaliation, Wal-Mart must articulate a legitimate, nondiscriminatory reason for its actions. If Wal-Mart is successful, Mr. Key must show that it is more likely than not that the employer's proffered reason is in reality a pretext for unlawful discrimination.[40]

If Wal-Mart's reasons are inconsistent or implausible or if Wal-Mart substantially deviated from its own practices or policies, then you may conclude that the offered explanation is a mere pretext, excuse, sham, or cover-up for retaliation. If you find pretext, you may also infer

---

[37] *Robinson v. Time Warner Inc.*, 92 F.Supp.2d 318, 332 (S.D.N.Y. 2000).
[38] *Robinson v. Time Warner Inc.*, 92 F.Supp.2d 318, 329 (S.D.N.Y. 2000).
[39] *Gonzalez v. New York State Dep't of Correctional Servs.*, 122 F.Supp.2d 335, 348 (N.D.N.Y. 2000).
[40] *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

that retaliation was a motivating factor in the employment decisions, through you are not required to draw such an inference.[41]

---

[41] *Turner v. American Red Cross Tissue Servs.*, No. 00-6157, 2001 WL 280644 (10th Cir. Mar. 22, 2001).

**Plaintiff's Request:**    **Title VII And CFEPA -- Damages**

I will now give you instructions about how to calculate damages. You should not consider the fact that I am giving you this instruction as suggesting any view of mine as to which party is entitled to your verdict in this case, or that I think that you should award any damages. Those decisions are entirely for you to make. I am giving you these instructions solely for your guidance, in the event that you find in favor of Mr. Key on his claims of discrimination and/or retaliation against Wal-Mart.

If you find for Mr. Key on his claim that Wal-Mart discriminated against him because of his race and/or color, then you must determine whether he is entitled to damages in an amount that is fair compensation.

You may award compensatory damages only for injuries that Mr. Key proved were caused by Wal-Mart's wrongful conduct.   The damages that you award must be fair compensation, no more and no less.

If you find that Wal-Mart discriminated against Mr. Key, backpay liability under Title VII begins no earlier than two years before Mr. Key filed his charge with the State of Connecticut, Commission on Human Rights and Opportunities.   If you find that Wal-Mart engaged in unlawful retaliation against Mr. Key, backpay liability begins from the date of his discharge.[42]

---

[42] *Dunlap-McCuller v. Rises Org.*, 980 F.2d 153, 159 (2d Cir. 1992).

You may award compensatory damages for emotional pain and suffering, inconvenience, and mental anguish if you find that they were caused by Wal-Mart's discrimination and/or retaliation. No evidence of the monetary value of such intangible things as pain and suffering has been or need be introduced into evidence. It is not the value you are trying to determine, but an amount that will fairly compensate Mr. Key for those claims of damages. Medical evidence is not required to support a claim for pain and suffering. There is no exact standard to be applied; any such award should be fair and just in light of the evidence. You may not award damages based on sympathy, speculation, or guesswork. On the other hand, the law does not require that Mr. Key prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

Mr. Key may recover punitive damages under Title VII if he demonstrates that Wal-Mart engaged in a discriminatory practice with malice or with reckless indifference to his federally protected rights. Punitive damages are also available to Mr. Key if you find Wal-Mart's violation of the CFEPA was willful.[43] An award of punitive damages does not require showing egregious or outrageous discrimination or retaliation.[44] The relevant inquiry is whether Wal-Mart knew or showed reckless disregard for whether its conduct was prohibited by Title VII. They have to either know what they were doing was wrong or not care. That is what is meant by reckless disregard.

---

[43] *Collier v. State*, No. CV96-80659, 1999 WL 300643, at * 4 (Conn. Super. May 3, 1999).

[44] *Luciano v. Olsten Corp.*, 110 F.3d 210, 220 (2d Cir. 1997).

**Plaintiff's Request:    Negligent Misrepresentation**

Mr. Key alleges that Wal-Mart, through its training materials and through Jerome Ellis, his immediate supervisor, directed Vision Center employees to ask questions regarding pre-testing of customers of the resident Optometrist. During the relevant time period Dr. Anthony Gordon was the resident optometrist. Mr. Key further alleges that he was discharged at least in part for having done exactly what he was directed to do -- asking Dr. Gordon questions regarding the pre-testing of a customer.

To prevail on his claim, Mr. Key must prove by a preponderance of the evidence that:

(a)    Wal-Mart, through its training materials and management, made representations to him regarding pre-testing and directing him to ask Dr. Gordon questions;

(b)    the representations were made as statements of fact;

(c)    the representations were false;

(d)    Wal-Mart knew, or should have known, that such representations were false at the time that they were made;

(e)    Mr. Key relied on such statements;

(f)    Mr. Key's reliance was justifiable in light of all the circumstances; and

(g)    Mr. Key has suffered damages as a result of such reliance.[45]

---

[45] *Foy v. Pratt & Whitney Group*, 127 F.3d 229, 223 (2d Cir. 1997); *Retrofit Partners I, L.P. v. Lucas Industries Inc.*, 201 F.3d 155, 162 (2d Cir. 2000); *Williams Ford, Inc. v. Hartford Courant Co.*, 232 Conn. 559, 575, 657 A. 2d 212, 220 (1995); *D'Ulisse-Cupo v. Board of Dirs of Notre Dame High Sch.*, 202 Conn. 206, 217-18, 520 A2d 217, 223 (1987) *quoting* Restatement Second of Torts § 552 (1979).

If, after weighing all the evidence and drawing all reasonable inferences therefrom, you find that Mr. Key sustained his burden of proof by a preponderance of evidence on each of these elements, then you must find for Mr. Key. If, however, Mr. Key fails to prove any of these elements by a preponderance of the evidence, then you must find for Wal-Mart.

To be a misrepresentation, the statement "must consist of a statement of a material past or present fact. . . ." Personal predictions and statements of opinion are not representations.[46] A representation regarding a present intention to do something in the future is a statement of present fact.[47]

If you determine that Wal-Mart did not make any representations to Mr. Key directing him to ask Dr. Gordon questions regarding pre-testing, you must return a verdict for Wal-Mart.

If you determine that Wal-Mart did make representations to Mr. Key directing him to ask Dr. Gordon questions regarding pre-testing, you must then determine whether those representations contained false information.

If you find that there were representations which contained false information, you must then consider whether Wal-Mart knew, or should have known at the time the representations were made, that they contained false information.[48]

---

[46] *Radley v. Eastman Kodak Co.*, 19 F.Supp. 89, 99 (W.D.N.Y. 1998), *aff'd.* 199F.3d 1323 (2d Cir. 1999) (Table); *Yurevich*, 51 F Supp.2d at 152 *quoting Omega Engineering, Inc. v. Eastman Kodak Co.*, 908 F. Supp. 1084, 1097 (D. Conn. 1995).

[47] *Bassetti v. East Haven Board of Educ.*, 2001 WL 811 702*5 (Conn. Super. June 19, 2001, Blue, J.). (Copies of unreported cases are attached hereto as Exhibit A).

[48] *Barbuto v. William Backus Hosp.*, 1995 WL 235068 *6 (Conn. Super. April 13, 1995, Hendel, J.) *citing Richard v. A. Waldman & Sons, Inc.*, 155 Conn. 343, 346 (1967)).

If you find that Mr. Key relied on the representations made by Wal-Mart, you must then determine whether such reliance was "justifiable" or "reasonable."[49]

If you find that Mr. Key's reliance was justifiable or reasonable, you must then determine whether Mr. Key suffered damages as a result of his reliance.

In other words, if you find that Wal-Mart directed Mr. Key to ask Dr. Gordon questions regarding pre-testing customers, and then terminated his employment for having asked such questions, you must find for Mr. Key on his claim of negligent misrepresentation.[50]

---

[49] *See Manning v. Cigna Corp.*, 807 F.Supp. 889, 897 (D. Conn. 1991); *D'Ulisse-Cupo*, 202 Conn. at 217-18, 520 A.2d at 223.

[50] *Craine v. Trinity College*, 259 Conn. 625, 661-62, 791 A.2d 518 (2002).

**Plaintiff's Request:    Negligent Misrepresentation -- Damages**

Mr. Key carries the burden of proving the amount of his damages.  In this case, the amount of damages, if warranted, would be the amount of money Mr. Key lost as a result of his justifiable or reasonable reliance upon the information received from Wal-Mart.[51]  Therefore, you should determine what amount of money Mr. Key would have received, absent such reliance.  This amount may include back pay and front pay  If you find that Mr. Key is entitled to monetary damages, you must determine the amount of damages due Mr. Key based upon the evidence.

In addition, you may award Mr. Key non-economic damages, including emotional distress, inconvenience and mental anguish if you find that they were caused by Wal-Mart's negligent misrepresentation.  No evidence of the monetary value of such intangible things as pain and suffering has been or need be introduced into evidence.  It is not the value you are trying to determine, but an amount that will fairly compensate Mr. Key for those claims of damages. Medical evidence is not required to support a claim for emotional distress.  There is no exact standard to be applied; any such award should be fair and just in light of the evidence.  You may not award damages based on sympathy, speculation, or guesswork.  On the other hand, the

---

[51] *D'Ulisse-Cupo*, 202 Conn. at 218, 520 A.2d at 223.

law does not require that Mr. Key prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.[52]

P:\lit\pjc\523818\001\00045843.DOC

---

[52] *Opielowski Brouwer v. Haddam Hills Academy*, No. CV990087906S, 2002 WL 180974 (Conn. Super. Jan 11, 2002) (Shapiro, J.).