UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
------------------------------------- x

MARVIN KEY,

                  Plaintiff,

      v.

WAL-MART STORES, INC.

                  Defendant.

------------------------------------- x

3:03CV144(RNC)

MAY 2, 2005

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE CONCERNING PLAINTIFF'S PERFORMANCE FOR OTHER EMPLOYERS

BROWN RAYSMAN MILLSTEIN
FELDER & STEINER LLP
Joel L. Finger (ct06114)
900 Third Avenue
New York, New York
(212) 895-2340

Mitchell L. Fishberg (ct19661)
Kristi E. Mackin (ct23394)
City Place II, 185 Asylum Street
Hartford, CT 06103
(860) 275-6400
Attorneys for Wal-Mart

## PRELIMINARY STATEMENT

Defendant Wal-Mart Stores, Inc. ("Wal-Mart") respectfully submits this Memorandum of Law in support of its motion *in limine* to exclude from trial all documentary evidence and testimony concerning Plaintiff Marvin Key's ("Plaintiff") performance for other employers both before and after his employment by Wal-Mart.

The case involves allegations that Defendant discriminated against Plaintiff in his employment because he is African American and because he allegedly reported a statement made by the independent contractor doctor that worked in the Vision Center where Plaintiff was an Optician. Plaintiff asserts claims under Title VII of the Civil Rights Act, 42 USC §§ 2000 *et seq*. and The Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§ 46a-60 *et* seq. Plaintiff also claims Wal-Mart negligently misrepresented that he could ask questions about his duties but then allegedly terminated him for asking questions.

Plaintiff seeks to introduce evidence at trial concerning his employment with other employers, which like the Wal-Mart Vision Center, sell optometric and ophthalmologic services. The proposed evidence is utterly irrelevant to any issue in this case and, if admitted, would turn the trial into a series of mini-trials concerning his prior and subsequent jobs. Such a series of mini-trials would be highly prejudicial and would run the real risk of confusing the jury. The evidence is not relevant to the question of Wal-Mart's decisions and actions, for those questions must focus upon the decisions and perceptions of the involved Wal-Mart decision makers. Plaintiff should not be allowed to second-guess the decisions of Store Manager Roger Noll and his concerns about Plaintiff's performance by introducing evidence concerning his performance at Lenscrafters or other employers.

1

## STATEMENT OF FACTS

Plaintiff, an optician licensed in the State of Connecticut, accepted employment with the North Windham Wal-Mart (the "Store") on February 9, 2000 as an optician working in the Store's Vision Center. The Vision Center was managed by Mr. Ellis. *See* Ruling on the Parties' Motions for Summary Judgment, filed by this Court on September 30, 2004 (the "Summary Judgment Ruling"), p. 1. Dr. Gordon, also an African American, leased space from Wal-Mart to operate his optometry practice in the Vision Center. Soon after Plaintiff was hired, he received training in the Vision Center's operations. This training included how Wal-Mart wanted Plaintiff to perform "vision screenings" and "pre-testing."[1]

Wal-Mart has a progressive discipline policy, which it uses to handle employee discipline and performance issues. When necessary, Wal-Mart progressively disciplines its employees first through a verbal coaching,[2] which, if necessary, is followed by a written coaching, a "Decision-making Day"[3] and finally, termination. Plaintiff does not dispute that he received verbal coachings, a written coaching, and a Decision-making Day prior to his termination.

Plaintiff received verbal coachings for missing department meetings how he greets customers and his manner when he talks with them and not wearing his lab coat. Thereafter, on July 13, 2000

---

[1] A vision screening is a test for "visual acuity," *i.e.* how well a person sees without glasses. Ellis Dec., ¶ 6. To perform vision screenings, Plaintiff and the other Vision Center employees were trained in the use of a machine called an auto refractor that tests visual acuity. *Id.* The auto refractor machine requires the patient to place his or her head on a chin rest. Thereafter, the machine automatically measures the patient's visual acuity and prints a paper receipt with the test results. Plaintiff also was trained in how to perform "pre testing." Ellis Dec., 7, Key Dep. at 86 87. The pre-tests (which required the use of automated machines to test peripheral vision, ocular pressure and visual acuity) likewise relied on automated machines in which the patients rested their chins on a head rest, the machine conducted a measurement, and printed the test results. Ellis Dep. at 24 27; Ellis Dec. 7. Opticians do not read the results, but are referred to the resident optometrist for an eye examination. Zboray Dep. at 10 11; Ellis Dep. at 23 24, 28, 50, 56, Ellis Dec. 6. The screening results are then provided to an optometrist, in this case Dr. Gordon, who interprets the test results, conducts the patient's eye exam, and, in some cases, issues a prescription for the patient to obtain eye glasses or contact lenses. Ellis Dep. at 47 48; Ellis Dec., 6.
[2] A "coaching" is a combination of constructive criticism and discipline designed to correct an associates problematic behaviors or performance.
[3] The Decision-making Day is a day off, with pay, in which employees are asked to consider their commitment to Wal-Mart employment and to prepare a plan of action for correcting their employment problems.

2

Ellis issued his first written warning to Plaintiff, which noted that Wal-Mart had received "complaints from two separate customers concerning the way Marvin handled them." Plaintiff acknowledges that he received the written coaching. .

On November 4, 2000, Ellis issued Plaintiff a Decision-making Day. The Decision-making Day form noted, among other things, that Plaintiff had told a customer with a brain injury to "go home and bring her husband in" because the woman was "a little slow at learning." Ellis, however, spent a few minutes with the woman and answered all of her questions. The same form also noted that another customer had complained that "when she came into store, Marvin wouldn't take care of her when asked, [and] told other associate to get someone else."

On April 27, 2001 Wal-Mart customer Huong Nguyen ("Nguyen") brought in her twin children, her daughter Kimi and her son Harrison, for eye examinations by Dr. Gordon. Plaintiff conducted the pre-testing for Kimi in the presence of her mother while Dr. Gordon was nearby. Ms. Nguyen was not happy with Plaintiff's service and submitted a written complaint about him to Wal-Mart's management.

As a result of the Nguyen complaint, Assistant Manager Edgar Morales reviewed Plaintiff's history of customer service complaints and spoke to Mr. Noll. As a result of Plaintiff's continued poor service to customers and in accordance with Wal-Mart's progressive discipline policy, Plaintiff's employment was terminated. When Plaintiff arrived at work on April 30, 2001, Plaintiff was asked to attend a meeting with Noll and Morales. At that time, Plaintiff was notified that his employment was terminated. Ruling, p. 3.

3

## ARGUMENT

### EVIDENCE CONCERNING PLAINTIFF'S PERFORMANCE IN OTHER JOBS FOR OTHER EMPLOYERS SHOULD BE EXCLUDED

Only relevant evidence is admissible, and relevant evidence is that which tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Plaintiff intends to introduce testimony and documentary evidence about his work performance with employers prior and subsequent to his employment with Wal-Mart.[4] Specifically, Plaintiff seeks to introduce his performance review from Lenscrafters, a subsequent employer, and the testimony of Dale Ceneviva who never worked with Plaintiff at Wal-Mart but rather at Sunglass Hut prior to Plaintiff's employment at Wal-Mart. Neither Plaintiff's performance review nor the testimony of someone who supervised him at a prior employer has any relevance to whether the decision maker at Wal-Mart terminated Plaintiff's employment for discriminatory reasons as Plaintiff claims.

Moreover, even if Plaintiff asserted some marginal relevance, the evidence should be excluded under the balancing test of Rule 403.[5] The testimony of Dale Ceneviva cannot address the events at Wal-Mart because she has no knowledge of those events. Thus, Plaintiff no doubt seeks to introduce the testimony to establish an inference that because Plaintiff performed well at other jobs for other employers, he must have been discriminated against by Wal-Mart. In *Martin v. Reno*, 2000 WL

---

[4] Plaintiff has listed the Lenscrafter performance review in his prepared list of exhibits and has listed Ceneviva as a proposed witness, indicating she "is expected to testify regarding her experience managing, and working with, Mr. Key."
[5] Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury, or by considerations of undue delay, waste of time or needless cumulative evidence.

4

1863765 at *4 (S.D.N.Y. December 19, 2000) the court was presented with precisely this issue, and excluded similar testimony because "[t]his inference is impermissible, and unduly prejudicial to defendant," citing Fed. R. Evid. 403. The inference is impermissible because the subjective opinion of others as to Plaintiff's performance is not relevant. *See e.g. Gambello v. Time Warner Communications, Inc.*, 186 F. Supp. 2d 209, 223 (S.D.NY 2002) (in granting summary judgment to employer court would not rely on affidavits of co-workers evaluating Plaintiff because "this court must focus on the perceptions of the decision makers …"). Moreover, the courts have recognized that prior evaluations of an employee are of little relevance particularly where a new supervisor is involved who is "entitled to set his own standards and agenda." *Gambello*, 186 F.Supp. 2d at 222. *See Beers v. NYNEX Material Enters. Co.*, 1992 U.S. Dist. LEXIS 240, 1992 WL 8299, at *11 (S.D.N.Y. 1992) (addressing new manager.) Here, of course, Plaintiff seeks to inject the view of prior and subsequent employers which is not relevant.

The evidence should be excluded for yet another reason. Even if Plaintiff can contrive some marginal argument that it is relevant, if it is admitted the trial will require a series of mini-trials about Plaintiff's jobs and performance which are completely unrelated to the events at issue here. *See Martin*, 2000 WL 1863765 at *4. Instead of focusing upon the issues in this case – whether Plaintiff's employment was terminated for discriminatory reasons - the trial will include a mini-trial of Plaintiff's performance during his other employment. The evidence would confuse and mislead the jury because it would focus on his employment relationship with different employers, which is not pertinent here. The danger is simply too great that the jury will mistakenly believe that because those employers may have had favorable views of Plaintiff or he worked for them for them without incident, he was

5

somehow discriminated against by Wal-Mart[6]. Moreover, it is wasteful of this Court's time. Plaintiff must be confined to the issues at hand – whether his employment was terminated for discriminatory or retaliatory reasons, or, as he claims, contrary to a representation made to him at the inception of his employment. The proposed evidence does nothing to further Plaintiff's assertions in this regard but rather serves only as irrelevant that serves only to convolute the issues.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that their motion *in limine* be granted and that all evidence concerning Plaintiff's performance at other employers and the testimony of Dale Ceneviva be excluded at trial.

Dated:   May 2, 2005

---

[6] Put another way, Defendants would not be allowed to introduce evidence showing that Plaintiff's performance for another employer was problematic in order to show that his performance was problematic at Wal-Mart. See Fed R. Evid. 404(b) providing that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." So too Plaintiff cannot use evidence of his performance at other jobs to make some inference about his performance at Wal-Mart. *See Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1510-11 (D.C. Cir. 1995) (testimony of previous employer proffered by defendant to show that plaintiff had similar work-related problems was inadmissible under Fed R. Evid. 404(b)).

WAL-MART STORES, INC.,

By: _____
Joel L. Finger (ct06114)
Brown Raysman Millstein Felder & Steiner LLP
900 3rd Avenue
New York, NY 10022
(212) 895-2000

Mitchell L. Fishberg (ct19661)
Kristi E. Mackin (ct23394)
Brown Raysman Millstein Felder & Steiner LLP
185 Asylum Street, 10th Floor
Hartford, CT 06103
(860) 275-6400

7

**CERTIFICATE OF SERVICE**

This is to certify that on this 2nd day of May, 2005, a true copy of the foregoing Memorandum of Law in Support of Defendant's Motion in Limine was sent via facsimile and first-class mail, postage prepaid, to:

Loraine M. Cortese-Costa, Esq.
Pamela Coyne, Esq.
Durant, Nichols, Houston,
Hodgson & Cortese-Costa, P.A.
1057 Broad Street
Bridgeport, CT  06804

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　Mitchell L. Fishberg