**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MARVIN KEY,                                       :
                                                  :  3:03CV144(RNC)
               Plaintiff,               :
                                                  :
         v.                          :
                                                  :
WAL-MART STORES, INC.                             :  MAY 2, 2005
                                                  :
               Defendant.               :
                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :
                                                  x


---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
### MOTION IN LIMINE TO EXCLUDE EVIDENCE CONCERNING
### OTHER LAWSUITS FILED AGAINST WAL-MART

---

BROWN RAYSMAN MILLSTEIN
FELDER & STEINER LLP
Joel L. Finger (ct06114)
900 Third Avenue
New York, New York
(212) 895-2340

Mitchell L. Fishberg (ct19661)
Kristi E. Mackin (ct23394)
City Place II, 185 Asylum Street
Hartford, CT 06103
(860) 275-6400

Attorneys for Wal-Mart

## PRELIMINARY STATEMENT

Defendant Wal-Mart Stores, Inc. ("Wal-Mart") respectfully submits this Memorandum of Law in support of its motion *in limine* to preclude evidence concerning other litigations and/or labor and employment disputes involving Wal-Mart or its employees. Evidence, testimony, comments or references to such matters are not relevant to the issues to be determined by the jury and serve only to prejudice Wal-Mart.[1]

Plaintiff's claims arise from his employment as an optician with the Vision Center located in the North Windham Wal-Mart Store. He was terminated on or about April 30, 2001 for, among other reasons, poor customer service. The case involves allegations that Defendants discriminated against Plaintiff in his employment because of his race, African American, and in retaliation for Plaintiff's allegedly report of what he described as an "abusive" statement by the independent contractor ophthalmologist, Dr. Anthony Gordon (African American) who leased space in the Vision Center to run his practice. This independent contractor is also African American. Plaintiff asserts claims under the Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, ("Title VII") and Connecticut's Fair Employment Practices Act, 46a-60 *et seq.* Plaintiff also claims that Wal-Mart negligently misrepresented that he could ask questions regarding Vision Screenings of the doctor, but then terminated him because he asked the doctor questions. See Ruling and Order filed September 30, 2004 (the "Ruling").

## STATEMENT OF FACTS

Plaintiff, an optician licensed in the State of Connecticut, accepted employment with the North Windham Wal-Mart (the "Store") on February 9, 2000 as an optician working in the

---

[1] Wal-Mart submits this Motion in Limine in advance of the trial in compliance with this Court's Standing Order in Civil Cases. Wal-Mart expressly reserves its right to object to the testimony and other evidence offered by Plaintiff at trial.

Store's Vision Center. The Vision Center was managed by Mr. Ellis. *See* Ruling on the Parties'

Motions for Summary Judgment, filed by this Court on September 30, 2004 (the "Summary

Judgment Ruling"), p. 1. Dr. Gordon, also an African American, leased space from Wal-Mart to

operate his optometry practice in the Vision Center. Soon after Plaintiff was hired, he received

training in the Vision Center's operations. This training included how Wal-Mart wanted Plaintiff

to perform "vision screenings" and "pre-testing."[2]

Wal-Mart has a progressive discipline policy, which it uses to handle employee discipline

and performance issues. When necessary, Wal-Mart progressively disciplines its employees first

through a verbal coaching,[3] which, if necessary, is followed by a written coaching, a

"Decision-making Day"[4] and finally, termination. Plaintiff does not dispute that he received

verbal coachings, a written coaching, and a Decision-making Day prior to his termination.

Plaintiff received verbal coachings for missing department meetings, how he greets

customers and his manner when he talks with them, and not wearing his lab coat. Thereafter, on

July 13, 2000 Ellis issued his first written warning to Plaintiff, which noted that Wal-Mart had

received "complaints from two separate customers concerning the way Marvin handled them."

Plaintiff acknowledges that he received the written coaching. On November 4, 2000, Ellis issued

Plaintiff a Decision-making Day. The Decision-making Day form noted, among other things,

---

[2] A vision screening is a test for "visual acuity," *i.e.* how well a person sees without glasses. To perform vision screenings, Plaintiff and the other Vision Center employees were trained in the use of a machine called an auto refractor that tests visual acuity. The auto refractor machine requires the patient to place his or her head on a chin rest. Thereafter, the machine automatically measures the patient's visual acuity and prints a paper receipt with the test results. Plaintiff also was trained in how to perform "pre testing." The pre-tests (which required the use of automated machines to test peripheral vision, ocular pressure and visual acuity) likewise relied on automated machines in which the patients rested their chins on a head rest, the machine conducted a measurement, and printed the test results.

[3] A "coaching" is a combination of constructive criticism and discipline designed to correct an associates problematic behaviors or performance.

[4] The Decision-making Day is a day off, with pay, in which employees are asked to consider their commitment to Wal-Mart employment and to prepare a plan of action for correcting their employment problems.

that Plaintiff had told a customer with a brain injury to "go home and bring her husband in" because the woman was "a little slow at learning." Ellis, however, spent a few minutes with the woman and answered all of her questions. The same form also noted that another customer had complained that "when she came into store, Marvin wouldn't take care of her when asked, [and] told other associate to get someone else."

On April 27, 2001 Wal-Mart customer Huong Nguyen ("Nguyen") brought in her twin children, her daughter Kimi and her son Harrison, for eye examinations by Dr. Gordon. Plaintiff conducted the pre-testing for Kimi in the presence of her mother while Dr. Gordon was nearby. Ms. Nguyen became displeased with Plaintiff's performance, and submitted a written complaint to management. As a result of the Nguyen complaint, Assistant Manager Edgar Morales reviewed Plaintiff's history of customer service complaints and spoke to Mr. Noll. As a result of Plaintiff's continued poor service to customers and in accordance with Wal-Mart's progressive discipline policy, Plaintiff's employment was terminated. When Plaintiff arrived at work on April 30, 2001, Plaintiff was asked to attend a meeting with Noll and Morales. At that time, Plaintiff was notified that his employment was terminated. Ruling, p. 3.

## ARGUMENT

### ANY TESTIMONY, EXHIBITS OR REFERENCES TO OTHER EMPLOYMENT OR LABOR RELATED ACTIONS, COMPLAINTS, OR MEDIA REPORTS REGARDING WAL-MART AND ITS EMPLOYEES SHOULD BE EXCLUDED

It is no secret that Wal-Mart, the world's largest private employer, has been subject to a litany of labor and employment related complaints and media reports. The submission of evidence, comments, references, or implications relating to other suits is prejudicial to Wal-Mart and bears no relevance to whether or not Plaintiff suffered employment discrimination or was otherwise treated unlawfully by Wal-Mart. Indeed, any possible limited probative value of evidence of a company's prior legal problems "is substantially outweighed by the burden that the

4

admission of this evidence would place on [the company] to explain the circumstances at issue in these otherwise lawsuits, by the waste of time that would accompany such explanations, and by the danger that admission of this evidence will create unfair prejudice against [the company]." *In re Worldcom, Inc. Securities Litigation*, 02Civ3288(DLC), 2005 U.S. Dist. LEXIS 3391, *3-4 (S.D.N.Y., Mar. 3, 2005), *citing* Fed. R. Evid.403.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court issue an order granting Defendant's motion *in limine* in its entirety and precluding Plaintiff from introducing the testimony and evidence set forth herein.

DEFENDANT WAL-MART STORES, INC.,

By: _____

Mitchell L. Fishberg (ct09661)
Kristi E. Mackin (ct23394)
Brown Raysman Millstein Felder & Steiner LLP
185 Asylum Street, 10th Floor
Hartford, CT  06103
(860) 275-6400

Joel L. Finger (ct06114)
Brown Raysman Millstein Felder & Steiner LLP
900 3rd Avenue
New York, NY 10022
(212) 895-2000

5

## CERTIFICATE OF SERVICE

This is to certify that on this 2nd day of May 2005, a true copy of the foregoing Memorandum of Law in Support of Motion in Limine was sent via facsimile and first-class mail, postage prepaid, to:

Loraine M. Cortese-Costa, Esq.
Pamela Coyne, Esq.
Durant, Nichols, Houston,
   Hodgson & Cortese-Costa, P.A.
1057 Broad Street
Bridgeport, CT  06804

_____
Mitchell L. Fishberg

6