UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MARVIN KEY,                                            :
                                                       :    3:03CV144(RNC)
                        Plaintiff,                     :
                                                       :
            v.                                         :
                                                       :
WAL-MART STORES, INC.                                  :    MAY 2, 2005
                                                       :
                        Defendant.                     :
                                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :
                                                       x


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE CONCERNING PLAINTIFF'S ALLEGATIONS THAT WAL-MART'S VISION CENTER PRACTICES ARE IMPROPER

BROWN RAYSMAN MILLSTEIN
FELDER & STEINER LLP
Joel L. Finger (ct06114)
900 Third Avenue
New York, New York
(212) 895-2340

Mitchell L. Fishberg (ct19661)
Kristi E. Mackin (ct23394)
City Place II, 185 Asylum Street
Hartford, CT 06103
(860) 275-6400

Attorneys for Wal-Mart

## PRELIMINARY STATEMENT

Defendant Wal-Mart Stores, Inc. ("Wal-Mart") ("Defendants") respectfully submits this Memorandum of Law in support of its motion *in limine* to exclude from trial all documentary evidence and testimony concerning a belief that Wal-Mart's Vision Center practices violated Conn. Gen. Stat. §§ 21-138a, Connecticut Optometrist statutes, the Connecticut Unfair Trade Practices Act ("CUPTA"), or are improper or illegal on any other grounds. Indeed, this Court has already ruled that there is no support in the Connecticut case law for such a proposition, and Plaintiff should be precluded from prejudicing the jury with remarks, evidence, or testimony in this area at trial.

Plaintiff's claims arise from his employment as an optician with the Vision Center located in the North Windham Wal-Mart Store. He was terminated on or about April 30, 2001 for, among other reasons, poor customer service. The case involves allegations that Defendants discriminated against Plaintiff in his employment because of his race, African American, and in retaliation for Plaintiff's allegedly reporting what he described as an "abusive" statement by the independent contractor ophthalmologist, Dr. Anthony Gordon (African American), who leased space in the Vision Center to run his practice. This independent contractor is also African American. Plaintiff asserts claims under the Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, ("Title VII") and Connecticut's Fair Employment Practices Act, §§ 46a-60 *et seq.* Plaintiff also claims that Wal-Mart negligently misrepresented that he could ask questions regarding Vision Screenings of the doctor, but then terminated him because he asked the doctor questions. See Ruling and Order filed September 30, 2004 (the "Ruling").[1] This claim, as it

---

[1] This Ruling decided the parties' separate motions for summary judgment and, to the extent it affects the evidentiary issues remaining in this case, will be discussed below. For ease of the Court's Review, the Ruling is attached hereto as Exhibit A.

appeared in Plaintiff's Amended Complaint, essentially set forth two theories of negligent misrepresentation. The first theory, like Plaintiff's wrongful termination claim, hinged upon Plaintiff's purported belief that the Vision Center's practices were improper. Plaintiff alleged that Wal-Mart made a negligent misrepresentation to him by failing to tell him that he would be expected to perform duties outside of the scope of his optician's license. The second portion of his claim alleged that Plaintiff was negligently informed that he could ask questions of the doctor, but that Plaintiff was terminated over a year later for, so he claimed, asking the doctor questions.

The Ruling granted judgment in Defendant's favor on Plaintiff's common law wrongful termination claims as well as Plaintiff's negligent misrepresentation claim. Plaintiff moved to reconsider the granting of summary judgment on both his wrongful termination count and the negligent misrepresentation claim. In his Motion for Reconsideration, Plaintiff did not discuss the portion of his claim relating to the Vision Center's practices, but argued only that Plaintiff had been told that he could ask questions of the doctor but was then purportedly terminated for asking questions. The Court denied Plaintiff's Motion for Reconsideration on the wrongful termination count, solidifying that Plaintiff's claims based on his alleged belief that Wal-Mart's Vision Screenings were improper are no longer a part of this case. *See* Ruling on Plaintiff's Motion for Reconsideration (the "Reconsideration Ruling").[2] However, the Court granted Plaintiff's Motion with regard to the negligent misrepresentation claim as it was discussed in the motion. *Id.* By way of a telephone conference with the Court's clerk, the Court confirmed that it was the Court's intent to allow only the portion of the negligent

---

[2] For ease of review, the Reconsideration Ruling is attached as Exhibit B.

3

misrepresentation claim relating to Plaintiff's claim that he was negligently informed that he could ask the doctor questions.

## STATEMENT OF FACTS

### 1.   Factual Background

Plaintiff, an optician licensed in the State of Connecticut, accepted employment with the North Windham Wal-Mart (the "Store") on February 9, 2000 as an optician working in the Store's Vision Center. The Vision Center was managed by Mr. Ellis. *See* Ruling on the Parties' Motions for Summary Judgment, filed by this Court on September 30, 2004 (the "Summary Judgment Ruling"), p. 1. Dr. Gordon, also an African American, leased space from Wal-Mart to operate his optometry practice in the Vision Center. Soon after Plaintiff was hired, he received training in the Vision Center's operations. This training included how Wal-Mart wanted Plaintiff to perform "vision screenings" and "pre-testing."[3]

Wal-Mart has a progressive discipline policy, which it uses to handle employee discipline and performance issues. When necessary, Wal-Mart progressively disciplines its employees first through a verbal coaching,[4] which, if necessary, is followed by a written coaching, a

---

[3] A vision screening is a test for "visual acuity," *i.e.* how well a person sees without glasses. To perform vision screenings, Plaintiff and the other Vision Center employees were trained in the use of a machine called an auto refractor that tests visual acuity. The auto refractor machine requires the patient to place his or her head on a chin rest. Thereafter, the machine automatically measures the patient's visual acuity and prints a paper receipt with the test results. Plaintiff also was trained in how to perform "pre testing." The pre-tests (which required the use of automated machines to test peripheral vision, ocular pressure and visual acuity) likewise relied on automated machines in which the patients rested their chins on a headrest, the machine conducted a measurement, and printed the test results. Opticians do not read the results, but are referred to the resident optometrist for an eye examination. The screening results are then provided to an optometrist, in this case Dr. Gordon, who interprets the test results, conducts the patient's eye exam, and, in some cases, issues a prescription for the patient to obtain eye glasses or contact lenses.

[4] A "coaching" is a combination of constructive criticism and discipline designed to correct an associates problematic behaviors or performance.

4

"Decision-making Day"[5] and finally, termination. Plaintiff does not dispute that he received verbal coachings, a written coaching, and a Decision-making Day prior to his termination.

Plaintiff received verbal coachings for missing department meetings, how he greets customers and his manner when he talks with them, and not wearing his lab coat. Thereafter, on July 13, 2000 Ellis issued his first written warning to Plaintiff, which noted that Wal-Mart had received "complaints from two separate customers concerning the way Marvin handled them." Plaintiff acknowledges that he received the written coaching. On November 4, 2000, Ellis issued Plaintiff a Decision-making Day. The Decision-making Day form noted, among other things, that Plaintiff had told a customer with a brain injury to "go home and bring her husband in" because the woman was "a little slow at learning." Ellis, however, spent a few minutes with the woman and answered all of her questions. The same form also noted that another customer had complained "when she came into store, Marvin wouldn't take care of her when asked, [and] told other associate to get someone else."

On April 27, 2001 Wal-Mart customer Huong Nguyen ("Nguyen") brought in her twin children, her daughter Kimi and her son Harrison, for eye examinations by Dr. Gordon. Plaintiff conducted the pre-testing for Kimi in the presence of her mother while Dr. Gordon was nearby. At some point during the pre-testing, Plaintiff claims that Dr. Gordon yelled at him and accused him of stapling one of the children's files incorrectly.[6] Plaintiff claims that Dr. Gordon also stated "words to the affect that he's [Dr. Gordon] tired of black people messing up," which Plaintiff considered to be an "abusive" statement. Plaintiff claims that he complained about Dr.

---

[5] The Decision-making Day is a day off, with pay, in which employees are asked to consider their commitment to Wal-Mart employment and to prepare a plan of action for correcting their employment problems.

[6] The machines used by the Vision Center to conduct pre-testing create printed records of the test results that resembles an itemized customer receipt from a grocery store. Ellis had instructed the employees about how the pre-

Gordon's "abusive" statement to a group of managers in a room in the back of the Store, although Plaintiff cannot identify any of the managers to whom he allegedly complained.[7]

As a result of the Nguyen complaint, Assistant Manager Edgar Morales reviewed Plaintiff's history of customer service complaints and spoke to Mr. Noll.  As a result of Plaintiff's continued poor service to customers and in accordance with Wal-Mart's progressive discipline policy, Plaintiff's employment was terminated.  When Plaintiff arrived at work on April 30, 2001, Plaintiff was asked to attend a meeting with Noll and Morales.  At that time, Plaintiff was notified that his employment was terminated. Ruling, p. 3.

### 2.    Plaintiff's Allegations As They Relate to This Motion

After his separation from Wal-Mart, Plaintiff filed an Affidavit of Illegal Discrimination with the Connecticut Commission on Human Rights and Opportunities (CHRO), and thereafter this lawsuit.  In his Complaint, Plaintiff, among other claims, alleged that his termination was based on his race and his alleged reporting of the "abusive" statement made by Dr. Gordon. Plaintiff also claimed that his termination stood in contravention of Connecticut public policy and was therefore actionable under Connecticut common law.  Although Plaintiff concedes that he did not believe Wal-Mart's Vision Center practices were improper at the time he worked at the Vision Center, after his termination and meeting with counsel plaintiff formed the theory that Wal-Mart's use of opticians to conduct the automatic tests violated Connecticut's Optometrists' statute, Conn. Gen. Stat. § 20-138a, and that Wal-Mart came to fear that Plaintiff was on the verge of realizing that the practice was problematic.  Plaintiff concludes that Wal-Mart, in some sort of pre-emptive strike against him, terminated his employment.  Plaintiff never argued that

---

testing "receipts" should be stapled to the patients' files prior to Dr. Gordon's review, and Ellis even posted a model in the Vision Center for reference.

Wal-Mart suspected he believed that the Vision Center practices violated the Connecticut Fair Employment Practices Act (CUTPA), or even that Plaintiff was familiar with CUTPA before the instant litigation, but Plaintiff likewise claimed that his termination was in violation of the public policies codified in that statute as well.

On or about December 5, 2003, Defendant moved for summary judgment on Plaintiff's claims. By way of the Ruling filed by this Court on September 30, 2004, *see* Exhibit A, this Court dismissed Plaintiff's wrongful termination claims that his termination was in contravention of public policy. The Court held that Plaintiff had failed to provide evidence that his interpretation of the legality of Wal-Mart's Vision Center policies was correct, and that, regardless, Plaintiff's claims were pre-empted by Connecticut's Whistleblower Statute, Conn. Gen. Stat. § 31-51m.

Although these issues have been dismissed from the case, and although Plaintiff never moved to reconsider the portion of his negligent misrepresentation claim relating to the vision testing he claims is improper, Plaintiff still seeks to introduce evidence relating to the Vision Screenings and his purported belief that he was neither trained nor licensed to perform them. Plaintiff claims that these issues are somehow related to his claim that he was allowed to ask questions of the doctor about vision screenings. To expedite the trial and avoid unfair prejudice to them, Defendant respectfully request that the Court preclude Plaintiff from introducing testimony or other evidence relating to Plaintiff's claim or purported belief that Wal-Mart is or has violated Conn. Gen. Stat. §20-138 or a related statute, the Connecticut Unfair Trade Practices Act (CUTPA) or that Wal-Mart's pre-testing and Vision Screening practices violate the law or public policy.

---

[7] Plaintiff thought that one of the managers was named "Lenny," but the Store does not have any managers by that name.

7

Defendants object to the introduction of this evidence or any derivation thereof, on three principal grounds: (1) lack of relevance, Fed. R. Evid. 401; (2) only marginal relevance substantially outweighed by other concerns such as undue prejudice or juror confusion, Fed. R. Evid. 403; (3) incompetent or unhelpful opinion testimony, Fed. R. Evid. 701. One or more of these grounds provides a proper basis for excluding each of the foregoing categories of evidence.

Defendants expressly reserve the right to seek to exclude other items from evidence as preparation for trial continues.

## ARGUMENT

### ANY TESTIMONY OR REFERENCES TO PLAINTIFF'S ALLEGED BELIEF THAT WAL-MART'S VISION CENTER PRACTICES VIOLATE THE OPTOMETRY STATUTES IS IRRELEVANT AND UNDULY PREJUDICIAL.

Only relevant evidence is admissible, and relevant evidence is that which tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Plaintiff may seek to introduce testimony, exhibits, or commentary relating to his purported belief that Wal-Mart's Vision Center practices were illegal.[8] Moreover, Plaintiff and/or his counsel will attempt to refer to his alleged feelings regarding the Vision Center practices, although they are no longer relevant to this litigation, in an attempt to prejudice the jury against Wal-Mart and lead them to conclude, albeit incorrectly, that Wal-Mart committed some type of improper practice. This Court has already determined that Plaintiff's assertion that Wal-Mart's Vision Center practices are improper are without merit. Summary Judgment Ruling, p. 4. As noted therein, "[t]he claim that the pre-testing policy violates § 20-138a is based on a debatable interpretation of the statute, one

---

[8] For example, Plaintiff's Joint Trial Memorandum statement indicates that Plaintiff was "neither trained nor licensed" for certain duties he performed. Plaintiff also seeks to introduce evidence relating to Wal-Mart's optometric practices, and requested that Wal-Mart stipulate to numerous purported "facts" that are related solely to this issue, not discrimination, retaliation or an alleged negligent misrepresentation.

8

that has not been endorsed by Connecticut courts." Ruling, p. 4.  Indeed, all of Plaintiff's claims

based upon his belief that Wal-Mart's Vision Center practices are improper have been dismissed

from the case.  Plaintiff's purported opinion of Wal-Mart's Vision Center practices is not

relevant.  It has no bearing on his race, retaliation, or the remaining aspect of his negligent

misrepresentation claim.

Indeed, Plaintiff's opinion is just that -- his own layman's opinion formed in his own self-

interest in an attempt to sustain a lawsuit.  Such non-expert opinion testimony is not permissible

unless it is (a) rationally based on the perception of the witness, and (b) helpful to a clear

understanding of the witness' testimony or the determination of a fact in issue, and (c) not based

on scientific, technical, or other specialized knowledge within the scope of Rule 702.[9]  Fed. R.

Evid. 701.  Plaintiff's opinion about the Vision Center's operations meets none, let all alone all

three, of the criteria.  Plaintiff's belief is not based upon a rational observation, but rather a belief

formed after his separation from Defendant that supports his own interest in attempting to sustain

a lawsuit.  As noted above, it is not at all relevant to the issues, and will serve only to prejudice

the jury and confuse what the remaining issues in this case actually are.  Finally, Plaintiff's

opinion is precisely that which should be the subject of an expert -- here a legal expert -- not a

layperson.

Even if Plaintiff asserted some marginal relevance to his remaining discrimination and

negligent misrepresentation claim, and even if Plaintiff were to somehow become qualified as a

---

[9] Fed. R. Evid. states that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

legal expert, the evidence should be excluded under the balancing test of Rule 403.  Rule 403

provides:

> Although relevant, evidence may be excluded if its probative value is
> substantially outweighed by the danger of unfair prejudice, confusion
> of the issues, or misleading of the jury, or by considerations of undue
> delay, waste of time or needless cumulative evidence.

*See also Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 151 (2d Cir. 1997) (prejudice unfair if

it has 'an undue tendency to suggest decision on an improper basis.'") (*quoting* Fed. R. Evid. 403

advisory committee notes (1972)). Any and all references to Plaintiff's belief that Defendant's

Vision Center practices are illegal, if made, would serve only to prejudice the jury against Wal-

Mart.  In fact, as Plaintiff's wrongful termination claims are no longer a part of this action and

bear no relevance to Plaintiff's race discrimination claims, the sole purpose of mentioning

Plaintiff's theory would be to prejudice the jury and lead them to an impression that Wal-Mart

violates the law.   For these reasons, any and all testimony and/or references to plaintiff's alleged

beliefs must be excluded from trial to avoid unfair prejudice against Wal-Mart.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court issue an order

granting Defendant's motion *in limine* in its entirety and precluding Plaintiff from introducing

the testimony and evidence set forth herein.

10

DEFENDANT WAL-MART STORES, INC.,

By: _____

Mitchell L. Fishberg (ct19661)
Kristi E. Mackin (ct23394)
Brown Raysman Millstein Felder & Steiner LLP
185 Asylum Street, 10th Floor
Hartford, CT 06103
(860) 275-6400

Joel L. Finger (ct06114)
Brown Raysman Millstein Felder & Steiner LLP
900 3rd Avenue
New York, NY 10022
(212) 895-2000

11

## CERTIFICATE OF SERVICE

This is to certify that on this 2nd day of May 2005, a true copy of the foregoing

Memorandum of Law in Support of Defendant's Motion in Limine was sent via facsimile and

first-class mail, postage prepaid, to:

Loraine M. Cortese-Costa, Esq.
Pamela Coyne, Esq.
Durant, Nichols, Houston,
  Hodgson & Cortese-Costa, P.A.
1057 Broad Street
Bridgeport, CT  06804

_____
Kristi E. Mackin

12

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

7004 SEP 30  A 9 29

U. DISTRICT COURT
HARTFORD, CT.

MARVIN KEY,                          :

    Plaintiff,                       :

V.                                   :     CASE NO. 3:03CV144(RNC)

WAL-MART, INC. AND DR.               :
ANTHONY GORDON,                      :

    Defendants.                      :

## RULING AND ORDER

Marvin Key brings this action against Wal-Mart, Inc. and
Anthony Gordon, alleging violations of Title VII of the Civil
Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the
Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen.
Stat. § 46a-60, et seq., and Connecticut common law.  Defendants
have moved for summary judgment on all of plaintiff's claims;
plaintiff has moved for summary judgment on two of them.  For
reasons stated below, defendants' motion is granted in part and
denied in part, and plaintiff's motion is denied.

I.  Facts

The pleadings, depositions, affidavits and other exhibits on
file show the following.  Plaintiff, an African-American
optician, worked for Wal-Mart from February 9, 2000 to April 30,
2001 in the vision center at its North Windham store, under the
supervision of defendant Gordon, an optometrist.  Gordon, who is
also African-American, was an independent contractor, while
plaintiff's immediate Wal-Mart supervisor was Jerome Ellis, the
manager of the vision center.  During this time, plaintiff and

other opticians were required to perform two types of optometric tests on customers, known as "vision screening" and "pre-testing." Plaintiff asserts that he complained about this because he believed it violated state licensing statutes. Also during this time, Ellis imposed progressive discipline on plaintiff, allegedly for giving poor service to customers, culminating in a "decision-making day" on November 2, 2000, during which plaintiff was supposed to reflect on the customer complaints.

On April 27, 2001, a customer named Huong Nguyen brought her two children into the vision center to be tested. While plaintiff was testing them, Nguyen became concerned that he did not know what he was doing, partly because he asked Gordon a number of questions about the testing, and she was unhappy that plaintiff repeatedly asked her children's names. She complained to Gordon, and Gordon brought her complaints to Ellis's attention. At some point, Gordon also criticized plaintiff for failing to staple a file properly, and this led to an argument between them. Plaintiff alleges that Gordon said he was "tired of black people messing up," or words to that effect. Plaintiff claims he told Ellis he was going to complain about this remark, then went into a back room, where he did complain to four men, none of whom he is able to identify. Before Nguyen left the store, she filled out a form complaining about plaintiff's conduct.

During the next working day, April 30, 2001, plaintiff was

2

summoned to meet Roger Noll, the manager of the North Windham store, and Edgar Morales, the co-manager. Noll and Morales terminated his employment at that time, giving as their reasons "poor and unprofessional customer service," "insubordination" and "misconduct with coachings."

II. Discussion

Summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must review the record as a whole, credit all evidence favoring the nonmovant, give the nonmovant the benefit of all reasonable inferences, and disregard all evidence favorable to the movant that a jury would not have to believe. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000).

A. Defendants' Motion

1. Discharge in violation of public policy

Plaintiff claims that he was wrongfully discharged in violation of public policy. Connecticut recognizes a cause of action for wrongful discharge under the "public policy exception" to at-will employment if the discharge derives from a violation of "important" and "clearly established" public policy. Thibodeau v. Design One Architects, 260 Conn. 691, 701 (2002). Defendants are entitled to summary judgment on this claim.

Plaintiff claims that his termination violated public policy in that it was linked to the pre-testing policy, which he views as violating Connecticut's licensing statute for

3

optometrists, Conn. Gen. Stat. § 20-138a, and the Connecticut
Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110b.
Plaintiff has shown no violation of clearly established public
policy under either statute.  The claim that the pre-testing
policy violates § 20-138a is based on a debatable interpretation
of the statute, one that has not been endorsed by Connecticut
courts.[1]   Likewise, plaintiff presents no authority, and none
has been found, for the proposition that the pre-testing policy
violates CUTPA.  Because the law plaintiff relies on is not
clearly established, it cannot be the basis for a claim of
wrongful discharge in violation of public policy.

Plaintiff claims that his discharge also violated the public
policy against discharging actual or potential whistleblowers.
However, this common law claim is preempted by Conn. Gen. Stat. §
31-51m, Connecticut's whistleblower protection statute.  <u>See</u>
<u>Burnham v. Karl & Gelb, P.C.</u>, 252 Conn. 153, 159 (2000).

   2.  <u>Breach of implied contract</u>

Plaintiff claims that Wal-Mart breached an implied contract,
formed at the time he was hired, by requiring him to perform
vision screening and pre-testing.  He does not say what the terms

---

[1]  The statute permits optometric assistant trainees, such
as the opticians in the vision center, to perform optometric
services if they are "under the direct supervision, control and
responsibility of an employing, licensed optometrist."  Conn.
Gen. Stat. § 20-138a(b).  Plaintiff contends that since Gordon
was an independent contractor, he should not be viewed as the
opticians' employer.  He also contends that although Gordon
supervised the opticians in performing the tests, he did not
exercise the requisite level of control or responsibility.

4

of the contract were, and provides no evidence that any contract
was formed.  Because he fails, in response to defendants' motion,
to supply evidence to support an essential element of this claim,
summary judgment is appropriate.  See Celotex Corp. v. Catrett,
477 U.S. 317, 322 (1986).

### 3.  Negligent misrepresentation

Plaintiff claims that Wal-Mart is liable for negligent
misrepresentation because it failed to inform him when he was
hired that he would be expected to perform vision screenings and
tests for eye health.  The tort of negligent misrepresentation,
on the face of it, extends only to supplying false information:
"One who, in the course of his business... supplies false
information for the guidance of others in their business
transactions, is subject to liability... if he fails to exercise
reasonable care or competence in obtaining or communicating the
information."  D'Ulisse-Capo v. Bd. of Dirs. of Notre Dame High
Sch., 202 Conn. 206, 218.  Plaintiff presents no authority for
the proposition that the tort extends to failures to inform.[2]

Plaintiff claims that Wal-Mart made another negligent
misrepresentation when it encouraged him to consult Gordon on
questions relating to vision testing; he claims that he was
terminated in part because he asked such questions, provoking

---

[2]  Under Connecticut law, the tort of fraudulent
misrepresentation may be committed through withholding of
information, but the withholding must be intentional, which is
not alleged here.  Pacelli Bros. Transp., Inc. v. Pacelli, 189
Conn. 401, 407 (Conn. 1983).

5

Nguyen's written complaint that he appeared not to know what he was doing. In response to defendants' motion, plaintiff provides no citation to evidence in the record showing that such representations were made. Without evidence establishing the content of the representations, a reasonable jury could not conclude that they were false. Thus, summary judgment is appropriate on this claim as well.

### 4. Title VII and CFEPA race discrimination claims

Plaintiff claims that Wal-Mart terminated him because of his race in violation of Title VII and CFEPA. Defendants contend that these claims cannot survive the three-step, burden-shifting analysis used to test the sufficiency of discrimination claims. Reeves, 530 U.S. at 142-43 (Title VII); Wroblewski v. Lexington Gardens, Inc., 188 Conn. 44, 53 (1982) (CFEPA). Their argument has considerable force, but not enough to prevail at the summary judgment stage.

Defendants contend that plaintiff fails to meet his initial burden of presenting a prima facie case on the ground that he has not shown that he was terminated in circumstances justifying an inference of discrimination. Plaintiff presents evidence that two white opticians and Ellis (who is white) were not terminated despite problems with treatment of customers.[3] Their cases are not identical to plaintiff's, but they may be considered because

---

[3] Plaintiff also seeks to present evidence regarding a fourth white employee, Dave Peterson. However, Peterson was terminated, and plaintiff presents no evidence that shows that his case was handled differently from plaintiff's.

6

there is a "reasonably close resemblance of the facts and
circumstances . . .." Graham v. Long Island R.R., 230 F.3d 34,
40 (2d Cir. 2000). This evidence of disparate treatment
satisfies the minimal burden of establishing a prima facie case.

Defendants contend that plaintiff cannot sustain his
ultimate burden at step three in the analysis of showing that the
stated reason for his termination -- he was "a poor performer who
treated customers poorly" -- is a pretext for discrimination.
Defendants' nondiscriminatory explanation for the discharge is
corroborated by substantial evidence showing that customers
complained about plaintiff's treatment of them and that he
received progressive discipline regarding those complaints before
he was terminated. (Def.'s Exs. A-6, A-7, A-8.). To create a
genuine issue of fact as to whether this explanation is a pretext
for discrimination, plaintiff must present evidence that the
explanation is false, or that the real reason for the termination
was race. Reeves, 530 U.S. at 146-49. Plaintiff has no direct
evidence to present to a jury that Wal-Mart had a racial motive.[4]
This leaves the circumstantial evidence that three white
employees were treated more leniently. This evidence, which
defendants do not rebut, is marginally sufficient to create an

-------

[4] Gordon's alleged racial remark was made by a non-
decisionmaker (Gordon was not a Wal-Mart employee and there is no
evidence to link him to the termination decision), and the remark
on its face indicates Gordon's personal feeling, not any
knowledge of Wal-Mart's propensity to discriminate. Plaintiff
also seeks to present evidence of another racial remark allegedly
made by Ellis. However, the court has already struck that
evidence as inadmissible hearsay. [Doc. # 127.]

7

issue of fact as to whether race played a role in the
termination.  Accordingly, defendants are not entitled to summary
judgment on plaintiff's discrimination claims.

### 5.  Title VII and CFEPA retaliation claims

Plaintiff also claims that Wal-Mart terminated him in
retaliation for complaining about Gordon's alleged racial remark,
in violation of Title VII and CFEPA.  The sufficiency of these
claims is tested using the same three-stage burden-shifting
analysis.  Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768-69
(2d Cir. 1998)(Title VII); Wroblewski, 188 Conn. at 64 (CFEPA).

Plaintiff has met the minimal burden of making a prima facie
case of retaliation through his testimony that he told Ellis, the
day before his termination, that he intended to make such a
complaint.[5]  Defendants have, as noted above, presented a
legitimate explanation for the termination.  The question, then,
is whether plaintiff has raised a triable issue that this
explanation was a pretext for retaliation.  Plaintiff can meet
this burden by showing a temporal connection between the
protected activity and the termination and offering at least some
evidence to rebut the employer's explanation.  See Quinn, 159
F.3d at 770 (2d Cir. 1998); Bombero v. Warner-Lambert Co., 142 F.
Supp. 2d 196, 211 (D. Conn. 2000).  The former requirement is

---

[5]  A plaintiff's announcement of an intent to file an
internal complaint about a possible violation of Title VII is
enough to establish a protected activity.  See Stein v. New York
State Dept. of Motor Vehicles, 841 F.Supp. 42, 48 (N.D.N.Y.
1993).

8

satisfied because Wal-Mart terminated him one working day after Ellis became aware that he was going to complain about the racial remark; the latter is satisfied by the evidence of disparate treatment discussed above.  Thus, summary judgment on these claims is not appropriate.

### 6.  CFEPA claim against Gordon

Plaintiff claims that Gordon aided and abetted his discriminatory termination, in violation of Conn. Gen. Stat. § 46a-60(a)(5), by deliberately provoking the April 27 incident and by soliciting Nguyen's written complaint against him, in order to help Ellis carry out a preexisting plan to terminate him because he is black.  Defendants argue correctly that plaintiff has not presented sufficient evidence to support this claim. Plaintiff presents no evidence that Gordon asked Nguyen to write her complaint, or that he "provoked" the events that led to her complaint.[6]  The evidence that Gordon conspired with Ellis to get rid of plaintiff comes to nothing more than a fellow employee's testimony that Gordon and Ellis were "best friends," which does not show the existence of a conspiracy.  (Pl.'s Ex. 2 at 30.)  Plaintiff's only relevant evidence on this point shows merely that Gordon brought Nguyen's concerns about plaintiff to

---

[6]  Nguyen in fact testified that "the manager" (apparently Ellis) asked her if she wanted to write a complaint against plaintiff, and that she did not remember if Gordon also asked her about it.  (Pl.'s Ex. 7 at 75.)  The evidence shows that Nguyen initially complained about plaintiff to Gordon, not that Gordon provoked the incident that led to her complaints.

9

Ellis's attention.[7] This is insufficient to establish that Gordon aided and abetted racial discrimination by Wal-Mart. Summary judgment on this claim is therefore appropriate.

B. Plaintiff's Motion

Plaintiff moves for summary judgment on his claims for wrongful discharge in violation of public policy and negligent misrepresentation. As discussed above, these claims cannot survive summary judgment. Thus, plaintiff's motion must be denied.

III. Conclusion

Accordingly, defendants' motion for summary judgment [Doc. #73] is granted as to the claims for discharge in violation of public policy, breach of implied contract, negligent misrepresentation, and aiding discrimination, and denied in all other respects. Plaintiff's motion for summary judgment [Doc. #48] is denied. The claims remaining in this action are plaintiff's Title VII and CFEPA claims against Wal-Mart for racial discrimination and retaliatory termination.

So ordered.

Dated at Hartford, Connecticut this 29th day of September 2004.

---

[7] Gordon testified at his deposition that he brought Nguyen's concerns to Ellis (Pl.'s Ex. 12 at 70), and Nguyen wrote in her original complaint about plaintiff that Gordon had "brought this matter to the managers" (Pl.'s Ex. 14). The "black people messing up" remark, if made, does not show that Gordon aided and abetted discrimination, in the absence of any evidence of actions taken by Gordon that could reasonably be said to have done so.

10

Robert N. Chatigny
United States District Judge

11

# EXHIBIT B

FILED

2004 OCT 15 P 12: 02

DISTRICT COURT
HARTFORD, CT.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARVIN KEY,                          :

      Plaintiff,                     :    CIVIL ACTION NO.
                                  :    3:03CV144 (RNC)

v.                                   :

WAL-MART AND DR. GORDON,             :

      Defendants.                    :    OCTOBER 14, 2004

### PLAINTIFF'S MOTION FOR RECONSIDERATION

        Plaintiff, Marvin Key, by and through his undersigned counsel, hereby moves for

reconsideration of this Court's Order dated September 29, 2004 (the "Order"), granting

Defendants' Motion for Summary Judgment with respect to Count One (discharge in violation of

public policy) and Count Three (negligent misrepresentation).  The grounds for reconsideration

are fully set forth below.

```
February 17, 2005.  Key v. Wal-Mart
                    3:03CV0144 (RNC)

Re:  Plaintiff's Motion for Reconsideration  (Doc. # 140).

Granted.  Upon reconsideration, the court adheres to its decision granting
summary judgment on the wrongful discharge claim, for the reasons stated by
the defendant in its objection to the motion for reconsideration, but
withdraws its ruling granting summary judgment on the breach of implied
contract claim and now denies summary judgment on that claim for the
reasons stated by the plaintiff in his motion for reconsideration.  The
parties will file their joint trial memorandum on or before March 21, 2005.
So ordered.
```

Robert N. Chatigny, U.S.D.J.