UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| MARVIN KEY, | : | |
| | : | 3:03CV144(RNC) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WAL-MART STORES, INC. | : | MAY 3, 2005 |
| | : | |
| Defendant. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION IN LIMINE TO EXCLUDE EVIDENCE CONCERNING
PLAINTIFF'S ALLEGATIONS THAT WAL-MART'S VISION CENTER PRACTICES
ARE IMPROPER**

BROWN RAYSMAN MILLSTEIN
FELDER & STEINER LLP
Joel L. Finger (ct06114)
900 Third Avenue
New York, New York
(212) 895-2340

Mitchell L. Fishberg (ct19661)
Kristi E. Mackin (ct23394)
City Place II, 185 Asylum Street
Hartford, CT 06103
(860) 275-6400

Attorneys for Wal-Mart

## PRELIMINARY STATEMENT

Defendant Wal-Mart Stores, Inc. ("Wal-Mart") ("Defendants") respectfully submits this Memorandum of Law in support of its motion *in limine* to exclude from trial all documentary evidence and testimony concerning a belief that Wal-Mart's Vision Center practices violated Conn. Gen. Stat. §§ 21-138a, Connecticut Optometrist statutes, the Connecticut Unfair Trade Practices Act ("CUPTA"), or are improper or illegal on any other grounds. Indeed, this Court has already ruled that there is no support in the Connecticut case law for such a proposition, and Plaintiff should be precluded from prejudicing the jury with remarks, evidence, or testimony in this area at trial.

Plaintiff's claims arise from his employment as an optician with the Vision Center located in the North Windham Wal-Mart Store. He was terminated on or about April 30, 2001 for, among other reasons, poor customer service. The case involves allegations that Defendants discriminated against Plaintiff in his employment because of his race, African American, and in retaliation for Plaintiff's allegedly reporting what he described as an "abusive" statement by the independent contractor ophthalmologist, Dr. Anthony Gordon (African American), who leased space in the Vision Center to run his practice. This independent contractor is also African American. Plaintiff asserts claims under the Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, ("Title VII") and Connecticut's Fair Employment Practices Act, §§ 46a-60 *et seq*. Plaintiff also claims that Wal-Mart negligently misrepresented that he could ask questions regarding Vision Screenings of the doctor, but then terminated him because he asked the doctor questions. See Ruling and Order filed September 30, 2004 (the "Ruling").[1] This claim, as it

---

[1] This Ruling decided the parties' separate motions for summary judgment and, to the extent it affects the evidentiary issues remaining in this case, will be discussed below. For ease of the Court's Review, the Ruling is attached hereto as Exhibit 1.

appeared in Plaintiff's Amended Complaint, essentially set forth two theories of negligent misrepresentation. The first theory, like Plaintiff's wrongful termination claim, hinged upon Plaintiff's purported belief that the Vision Center's practices were improper. Plaintiff alleged that Wal-Mart made a negligent misrepresentation to him by failing to tell him that he would be expected to perform duties outside of the scope of his optician's license. The second portion of his claim alleged that Plaintiff was negligently informed that he could ask questions of the doctor, but that Plaintiff was terminated over a year later for, so he claimed, asking the doctor questions.

The Ruling granted judgment in Defendant's favor on Plaintiff's common law wrongful termination claims as well as Plaintiff's negligent misrepresentation claim. Plaintiff moved to reconsider the granting of summary judgment on both his wrongful termination count and the negligent misrepresentation claim. In his Motion for Reconsideration, Plaintiff did not discuss the portion of his claim relating to the Vision Center's practices, but argued only that Plaintiff had been told that he could ask questions of the doctor but was then purportedly terminated for asking questions. The Court denied Plaintiff's Motion for Reconsideration on the wrongful termination count, solidifying that Plaintiff's claims based on his alleged belief that Wal-Mart's Vision Screenings were improper are no longer a part of this case. *See* Ruling on Plaintiff's Motion for Reconsideration (the "Reconsideration Ruling").[2] However, the Court granted Plaintiff's Motion with regard to the negligent misrepresentation claim as it was discussed in the motion. *Id.* By way of a telephone conference with the Court's clerk, the Court confirmed that it was the Court's intent to allow only the portion of the negligent

---

[2] For ease of review, the Reconsideration Ruling is attached as Exhibit 2.

misrepresentation claim relating to Plaintiff's claim that he was negligently informed that he could ask the doctor questions.

## STATEMENT OF FACTS

### 1. **Factual Background**

Plaintiff, an optician licensed in the State of Connecticut, accepted employment with the North Windham Wal-Mart (the "Store") on February 9, 2000 as an optician working in the Store's Vision Center. The Vision Center was managed by Mr. Ellis. *See* Ruling on the Parties' Motions for Summary Judgment, filed by this Court on September 30, 2004 (the "Summary Judgment Ruling"), p. 1. Dr. Gordon, also an African American, leased space from Wal-Mart to operate his optometry practice in the Vision Center. Soon after Plaintiff was hired, he received training in the Vision Center's operations. This training included how Wal-Mart wanted Plaintiff to perform "vision screenings" and "pre-testing."[3]

Wal-Mart has a progressive discipline policy, which it uses to handle employee discipline and performance issues. When necessary, Wal-Mart progressively disciplines its employees first through a verbal coaching,[4] which, if necessary, is followed by a written coaching, a

---

[3] A vision screening is a test for "visual acuity," *i.e.* how well a person sees without glasses. To perform vision screenings, Plaintiff and the other Vision Center employees were trained in the use of a machine called an auto refractor that tests visual acuity. The auto refractor machine requires the patient to place his or her head on a chin rest. Thereafter, the machine automatically measures the patient's visual acuity and prints a paper receipt with the test results. Plaintiff also was trained in how to perform "pre testing." The pre-tests (which required the use of automated machines to test peripheral vision, ocular pressure and visual acuity) likewise relied on automated machines in which the patients rested their chins on a headrest, the machine conducted a measurement, and printed the test results. Opticians do not read the results, but are referred to the resident optometrist for an eye examination. The screening results are then provided to an optometrist, in this case Dr. Gordon, who interprets the test results, conducts the patient's eye exam, and, in some cases, issues a prescription for the patient to obtain eye glasses or contact lenses.

[4] A "coaching" is a combination of constructive criticism and discipline designed to correct an associates problematic behaviors or performance.

"Decision-making Day"[5] and finally, termination. Plaintiff does not dispute that he received verbal coachings, a written coaching, and a Decision-making Day prior to his termination.

Plaintiff received verbal coachings for missing department meetings, how he greets customers and his manner when he talks with them, and not wearing his lab coat. Thereafter, on July 13, 2000 Ellis issued his first written warning to Plaintiff, which noted that Wal-Mart had received "complaints from two separate customers concerning the way Marvin handled them." Plaintiff acknowledges that he received the written coaching. On November 4, 2000, Ellis issued Plaintiff a Decision-making Day. The Decision-making Day form noted, among other things, that Plaintiff had told a customer with a brain injury to "go home and bring her husband in" because the woman was "a little slow at learning." Ellis, however, spent a few minutes with the woman and answered all of her questions. The same form also noted that another customer had complained "when she came into store, Marvin wouldn't take care of her when asked, [and] told other associate to get someone else."

On April 27, 2001 Wal-Mart customer Huong Nguyen ("Nguyen") brought in her twin children, her daughter Kimi and her son Harrison, for eye examinations by Dr. Gordon. Plaintiff conducted the pre-testing for Kimi in the presence of her mother while Dr. Gordon was nearby. At some point during the pre-testing, Plaintiff claims that Dr. Gordon yelled at him and accused him of stapling one of the children's files incorrectly.[6] Plaintiff claims that Dr. Gordon also stated "words to the affect that he's [Dr. Gordon] tired of black people messing up," which Plaintiff considered to be an "abusive" statement. Plaintiff claims that he complained about Dr.

---

[5] The Decision-making Day is a day off, with pay, in which employees are asked to consider their commitment to Wal-Mart employment and to prepare a plan of action for correcting their employment problems.

[6] The machines used by the Vision Center to conduct pre-testing create printed records of the test results that resembles an itemized customer receipt from a grocery store. Ellis had instructed the employees about how the pre-

Gordon's "abusive" statement to a group of managers in a room in the back of the Store, although Plaintiff cannot identify any of the managers to whom he allegedly complained.[7]

As a result of the Nguyen complaint, Assistant Manager Edgar Morales reviewed Plaintiff's history of customer service complaints and spoke to Mr. Noll. As a result of Plaintiff's continued poor service to customers and in accordance with Wal-Mart's progressive discipline policy, Plaintiff's employment was terminated. When Plaintiff arrived at work on April 30, 2001, Plaintiff was asked to attend a meeting with Noll and Morales. At that time, Plaintiff was notified that his employment was terminated. Ruling, p. 3.

### 2. **Plaintiff's Allegations As They Relate to This Motion**

After his separation from Wal-Mart, Plaintiff filed an Affidavit of Illegal Discrimination with the Connecticut Commission on Human Rights and Opportunities (CHRO), and thereafter this lawsuit. In his Complaint, Plaintiff, among other claims, alleged that his termination was based on his race and his alleged reporting of the "abusive" statement made by Dr. Gordon. Plaintiff also claimed that his termination stood in contravention of Connecticut public policy and was therefore actionable under Connecticut common law. Although Plaintiff concedes that he did not believe Wal-Mart's Vision Center practices were improper at the time he worked at the Vision Center, after his termination and meeting with counsel plaintiff formed the theory that Wal-Mart's use of opticians to conduct the automatic tests violated Connecticut's Optometrists' statute, Conn. Gen. Stat. § 20-138a, and that Wal-Mart came to fear that Plaintiff was on the verge of realizing that the practice was problematic. Plaintiff concludes that Wal-Mart, in some sort of pre-emptive strike against him, terminated his employment. Plaintiff never argued that

---

testing "receipts" should be stapled to the patients' files prior to Dr. Gordon's review, and Ellis even posted a model in the Vision Center for reference.

6

Wal-Mart suspected he believed that the Vision Center practices violated the Connecticut Fair Employment Practices Act (CUTPA), or even that Plaintiff was familiar with CUTPA before the instant litigation, but Plaintiff likewise claimed that his termination was in violation of the public policies codified in that statute as well.

On or about December 5, 2003, Defendant moved for summary judgment on Plaintiff's claims. By way of the Ruling filed by this Court on September 30, 2004, *see* Exhibit 1, this Court dismissed Plaintiff's wrongful termination claims that his termination was in contravention of public policy. The Court held that Plaintiff had failed to provide evidence that his interpretation of the legality of Wal-Mart's Vision Center policies was correct, and that, regardless, Plaintiff's claims were pre-empted by Connecticut's Whistleblower Statute, Conn. Gen. Stat. § 31-51m.

Although these issues have been dismissed from the case, and although Plaintiff never moved to reconsider the portion of his negligent misrepresentation claim relating to the vision testing he claims is improper, Plaintiff still seeks to introduce evidence relating to the Vision Screenings and his purported belief that he was neither trained nor licensed to perform them. Plaintiff claims that these issues are somehow related to his claim that he was allowed to ask questions of the doctor about vision screenings. To expedite the trial and avoid unfair prejudice to them, Defendant respectfully request that the Court preclude Plaintiff from introducing testimony or other evidence relating to Plaintiff's claim or purported belief that Wal-Mart is or has violated Conn. Gen. Stat. §20-138 or a related statute, the Connecticut Unfair Trade Practices Act (CUTPA) or that Wal-Mart's pre-testing and Vision Screening practices violate the law or public policy.

---

[7] Plaintiff thought that one of the managers was named "Lenny," but the Store does not have any managers by that name.

Defendants object to the introduction of this evidence or any derivation thereof, on three principal grounds: (1) lack of relevance, Fed. R. Evid. 401; (2) only marginal relevance substantially outweighed by other concerns such as undue prejudice or juror confusion, Fed. R. Evid. 403; (3) incompetent or unhelpful opinion testimony, Fed. R. Evid. 701. One or more of these grounds provides a proper basis for excluding each of the foregoing categories of evidence.

Defendants expressly reserve the right to seek to exclude other items from evidence as preparation for trial continues.

## **ARGUMENT**

### ANY TESTIMONY OR REFERENCES TO PLAINTIFF'S ALLEGED BELIEF THAT WAL-MART'S VISION CENTER PRACTICES VIOLATE THE OPTOMETRY STATUTES IS IRRELEVANT AND UNDULY PREJUDICIAL.

Only relevant evidence is admissible, and relevant evidence is that which tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Plaintiff may seek to introduce testimony, exhibits, or commentary relating to his purported belief that Wal-Mart's Vision Center practices were illegal.[8] Moreover, Plaintiff and/or his counsel will attempt to refer to his alleged feelings regarding the Vision Center practices, although they are no longer relevant to this litigation, in an attempt to prejudice the jury against Wal-Mart and lead them to conclude, albeit incorrectly, that Wal-Mart committed some type of improper practice. This Court has already determined that Plaintiff's assertion that Wal-Mart's Vision Center practices are improper are without merit. Summary Judgment Ruling, p. 4. As noted therein, "[t]he claim that the pre-testing policy violates § 20-138a is based on a debatable interpretation of the statute, one

---

[8] For example, Plaintiff's Joint Trial Memorandum statement indicates that Plaintiff was "neither trained nor licensed" for certain duties he performed. Plaintiff also seeks to introduce evidence relating to Wal-Mart's optometric practices, and requested that Wal-Mart stipulate to numerous purported "facts" that are related solely to this issue, not discrimination, retaliation or an alleged negligent misrepresentation.

8

that has not been endorsed by Connecticut courts." Ruling, p. 4. Indeed, all of Plaintiff's claims based upon his belief that Wal-Mart's Vision Center practices are improper have been dismissed from the case. Plaintiff's purported opinion of Wal-Mart's Vision Center practices is not relevant. It has no bearing on his race, retaliation, or the remaining aspect of his negligent misrepresentation claim.

Indeed, Plaintiff's opinion is just that – his own layman's opinion formed in his own self-interest in an attempt to sustain a lawsuit. Such non-expert opinion testimony is not permissible unless it is (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.[9] Fed. R. Evid. 701. Plaintiff's opinion about the Vision Center's operations meets none, let all alone all three, of the criteria. Plaintiff's belief is not based upon a rational observation, but rather a belief formed after his separation from Defendant that supports his own interest in attempting to sustain a lawsuit. As noted above, it is not at all relevant to the issues, and will serve only to prejudice the jury and confuse what the remaining issues in this case actually are. Finally, Plaintiff's opinion is precisely that which should be the subject of an expert – here a legal expert – not a layperson.

Even if Plaintiff asserted some marginal relevance to his remaining discrimination and negligent misrepresentation claim, and even if Plaintiff were to somehow become qualified as a

---

[9] Fed. R. Evid. states that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

legal expert, the evidence should be excluded under the balancing test of Rule 403. Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury, or by considerations of undue delay, waste of time or needless cumulative evidence.

*See also Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 151 (2d Cir. 1997) (prejudice unfair if it has 'an undue tendency to suggest decision on an improper basis.'") (*quoting* Fed. R. Evid. 403 advisory committee notes (1972)). Any and all references to Plaintiff's belief that Defendant's Vision Center practices are illegal, if made, would serve only to prejudice the jury against Wal-Mart. In fact, as Plaintiff's wrongful termination claims are no longer a part of this action and bear no relevance to Plaintiff's race discrimination claims, the sole purpose of mentioning Plaintiff's theory would be to prejudice the jury and lead them to an impression that Wal-Mart violates the law. For these reasons, any and all testimony and/or references to plaintiff's alleged beliefs must be excluded from trial to avoid unfair prejudice against Wal-Mart.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court issue an order granting Defendant's motion *in limine* in its entirety and precluding Plaintiff from introducing the testimony and evidence set forth herein.

DEFENDANT WAL-MART STORES, INC.,


By:_____
    Mitchell L. Fishberg (ct19661)
    Kristi E. Mackin (ct23394)
    Brown Raysman Millstein Felder & Steiner LLP
    185 Asylum Street, 10th Floor
    Hartford, CT  06103
    (860) 275-6400

    Joel L. Finger (ct06114)
    Brown Raysman Millstein Felder & Steiner LLP
    900 3rd Avenue
    New York, NY 10022
    (212) 895-2000

## **CERTIFICATE OF SERVICE**

This is to certify that on this 3rd day of May 2005, a true copy of the foregoing Memorandum of Law in Support of Defendant's Motion in Limine was sent via first-class mail, postage prepaid, to:

Loraine M. Cortese-Costa, Esq.
Pamela Coyne, Esq.
Durant, Nichols, Houston,
  Hodgson & Cortese-Costa, P.A.
1057 Broad Street
Bridgeport, CT  06804

                                                              _____
                                                              Kristi E. Mackin

HARTFORD 118921v1