# Exhibit E

Case 3:03-cv-00144-RNC   Document 164-13   Filed 05/23/2005   Page 2 of 6

Key vs. Wal-Mart
8/13/2003
Marvin Key

Page 1

```
 1              UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF CONNECTICUT
 2
           - - - - - - - - - - - x
 3    Case No. 303CV144                    ORIGINAL
      MARVIN KEY,
 4         Plaintiff,
      vs.
 5    WAL-MART, INC., and
      DR. ANTHONY GORDON,
 6         Defendants.
 7    - - - - - - - - - - - x
 8    -----------------------------------------------
              DEPOSITION OF: MARVIN KEY
 9    -----------------------------------------------
10         Taken before Sue A. Terry,
      R.P.R./C.R.R., a Notary Public in and for the
11    State of Connecticut, pursuant to Notice and
      the Federal Rules of Civil Procedure, at the
12    offices of Brown Raysman Millstein Felder &
      Steiner LLP, CityPlace II, 185 Asylum Street,
13    Hartford, Connecticut, on August 13, 2003,
      commencing at 10:00 a.m.
14
                        - - -
15
16
17
18
19
20
21
22
23
                BRANDON REPORTING SERVICE
24                   (860) 549-1850
                  11A Capitol Avenue
25            Hartford, Connecticut 06106
```

Page 140

```
 1        Q.    And did you come back to work the
 2   next day that you were supposed to return to
 3   work on the schedule?
 4        A.    Yeah.
 5        Q.    Okay.  Was that the same day you
 6   had the exit interview and were terminated?
 7        A.    Yeah.
 8        Q.    Now, do you know if Dr. Gordon had
 9   a contract with Wal-Mart that controlled his
10   relationship with the company?
11        A.    I don't know what Dr. Gordon had.
12        Q.    Do you know if Dr. Gordon had to
13   report to anybody at Wal-Mart, like he had a
14   supervisor or manager?
15        A.    I don't know what Dr. Gordon's
16   employer/employee relationship was.
17        Q.    Earlier in reference to Key Exhibit
18   10 -- you probably recall this document.
19        A.    Yeah.
20        Q.    You said the first time you saw
21   this document was today or maybe yesterday.
22              Do you know why Wal-Mart did not
23   provide you a copy of that document at the
24   time of your termination?
25        A.    I don't know.
```

1    Q.   I would like to you examine -- and
2  I want to clean this up a little bit because
3  you have so many documents in front of you.
4         I want you to focus in on the one
5  I'm asking questions about.
6    A.   Okay.
7    Q.   So the one I want to ask you
8  questions about is Key Exhibit 11, which is
9  the -- that one, I guess, so let me take back
10 the other ones -- 12, 13, 14, 15, 16 -- okay.
11        With respect to Key Exhibit 11,
12 it's a single-page document, and at the top
13 is written "Given to Marvin."
14        Have you examined that document?
15   A.   Yeah.
16   Q.   Okay.  Can you identify what it is?
17   A.   It looks like a parting -- parting
18 computation of pay due.
19   Q.   And does your signature appear
20 anywhere on this document?
21   A.   Yeah.
22   Q.   At the bottom; is that correct?
23   A.   Yeah.
24   Q.   Okay.  And does this document, Key
25 Exhibit 11, reflect the amount of money that

*3/10/2005 Key, Marvin Vol. I - 6/24/03*

```
 1         UNITED STATES DISTRICT COURT
           DISTRICT OF CONNECTICUT
 2
              Case No: 3:03CV144(RNC)
 3
 4  MARVIN KEY,
 5       Plaintiff
 6  VS.
 7  WAL-MART, INC., and ANTHONY GORDON,
 8       Defendants
 9
10  DEPOSITION OF: MARVIN KEY
    DATE: JUNE 24, 2003
11  HELD AT: BROWN, RAYSMAN, MILLSTEIN, FELDER & STEINER
    CITYPLACE II, 185 ASYLUM ST., HARTFORD, CT
12
13  APPEARANCES:
14  Representing the Plaintiff
15  DURANT, NICHOLS, HOUSTON, HODGSON & CORTESE-COSTA
    1057 Broad Street
16  P.O. Box 351
    Bridgeport, CT  06601
17  BY:  Loraine Cortese-Costa, Esq.
18  Representing the Defendants
19  BROWN, RAYSMAN, MILLSTEIN, FELDER & STEINER
    CityPlace II
20  185 Asylum Street
    Hartford, CT  06103
21  BY: Gregory Reilly, Esq.
22  ALSO PRESENT: Anthony Gordon and Jerry Ellis
23    Reporter: JUDITH L. FREER, RPR LSR#403
         BRANDON SMITH REPORTING SERVICE
24          44 Capitol Avenue
          Hartford, Connecticut  06106
25          (860) 549-1850
```

*Page 1*

*3/10/2005 Key, Marvin Vol. I - 6/24/03*

```
 1               INDEX OF EXAMINATION
 2
 3  Direct Examination by Mr. Reilly .......... 4
 4
 5
 6
 7
 8               INDEX OF EXHIBITS
 9  Exhibit No. 1, Supervisor Notes..................92
10  Exhibit No. 2, Hourly Associate Information Sheet..95
11  Exhibit No. 3, Job Description.....................98
12  Exhibit No. 4, Wal-Mart Associate Handbook........104
13  Exhibit No. 5, Complaint..........................125
14  Exhibit No. 6, Coaching form......................134
15  Exhibit No. 7, Coaching form......................143
16  Exhibit No. 8, Note...............................166
17  Exhibit No. 9, Note...............................166
18
19
20
21
22
23  (Reporter's note: Exhibits retained by counsel)
24
25
```

*Page 3*

*3/10/2005 Key, Marvin Vol. I - 6/24/03*

```
 1             STIPULATIONS
 2
 3
 4       It is stipulated by the attorneys for the
 5  Plaintiff and the Defendant that each party reserves the
 6  right to make specific objections in open court to each and
 7  every question asked and the answers given thereto by the
 8  witness, reserving the right to move to strike out where
 9  applicable, except as to such objections as are directed to
10  the form of the question.
11
12       It is stipulated and agreed between counsel for the
13  parties that the proof of the authority of the Commissioner
14  before whom this deposition is taken is waived.
15
16       It is further stipulated that any defects in the
17  notice are waived.
18
19       It is further stipulated that the reading and signing
20  of the deposition transcript by the witness is not waived.
21
22
23
24
25
```

*Page 2*

*3/10/2005 Key, Marvin Vol. I - 6/24/03*

```
 1       (Deposition commenced at 10:00 a.m..)
 2
 3       MARVIN KEY, Deponent, having first been duly sworn, deposes
 4  and states as follows:
 5
 6       DIRECT EXAMINATION BY MR. REILLY:
 7
 8  Q    Good morning, Mr. Key.  My name is Greg
 9  Reilly.  I'm one of the attorneys that represents
10  Wal-Mart.  You have have filed a lawsuit against
11  Wal-Mart and Doctor Gordon.  I represent both
12  entities.  I represent Wal-Mart and Doctor Gordon.
13       In any event, I want to give you a few of
14  the groundrules of the deposition.  First, if I ask
15  you a question, you have to answer verbally.
16  Nodding your head, going umh and ahh doesn't count,
17  doesn't get into the record.  So, if you could do
18  that, I would appreciate that.
19       Do you understand?
20  A    Yeah.
21  Q    Likewise, we're not here to torture
22  anybody, so if at any point you need to take a break
23  to use the facilities or get a drink of water or
24  something, what have you, please feel free to say so
25  and I would be happy to accomodate you.  The only
```

*Page 4*

1  A  Just what is written.
2  Q  Okay.
3  A  And --
4  Q  Is there any other factual basis for your
5  belief that your coaching on July 13, 2000 had
6  anything to do with your race?
7  A  I can't recall any right now.
8  Q  I would ask you now to go back and examine
9  what was previously marked as Key Exhibit 7. Do you
10 have any -- first of all, do you have any belief
11 that the coaching you received on November 4, 2000
12 has anything to do with your race?
13 A  I don't know.
14 Q  By the way, this customer who complained
15 about the -- the customer who complained and had
16 said that she had a brain injury, do you see the
17 reference to that in the paragraph there near the
18 top?
19 A  Well, that's what looks like Jerry Ellis
20 wrote.
21 Q  Okay. Do you recall what race this woman
22 was?
23     MS. CORTESE-COSTA: I'm going to object to
24  the form, only because it presumes that she
25  actually complained.

1     MR. REILLY: Understood. I'll withdraw
2  and re-ask it.
3  Q  (By Mr. Reilly) The woman who told you
4  she had a brain injury, what was her race?
5  A  I don't recall.
6  Q  Okay.
7  A  Are you done with this?
8  Q  Yes, I am.
9     MR. REILLY: I would like to have this
10 marked as Key Exhibit 8.
11
12     (Exhibit No. 8, Note, marked for
13      Identification.)
14
15
16    MR. REILLY: And I would like to have this
17 marked as Key Exhibit 9.
18
19     (Exhibit No. 9, Note, marked for
20      Identification.)
21
22 Q  I would ask you to examine what's been
23 marked as Key Exhibit 9.
24 A  Yes.
25 Q  You may recall earlier, just fairly

1  recently in your testimony here, you mentioned that
2  Roger Knoll had given you a book to read --
3  A  Yes.
4  Q  -- after you received the decision-making
5  day. Do you remember testifying about that?
6  A  Yes.
7  Q  Okay. I would ask you to review what's
8  been marked as Key Exhibit 9.
9  A  Yes.
10 Q  Have you reviewed it?
11 A  Yes.
12 Q  Okay. Who wrote this document?
13 A  I did.
14 Q  Okay. And that's just -- that's the
15 official version.
16     Did Mr. Knoll give you a publication
17 entitled "180 Ways to Walk the Customer Service
18 Talk"?
19 A  Yes.
20 Q  Could you read the entirety of this note
21 into the record, please?
22 A  "1-20-00, to Roger Knoll: This note
23 acknowledges receipt of your recommended publication
24 "180 Ways to Walk the Customer Service Talk". This
25 info will alert me to continue to provide top

1  customer service which will be verified and
2  monitored by me, the licensed optician, and to avert
3  potential violation of company rules and
4  regulations. Please file this note with my original
5  letter to show my compliance with the reading
6  suggested".
7  Q  Okay. If you go back to Key Exhibit 7,
8  which I'll give you here --
9  A  I got it.
10 Q  You had mentioned in your associate's
11 comments that you'll investigate -- and I don't know
12 what the rest of it says because I can't read it,
13 but that presumably, and correct me if I'm wrong,
14 you were going to find ways to make improvements; is
15 that correct?
16 A  No. I was going to read his book.
17 Q  Okay. Did you read the book?
18 A  Skimmed through it.
19 Q  Okay. Why did you skim through it?
20 A  Because I told him I would.
21 Q  Did you tell him you were going to read it
22 or you were going to skim through it?
23 A  I don't remember.
24 Q  Was this your agreement to read this book
25 or to skim through this book? Was that part of how