# CASE APPENDIX

Westlaw.

Not Reported in F.Supp.  Page 1
1995 WL 399484 (N.D.Ill.), 6 A.D. Cases 771, 11 A.D.D. 1233, 6 NDLR P 401
(Cite as: 1995 WL 399484 (N.D.Ill.))

C

**Motions, Pleadings and Filings**

United States District Court, N.D. Illinois, Eastern Division.
Thomas WAGNER, Plaintiff,
v.
KESTER SOLDER COMPANY, a division of Litton Systems, a corporation, Defendant.
No. 94 C 6039.

June 28, 1995.

*MEMORANDUM OPINION AND ORDER*

CONLON, District Judge.

*1 Thomas Wagner sues Kester Solder Company ("Kester") pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Wagner alleges age and disability discrimination in connection with a termination decision. Kester moves for summary judgment. Fed.R.Civ.P. 56.

*BACKGROUND*

Wagner was employed by Kester. Kester manufactures solder products. Kester's principal production facility is in Des Plaines, Illinois, and it has small production plants in Anaheim, California and Brantford, Ontario. Def. 12(m) ¶ 2.

Wagner was diagnosed with multiple sclerosis in 1960. *Id.* at ¶ 6. Sometime in the 1970's, Wagner told Vern Kramer, Kester's president, that he had multiple sclerosis. *Id.* Wagner's affliction was common knowledge among Kester employees. *Id.* Wagner experiences several minor physical problems as a result of his disease, including gait problems, vision problems, occasional slurred speech, and bladder problems. *Id.* at ¶¶ 7-9. These physical problems did not interfere with the performance of his job at Kester or with most other physical activities. *Id.* at ¶¶ 9-10.

Despite his illness, Wagner enjoyed success during his tenure at Kester. In 1959, Wagner was hired as a production supervisor at the Anaheim plant. *Id.* at ¶ 3. In 1971, Kramer promoted Wagner to operations manager at one of Kester's plants in Chicago. [FN1] *Id.* In 1976, Kramer promoted Wagner to director of manufacturing. *Id.* at ¶ 4. In 1983, Kramer changed Wagner's title to vice president of manufacturing. *Id.* As vice president of manufacturing, Wagner supervised the solder-producing operations at Kester's four North American plants, [FN2] as well as the purchasing and personnel departments. *Id.* at ¶ 13. The person in charge of each plant reported to Wagner. Wagner reported directly to Kramer. *Id.* at ¶ 14.

Larry Thomas is director of labor negotiations for Litton Industries. [FN3] On January 10, 1994, Thomas offered Wagner a medical disability package consisting of $65,000 a year and medical benefits until the age of 65. Wagner Dep. 90-91. Wagner rejected the package, reasoning that accepting the package would prevent him

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

from working for the rest of his life. *Id.* at 102-03. Later that week, Wagner met with Kramer and asked if Kramer had told Thomas to offer Wagner the disability package; Kramer denied it. *Id.* at 93-94. At the same time, however, Kramer informed Wagner that "there may be some changes coming up that affect Wagner." Wagner Dep. 102. On January 21, 1994, Kramer terminated Wagner, saying that his services were no longer required. *Id.* Kramer immediately left the country for one week. Upon his return on February 1st, Wagner asked Kramer why he had been terminated. Kramer stated, "[g]ive me a couple days to think about it," and did not provide an immediate answer. *Id.* at 102-03. Several days later, Kramer told Wagner that he was terminated for failure to keep up with changes at Kester. *Id.* at 103. Wagner was 56 years of age on the date he was terminated. Def. 12(m) ¶ 17.

*2 Kester contends that Wagner was fired for performance-related reasons. Kramer testified that Wagner's performance became deficient on January 21, 1994, which is the same day that he fired Wagner. Kramer Dep. 164. Kramer testified that Wagner's performance was "questionable" before that date. *Id.* Wagner testified that he received the maximum increases and bonuses that could be allocated to his position in the company. Wagner Dep. 132-33. Kester paid Wagner his largest bonus ever in January 1994, shortly before his termination. *Id.* at 133. Kramer exercised some discretion in awarding this bonus, and the bonus was in the lower-middle range of the bonuses that Kramer paid to his direct reports. Kramer Dep. 173, 178. There is no written record of Wagner's alleged performance problems. Kramer Dep. 85. Kramer testified that he never specifically told Wagner that Wagner's performance was deficient prior to the termination, although Kramer may have "conveyed" the information "in his own way." Kramer Dep. 84-87.

Prior to Wagner's termination, Paul Gassensmith, age 43, was the Des Plaines plant manager. Immediately following Wagner's termination, Gassensmith assumed the newly-created position of manufacturing manager for North America. Pl. 12(n) ¶ 22. Gassensmith's new position gave him responsibility for manufacturing in Kester's three North American plants; Gassensmith performs many of the same responsibilities listed in Wagner's job profile. Wagner Dep. 53; Kramer Dep. 302-321. Gassensmith began reporting directly to Kramer after Wagner's termination. Kramer Dep. 182.

*DISCUSSION*

Kester moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. A movant is entitled to summary judgment when the moving papers and affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Richards v. Combined Ins. Co.,* No. 94-1038, slip op. at 8-9 (7th Cir. May 11, 1995). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Becker v. Tenenbaum-Hill Assoc., Inc.,* 914 F.2d 107, 110 (7th Cir.1990). The court considers the record as a whole, and draws all reasonable inferences from it in the light most favorable to the party opposing the motion. *Fisher v. Transco Services-Milwaukee, Inc.,* 979 F.2d 1239, 1242 (7th Cir.1992). Nevertheless, the court is not required to draw every conceivable inference in favor of the nonmoving party, and is not required to scour the record in search of a genuine issue of triable fact. *Richards,* slip op. at 9. A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Stewart v. McGinnis,* 5 F.3d 1031, 1033 (7th Cir.1993), *cert. denied,* 114 S.Ct. 1075 (1994). This standard is applied with added rigor in employment discrimination cases, where issues of intent

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 3
1995 WL 399484 (N.D.Ill.), 6 A.D. Cases 771, 11 A.D.D. 1233, 6 NDLR P 401
**(Cite as: 1995 WL 399484 (N.D.Ill.))**

and credibility often dominate. *Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1038 (7th Cir.1993); *McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 370-71 (7th Cir.1992).

I. *Age Discrimination*

*3 Wagner alleges that he was discharged because of his age. The ADEA makes it unlawful for an employer to discharge an employee because of age when the employee is at least 40 years old. 29 U.S.C. § § 623(a)(1), 631(a) (1992). Wagner's ultimate burden, then, is to prove that he was discharged from his employment because of his age. *Sarsha,* 3 F.3d at 1038. While he does not need to establish at trial that age was the sole factor motivating his discharge, Wagner must show that a discriminatory motive probably caused the adverse employment decision. *Oxman v. WLS-TV,* 846 F.2d 448, 452 (7th Cir.1988).

A terminated employee may establish an ADEA claim in two ways. First, the employee can prove age discrimination directly by use of direct or circumstantial evidence of discrimination. *Oxman,* 846 F.2d at 452; *McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 371 n. 2 (7th Cir.1992); *La Montagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1409 (7th Cir.1984). Direct proof may include discriminatory remarks or actions by the employer's decisionmaker, as well as circumstantial evidence, such as a statistical imbalance in the age of the employer's workforce. *Perfetti v. First Nat'l Bank,* 950 F.2d 449, 450 (7th Cir.1991), cert. denied, 112 S.Ct. 2995 (1992).

In the absence of direct evidence, an ADEA plaintiff may make a claim through use of the burden-shifting method established for Title VII cases in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). A discharged plaintiff establishes a *prima facie* case of age discrimination by showing (1) that he is in the protected age group; (2) that he was performing according to the employer's legitimate expectations; (3) that he was terminated; and (4) a younger employee was treated more favorably. *Roper v. Peabody Coal Co.,* 47 F.3d 925, 926-27 (7th Cir.1995); *Oxman v. WLS-TV,* 846 F.2d 448, 454-55 (7th Cir.1988). A plaintiff satisfying these four elements shifts the burden of production to the defendant, who must articulate a legitimate and nondiscriminatory reason for the discharge. *McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 371 (7th Cir.1992). If the defendant can articulate a nondiscriminatory reason, the burden shifts back to the plaintiff to show that the employer's proffered reasons could be a pretext for discrimination. *McCoy,* 957 F.2d at 371. A plaintiff establishes pretext by showing that the employer's reasons are unworthy of credence or that the decision to terminate was more likely than not motivated by discriminatory reasons. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256 (1981); *Oxman,* 846 F.2d at 456. The burden-shifting method is used when no "smoking gun" evidence exists to prove discrimination directly, for the method eliminates the most common nondiscriminatory reasons for the plaintiff's discharge. *Texas Dep't of Community Affairs,* 450 U.S. at 254. Wagner elects to proceed by the burden-shifting method.

*4 The parties agree that Wagner satisfies the first and third elements for a *prima facie* case; Wagner is over 40 years old and he was terminated. The parties join issue on whether Wagner performed according to the legitimate expectations of his employer and whether younger employees were treated more favorably.

Kester contends that Wagner failed to live up to Kramer's performance expectations. In support, Kester cites the performance-related reasons given by Kramer to explain Wagner's termination. However, this argument is circular. Anytime an employer fires an employee, the act of termination and the proffered

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 4
1995 WL 399484 (N.D.Ill.), 6 A.D. Cases 771, 11 A.D.D. 1233, 6 NDLR P 401
**(Cite as: 1995 WL 399484 (N.D.Ill.))**

reasons for it would serve as proof that the employee was not living up to the employer's expectations, at least in the subjective sense. *See Pilditch v. Board of Educ., 3 F.3d 1113, 1117 (7th Cir.1993)*. Allowing Kester to disprove the "legitimate expectations" element of a *prima facie* case in this way would render the standard meaningless. *Pilditch, 3 F.3d at 1117*. Instead, the relevant inquiry is whether Wagner proffers objective evidence that he is sufficiently competent to satisfy an employer's legitimate expectations. *Pilditch, 3 F.3d at 1117*. Wagner may satisfy this standard by showing that he was hired in essentially the same capacity by another employer. *Id.* Here, the record contains evidence that Wagner is currently working as a plant manager at Qualitek, a manufacturer of solder products; Wagner's duties at Qualitek are essentially the same as his duties at Kester. Wagner Dep. 10-11. Accordingly, the court finds that Wagner is able to establish that he is sufficiently competent to satisfy Kester's legitimate expectations.

Moreover, Wagner manages to raise an issue of fact on this issue even without evidence of his new employment. Kester contends that Wagner's performance was deficient for several reasons. First, Kester argues that Wagner's inventory turnaround time was deficient and that Kramer repeatedly told Wagner that improvement was needed. However, Kramer testified only that Kester had a continuous, generalized goal of improving inventory turnaround and that he discussed ways to meet that goal with Wagner. Kramer Dep. 133. These discussions took place over the course of 24 years. Kramer Dep. 154. Kramer never told Wagner that his performance was deficient. Kramer Dep. 84-87.

Second, Kester argues that Wagner failed to take steps to improve the manufacturing technology used at the company. However, Kramer testified that he never discussed these problems with Wagner; Kramer implied that many of these problems were the responsibility of other people. Kramer Dep. 83-85. Kester also maintains that Wagner did not keep up with changes in the solder business. Although Kramer testified generally, Kramer was unable to recall any specific subject on which Wagner failed to keep current. Kramer's vague testimony raises questions as to whether Kramer had any defined expectations for Wagner and, if so, whether those expectations were legitimate.

*5 Kester further contends that Kramer was "so dissatisfied" with Wagner's supervision of the maintenance and engineering functions that he removed them from Wagner's direct supervision two years prior to Wagner's termination. Although Kramer testified that he did indeed split the engineering and maintenance functions off from Wagner's responsibility, there is *no* evidence in the record as to why this decision was made. *See* Kramer Dep. 108. Wagner testified that he did not believe Kramer took away the engineering and maintenance functions for performance reasons. Wagner Dep. 142. Kester's assertion is therefore unsupported, especially when the evidence is viewed in a light favorable to Wagner.

Finally, the bulk of Kester's evidence concerning Wagner's alleged poor performance is hearsay. *See* Def. 12(m) ¶ ¶ 21, 24-31. Facts used to support a summary judgment motion must be in a form admissible as evidence. *See Klein v. Trustees of Indiana University, 766 F.2d 275, 283 (7th Cir.1985)*. Kester's hearsay evidence on Wagner's poor performance is inadmissible for proving the truth of the matter asserted and therefore does not support Kester's argument. [FN4]

Other facts enter the mix. Kramer never specifically informed Wagner that he was not performing adequately in any area. Kramer Dep. 84-87. In contrast, Wagner received substantial raises and bonuses during his entire tenure at Kester. Wagner Dep. 132-33. Perhaps more importantly, Kester paid Wagner the largest

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                Page 5
1995 WL 399484 (N.D.Ill.), 6 A.D. Cases 771, 11 A.D.D. 1233, 6 NDLR P 401
**(Cite as: 1995 WL 399484 (N.D.Ill.))**

bonus Wagner had ever received just prior to his termination, and Kramer testified that he exercised some discretion in awarding this bonus. Kramer Dep. 173.  In addition, although Kramer testified that he fired Wagner for inadequate performance, Kramer also testified that Wagner's performance only became inadequate on the day that he fired Wagner.  Kramer Dep. 164. Prior to that day, Kramer described Wagner's performance as "questionable," which suggests that it is arguable whether Wagner was performing according to expectations at the time of his termination.  *Id.* at 164.  Finally, Wagner testified that he believed his performance satisfied his employer's legitimate expectations and was never given reason to think otherwise.  Wagner Dep. 133. This evidence, coupled with the shortcomings in Kester's evidence, suffices to raise an issue of fact as to whether Wagner was performing according to his employer's legitimate expectations. [FN5]

The fourth element of a *prima facie* case is that a younger employee was treated more favorably.  Kester argues that it eliminated Wagner's position after his termination.  Wagner, however, presents evidence that Gassensmith was promoted to manufacturing manager for North America, a newly-created position, immediately after Wagner's termination.  Pl. 12(n) ¶ 22. Gassensmith began reporting directly to Kramer, and became responsible for manufacturing at all Kester's North American plants.  Wagner performed these duties prior to his termination.  Wagner Dep. 53. In addition, Gassensmith began performing many of the same functions listed on Wagner's job profile. Kramer Dep. 302-321.  Finally, Wagner testified that he could have assumed Gassensmith's previous duties as plant manager "with no problem," and that Gassensmith could have been the one fired by Kester instead of Wagner. Wagner Dep. 129.  Thus, Wagner raises an issue of fact as to whether Gassensmith, a younger employee, was treated more favorably than Wagner and may have functionally replaced Wagner. [FN6]

*6 Because Wagner has established a *prima facie* case, the burden of production shifts to Kester to articulate a legitimate nondiscriminatory explanation for Wagner's discharge.  Kester asserts that it discharged Wagner because of deficient performance.  For example, Kramer testified that Wagner's inventory turnaround was inefficient and that Wagner failed to improve manufacturing technology or to keep up with changes.  See Def. 12(m) ¶ ¶ 19- 20.  Kramer also testified that he received a host of complaints from supervisors and hourly workers that Wagner was not performing adequately and that Wagner had lost the respect of his subordinates. See Def. 12(m) ¶ ¶ 21, 24-31.  Kester has articulated a legitimate nondiscriminatory reason for Wagner's discharge and for treating Gassensmith more favorably than Wagner.

Because Kester articulates a legitimate explanation, Wagner must raise an issue of fact that Kester's proffered reasons may be a pretext for discrimination.  Wagner meets his burden.  Wagner presents evidence that several individuals made statements that may reflect Kester's age-related animus.

First, Wagner testified that Gassensmith, the younger manager who arguably replaced Wagner, introduced Wagner as "the old man" on several occasions to suppliers and others outside Kester.  Wagner Dep. 116.  Wagner submits an affidavit from his son, who is Kester's supervisor of plant maintenance. Wagner's son avers that he and Gassensmith had business-related conversations on approximately twenty occasions in which Gassensmith "repeatedly" referred to Wagner as "the old man."  Michael Wagner Aff. ¶ 4.  Wagner claims that Gassensmith harbored discontent for him, testifying that Gassensmith was "after my butt." Wagner Dep. 112.

Second, Wagner testified that he and Thomas had dinner approximately two weeks

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 6
1995 WL 399484 (N.D.Ill.), 6 A.D. Cases 771, 11 A.D.D. 1233, 6 NDLR P 401
**(Cite as: 1995 WL 399484 (N.D.Ill.))**

prior to the termination. Thomas spontaneously asked Wagner his age. When Wagner replied that he was 56, Thomas allegedly stated, "You are pretty up there in age and your problems are getting a little worse. I can get you [a disability package]. You can lay back, take it easy from now to 65." Wagner Dep. 91.

Finally, Wagner and Bob Sokolowski, Kester's 59 year-old controller, had a conversation over dinner approximately a year prior to Wagner's termination. During that conversation, Sokolowski made comments that Wagner recounted as follows:
> Best I can remember [Sokolowski and I] were talking about Kester Solder, [Sokolowski said] that we are all getting old; upper management is getting a little up there in age. If we were to go anywhere in the 21st century, we were going to look at bringing some young blood in.... [but] Don't worry about it. As long as Vern [Kramer] is in charge, we are safe.
>
> Wagner Dep. 114-15.

Kester does not dispute that these statements may reasonably be interpreted as discriminatory. The parties disagree over the relevance of the statements. Wagner contends that Gassensmith, Thomas, and Sokolowski are high-ranking Kester officials and that their statements betray Kester's hostility toward older employees. Kester responds that Kramer alone made the decision to fire Wagner and that neither Gassensmith nor Sokolowski were Wagner's direct supervisor.

**\*7** "Summary judgment generally is improper where the plaintiff can show that an employee with discriminatory animus provided factual information or other input that may have affected the adverse employment action." _Dey v. Colt Construction & Development Co._, 28 F.3d 1446, 1459 (7th Cir.1994); _Robinson v. PPG Indus._, 23 F.3d 1159, 1165 (7th Cir.1994); _Shager v. Upjohn Co._, 913 F.2d 398, 405 (7th Cir.1990); _Jardien v. Winston Network, Inc._, 888 F.2d 1151, 1155 (7th Cir.1989). Thus, where an otherwise good faith decisionmaker has in the course of an employment decision solicited the views of a prejudiced employee, _Colt Construction & Development Co._, 28 F.3d at 1459, accepted the input of a prejudiced employee, _Jardien_, 888 F.2d at 1155, or relied on performance evaluations submitted by a prejudiced employee, _Robinson_, 23 F.3d at 1165, the innocent decisionmaker acts as an unacceptable "conduit" for prejudice and summary judgment is inappropriate. _Shager_, 913 F.2d at 405.

Kramer made the decision to terminate Wagner and retain Gassensmith. There is no direct evidence that Kramer acted with discriminatory intent. However, the record establishes that Kramer decided to terminate Wagner based in part on input and informal evaluations provided by Gassensmith. Kramer Dep. 269. Kramer testified that Gassensmith's input about Wagner "wasn't very flattering." _Id_. at 270. Moreover, Kramer testified that Gassensmith did not get along with Wagner. _Id_. at 374. Wagner's testimony suggests that Gassensmith wanted Wagner out. This evidence supports an inference that Gassensmith may have harbored an age-related animus and that this animus may have influenced his negative assessment of Wagner. _See Shager_, 913 F.2d at 405.

Similarly, Kramer testified that he consulted with Thomas prior to deciding whether to terminate Wagner. Kramer Dep. 141. Thomas urged Kramer to terminate Wagner. Kramer Dep. 266. Thomas also played some role in the decision to terminate Wagner.

The relevance of Sokolowski's statement is more difficult to assess. There is no evidence that Kramer consulted with Sokolowski or accepted relevant input from Sokolowski prior to making the termination decision. [FN7] Sokolowski's statement might be considered nothing more than a "stray remark," which is not relevant

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                Page 7
1995 WL 399484 (N.D.Ill.), 6 A.D. Cases 771, 11 A.D.D. 1233, 6 NDLR P 401
**(Cite as: 1995 WL 399484 (N.D.Ill.))**

absent some connection to the termination decision.  See *Price Waterhouse v. Hopkins,* 490 U.S. 228, 277 (1989) (O'Connor, J., concurring).  But stray remarks usually consist of casual epithets hurled by a plaintiff's co-workers;  these co-workers generally have no decision-making authority and are not management employees charged with formulating company policy.  A stray remark becomes proof of discrimination when it supports a rational inference that an employment decision was made "because of" an illegitimate criterion.  *Price Waterhouse,* 490 U.S. at 278 (O'Connor, J., concurring); *Robinson v. PPG Indus.,* 23 F.3d 1159, 1165-66 (7th Cir.1994).  Sokolowski is Kester's controller;  he is one-step lower than Kramer, reports directly to Kramer, and is Kramer's longtime good friend.  More importantly, Sokolowski purports to state Kester's institutional policy--that its goal is to bring "some young blood in" and replace those in upper management "who are getting a little up there in age."  Given Sokolowski's position at Kester and the nature of his statement, Sokolowski's statement appears relevant to whether Wagner was discharged because of age.

  **\*8** The court finds that the purported statements of Gassensmith, Thomas, and Sokolowski could support a reasonable inference that Wagner's termination was age-motivated.  Accordingly, Wagner has raised an issue of fact as to whether Kester's explanation for his termination is a pretext for age discrimination.

  Pretext may also be established by showing that an employer's proffered reasons for a termination are unworthy of credence.  See *Burdine,* 450 U.S. at 256. Although the three statements and their connection to the employment decision are enough for Wagner to survive Kester's summary judgment motion, other evidence buttresses this finding by casting doubt on Kester's explanation.  Kramer claims that he fired Wagner for performance-related reasons.  However, it is undisputed that Kramer never informed Wagner that his performance was inadequate.  Kramer fired only one other salaried employee in recent years.  Pl. 12(n) ¶ 19.  Unlike the procedure afforded Wagner, Kramer informed this employee that his performance was inadequate and gave him a six-month probationary period to "shape up or ship out."  Pl. 12(n) ¶¶ 19-20. Moreover, Wagner received raises and bonuses throughout his tenure.  Wagner received his largest bonus just prior to his termination.  The amount of the bonus was in the lower-middle range of the bonuses paid to Wagner's peers, and Kramer played a discretionary role in awarding the bonus.  Finally, although Kramer claims to have been observing Wagner's inadequate performance for some time, Kramer was unable to provide Wagner with a reason for the termination when asked by Wagner on February 1st.  Instead, Kramer asked for "a couple days to think about it."  A reasonable jury could find this evidence inconsistent with Kramer's claim that he terminated Wagner for performance-related reasons.

  Kester correctly notes that this court does not sit as a super-personnel department reviewing Kester's employment decisions.  The issue is whether Kester's reasons for terminating Wagner are honest and genuinely motivated Kester to terminate Wagner, not whether its decision was correct.  See *Pollard v. Rea Magnet Wire Co.,* 824 F.2d 557, 560 (7th Cir.1987).  The remarks by Gassensmith, Thomas, and Sokolowski, and the connection of these individuals to the employment decision, are sufficient to raise an issue of fact on this score.  In addition, Wagner has raised an issue of fact as to the integrity of Kester's explanations by noting that he was never informed of his inadequate performance, that he received merit raises and bonuses throughout his tenure, and that Kramer was unable to provide any immediate explanation for the termination when asked. [FN8]  Wagner's evidence is not overwhelming; aside from the statements of Gassensmith, Thomas, and Sokolowski, perhaps no one piece of evidence would support a finding of age discrimination. But "to require ... that each piece of circumstantial evidence 'standing alone' be

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                            Page 8
1995 WL 399484 (N.D.Ill.), 6 A.D. Cases 771, 11 A.D.D. 1233, 6 NDLR P 401
**(Cite as: 1995 WL 399484 (N.D.Ill.))**

sufficient to support a finding of age discrimination is to render meaningless the indirect method of proof and invite the pretexts that can render the ADEA a nullity." *Futrell v. J.I. Case,* 38 F.3d 342, 350 (7th Cir.1994) (quoting *Graefenhain v. Pabst Brewing Co.,* 827 F.2d 13, 20 (7th Cir.1987)). Taking the facts as a whole, and viewing them in a light most favorable to Wagner, a reasonable jury could conclude that Kester discharged Wagner because of his age.

II. *Disability Discrimination*

*9 As an alternative to his age discrimination claim, Wagner contends that Kester discharged him because of a disability in violation of the ADA. Wagner may prove disability discrimination either by direct evidence or by using the *McDonnell-Douglas* burden-shifting method. *See DeLuca v. Winer Industries, Inc.,* No. 94-2905, slip op. at 6-7 (7th Cir. Apr. 24, 1995). Wagner elects to proceed under the burden-shifting method. In order to establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must show (1) he is a member of the protected class; (2) his work performance met the employer's legitimate expectations; (3) his employment was terminated; and (4) employees not in the protected class replaced him or were treated more favorably. *See DeLuca,* slip op. at 7 & n. 4.

Kester contends that Wagner is not a member of the protected class. The ADA proscribes discrimination against a "qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). "Disability" is defined as (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102. Federal regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

Wagner must show that he is an "individual with a disability" to be within the class protected by the ADA. Wagner claims that his multiple sclerosis causes him several minor physical problems. However, Wagner concedes that these problems do not affect his ability to work at Kester or to perform other activities such as driving or swimming. Def. 12(m) ¶¶ 9-10. Wagner has never requested accommodation from Kester because of his disability. *Id.* at ¶ 12. And there is no evidence that Wagner's multiple sclerosis otherwise "substantially limits" a major life activity as defined by the regulations. Accordingly, the court concludes that Wagner has not established that his multiple sclerosis substantially limits a major life activity. *See also Lowe v. Angelo's Italian Foods, Inc.,* 1994 U.S. Dist. Lexis 17150 (D.Kan. Nov. 18, 1994) (individual suffering from multiple sclerosis is not disabled under the ADA unless the disease substantially limits major life activities).

Wagner alternatively contends that he is an individual with a disability because he is regarded as such by his employer. The ADA protects those "regarded as having" a disabling impairment in order to disabuse people of myths about the disabled and prohibit discrimination against those with an impairment that does not substantially limit major life activities. *See* H.R. No. 485(II) at 53, *reprinted in* 1990 U.S.C.C.A.N. at 335; *School Board of Nassau County v. Arline,* 480 U.S. 273 (1987). A person is "regarded" as having an impairment if (1) the person has a physical or mental impairment that does not substantially limit major life activities but that is treated by an employer as constituting such a limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(3) does not have a qualifying impairment but is treated as having such an impairment. 29 C.F.R. § 1630.2(1). Wagner presents evidence that Thomas, director of labor negotiations for Litton, offered him a disability package. Thus, Wagner has raised an issue of fact as to whether Kester regarded him as suffering from a disability.

*10 Kester next contends that Wagner was not performing according to his employer's legitimate expectations and that Wagner cannot show that non-disabled individuals were treated more favorably. As discussed above, the court finds that Wagner raises an issue of fact on these issues. Accordingly, Wagner has raised a question of fact that he can establish a *prima facie* case of disability discrimination. See *DeLuca,* slip op. at 8.

Because Kester articulates a legitimate nondiscriminatory reason for termination, Wagner must present evidence that Kester's explanation may be pretextual. Wagner primarily points to the Thomas' statements as evidence that Wagner may have been terminated because of his disability. The record shows that Thomas offered Wagner an unsolicited disability package and encouraged Wagner to accept the package and leave Kester. Thomas' offer occurred just prior to Wagner's termination. Wagner regarded the offer as "a total surprise." Wagner Dep. 90. In encouraging Wagner to take the package, Thomas allegedly remarked to Wagner that "your problems are getting a little worse." Wagner Dep. 91. In addition, Wagner's son avers that Thomas approached him in December 1993 or January 1994, inquired how Wagner "was getting around due to his illness," and asked Wagner's son how he would feel if his father were not around the company anymore. Michael Wagner Aff. ¶ 5. Kramer admits that he consulted with Thomas in making the termination decision, that Thomas was the source of some of the performance-related criticisms of Wagner, and that Thomas urged Kramer to terminate Wagner.

Thomas, therefore, played a role in Wagner's termination. Thomas' statements and his offer of a disability package support a reasonable inference that Thomas believed Wagner could no longer perform his duties because of his illness. Moreover, the unsolicited nature of his offer is relevant. Cf. *Washburn v. Kansas City Life Ins. Co.,* 831 F.2d 1404, 1409 (8th Cir.1987) (comment to employee that "alternative to your firing ... would be for you to take early retirement" supported jury verdict of age discrimination); *Rottersman v. CBS, Inc.,* 726 F.Supp. 484, 488, 493 (S.D.N.Y.1989) (unsolicited retirement questions by supervisor lent strength to plaintiff's age discrimination claim). Also relevant is Wagner's evidence tending to suggest that Kramer's reasons for the termination may be unworthy of credence. See *supra* pp. 17-18. Viewing this evidence in a light most favorable to Wagner, the court finds that Wagner has raised an issue of fact that he was terminated because of a disability.

*CONCLUSION*

Kester Solder Company's motion for summary judgment is denied. The parties are directed to submit their joint final pretrial order in open court on July 19, 1995 at 9:00 a.m. This case is placed on the August trial calendar.

> FN1. Kester formerly maintained two plants in Chicago. In 1986, these plants were consolidated and moved to the current location in Des Plaines, Illinois.
>
> FN2. Kester operated a plant in Newark, New Jersey until approximately 1992; there are now only three plants in North America.
>
> FN3. Kester is a division of Litton Systems, Inc.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:03-cv-00144-RNC    Document 168-2    Filed 05/24/2005    Page 11 of 11

Not Reported in F.Supp.                                                              Page 10
1995 WL 399484 (N.D.Ill.), 6 A.D. Cases 771, 11 A.D.D. 1233, 6 NDLR P 401
**(Cite as: 1995 WL 399484 (N.D.Ill.))**

FN4. Kester contends that hearsay evidence is admissible to show state of mind, and argues that the negative comments heard by Kramer are probative of Kramer's state of mind when he fired Wagner. *See, e.g., Faulkner v. Super Valu Stores,* 3 F.3d 1419, 1434-35 (10th Cir.1993). This may be true, but Kester presently is not using the statements to show state of mind. Kester proffers hearsay as evidence that Wagner was not performing his job well. Thus, Kester is using the statements to establish the truth of the matter asserted--that Wagner was not performing in accordance with his employer's legitimate expectations. Hearsay is inadmissible for this purpose.

FN5. Kester's reliance on *Kotarski v. Binks Mfg. Co.,* 837 F.Supp. 247 (N.D.Ill.1992) is unpersuasive. Kotarski failed to present any evidence that he had been performing according to his employer's legitimate expectations. Although Kotarski received no warning prior to termination, he was aware of specific complaints about his work and was one of only two foremen who did not receive a pay raise for three years. *See Kotarski,* 837 F.Supp. at 248-49. Kotarski did not contend that he actually had been performing up to expectations. *Id.* at 250. In contrast, Wagner argues that he was performing up to his employer's legitimate expectations and presents evidence supporting that inference. Wagner presents objective evidence that he is sufficiently competent to satisfy an employer's expectations; this is the only relevant inquiry. *See Pilditch,* 3 F.3d at 1117 (post-dating *Kotarski*).

FN6. Kester notes that Gassensmith is not responsible for the purchasing and personnel departments, as was Wagner. However, the fact that Gassensmith does not perform each and every one of Wagner's previous duties is only marginally relevant to whether Gassensmith was treated more favorably than Wagner. The record suggests that Wagner's primary responsibility was manufacturing; it is undisputed that Gassensmith now supervises manufacturing for Kester's North American operations. Kester assigned supervision of purchasing and personnel to Barry Atonson, who is also younger than Wagner. Wagner Dep. 136.

FN7. In his brief, Wagner contends that "Kramer admitted in his testimony that he relied upon criticisms of Sokolowski." Pl.Br. at 12. The court is unable to locate support in the record for this assertion.

FN8. Kester's explanations are also not wholly supported by the record.

**Motions, Pleadings and Filings (Back to top)**

- 1:94CV06039 (Docket)
(Oct. 04, 1994)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.