**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MARVIN KEY, | : | |
| | : | **CIVIL ACTION NO.** |
| Plaintiff, | : | **3:03CV144 (RNC)** |
| | : | |
| v. | : | |
| | : | |
| WAL-MART, INC. and | : | |
| DR. ANTHONY GORDON, | : | |
| | : | |
| Defendants. | : | **MAY 23, 2005** |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION *IN LIMINE* REGARDING**
**WAL-MART'S ATTEMPTS TO SUPPRESS AND**
**MISSING EVIDENCE OF CONSEQUENTIAL FACTS**

Plaintiff, Marvin Key, by and through undersigned counsel, submits this memorandum in opposition to Defendant's motion *in limine* seeking to preclude evidence of Wal-Mart's attempts to suppress information indicating the lack of a legitimate non-discriminatory reason for its discharge of Plaintiff, its consciousness of wrongdoing in connection with its treatment of Plaintiff and the existence of missing evidence relevant to Plaintiff's claims.

Evidence At Issue

Defendant's motion seeks to exclude from presentation to the jury "all documents, testimony, argument or commentary that in any way concerns the discovery conducted by either party in this case including, without limitation, any and all disputes, motions or other issues relating to Plaintiff's efforts to obtain from Wal-Mart a copy of his personnel file, the personnel files of other current or former Wal-Mart employees or any other related document or

information, whether prior to or during this litigation." (Defendant's Memorandum of Law in Support,[1] p. 2). Defendant's motion thus seeks to exclude the following evidence and/or arguments contemplated by Plaintiff to be offered at trial:[2]

- Wal-Mart's refusal to supply Plaintiff with a copy of his personnel file despite several valid requests pursuant to section 31-128f of the Connecticut General Statutes until compelled to do so by the Connecticut Department of Labor;

- With respect to a daytimer journal maintained by Plaintiff's supervisor during Plaintiff's employment and containing handwritten notes regarding the supervisor's dealings with Plaintiff and desire to see him discharged, his concerns with respect thereto and his treatment of Plaintiff's similarly situated co-workers, Wal-Mart's 1) failure to identify the existence of it (until confirmed by the supervisor at deposition), 2) attempts to obfuscate its existence and at the same time to use parts helpful to its defense by providing typewritten excerpts from the daytimer without identifying or producing the source of the typewritten material, and 3) failure to produce the daytimer "until the night before the oral argument on Plaintiff's motion [to compel]" for which behavior Defendant was sanctioned by Magistrate Martinez with the possibility of further sanctions still pending (*see* attached Orders of Judge Martinez dated Nov. 3, 2003, ¶¶ 8 and 9 and Jan. 8, 2004);

- Wal-Mart's refusal to articulate any legitimate non-discriminatory reason for its actions against Plaintiff or to identify the individual who made the decision to discharge Plaintiff in response to Plaintiff's discovery requests and requiring Plaintiff to obtain a Court Order for production of the information (*see* Nov. 3, 2003 Order, ¶¶ 2 and 9);

- Wal-Mart's refusal to provide information regarding the comparative treatment of similarly situated employees to Plaintiff (other Opticians and Optician apprentices who worked in the same

---

[1] hereinafter "Def. mem".
[2] Not all the matters listed are specifically referred to in Plaintiff's motion *in limine*, but to facilitate pretrial disposition, Plaintiff has attempted to identify all contemplated items which might arguably fall within the breadth of the Order sought by Defendant.

store as Plaintiff) in response to Plaintiff's discovery requests requiring Plaintiff to obtain a Court Order for production of the information (see Nov. 3, 2003 Order, ¶¶ 3 and 9; *see also* May 20, 2004 marginal Order of Judge Martinez attached); and

-   the fact there were large gaps in the comparative data it was ultimately compelled to produce, specifically that it could not "locate" two of the compelled personnel files which Plaintiff sought to prove differential treatment of similarly situated White co-workers, although it "was able to recreate some personnel file information" from its database (*see* Wal-Mart's Memorandum of Law in Support of its Motion for a Protective Order, p. 2, n. 2 (copy attached)).

## Argument

### THE PROFERRED EVIDENCE IS RELEVANT
### TO THE ISSUES TO BE TRIED IN THIS CASE

Wal-Mart's arguments in opposition to the introduction of Plaintiff's proffered evidence focus solely on the precepts and rules regarding disclosure and formal discovery, the sanctions available for violation of those precepts and rules and the prior litigation of discovery issues in this case which it mischaracterizes.[3] However, by its proffer of evidence for trial, Plaintiff is not seeking to have the Court impose sanctions for Defendant's failure to comply with the dictates of the Connecticut General Statutes in failing to provide Plaintiff with a copy of his personnel file nor to impose additional sanctions on it for its discovery abuses. Neither is it attempting to present at trial *all* the tactics engaged in by Defendant in the discovery process, the vast majority

---

[3]  Defendant claims that it was also required to file a motion related to discovery (Def. mem., p. 2), however, the motion it cites was to strike two affidavits filed in support of Plaintiff's opposition to Wal-Mart's motion for summary judgment which were stricken as hearsay not for any reasons relating to discovery. Defendant further asserts that "Magistrate Martinez did not award sanctions or attorney's fees to either side with respect to any of the three motions." Magistrate Martinez did deny Defendant's request for sanctions outright, however, sanctions were awarded Plaintiff in connection with its second Motion to Compel (see January 8, 2004 Order) and its request for an award of attorney's fees is still pending (see November 3, 2004 Order, ¶9).

of which have not been proffered as evidence for trial despite the fact that some of them are still

subject to the imposition of sanctions pursuant to Order of Judge Martinez (November 3, 2003

Order, ¶ 9). Rather, the issue for the Court's consideration at this juncture is whether the

proffered evidence is relevant to any issue bearing on the verdict the jury will be asked to render

in this case. If so, the Court must consider whether the evidence is "unduly prejudicial" as

asserted by Defendant. *McQueeney v. Wilmington Trust Company*, 779 F.2d 916, 921-921 (2d

Cir. 1995). " 'Relevant evidence' means evidence having any tendency to make the existence of

any fact that is of consequence to the determination of the action more probable or less probable

than it would be without the evidence," FRE 401. "The plain meaning of the Rule demonstrates

that the scope of relevant evidence is intended to be broad," *McQueeney,* 779 F.2d at 922, and

should be admitted "[i]n the absence of a showing of particularized danger of unfair prejudice,"

*id.* at 923, which is " 'not to be equated with testimony simply adverse to the opposing party,' "

*id., quoting Dollar v. Long Mfg.,* 561 F.2d 613, 618 (5th Cir. 1977) or potentially suggestive of

improper behavior by the other party, *id.*

A.   **The Proffered Evidence Is Probative Of Wal-Mart's Consciousness Of Wrongdoing
      In Its Actions Towards Plaintiff**

In *Warner Barnes & Co. v. Kokosai,* 102 F.2d 450, 453 (2d Cir. 1939), the Second

Circuit, citing Wigmore §268, stated that "[w]hen a party is once found to be fabricating, or

suppressing, documents, the natural, indeed, the inevitable, conclusion is that he has something

to conceal, and is conscious of guilt." In that case, the Court found that evidence of an attempt to

falsify evidence on an issue of consequence to the case "goes much further than merely to

discredit the document itself; it is positive evidence upon the very issue, and weighty evidence as well." *Id.*

In *McQueeney,* 779 F.2d at 922, the Second Circuit applied the same principle of admission by conduct and held that evidence from which a jury could infer conduct by a party suggesting the suppression or falsification of evidence (in that case, the possible subornation of perjury in testimony given at deposition even though not offered at trial) constituted substantive evidence of the party's consciousness of the weakness of his case; it was admissible and for the jury to decide whether falsification had indeed occurred. *Id.* at 921-922.

In this case too, Defendant's attempts to keep from Plaintiff information contained in his personnel file, concerning its reason for discharging Plaintiff and who made the decision, regarding its treatment of similarly situated employees and particularly the evidence of an attempt by Wal-Mart to provide only select excerpts from the daytimer while obfuscating the existence of the daytimer itself, could serve to establish an admission by conduct that Wal-Mart was conscious of wrongdoing with respect to its treatment of Plaintiff. For that reason, the evidence should be admitted. *McQueeney, supra; Warner Barnes & Co., supra.*

**B.    The Proffered Evidence Is Probative Evidence That Defendant's Articulated Reasons For Plaintiff's Treatment And Discharge Are Pretextual**

The proffered evidence is also probative to an issue of major significance in any discrimination case - - whether the employer's articulated reason for its treatment of the plaintiff is pretextual. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 146 (2000); *Binder v. Long Island Lighting Company,* 57 F.3d 193, 200 (2d Cir. 1995). In *Reeves,* 530 U.S.

at 146, the Supreme Court, discussing the "shifting burden" requirements for discrimination

cases as set forth in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506 (1993) stated that:

> ...it is *permissible* for the trier of fact to infer the ultimate fact of
> discrimination from the falsity of the employer's explanation.
> Specifically, we stated:
>
>> "The factfinder's disbelief of the reasons put forward by the
>> defendant (particularly if disbelief is accompanied by a
>> suspicion of mendacity) may, together with the elements of
>> the prima facie case, suffice to show intentional
>> discrimination. Thus, rejection of the defendant's proffered
>> reasons will *permit* the trier of fact to infer the ultimate fact
>> of intentional discrimination." *Id.* at 511, 113 S.Ct. 2742.
>
> Proof that the defendant's explanation is unworthy of credence is
> simply one form of circumstantial evidence that is probative of
> intentional discrimination, and it may be quite persuasive. See *id.*
> at 517, 113 S.Ct. 2742 ("[P]roving the employer's reason false
> becomes part of (and often considerably assists) the greater
> enterprise of proving that the reason was intentional
> discrimination"). In appropriate circumstances, the trier of fact can
> reasonably infer from the falsity of the explanation that the
> employer is dissembling to cover up a discriminatory purpose.
> Such an inference is consistent with the general principle of
> evidence law that the factfinder is entitled to consider a party's
> dishonesty about a material fact as "affirmative evidence of guilt."
> *Wright v. West,* 505 U.S. 277, 296, 112 S.Ct 2482, 120 L.Ed.2d
> 225 (1992); see also *Wilson v. United States,* 162 U.S. 613, 620-
> 621, 16 St.Ct. 895, 40 L.Ed. 1090 (1896); 2 J. Wigmore, Evidence
> §278(2), p. 133 (J. Chadbourn rev. 1979).

To the same effect, in *Binder*, 57 F.3d at 200, the Second Circuit held that:

> Resort to a pretextual explanation is, like flight from the scene of a
> crime, evidence indicating consciousness of guilt, which is, of
> course, evidence of illegal conduct. In so stating, we do not
> exclude the possibility that an employer may explain away the
> proffer of a pretextual reason for an unfavorable employment
> decision. *See Woods v. Friction Materials, Inc.,* 30 F.3d 255, 260

n. 3 (1st Cir.1994). Such an explanation might include, for example, protection of a business secret or even protection of the reputation of an employee who had engaged in undesirable conduct. No such explanation was offered in the instant matter.

In short, the district court should not have granted judgment n.o.v. because the jury was entitled to conclude, as it did, that the explanations offered by LILCO were pretextual and to draw a permissible inference of discrimination.

Here, Plaintiff seeks to introduce evidence of Defendant's 1) refusal to articulate in response to discovery requests the reason for its discharge of Plaintiff or the person who it alleges made the decision, 2) possible attempt to bolster its decision to discharge Plaintiff by creating a false document (daytimer excerpts) while, at the same time, suppressing the daytimer itself which contains numerous references to differential treatment of White employees, discharging Plaintiff and concerns about it, and 3) "missing" comparative data which could have shown differences between the treatment of Plaintiff and similarly situated White employees. All three are probative of the pretextual nature of Defendant's articulated reasons for discharging Plaintiff which would permit the jury to make an ultimate finding in Plaintiff's favor. *Reeves*, 530 U.S. at 146. Thus, they are relevant and admissible at trial. FRE 401.

## C.    The Existence of "Missing" Materials Should Be Admitted At Trial

Plaintiff should also be allowed to introduce evidence that information relative to the treatment by Wal-Mart of two White employees similarly situated to Plaintiff which Defendant was compelled by Order to produce to Plaintiff was claimed to be lost by Wal-Mart. The Second Circuit directly addressed the manner in which missing information in the control of one party should be dealt with in *McFarlane v. Canadian Pacific Railway*, 278 F.3d 54, 62-63 (2d Cir. 2002) (citations omitted) as follows:

> At oral argument to us, Amtrak aptly characterized the event recorder as the "railroad equivalent of a black box" of an airplane. It is therefore reasonable to characterize any print-out preceding the one submitted by Amtrak to the district court as significant - - even crucial - - evidence. Moreover, Macfarlane argues that the event records has always been in Amtrak's control. It appears that the print-out from the event recorder is now missing for the time period during which Amtrak claims the warning whistle was first sounded. Macfarlane argued in the district court that under these circumstances, it was entitled to draw the inference that the missing data is unfavorable to Amtrak. As already indicated, the district court rejected this argument because Macfarlane's claim that Amtrak destroyed the data was simply speculative and Macfarlane had "submitted no evidence to warrant an inference that Amtrak acted improperly." However, the district court should not have, in effect, construed the absence of the recorder evidence against Macfarlane, who had no control over the event recorder and who was the non-moving party on the summary judgment motion.
>
> Amtrak argues to us that Macfarlane never requested the data print-out for the earlier time period in question, and therefore the district court correctly ruled that no inference should be drawn that Amtrak improperly destroyed that evidence. However, we do not believe that it is necessary for Macfarlane to show that Amtrak *destroyed* the evidence in order to allow an inference that the earlier print-out would not have supported Amtrak's position. It

should be enough to show that Amtrak had control of the event recorder at the relevant times, that the evidence was available, and that Amtrak failed or refused to produce this evidence.

That evidence of "missing" documents pertinent to Plaintiff's claims of discrimination should be admitted where Plaintiff has made out a prima facie case of discrimination and an appropriate adverse inference instruction in Plaintiff's favor be given with respect to that "missing evidence"[4] is further supported by the Second Circuit's discussion in *Sanojev v. Ebasco Services,* 643 F.2d 914, 924 n. 7 (2d Cir. 1981):

The judge charged the jury with respect to the "records not produced at trial" that:

"You may, but you need not, draw an inference adverse to the person or corporation having custody of such record, by reason of not producing these records which ordinarily in its regular course of its business ought to have been in the files.

If you draw such an inference, you will consider the explanation, if any, for the missing documents."

Plaintiff claims that documents are missing in the files which it produced would prove that he was rendering satisfactory or even complimented work at his job prior to the time it was decided to terminate his services. If it were assumed that the other evidence was sufficient to make out a prima facie case, the jury could have been allowed to draw such an adverse inference. *See San Antonio v. Timko,* 368 F.2d 983, 985 (2d Cir. 1966).

---

[4]   Defendant agrees that an adverse inference instruction may be appropriate with respect to "missing" information, citing *Residential Funding Corp. v. DeGeorge Fin. Corp.* , 306 F.3d 99, 101 (2d Cir. 2002), but suggests that it is only appropriate in those circumstances and Plaintiff would be required to prove that Defendant acted with some culpability. (Def. mem., p.6 n. 7). *Residential Funding* does not stand for the proposition that an adverse inference instruction is only proper where documents have never been produced but that the issue must be dealt with on a case by case basis.  It specifically holds that an adverse inference may be appropriate even where evidence has been destroyed *negligently* by a party. *Id* at 108.

**D.     Plaintiff Has Presented No Basis For A Finding of "Unfair Prejudice" With Respect To The Proffered Evidence**

In support of its claim of "unfair prejudice" in the proffered evidence, Defendant simply claims in conclusory fashion that it has no relevance to "what did or did not happen to Plaintiff as an employee of Wal-Mart," and that it is being offered only "to take the focus off the lack of evidence underlying Plaintiff's substantive claims and simply try to make Wal-Mart look bad" (Def. Mem., pp. 5-7).  As noted by the Second Circuit in *McQueeney*, 779 F.2d at 923, adverse evidence is virtually always prejudicial but should be excluded under Rule 403 only if the prejudice is also "unfair."  Defendant's memorandum in support of its motion does not suggest that the proffered evidence is "the kind of evidence with obvious or overwhelming prejudice" and makes no showing of "particularized danger of unfair prejudice," dictating its admission.[5] *Id.*

## Conclusion

For all the foregoing reasons, Defendant's motion *in limine* should be denied in all respects.

---

[5]   Defendant also threatens that if Plaintiff attempts to introduce this evidence at trial through its counsel, said counsel should withdraw from its representation of Plaintiff or that it will subject her to "vigorous cross examination" as to her late disclosure of a witness, her affidavit in opposition to defendant's motion for summary judgment which was ultimately stricken in part by Magistrate Martinez as hearsay and "her role in disclosing attorney-client privileged information without the permission of the client, misstatements of case law in her briefs, and other areas of cross examination that will ultimately take more than two hours." (Def. mem., p. 4 notes 3 and 4.) Although Plaintiff would welcome the opportunity to present testimony regarding the matters stricken from Ms. Coyne's affidavit (statements made by a current Wal-Mart employee which that employee refused to put in affidavit form), neither that testimony nor any of the other matters mentioned in the threatening footnotes are probative of any issue of consequence to the case. FRE 401. Although disqualification of counsel does not appear to be required in this situation, if the Court finds that it does, Plaintiff can offer the proffered evidence through his own testimony or that of Defendant's former counsel, Gregory Reilly, and its present counsel, Kristi Mackin.

Done at Bridgeport, Connecticut this 23rd day of May, 2005.

Loraine M. Cortese-Costa
DURANT, NICHOLS, HOUSTON,
HODGSON & CORTESE-COSTA, P.C.
1057 Broad Street
Bridgeport, CT  06604
(203)366-3438
Federal Bar No. ct03984
ATTORNEYS FOR PLAINTIFF

## CERTIFICATION

This is to certify that I have caused to be served the foregoing via U.S. Mail, certified mail, return receipt requested, this 23rd day of May, 2005 to all counsel and pro se parties as follows:

> Joel Finger, Esq.
> Brown Raysman Millstein Felder & Steiner, LLP
> 900 Third Avenue
> New York, NY 10022
>
> Kristi Mackin, Esq.
> Mitchell L. Fishberg, Esq.
> Brown Raysman Millstein Felder & Steiner, LLP
> City Place II
> 10th Floor
> 185 Asylum Street
> Hartford, CT  06103

Loraine M. Cortese-Costa

P:\lit\LCC\523818\001\00046751.DOC

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARVIN KEY,                              :
                                         :
        Plaintiff,                       :
                                         :
        v.                               :    CASE NO. 3:03CV144(RNC)
                                         :
WAL-MART, INC. AND DR. ANTHONY :
GORDON,                                  :
                                         :
        Defendants.                      :

## RULING ON PLAINTIFF'S MOTION TO COMPEL

Pending before the court is the plaintiff's "motion to compel
discovery and for related relief."    (Doc. #30.)    The motion is
GRANTED in part and DENIED in part as follows:

1.    Interrogatory No. is 2 is GRANTED.

2.    Interrogatory Nos. 3, 4, 5, 6, 8, 10, 11, 12, 12A, and 14 and
Request for Production 8 are GRANTED but the time period is limited
to the period of the plaintiff's employment.

3.    Interrogatory Nos. 7 and 9 and Requests for Production Nos. 3
and 4 are WITHDRAWN at the request of the moving party.

4.    Interrogatory No. 13 is GRANTED but limited to investigations
regarding the delivery of optical services.

5.    Request for Production 9 is GRANTED as to complaints alleging
discrimination on basis of being African-American.

6.    The defendant shall produce its responses within twenty (20)
days of the filing of this order.

7.    The deadline for discovery is extended to December 31, 2003.

8.   The plaintiff's motion for preclusion is DENIED without prejudice to any subsequent application.   The daytimer, the original source of the supervisor's notes, was not produced until the night before the oral argument on the plaintiff's motion. Although the court does not condone the defendant's untimely disclosure, the instant record is insufficient for the court to grant the plaintiff's request.

9.  At the conclusion of the case, upon application, the court will consider the amount of attorney's fees, if any, that should be awarded in connection with this motion.

     The parties are reminded of their meet and confer obligations under both the federal and local rules of procedure to resolve any differences and present to the court only those issues of discovery that are necessary for the full weight of judicial authority.

     SO ORDERED at Hartford, Connecticut this _3rd_ day of November, 2003.

                                          Donna F. Martinez
                                          United States Magistrate Judge

2

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARVIN KEY,                          :

    Plaintiff,                    :

    v.                            :

WAL-MART, INC. and DR. ANTHONY :
GORDON,                             :

    Defendants.                   :

CASE NO. 3:03CV144(RNC)

## RULING ON PENDING DISCOVERY MOTIONS

The plaintiff's motion for sanctions (doc. #68) is denied in part and granted in part as follows. The plaintiff's request that the defendants be precluded from using 25 pages of notes transcribed from the plaintiff's supervisor's DayPlanner and the DayPlanner is denied. However, because the defendant's failure to timely disclose the existence of the DayPlanner prevented the plaintiff from asking certain deponents about its contents, the plaintiff may, at the defendant's expense, re-depose Jenilu Zboray, Roger Noll, Edgar Morales and Jerome Ellis by February 13, 2004.

The plaintiff's motion to strike the defendants' motion for summary judgment (doc. #78) is denied and the plaintiff's motion for an extension of time in which to respond to the defendants' motion (doc. #80) is granted. The plaintiff shall respond to the defendants' motion for summary judgment by March 15, 2004. The defendant shall file its reply brief by April 5, 2004.

SO ORDERED at Hartford, Connecticut this ___ day of January, 2004.

Donna F. Martinez
United States Magistrate Judge

DENIED. The court is persuaded that the information sought by the plaintiff has some relevance to his claims.

SO ORDERED.

Donna F. Martinez, U.S.M.J.

FILED
2004 MAY 20 P 4: 58
U.S. DISTRICT COURT
HARTFORD, CT.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2004 MAR -9  A 8: 20
U.S. DISTRICT COURT
HARTFORD, CT.

----------------------------------- X
MARVIN KEY,                              :
                          Plaintiff,    :    CIVIL ACTION NO.:
                                         :   3:03CV144(RNC)
              v.                         :
                                         :
WAL-MART, INC. AND DR. ANTHONY           :
GORDON,                                  :
                                         :
                         Defendants.     :    MARCH 8, 2004
----------------------------------- X


### MOTION FOR A PROTECTIVE ORDER
### OF THE PERSONNEL FILE OF DALE CENEVIVA

Pursuant to Fed. R. Civ. P. 45(c) and D. Conn. L. Civ. R. 37(a)(2), the defendant, Wal-Mart Stores, Inc. ("Wal-Mart"), respectfully moves this Court for a protective order to protect the personnel file of Dale Ceneviva, which was subpoenaed by the plaintiff on February 27, 2004.

In support of this Motion, Wal-Mart submits its Memorandum of Law in Support of Wal-Mart Stores, Inc.'s Motion for A Protective Order of the Personnel File of Dale Ceneviva, and attached exhibits.

1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------------------- X
MARVIN KEY,                            :
                                       :        CIVIL ACTION NO.:
                    Plaintiff,         :        3:03CV144(RNC)
                                       :
          v.                           :
                                       :
WAL-MART, INC. AND DR. ANTHONY         :
GORDON,                                :
                                       :
                    Defendants.        :        MARCH 8, 2004
------------------------------------------------- X
```

## MEMORANDUM OF LAW
## IN SUPPORT OF WAL-MART STORES, INC'S MOTION
## FOR A PROTECTIVE ORDER OF THE PERSONNEL FILE OF DALE CENEVIVA

Pursuant to Fed. R. Civ. P. 45(c) and D. Conn. L. Civ. R. 37(a)(2), the defendant, Wal-Mart Stores, Inc. ("Wal-Mart"), respectfully moves this Court for a protective order to protect the personnel file of Dale Ceneviva, which was subpoenaed by the plaintiff on February 27, 2004.[1] A copy of the subpoena is attached hereto as Exhibit A.

## I.    FACTS

Plaintiff Marvin Key ("plaintiff"), a former optician at the Vision Center in Wal-Mart's North Windham, Connecticut store, claims, in relevant part, that he was terminated in violation of Title VII of the Civil Rights, 42 U.S.C. §§2000e et seq., and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§46a-60, et seq. on the basis of his race (African American) and color (Black), and/or in violation of Connecticut public policy because he allegedly expressed

---

[1] This subpoena compelled the personnel files and related material of six (6) Wal-Mart employees or former employees. Wal-Mart has agreed with plaintiff upon terms for producing personnel file material for five (5) of these individuals.

1

concerns regarding Wal-Mart's internal Vision Center policies. The instant dispute centers on

plaintiff's demand for the confidential personnel file records of Dale Ceneviva, a Vision Center

Manager in Wal-Mart's Bristol, Connecticut store who did not work with or oversee the plaintiff.[2]

On December 17, 2003, plaintiff issued his Third Set of Interrogatories and Requests for

Production, requesting, inter alia, the personnel files of six current or former Vision Center

employees, David Peterson (non-exempt, certified optician), Phyllis Parmenter (non-exempt,

certified optician), Jeff Krol (non-exempt, certified optician), Jenilu Zboray (non-exempt, intern),

Jerry Ellis (exempt, Vision Center Manager) and Ceneviva. All of these individuals are

Caucasian. Other than Ceneviva and Ellis, all of these employees were non-managerial employees

at the North Windham store during the time of plaintiff's employment. Wal-Mart objected to the

plaintiff's request for these files based on relevancy, and because Connecticut statute protects

confidential personnel file information from disclosure absent certain conditions that were not

present here.[3]

On February 24, 2004, Wal-Mart received a letter from plaintiff's counsel requesting that

the parties come to an agreement with regard to Wal-Mart's objection regarding the personnel

files. (See Affidavit of Kristi E. Mackin, ("Mackin Aff."), ¶ 5, Ex. 2. The Affidavit and annexed

exhibits are attached hereto as Exhibit B). This letter explained that production of the personnel

records was sought on the grounds that the six individuals "were employed as opticians or optician

apprentices by Wal-Mart, and according to Wal-Mart's previous discovery responses were the

subject of customer complaints and/or various forms of discipline, but not discharged as Plaintiff

---

[2] It should be noted that the personnel file at issue, as well as that of Ellis has not yet been located. (Mackin Aff., ¶ 12, FN1). Wal-Mart has been able to recreate some personnel file information from Wal-Mart's human resources database, People Soft. Wal-Mart informed plaintiff's counsel of this on March 3, 2004 (Ellis) and March 4, 2004 (Ceneviva). (Id.) Thus, regardless of whether Ceneviva's personnel records are compelled to be produced, Wal-Mart may only be able to produce Ceneviva's rate increase history. As an additional note, Ceneviva's employment with Wal-Mart recently was terminated. (Id.).

[3] See Conn. Gen. Stat. § 31-128f.

2

was." (Mackin Aff., ¶ 6, Ex. 2). The letter indicated that Wal-Mart must respond by March 1, 2004, which plaintiff represented as his deadline to file a Motion to Compel with regard to his third set of discovery. (Mackin Aff., ¶ 7).

On February 25, 2004, Wal-Mart counsel Kristi Mackin spoke with plaintiff's counsel Pamela Coyne to determine whether an agreement could be reached with regard to production of the files. (Mackin Aff., ¶ 8). Initially, however, the parties addressed the timeline of plaintiff's request. The plaintiff's March 1, 2004 deadline left three and a half (3 ½) working days for Wal-Mart to respond and/or produce the files, which did not provide sufficient time for Wal-Mart to meaningfully discuss plaintiff's request internally, or even obtain copies of the files. (Mackin Aff., ¶ 8). Wal-Mart suggested and plaintiff agreed to move to extend his time to file a Motion to Compel until March 8, 2004 which at the same time effectively gave Wal-Mart one week to review plaintiff's request. (Mackin Aff., ¶ 8).

Therefore, Wal-Mart's counsel was surprised when on February 27, 2004 plaintiff served upon Wal-Mart a subpoena demanding that it produce "[t]he personnel files, as well as any and all records of investigations and discipline that are not included in the personnel files, for the following employees, Dale Ceneviva, Jerry Ellis, Phyllis Parmenter, Dave Peterson and Jenilu Zboray, and [sic] Jeffrey Kroll" by March 5, 2004.[4] (Exhibit A).

On March 3, 2004, counsel spoke by telephone to discuss the subpoena and production of the personnel files. (Mackin Aff., ¶ 11).Wal-Mart volunteered that it would produce for discovery purposes agreed upon portions of the personnel files of Peterson, Parmenter, Krol, Ellis, and

---

[4] This subpoena surprised Wal-Mart for two reasons. First, despite the plaintiff's previous agreement to narrow his original request, the subpoena did not reflect this agreement. Second, Wal-Mart understood that plaintiff would provide adequate time for Wal-Mart to determine what files, if any, would be produced, and then plaintiff would issue the subpoena in order to ensure Wal-Mart was properly complying with the mandates of Connecticut's personnel file statute, Conn. Gen. Stat. §31-128f. (Mackin Aff. ¶ 10). On March 3, 2004, the parties agreed that plaintiff would again narrow the request to documents relating to the individuals' related performance evaluations, discipline, customer comments or complaints, and licensing issues. (Mackin Aff., ¶ 11). At Wal-Mart's request, plaintiff agreed to adjourn the subpoena until Monday March 8 instead of Friday, March 5.

3

Zboray for purposes of discovery. (Mackin Aff., ¶ 12). In the interest of compromise, Wal-Mart gave plaintiff all benefit of the doubt as to what personnel files would be produced.

With regard to Ceneviva's personnel file, however, there was no clear showing or logic as to why plaintiff deemed her to be a relevant comparator, since Ceneviva worked in a different position with greater responsibility, in a different store, with different people, under different decision makers. Wal-Mart therefore asked plaintiff's counsel to articulate plaintiff's exact reasoning behind the request for Ceneviva's file. (Mackin Aff., ¶ 13). During this phone conversation, plaintiff's counsel adhered to plaintiff's previous position that Ceneviva's personnel records were necessary because she was similarly situated to plaintiff as an optician in one of Wal-Mart's Vision Centers and because she is a Caucasian individual who was not terminated. (Mackin Aff., ¶ 14).

On March 4, 2004, counsel for the parties further discussed Ceneviva's personnel records. (Mackin Aff., ¶ 15). Although plaintiff's counsel had agreed to revisit the request, there was no change in position. (Id.). This time, however, plaintiff's counsel claimed plaintiff needed Ceneviva's file because plaintiff believes Ceneviva was terminated, and that at some point she allegedly complained about the legality of opticians performing certain duties at Wal-Mart's Vision Centers.[5] (Id.). Plaintiff's counsel further suggested that the same decision makers involved in plaintiff's termination were also involved in Ceneviva's. (Id.).

As set forth below, there is no support for either of plaintiff's two positions, that (1) Ceneviva is similarly situated to plaintiff for purposes of his claim of racial discrimination or (2) Ceneviva was terminated by the same individual(s) who terminated plaintiff after making complaints about the legality of Wal-Mart's use of opticians, thus allegedly establishing a pattern

---

[5] We note that the Connecticut Department of Health has looked into these alleged "illegalities" and has neither cited Wal-Mart for improper policies, corrected Wal-Mart policies, or otherwise found any concerns with the manner in which the Vision Centers are run. (Mackin Aff., ¶ 20, Ex. 6, ¶¶5-6).

4

and practice of such terminations.[6] The following will demonstrate that Ceneviva was not

similarly situated to plaintiff in any meaningful respect, nor was she subject to an adverse

employment action by the same decisions makers for the same reasons as plaintiff. Indeed,

plaintiff conceded that during his employment with Wal-Mart he never complained about the

legality of opticians performing certain duties, and did not even think to question whether there

was any concern regarding performing these functions. Thus, Ceneviva cannot be comparable to

plaintiff. Wal-Mart now moves to protect Ceneviva's confidential personnel file, as plaintiff's

February 27, 2004 subpoena was returnable in too short a time to be enforced, and Ceneviva's

personnel files are not relevant or necessary to plaintiff's claims.

## II.    LAW AND ARGUMENT

### A.    Plaintiff's Subpoena Is Defective Because It Does Not Provide Adequate Time for Compliance.

Rule 45(c)(3)(A) of the Federal Rules of Civil Procedure requires that on a timely motion,

the court by which a subpoena was issued must quash or modify the subpoena if it fails to allow

reasonable time for compliance or subjects a person to undue burden. Fed. R. Civ. P.

45(c)(2)(B)(i), (iv). Further, the Federal Rules suggest that a reasonable time to comply with a

subpoena is within fourteen (14) days after service. See Fed.R.Civ.P. 45(c)(2)(B).

In this case, Plaintiff served his subpoena on February 27, 2004, commanding the

production of personnel files on March 5, 2004 – only a week later. A Fortiori, the subpoena fails

to provide sufficient notice or to allow reasonable time for compliance, which by itself is sufficient

grounds to grant a protective order.

---

[6] Plaintiff has not alleged such a pattern or practice, nor would such a small number of terminations on this basis, even if true, establish such a pattern and practice.

5

**B.    Dale Ceneviva's Personnel File Is Irrelevant to Plaintiff's Claims Because She Is Not Similarly Situated, and Therefore Her File Must Be Protected.**

Plaintiff has not provided a valid reason why the confidential personnel file of Dale Ceneviva should be disclosed. Discovery is only allowed if the information requested relates to the claims or defenses of any party to the litigation. Fed. R. Civ. P. 26(b)(1). The discoverability of information should be given additional scrutiny when the information sought is of a confidential and sensitive nature, such as an employee's personnel file as defined by Conn. Gen. Stat. §§31-128a through 31-128a; see also Donaldson v. Sheffield, CV990433074S, 2002 Conn. Super. LEXIS 2534 at *4 (July 30, 2002)("disclosure of such personnel information must be carefully tailored to a legitimate and demonstrated need for such information ... no [party] has the right to conduct a general 'fishing expedition' into the personnel records of another").

In determining whether to disclose the personnel records, courts must weigh the relevancy and benefits of disclosure against needless invasion of privacy on a case-by-case basis. See, e.g., Rosado v. Bridgeport Roman Catholic Diocesan Corp., et al., CV93-0300272S, 1994 Conn. Super. LEXIS 3144 at *9 (Dec. 8, 1994), citing State v. Januszewksi, 182 Conn. 142, 172-73 (1980), cert denied, 453 U.S. 922 (1981) (regarding attempt to subpoena police officer's personnel file to impeach police officer's credibility at trial); Donaldson, supra, 2002 Conn. Super. LEXIS 2534 at *4.

Plaintiff's request here amounts to no more than a fishing expedition, as evidenced by plaintiff's inability to demonstrate a consistent reason for his request for Ceneviva's file. In plaintiff's February 24, 2004 letter, plaintiff claimed that Ceneviva was a relevant comparator for purposes of plaintiff's race discrimination claims because she was employed as an optician "and according to Wal-Mart's previous discovery responses [was] the subject of customer complaints and/or various forms of discipline, but not discharged as Plaintiff was." (Mackin Aff., ¶ 6, Ex. 2).

6

On March 4, 2004, however, plaintiff reversed this position, arguing that Ceneviva's file was necessary because she had allegedly complained about the legality of opticians performing certain duties at Wal-Mart's Vision Centers. (Mackin Aff., ¶ 15). Plaintiff himself apparently does not even know why he needs Ceneviva's file. Regardless, as discussed in detail below, neither one of plaintiff's purported reasons for requested Ceneviva's personnel records is meritorious or justifies production.

### 1.    Plaintiff Is Not Similarly Situated To Ceneviva for Purposes of His Claims of Race Discrimination.

Ceneviva's personnel records are not related to plaintiff's claims because she is not similarly situated to plaintiff. Therefore, there is no cause to override the public policy protecting an employee's privacy by disclosing her confidential personnel file. "To be 'similarly situated,' the individuals with whom [plaintiff] attempts to compare [himself] must be similarly situated in all material respects." Shumway v. United Parcel Services, 118 F. 3d 60, 64 (2d Cir. 1997) (emphasis added). In other words, while plaintiff need not show that comparators are identical, he must show "a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases ... ." Graham v. Long Island RR, 230 F.3d 34, 40 (2d Cir. 2000). "Employees are not 'similarly situated' merely because their conduct might be analogized," Hunter v. Henderson, No. 3:91CV396(EBB), 1999 U.S. Dist. LEXIS 16096 at *24-25 (D. Conn Aug. 17, 1999)(employees with different disciplinary history not similarly situated). Rather, a review of the facts must demonstrate, when viewed with the eye of reason, that the employee is comparable. See Graham, 230 F. 3d at 40, citing Conward v. Combridge Sch. Comm., 171 F.3d 12, 20 (1st Cir. 1999) (explaining that "reasonableness is the touchstone" of the analysis).

Employees with different responsibilities are generally not valid comparators. See Roa v. Norame Mineta, et al., 51 Fed. Appx. 896, 899 (2d. Cir. 2002) (employees working for same

supervisor in same department not comparable when one employee had more complicated and broader duties). Moreover, employees are generally not comparable unless they are governed by the same decision makers. Shumway, 118 F.3d at 64 (managerial employee with same duties but different supervisors are not similarly situated); Hunter, 1999 U.S. Dist. LEXIS 16096 at *9-12; compare Banks v. John E. Potter, Postmaster General, 253 F. Supp. 2d 335, 343 (D. Conn. 2003) (comparators not under same decision maker, but in comparable positions and under Bridgeport Postmaster).

A review of the facts here shows that Ceneviva bears no "reasonably close resemblance" to plaintiff at all. In fact, plaintiff's own testimony debunks his theory that Ceneviva is comparable for purposes of his discrimination claim. According to plaintiff, Ceneviva was a manager at the Wal-Mart store located in Bristol, Connecticut. (Mackin Aff., ¶ 17, Ex. 3, p. 45). Plaintiff testified that he did not work with Ceneviva at the North Windham Wal-Mart or any other Wal-Mart, but at a Sun Glass Hut before either one was employed with Wal-Mart. (Id.). Plaintiff did not claim that he had direct involvement with Ceneviva during his employment with Wal-Mart.

Roger Noll, the decision maker in plaintiff's case, did not make any decisions regarding Ceneviva's employment. (Mackin Aff., ¶¶ 18-19, Ex. 4, pp. 19-20 and Ex. 5, ¶¶ 1,4; Affidavit of Roger Philip Noll ("Noll Aff.,") ¶ 4. Noll's affidavit is attached hereto as Exhibit C). In fact, Noll does not even know who Ceneviva is, or where she worked. (Noll Aff., ¶ 5). She was not in his chain of command, and to his knowledge never has been. (Noll Aff., ¶ 5). There is a complete disconnect between Ceneviva and plaintiff, and plaintiff cannot show a "close resemblance of the facts and circumstances" of their employment. In other words, what happened or did not happen to Ceneviva under completely different circumstances is irrelevant to plaintiff's claim, and plaintiff should not be allowed to peruse through her personnel records just because plaintiff knew her from a previous employer and she worked at Wal-Mart.

8

2.      **Plaintiff's Claim That Ceneviva Was Terminated For Complaining About Wal-Mart's Vision Center Policies Is Unsupported And Irrelevant.**

In a shift from his original position, plaintiff now claims he has a right to Ceneviva's confidential personnel records because she was terminated, and at some point prior to her termination had allegedly made complaints regarding Wal-Mart's use of opticians in its Vision Centers.[7] Even if Ceneviva was ultimately able to show she was terminated because she questioned internal policy, this has no bearing on plaintiff's claims since Ceneviva is not similarly situated to plaintiff. As noted above, Noll testified that he made the decision to terminate plaintiff. (Mackin Aff., ¶ 18, Ex. 5, ¶1; Noll Aff., ¶ 4.) During plaintiff's deposition, plaintiff did not dispute that Noll made the decision to terminate him, and did not claim that other individuals were involved in his termination. Rather, plaintiff conceded that he did not know who made the decision to terminate him. (Mackin Aff., ¶ 17, Ex. 3, pp. 19-20). Noll did not participate in the decision to terminate Ceneviva. (Noll Aff., ¶ 7). As a store manager in North Windham, Noll would generally not have input on decisions involving employees in another store. (Noll Aff., ¶ 6). Thus, plaintiff cannot attribute Ceneviva's termination to the same decision maker, and the cause of her termination is of no assistance to plaintiff here.

Even if evidence appeared indicating that Ceneviva had been terminated for complaining about the Vision Centers' policies, and even if the decision makers had been the same in this matter, her personnel records would still be of no assistance to plaintiff because *plaintiff did not complain about the Vision Center policies until after he had been terminated.* (Mackin Aff., ¶ 15, Ex. 3, pp. 63-64). In fact, plaintiff admitted in his deposition that he did not even have reason to believe that Wal-Mart's policies were improper until after his termination. Plaintiff had performed

---

[7] There is no evidence on the record that Ceneviva made complaints regarding the legality of Wal-Mart's opticians' duties. (Mackin Aff., ¶ 15). Plaintiff does not dispute this. (Id.). The discovery period closed on December 31, 2003.

9

**III.    CONCLUSION**

Because there is no substantial need for plaintiff to obtain the personnel file of Dale

Ceneviva, this court should grant Wal-Mart's protective order so that disclosure is not mandated.

DEFENDANTS WAL-MART STORES INC. and
DR. ANTHONY GORDON

By: _Krist E Mack_
Mitchell L. Fishberg (ct19661)
Kristi E. Mackin (ct23394)
Brown Raysman Millstein Felder & Steiner LLP
185 Asylum Street, 10th Floor
Hartford, CT 06103
(860) 275-6400

Joel L. Finger (ct06114)
Brown Raysman Millstein Felder & Steiner LLP
900 3rd Avenue
New York, NY 10022

11

## CERTIFICATE OF SERVICE

This is to certify that on this 8th day of March, a true copy of the foregoing was sent via

telefax and first-class mail, postage prepaid, to:


Loraine M. Cortese-Costa, Esq.
Pamela Coyne, Esq.
Durant, Nichols, Houston,
    Hodgson & Cortese-Costa, P.A.
1057 Broad Street
Bridgeport, CT  06804


                                        /Kristi E. Mackin
                                        Kristi E. Mackin

HARTFORD 83618v1