# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------ x
MARVIN KEY,                                      :
                                                 :
                        Plaintiff,               :   CIVIL ACTION NO.:
                                                 :   3:03CV144(RNC)
            v.                                   :
                                                 :
WAL-MART STORES, INC.                            :   JUNE 14, 2005
                                                 :
                                                 :
                        Defendant.               :
                                                 :
------------------------------------------------ x

## DECLARATION OF KRISTI E. MACKIN

I, Kristi E. Mackin, deposes and says:

1. I am an associate attorney at the law firm of Brown Raysman Millstein Felder & Steiner LLP ("Brown Raysman"), working from the firm's Hartford, Connecticut office. In conjunction with Joel L. Finger and Mitchell L. Fishberg, I am counsel for Defendant Wal-Mart Stores, Inc. ("Wal-Mart") in the above captioned matter.

2. On December 17, 2003, Plaintiff issued his Third Set of Interrogatories and Requests for Production, requesting, *inter alia*, the personnel files of six current or former Vision Center employees, David Peterson (certified optician), Phyllis Parmenter (certified optician), Jeff Krol (certified optician), Jenilu Zboray (optician intern), Jerry Ellis (Vision Center Manager) and Dale Ceneviva (Vision Center Manager). Wal-Mart objected to Plaintiff's request for these files based on relevancy, and because Conn. Gen. Stat. 31-128f prohibited disclosure of these files absent certain conditions Wal-Mart did not believe were met in this case.

3.  On February 24, 2004, Wal-Mart received a letter from Plaintiff's counsel requesting that the parties come to an agreement with regard to Wal-Mart's objection regarding the personnel files. This letter explained that Plaintiff was seeking the production of the personnel records on the grounds that the six individuals "were employed as opticians or optician apprentices by Wal-Mart, and according to Wal-Mart's previous discovery responses were the subject of customer complaints and/or various forms of discipline, but not discharged as Plaintiff was." The letter was sent to Joel L. Finger of the New York office of Brown Raysman. Attorney Finger forwarded the letter to me for a response and, to the extent possible, attempt to work out the matter with Plaintiff's counsel. As this matter had previously been handled by (now former) Brown Raysman counsel Gregory Reilly, this was my first involvement with any discovery involving personnel files or Plaintiff's requests.

4.  In response to this letter, I called Plaintiff's counsel to see whether the parties could come to an agreement regarding the production of the files. I also contacted the client because I wanted to make sure we actually had the files in our possession, working under the assumption that the parties would be able to come to an agreement.

5.  Based on my experiences in handling Wal-Mart matters, how and where Wal-Mart employee personnel files are stored generally depends on the level of the employee. Non-managerial level employees who are not exempt, such as associates and department managers for non-specialty areas (like clothing and personal care products) are generally kept in locked cabinets in the personnel office in the individual store in which the employee works. Generally, when an employee transfers to a different store, the entire personnel file is supposed to be sent to the new location, and a copy is not retained at the previous store.

2

6. Personnel files for assistant-manager level employees and above, as well as specialty department managers (like the Vision Center, Tire, Lube and Express Department, and the Pharmacy) are supposed to be maintained at Wal-Mart's corporate offices in Bentonville, Arkansas (hereinafter referred to as "Home Office"). When a non-exempt employee is promoted to a managerial position, the personnel file is supposed to be transferred to Home Office where it is scanned into the system and ultimately combined with any paperwork relating to the managerial position.

7. After receiving the February 24th letter, I called the North Windham Wal-Mart Store to make sure that we had all of the personnel file information relating to this matter kept on site at that store. The personnel file materials relating to Phyllis Parmenter, Jenilu Zboray, Jeff Krol, and David Peterson, as well as Plaintiff, were stored on-site in that store. I collected these files and produced the agreed upon materials to Plaintiff's counsel.

8. I also telephoned Home Office to obtain the personnel files of the two Vision Center managers, Jerry Ellis and Dale Ceneviva. In addition, I e-mailed a Wal-Mart in-house discovery paralegal, Gwen Burgess, and asked her for her assistance in obtaining any and all responsive personnel file material.

9. On February 26, 2005, I received two electronic documents from Wal-Mart Home Office. The files were named as the personnel files of "J. Ellis" and "D. Ceneviva." Upon review of the documents, based on my previous experience with Wal-Mart matters, it appeared to me that these files did not contain all of the documents that usually appear in a Wal-Mart personnel file. I contacted Wal-Mart's Discovery Paralegal Kristal Mooney to determine whether there were other files or documents that should have been included. Ms. Mooney was not able to find additional documents at that time.

10. Ms. Mooney and Wal-Mart In-House Paralegal Sheri Metz both conducted in-house searches of Wal-Mart's personnel file databases to determine whether personnel file documents appeared elsewhere on the system and could have been improperly coded. Both Ms. Mooney and Ms. Metz also informed me that they had searched Wal-Mart's scanning center, where documents awaiting scanning are stored. Both Ms. Mooney and Ms. Metz informed me that they had not been able to find any additional documentation for either Mr. Ellis or Ms. Ceneviva in their searches.

11. In an attempt to locate the complete files, Ms. Mooney and I sought out the assistance of several district managers and store managers for the various locations where Ms. Ceneviva had worked. During one of these calls, I learned that District Managers Terri Johannessen and Tina Frank may have information relating to Ms. Ceneviva that was not contained in Ms. Ceneviva's scanned "personnel file." I telephone Ms. Frank, who told me she did have additional materials, copies of which she had sent to Home Office for inclusion in the file. Ms. Frank forwarded me all of the documentation in her possession, which was then produced to Plaintiff.

12. These documents related only to the time period in which Ms. Ceneviva was a member of management. Prior to becoming a member of management, however, Ms. Ceneviva had worked for Wal-Mart as a non-management level associate, but not in the North Windham store. To date, based on my understanding, Wal-Mart has not been able to locate Ms. Ceneviva's personnel file documents relating to her time as an associate.

13. Over the course of March, April, May and June, 2004 I placed approximately 25 calls and follow up calls to various store managers, district vision center personnel, and district store personnel who might possibly be in the possession of or have knowledge of the

whereabouts of personnel records relating to Mr. Ellis and/or Ms. Ceneviva. I was assured by each District Manager and Store Manager that he/she had conducted a search for responsive documentation and would continue to conduct searches for the documents.

14. On or about March 4, 2004, this firm produced to Plaintiff's counsel bate stamp documents no. D001909 - D0011920, which reflected all of the relevant personnel file documents Wal-Mart had relating to Mr. Ellis.

15. On or about June 4, 2004, this firm produced to Plaintiff's counsel bate stamp labels D001922 – D001934. This, to my knowledge, reflected all relevant personnel file documents Wal-Mart had relating to Ms. Ceneviva.

16. To my knowledge, Wal-Mart personnel have conducted repeated good faith searches for the materials at issue. As far as I am aware, all of the agreed upon personnel file material for Vision Center employees Phyllis Parmenter, Jenilu Zboray, David Peterson and Jeff Krol was produced. Everything Wal-Mart had in the personnel files of Ms. Ceneviva and Mr. Ellis was produced.

### VERIFICATION PURSUANT TO 28 U.S.C §1746

I declare on this 14th day of June 2005, under the penalty of perjury that the foregoing is true and correct.

_____
Kristi E. Mackin

HARTFORD 121816v2

5

# EXHIBIT B

EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------- x
MARVIN KEY,    :
                               :
           Plaintiff,          :   CIVIL ACTION NO.:
                               :   3:03CV144(RNC)
     v.                        :
                               :
WAL-MART, INC. and DR. ANTHONY :   DECEMBER 12, 2003
GORDON,                        :
                               :
           Defendants.         :
---------------------------------- x

### DECLARATION OF JEROME ELLIS

I, Jerome Ellis, deposes and says:

1.  I am the Vision Center Manager at Defendant Wal-Mart, Inc.'s ("Wal-Mart") Springfield, Massachusetts store. Prior to my transfer to the Springfield store, I was the Vision Center manager at Wal-Mart's North Windham store (the "Store"), and I supervised the Plaintiff Marvin Key ("Plaintiff") during almost the entire period of his employment at the Store up to his termination. Unless otherwise stated, I am fully familiar with the facts set forth herein.

2.  During the period of Plaintiff's employment with Wal-Mart, for those employees that I managed, I took notes in my Day Planner related their job performance. I personally purchased the Day Planner with my own money. I personally used and maintained it, and I never gave it to anyone at Wal-Mart during my employment at the North Windham store (although I may have shown it to Co-Manager Edgar Morales). The Day Planner was mine – not Wal-Mart's – I was not told by Wal-Mart to use it, and I could have disposed of it at any time, although I did not do so.

3. My Day Planner was never in Wal-Mart's possession or control at any time until after Wal-Mart's counsel, Gregory Reilly ("Mr. Reilly") asked me to give him a copy, which I provided him after my deposition in this lawsuit.

4. Many of my Day Planner notes during Plaintiff's tenure memorialized problems I had with Plaintiff's performance.

5. Sometime after Plaintiff filed his administrative complaint of discrimination with the Connecticut Commission on Human Rights and Opportunities ("CHRO") in August 2001, I was asked by Wal-Mart to provide any documents I had concerning Plaintiff's performance. Rather than provide Wal-Mart with my Day Planner (or a copy of it), I typed those entries in my Day-Planner relating to Plaintiff's performance problems into a new document. At the time I provided Wal-Mart with my transcription I told Wal-Mart that the transcription constituted my notes concerning Plaintiff's performance, which indeed it was. The transcription was not created for purposes of this lawsuit, which was not yet in existence.

6. I typed up my Day Planner notes because I was only asked by Wal-Mart at the time to provide performance related documents relating to Plaintiff (and my Day Planner had notes concerning other subjects and other employees). I also was concerned that my handwriting could be difficult for others to read. Finally, as a practical matter, I was still using my Day Planner, which contained my personal record of upcoming appointments and notes.

7. In creating the transcription, I attempted to be as accurate as possible. However, (over the course of dozens of notes relating to Plaintiff), I may have made a few mistakes.

8. Wal-Mart did not tell me to keep a Day Planner, transcribe my Day Planner notes, or how to transcribe them. Wal-Mart provided no suggestions for change or revision to either my Day Planner or the twenty-five page transcription I created from my Day Planner.

2

9. I advised Wal-Mart's counsel, Mr. Reilly, of the fact and existence of the Day Planner shortly prior to my deposition when he was talking with me about my deposition. Thereafter, he asked me to have my Day Planner copied. It took me about one week to get a copy to Wal-Mart's counsel. This is because the Day Planner's double-sided loose leaf pages are not standard size, and it had expense receipts stapled to the pages.

10. To my knowledge Plaintiff's counsel in this case never demanded that I turn over the Day Planner, and I was never subpoenaed to produce the Day Planner. I understand that Wal-Mart voluntarily produced my Day Planner during the course of discovery in this litigation.

## VERIFICATION PURSUANT TO 28 U.S.C §1746

I declare on this 12th day of December, 2003, under the penalty of perjury that the foregoing is true and correct.

*Jerome Ellis Jr.*
Jerome Ellis

3

# EXHIBIT C

Case 3:03-cv-00144-RNC    Document 174-2    Filed 06/14/2005    Page 11 of 17

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------- x
                                               :

MARVIN KEY,                             :

              Plaintiff,          :    CIVIL ACTION NO.:
                               :    3:03CV144(RNC)

              v.                          :    DECEMBER 12, 2003

WAL-MART, INC. and DR. ANTHONY  :
GORDON,                               :

            Defendants.      :

------------------------------------- x

### AFFIDAVIT OF GREGORY REILLY

STATE OF NEW YORK    )
                             )ss.:
COUNTY OF NEW YORK  )

      GREGORY B. REILLY, being duly sworn deposes and says:

      1.    I am counsel to the law firm of Brown Raysman Millstein Felder & Steiner, LLP, attorneys for Defendants Wal-Mart, Inc. ("Wal-Mart") and Dr. Anthony Gordon in the above-captioned matter. Unless otherwise stated, I am fully familiar with the facts set forth herein.

      2.    A copy of Ellis' transcription (rather than his personal Day Planner) was provided to Plaintiff's counsel prior to Plaintiff's and Ellis's depositions. At the time it was provided, Wal-Mart's counsel, myself included, was unaware that it was a transcription from Ellis's Day

Planner because Ellis simply had advised Wal-Mart that the transcription was his notes concerning Plaintiff's performance.

3. In September 2003 Plaintiff filed a motion for sanctions, *inter alia*, against Wal-Mart requesting preclusion of Ellis's transcription as evidence at trial and attorneys' fees and costs. At the time Plaintiff's made his motion, Wal-Mart's counsel, including myself, was not aware that the notes were a transcription of his Day Planner.

4. After briefing and argument the Court denied Plaintiff's motion for sanctions relating to the Ellis' transcription. A true and correct copy of the Court's November 3, 2003 Order is attached hereto as Exhibit A.

5. Prior to the Court's ruling, Plaintiff took Ellis's deposition. During Ellis's deposition he disclosed that the document earlier produced to Plaintiff during the course of discovery was a transcription of his personal Day Planner. True and correct copies of excerpts from Ellis's deposition are appended hereto as Exhibit B.

6. I only learned about (but did not see) the Day Planner when I was speaking with Ellis before his deposition.

7. Although Plaintiff's counsel learned of the Day Planner during Ellis's deposition, she did not make a discovery demand for the Day Planner either orally or in writing at the deposition or at anytime thereafter.

8. Regardless, I voluntarily produced Ellis' Day Planner promptly. Rather than producing merely those pages of the Day Planner that corresponded to Ellis's transcription, Wal-Mart produced the entire document so that Plaintiff's counsel could see the entirety of Ellis's

2

notes relating to Plaintiff and the fact that Ellis had not singled out Plaintiff's performance problems for criticism since there were notes concerning other employees as well. *See* Ellis Dep. at 37-38 (attached as Exhibit B). There were many blank pages produced or pages relating to subjects or persons other than Plaintiff.

9. For the reasons explained in Mr. Ellis's accompanying declaration (¶9), it took Ellis some time to get a copy of the Day Planner to me. Thereafter, it took me a few days to review the document and have it Bate stamped for production to Plaintiff. Wal-Mart voluntarily produced a copy of Ellis' Day-Planner on October 29, 2003. This was fifteen days after Ellis's deposition. The entire document as produced consisted of 849 pages.

10. Although Plaintiff takes exception to Ellis's transcription skills, his transcription was generally consistent with the original.

11. I have compared Ellis's notes against his Day Planner. Thus, Ellis transcribed 47 entries from his Day Planner, nearly all of which are generally consistent with the original notations he made in his Day Planner. In some instances he reworded or elaborated on an entry, but in many cases he typed the Day Planner entry verbatim from the original. For ease of reference, I have attached a true and correct copy of Ellis's transcription as Exhibit C and the corresponding entries from Ellis's Day Planner as Exhibit D.

12. For the reasons set forth herein and in Wal-Mart's accompanying memorandum of law in Opposition to Plaintiff's Motion for Sanctions and supporting papers, I respectfully request that the Court deny Plaintiff's motion for sanctions and award Wal-Mart its reasonable attorneys' fees and costs.

_____
Gregory B. Reilly

Sworn to before me this
12th day of December, 2003

_____
Notary Public

Patricia Legoff
Notary Public, State of New York
No. 02LE6002897
Qualified in Queens County
Commission Expires May 1, 200_

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED 2004 MAR -9 A 8:20
U.S. DISTRICT COURT
HARTFORD, CT.

---------------------------------X
MARVIN KEY,                      :
                                 :   CIVIL ACTION NO.:
            Plaintiff,           :   3:03CV144(RNC)
                                 :
      v.                         :
                                 :
WAL-MART, INC. AND DR. ANTHONY   :
GORDON,                          :
                                 :
            Defendants.          :   MARCH 8, 2004
---------------------------------X

## MOTION FOR A PROTECTIVE ORDER
## OF THE PERSONNEL FILE OF DALE CENEVIVA

Pursuant to Fed. R. Civ. P. 45(c) and D. Conn. L. Civ. R. 37(a)(2), the defendant, Wal-Mart Stores, Inc. ("Wal-Mart"), respectfully moves this Court for a protective order to protect the personnel file of Dale Ceneviva, which was subpoenaed by the plaintiff on February 27, 2004.

In support of this Motion, Wal-Mart submits its Memorandum of Law in Support of Wal-Mart Stores, Inc.'s Motion for A Protective Order of the Personnel File of Dale Ceneviva, and attached exhibits.

DENIED. The court is persuaded that the information sought by the plaintiff has some relevance to his claims.
SO ORDERED.
Donna F. Martinez, U.S.M.J.
5/

FILED 2004 MAY 20 P 4:58
U.S. DISTRICT COURT
HARTFORD, CT.

1