EXHIBIT A

PLAINTIFF'S PROPOSED VOIR DIRE QUESTIONS

Plaintiff objects to Defendant's Proposed Voir Dire Questions to the extent they address the merits of Mr. Key's claim, and to the extent they inquire into irrelevant areas, such as union activities. Plaintiff contends that his Proposed Voir Dire Questions are a full and fair inquiry into all areas and issues necessary to determine whether each individual juror is able to render a fair verdict in this matter.

Plaintiff hereby proposed the following voir dire questions for use at trial:

1.     Do you know the Plaintiff, Marvin Key or any of his family members?

2.     Do you know Attorney Pamela Coyne or Attorney Loraine Cortese-Costa in Bridgeport, Connecticut?

3.     Do you know any of the attorneys who work with Attorneys Coyne and Cortese-Costa at Durant, Nichols, Houston, Hodgson and Cortese-Costa, P.C. in Bridgeport? They are: E. Terry Durant, George N. Nichols, Donald F. Houston, Christopher M. Hodgson, Natale V. DiNatale, Lisa Grasso-Egan, Peter Dagostine and Stephen M. Sedor.

4.     Do you or anyone in your family work for Wal-Mart?

5.     Have you or anyone in your family ever worked for Wal-Mart?

6.     Do you know anyone who works, or has worked, for Wal-Mart?

8.     Are you or is anyone in your family a licensed optician?

9.     Do you or anyone in your family work for an optometrist or opthamologist?

10.     Do you know Attorney Kristi Mackin, Attorney Mitchell Fishberg or Attorney Joel Finger of Brown Raysman Millstein Felder & Steiner, LLP, or any attorney or employee of that law firm? They are: [please identify all attorneys who work for Brown Raysman].

11.    Do you know Attorney Gregory Reilly, formerly of Brown Raysman Millstein Felder & Steiner, LLP and Epstein, Becker & Green, P.C., and currently of Reed Smith, LLP?

12.    What is your current employment status, full-time, part-time, self-employed, retired, unemployed, homemaker, disabled or student?  What about your spouse?  What about your children?

13.    Where do you work and in what capacity are you employed?

14.    If you are married, where does your spouse work and in what capacity is he or she employed?

15.    Have you ever served on a jury?  What was the nature of the case and the result?  Would that affect your ability to keep an open mind until you hear all the evidence in this case?

16.    Have you ever been a party to a lawsuit?  Were you a Plaintiff or Defendant?  Who won?

17.    Has your husband/wife, family members or friends ever been involved in a law suit?  Please tell me about it.

18.    Have you or anyone in your family ever been a plaintiff or defendant in a legal action, with an administrative agency or in court, involving an employment-related matter?  If so, explain.

19.    How did you feel about the process -- was it fair?

20.    Are you interested in newspaper articles or media reports that cover the subject of civil lawsuits?  Explain.

21.    Do you have an opinion with respect to how case verdicts may or may not affect your insurance premiums?  Explain.

22.    What books do you read?

23.    What TV shows do you watch?

24.    Explain the type of work you do.

25.    What other jobs have you held?

26.    Do you now any of the individuals who may be called as witnesses in this case? They are:

    a.    Marvin Key
    b.    Anthony Gordon
    c.    Phillip Roger Noll
    d.    Jerome (or Jerry) Ellis
    e.    Edgar Morales
    f.    Christopher Adkins
    g.    Jenilu Zboray
    h.    Dale Ceneviva
    i.    Sheldon Wishnick
    j.    Gary M. Crakes
    k    Huong Nguyen
    l.    David M. Fabricant

27.    Is there anything else about your that you think the Court would want to know or should know about your or your life experience in relation to your being a juror in this case?

28.    Is there any reason why you believe that you could not make a fair decision in this case?

EXHIBIT B

PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

**Plaintiff's Request**:   **Role Of The Court**

You have now heard all of the evidence in the case as well as the final arguments of the lawyers for the parties.

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you.  If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.

You should not, any of you, be concerned about the wisdom of any rule that I state.  Regardless of any opinion that you may have as to what the law may be -- or ought to be -- it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.[1]

---

[1] 1 l. Sand, *et al.*, Modern Federal Jury Instructions, Instruction 71-2.

**Plaintiff's Request:   Role Of The Jury**

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or functions as jurors. In order for you to determine the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in the objections, or in their questions is not evidence. In this connection, you should bear in mind that a question put to a witness is never evidence, it is only the answer which is evidence. But you may not consider any answer that I directed you to disregard or that I directed struck from the record. Do not consider such answers.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the Plaintiff has proven his case.

I also ask you to draw no inference from the fact that upon occasion I asked questions of certain witnesses. These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses.

- 2 -

You are expressly to understand that the court has no opinion as to the verdict you should render in this case.

As to the facts, ladies and gentlemen, you are the exclusive judges.  You are to perform the duty of finding the facts without bias or prejudice to any party.[2]

---

[2] 1 L. Sand, *et al.*, Modern Federal Jury Instructions, Instruction 71-3.

**Plaintiff's Request**:   **What Is And Is Not Evidence**

The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, stipulations, and judicially noticed facts.

By contrast, the question of a lawyer is not to be considered by you as evidence. It is the witnesses' answers that are evidence, not the questions. At times, a lawyer on cross-examination may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true. If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

Testimony that has been stricken or excluded is not evidence and may not be considered by you in rendering your verdict. Also, if certain testimony was received for a limited purpose -- such as for the purpose of assessing a witness' credibility -- you must follow the limiting instructions I have given.

Arguments by lawyers are not evidence, because the lawyers are not witnesses. What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

Exhibits which have been marked for identification may not be considered by you as evidence until and unless they have been received in evidence by the court.

To constitute evidence, exhibits must be received in evidence.    Exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness' recollection.

Finally, statements which I may have made concerning the quality of the evidence do not constitute evidence.

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and exhibits you have seen.[3]

---

[3] *Duke Laboratories, Inc. v. United States*, 222 F.Supp. 400, 405 (D. Conn. 1963); *United States v. Aluminum Co. of America*, 1 F.R.D. 62 (S.D.N.Y. 1939).

**<u>Plaintiff's Request</u>:  Direct and Circumstantial Evidence**

There are two types of evidence which you may properly use in reaching your verdict. Direct evidence is the testimony of one who asserts actual knowledge of a fact, such as an eye witness.  Direct evidence may also be in the form of an exhibit where the fact to be proved is the exhibit's existence or condition.  Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts and circumstances, where you may infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

Direct evidence of a fact is not required.  Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.[4]

---

[4] *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960).

**Plaintiff's Request: Depositions**

Some of the testimony before you is in the form of deposition testimony that has been received in evidence. A deposition is simply a procedure where the attorneys for one side may question a witness or an adverse party under oath before a court stenographer prior to trial. This is part of the pretrial discovery, and each side is entitled to take depositions. You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given at trial.[5]

---

[5] MFJI, Instruction 74-14 (as modified).

- 7 -

**Plaintiff's Request**:  **Witness Credibility**

You have had the opportunity to observe all the witnesses.  It is now your job to  decide how believeable each witness was in his or her testimony.  You are the sole judges  of the credibility of each witness and of the importance of his testimony.

It must be clear to you by now that you are being called upon to resolve various  factual issues raised by the parties in the fact of very different pictures painted by both sides.  In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified and any other matter in evidence which may help you decide the truth and the importance of each witness' testimony.

You should use all the tests for truthfulness that you would use in determining matters of importance in your everyday life.  You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome  of the case.  You should consider the opportunity the witness had to see, hear, and know the  things about which he testified, the accuracy of his memory, his candor or lack of candor, the reasonableness and probability of his testimony and its consistency or lack of consistency.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given and all of the other evidence in the case.

Always remember that you should use your common sense, your good judgment and your own life experience.[6]

---

[6] *Dyer v. MacDougall,* 201 F.2d 265 (2d Cir. 1952); *Arnstein v. Porter,* 154 F.2d 464, 469-70 (2d Cir. 1946); *Duke Laboratories, Inc. v. United States,* 222 F.Supp. 400, 407 (D. Conn. 1963).

**Plaintiff's Request**:    **Adverse Inference Based On Wal-Mart's Failure To Comply With Discovery Obligations**

You have heard that Wal-Mart failed to produce certain evidence as required by law, and failed to produce other evidence in a timely manner.   Mr. Key claims that the evidence was within Wal-Mart's control and argues that Wal-Mart purposely delayed production of such evidence in order to force him to incur more costs in prosecuting his claims and to gain an unfair advantage.   If you find that the evidence was within Wal-Mart's control, that it is relevant to Plaintiff's claims and proving his case, you are permitted, but not required, to infer that the evidence is unfavorable to Wal-Mart.   You may also consider whether Wal-Mart's failure or delay was reasonable and whether its explanation, if any, was satisfactory to you.[7]   The evidence includes:   Mr. Key's personnel file; Mr. Key's former co-worker's personnel files (including disciplinary records); the identity of, and disciplinary action against, similarly situated employees by job title and race/color; the report written by Ms. Nguyen regarding Mr. Key; Mr. Ellis' typewritten notes regarding Mr. Key, Mr. Ellis' Day Planner; identity of the managers to whom Mr. Key reported Dr. Gordon's discriminatory remark; and who actually made the decision to terminate Mr. Key's employment.   In addition, you may infer from Wal-Mart's failure to produce certain witnesses under their control to testify at trial that such witnesses would offer

---

[7] *Zimmerman v. Associates First Capital Corp.*, 251 F.3d 376, 383-84 (2d Cir. 2001).

testimony unfavorable to Wal-Mart.  Any inference you decide to draw should be based  on all

the facts and circumstances of this case.[8]

---

[8] *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 101 (2d Cir. 2002).

**Plaintiff's Request:**  **Bias**

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection which the witness may have towards one of the parties.  Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party.

It is your duty to consider whether the witness has permitted any such bias or interest to color his testimony.  In short, if you find that witness is biased, you should view his testimony with caution, weigh it with care and subject it to close and searching scrutiny.[9]

---

[9] *Duke Laboratories, Inc. v. United States*, 222 F.Supp. 400, 407 (D. Conn. 1963).

**Plaintiff's Request:**   **Corporations**

A corporation and all other persons stand equal before the law and must be dealt with or treated as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for any of the acts and statements of its employees which are made within the scope of their duties as employees of the company.

**<u>Plaintiff's Request</u>:   Impeachment By Prior Inconsistent Statement**

You should also ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact; or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony he or she gave during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

**<u>Plaintiff's Request</u>:    Expert Witnesses**

You have heard testimony from two experts. An expert is allowed to express his opinion on those matters about which he has special knowledge and training. Expert testimony is presented to you on the theory that someone who is experienced in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing the expert's testimony, you may consider the expert's qualifications, his opinions, his reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness' testimony. You may give the expert testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept this witness' testimony merely because he is an expert. Nor should you substitute it for your own reason, judgment, and common sense in determining the facts, as the determination of the facts in this case rests solely with you.[10]

---

[10] *United States v. Simon*, 425 F.2d 796 (2d Cir. 1969); *Duke Laboratories, Inc. v. United States*, 222 F.Supp. 400, 415 (D. Conn. 1963).

- 15 -

**Plaintiff's Request**:   **Conflicting Expert Testimony**

The experts who testified in this case did so in order to assist you in reaching a decision on the issue of economic damages.

The testimony of the experts is in conflict. The experts disagree. It may seem strange to you that you are called upon to resolve a conflict between experts who disagree. But you must remember that you are the sole trier of the facts and their testimony relates to a question of fact -- that is, the extent of Mr. Key's economic damages following termination from employment with Wal-Mart, Inc.; so it is your job to resolve the disagreement.

The way you resolve the conflict between experts is the same way that you decide other fact questions and the same way you decide whether to believe ordinary witnesses. In addition, since they gave expert opinions, you should consider the soundness of each expert's opinion, reasons for the opinion and his motive, if any, for testifying.

You may give the testimony of each expert such weight, if any, that you think it deserves in the light of all the evidence. You should not permit an expert's testimony to be a substitute for your own reason, judgment and common sense.

You may reject the testimony of any expert in whole or in part, if you conclude the reasons given in support of an opinion are unsound or, if you, for other reasons, do not believe the expert witness. The determination of the facts in this case rests solely with you.[11]

**Plaintiff's Request:    Burden Of Proof -- Preponderance Of The Evidence**

In a moment I will tell you exactly what Mr. Key must prove in order to establish a presumption that Wal-Mart violated Title VII of the 1964 Civil Rights Act (hereinafter "Title VII") and the Connecticut Fair Employment Practices Act (hereinafter "CFEPA") in terminating his employment, and that Wal-Mart negligently misrepresented that Mr. Key could ask questions of the resident Optometrist without repercussion.  Mr. Key must prove each of the elements I will list and must do so by a preponderance of the evidence.[12]  This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence which is enough to persuade you that Mr. Key's claim is more likely true than not true.

In deciding whether any fact has been proved by a preponderance of the evidence you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.[13]

---

[11] *United States v. Bohle*, 475 F.2d 872, 874 (2d Cir. 1973).
[12] *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973); *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).
[13] *Larson v. JoAnn Cab Corp.*, 209 F.2d 929, 931 (2d Cir. 1954).

**Plaintiff's Request: Title VII -- Coverage**

You shall find that Wal-Mart is subject to the requirements of Title VII in that it is engaged in an industry affecting commerce and has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.[14]

---

[14] 42 U.S.C. § 2000e et seq.

- 18 -

**Plaintiff's Request**: **Connecticut Fair Employment Practices Act -- Coverage**

You shall find that Wal-Mart is subject to the requirements of the Connecticut Fair Employment Practices Act in that it has more than three employees.[15]

---

[15] Conn. Gen. Stat. § 46a-51(10).

- 19 -

**Plaintiff's Request**:  Discrimination -- Title VII And The CFEPA

It is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual 's race and/or color.[16]

Title VII, which is the federal law, holds employers liable for violations of the Act.  An entity is an "employer" under Title VII if it is a "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year."[17]  The CFEPA, which is the state law, applies to employers with three or more employees.[18]  Wal-Mart is an employer under both Title VII and the CFEPA and is to be held liable for violations of either or both.

In many respects, the federal and state anti-discrimination laws are similar.  If they differ, I will point out to you in what ways they differ, otherwise you should assume that the law and the standards that are to be applied are the same, and that if Mr. Key is entitled to recover under one, he is entitled to recover in the same manner under the other.  The differences between the two laws may, however, require that you submit more than one verdict.

---

[16] 42 U.S.C. § 2000e-2(a)(1); Conn. Gen. Stat. § 46a-60(a)(1).  The Connecticut Supreme Court looks to federal law for guidance in interpreting state employment discrimination law, and the analysis is the same under both.  *Craine v. Trinity College*, 259 Conn. 625, 636-37 n.6, 791 A.2d 518 (2002) (*citing State v. Commission on Human Rights & Opportunities*, 211 Conn. 464, 469-701 (1989)).
[17] 42 U.S.C. § 2000e-2(b).
[18] Conn. Gen. Stat. § 46a-51(10)

Mr. Key accuses Wal-Mart of race and/or color discrimination. Specifically, he claims that his discharge on April 30, 2001 was the result of race and/or color discrimination.

An "adverse employment action" is one that, standing alone, actually causes damage, tangible or intangible, to an employee. The fact that an employee is unhappy with something his employer did or failed to do is not enough to make that act or omission an adverse employment action. An employer takes adverse action against an employee only if it: (1) takes something of consequence away from the employee, for example, by discharging or demoting the employee, reducing his or her salary, or taking away significant responsibilities; or (2) fails to give the employee something that is a customary benefit of the employment relationship, for example, by failing to follow a customary practice or policy of progressive discipline and investigation. Termination of employment is an adverse employment action.

Even if you were to decide that Mr. Key's discipline and eventual discharge were neither fair nor wise nor professionally handled, that would not be enough. In order to succeed on his discrimination claim, Mr. Key must persuade you, by a preponderance of the evidence, that his race and/or color played a part in Wal-Mart's decision to terminate his employment on April 30, 2001. Mr. Key is not required to prove this his race and/or color was the sole motivation or even the primary motivation for Wal-Mart's decision, merely that his race and/or color played a part, even though other factors may also have motivated Wal-Mart.

- 21 -

Plaintiff is not required to produce direct evidence of unlawful motive.[19]  You may infer knowledge and/or motive as a matter of reason and common sense from the existence of other facts, for example, explanations that were given that you find were really pretextual. "Pretextual" means false or, though true, not the real reason for the action taken.  You may also infer that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.

An adverse employment action by a supervisor or manager is an action of the employer. "This is because such actions are company acts that can be performed only by the exercise of specific authority granted by the employer, and thus the supervisor acts as the employer."[20]

---

[19] *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir. 1994).
[20] *Burlington Ind., Inc. v. Ellerth,* 524 U.S. 742, 768, 118 S.Ct. 2257 (1998).