**Plaintiff's Request:**   **Presentation of Proof**

Mr. Key has the initial burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. To establish a *prima facie* case, Mr. Key must show that:

1.    He is a member of a protected class, i.e., he is Black;

2.    who was qualified for his job, i.e., per licensing requirements, etc.;

3.    who suffered an adverse employment action, i.e., discharge;

4.    under circumstances giving rise to an inference of discrimination, e.g., he was treated differently than non-Black employees or was replaced by a non-Black employee.[21]

"A showing that [Wal-Mart] treated a similarly situated employee differently is 'a common and especially effective method' of establishing a *prima facie* case of discrimination, but it 'is only one way to discharge that burden.'"[22]  Other ways of establishing a *prima facie* case of discrimination include:  (a) Replacing Mr. Key with someone outside his protected class; (b) criticism of his performance in racially degrading terms; or (c) the sequence of events leading to Mr. Key's discharge.[23]

If Mr. Key succeeds in proving a *prima facie* case, a rebuttable presumption of discrimination arises, and the burden shifts to Wal-Mart to articulate a legitimate, nondiscriminatory reason for the employment action.

---

[21] *Id.*; *Mc Donnell Douglas v. Green*, 411, U.S. 792, 802 (1973); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). *See also McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001); *Austin v. Ford Models, Inc.*, 149 F.3d 148, 152 (2d Cir. 1998); *Robinson v. Time Warner Inc.*, 92 F.Supp.2d 318, 329 (S.D.N.Y. 2000).

- 23 -

Wal-Mart may meet its burden of producing a legitimate nondiscriminatory reason for its adverse employment action by offering admissible evidence sufficient for the trier of fact to conclude that the adverse action was taken as a result of such stated reason. Wal-Mart's burden is one of production, not of persuasion.[24] Although any stated reason is sufficient to fulfill Wal-Mart's burden of articulating a legitimate nondiscriminatory reason for its adverse action, as the trier of fact, you must nevertheless judge whether employer's proffered explanation is a rational one in light of all the circumstances.[25]

If Wal-Mart articulates a legitimate, nondiscriminatory reason for its actions, the presumption of discrimination is rebutted. Mr. Key must then show that it is more likely than not that the employer's proffered reason is in reality a pretext for unlawful discrimination.[26] Pretext may be demonstrated either by the presentation of additional evidence, or by reliance on the evidence comprising the *prima facie* case without more.[27]

Pretext may be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in Wal-Mart's proffered reasons for its actions that a reasonable

---

[22] *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001); *Luciano v. Olsten Corp.*, 110 F.3d 210, 215 (2d Cir. 1997).
[23] *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).
[24] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).
[25] *Tarshis v. Rises Organizations*, 211 F.3d 30, 37 (2d Cir. 2000).
[26] *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).
[27] *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 38 (2d Cir. 1994).

person could rationally find them unworthy of credence and hence infer that Wal-Mart did not act for the asserted nondiscriminatory reasons.[28]

If you believe that Wal-Mart's stated reason for discharging Mr. Key is false, then you may consider Wal-Mart's dishonesty as "affirmative evidence of guilt."[29]

If you find that the stated reasons given by Wal-Mart are inconsistent or implausible or that Wal-Mart substantially deviated from its own practices or policies, then you may conclude that the offered explanation is a mere pretext, excuse, sham, or cover-up for discrimination. If you find pretext, you may also infer that race and/or color was a motivating factor in the employment decisions, through you are not required to draw such an inference.[30]

If you so find, then you must find for Mr. Key on his claim of discrimination under both state and federal law.

---

[28] *Windham v. Time Warner, Inc.*, 275 F.3d 179 (2d Cir. 2001).
[29] *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097 (2000).
[30] *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097 (2000); *Turner v. American Red Cross Tissue Servs.*, No. 00-6157, 2001 WL 280644 (10th Cir. Mar. 22, 2001).

**Plaintiff's Request:   Protected Class -- Inference**

As a matter of law, a member of a protected class can discriminate against another member of the same protected class.  In other words, a Black African-American can discriminate against another Black African-American.[31]

The employer does not have to discriminate against all members of a class to illegally discriminate against a given member of that class in violation of Title VII or the CFEPA.[32]

---

[31] *Ross v. Douglas County,* 234 F.3d 391 (8th Cir. 2000).
[32] *Goosby v. Johnson & Johnson Med., Inc.,* 228 F.3d 313, 321 (3rd Cir. 2000).

**Plaintiff's Request:    Discriminatory Animus -- Different Treatment**

A plaintiff under Title VII and the CFEPA may raise an inference of discriminatory animus by offering evidence comparing himself to similarly situated individuals who are not a member of that protected class, who are treated more favorably.[33]

---

[33] *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53-54 (2d Cir. 2001).

**Plaintiff's Request:**   Retaliation -- Title VII And The CFEPA

Mr. Key also claims that Wal-Mart retaliated against him by discharging him in violation of Title VII and the CFEPA.  Specifically, Mr. Key claims that his informal complaint  to his supervisor and to management regarding Dr. Gordon's discriminatory remark was a factor in Wal-Mart's decision to terminate his employment.

In order to succeed on his claim of retaliation in violation of Title VII and the CFEPA, Mr. Key must prove the following elements by a preponderance of the evidence:

1.      That he engaged in protected activity, i.e., complaining about and/or reporting discrimination;

2.      That he suffered an adverse employment action, i.e., discharge; and

3.      That a causal connection exists between the protected activity and the adverse employment action.[34]

Title VII provides that:

> It shall be an unlawful employment practice for an employer to discriminate against [an employee] . . . because he has opposed any practice made an unlawful employment practice by this subchapter or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.[35]

The provisions of the CFEPA are the same.[36]

---

[34] 42 U.S.C. § 2000e-3; Conn. Gen. Stat. § 46a-60(a)(4).  *See Gonzalez v. New York State Dep't of Correctional Servs.*, 122 F.Supp.2d 335, 347 (N.D.N.Y. 2000).
[35] 20 U.S.C. § 2000e-3(a).
[36] Conn. Gen. Stat. § 46a-60(a)(4).

Informal, as well as formal, complaints to superiors constitute protected activity and may form the basis for a claim of retaliation.[37]  Mr. Key does not have to prove that his complaint to his supervisor and to management had merit in order to prove the retaliation claim.[38]

In order to establish that a causal connection exists between engaging in protected activity and an adverse employment action, Mr. Key must produce evidence of circumstances that justify an inference of a retaliatory motive, such as that the adverse actions occurred proximate in time to the protected activity.[39]

Similar to the presentation of proof in discrimination claims, if Mr. Key succeeds in showing a *prima facie* case of retaliation, Wal-Mart must articulate a legitimate, nondiscriminatory reason for its actions. If Wal-Mart is successful, Mr. Key must show that it is more likely than not that the employer's proffered reason is in reality a pretext for unlawful discrimination.[40]

If Wal-Mart's reasons are inconsistent or implausible or if Wal-Mart substantially deviated from its own practices or policies, then you may conclude that the offered explanation is a mere pretext, excuse, sham, or cover-up for retaliation. If you find pretext, you may also infer

---

[37] *Robinson v. Time Warner Inc.*, 92 F.Supp.2d 318, 332 (S.D.N.Y. 2000).
[38] *Robinson v. Time Warner Inc.*, 92 F.Supp.2d 318, 329 (S.D.N.Y. 2000).
[39] *Gonzalez v. New York State Dep't of Correctional Servs.*, 122 F.Supp.2d 335, 348 (N.D.N.Y. 2000).
[40] *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

that retaliation was a motivating factor in the employment decisions, through you are not required to draw such an inference.[41]

---

[41] *Turner v. American Red Cross Tissue Servs.*, No. 00-6157, 2001 WL 280644 (10th Cir. Mar. 22, 2001).

**Plaintiff's Request:   Title VII And CFEPA -- Damages**

I will now give you instructions about how to calculate damages. You should not consider the fact that I am giving you this instruction as suggesting any view of mine as to which party is entitled to your verdict in this case, or that I think that you should award any damages. Those decisions are entirely for you to make. I am giving you these instructions solely for your guidance, in the event that you find in favor of Mr. Key on his claims of discrimination and/or retaliation against Wal-Mart.

If you find for Mr. Key on his claim that Wal-Mart discriminated against him because of his race and/or color, then you must determine whether he is entitled to damages in an amount that is fair compensation.

You may award compensatory damages only for injuries that Mr. Key proved were caused by Wal-Mart's wrongful conduct.  The damages that you award must be fair compensation, no more and no less.

If you find that Wal-Mart discriminated against Mr. Key, backpay liability under Title VII begins no earlier than two years before Mr. Key filed his charge with the State of Connecticut, Commission on Human Rights and Opportunities.  If you find that Wal-Mart engaged in unlawful retaliation against Mr. Key, backpay liability begins from the date of his discharge.[42]

---

[42] *Dunlap-McCuller v. Rises Org.*, 980 F.2d 153, 159 (2d Cir. 1992).

You may award compensatory damages for emotional pain and suffering, inconvenience, and mental anguish if you find that they were caused by Wal-Mart's discrimination and/or retaliation. No evidence of the monetary value of such intangible things as pain and suffering has been or need be introduced into evidence. It is not the value you are trying to determine, but an amount that will fairly compensate Mr. Key for those claims of damages. Medical evidence is not required to support a claim for pain and suffering. There is no exact standard to be applied; any such award should be fair and just in light of the evidence. You may not award damages based on sympathy, speculation, or guesswork. On the other hand, the law does not require that Mr. Key prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

Mr. Key may recover punitive damages under Title VII if he demonstrates that Wal-Mart engaged in a discriminatory practice with malice or with reckless indifference to his federally protected rights. Punitive damages are also available to Mr. Key if you find Wal-Mart's violation of the CFEPA was willful.[43] An award of punitive damages does not require showing egregious or outrageous discrimination or retaliation.[44] The relevant inquiry is whether Wal-Mart knew or showed reckless disregard for whether its conduct was prohibited by Title VII. They have to either know what they were doing was wrong or not care. That is what is meant by reckless disregard.

---

[43] *Collier v. State*, No. CV96-80659, 1999 WL 300643, at * 4 (Conn. Super. May 3, 1999).
[44] *Luciano v. Olsten Corp.*, 110 F.3d 210, 220 (2d Cir. 1997).

**Plaintiff's Request**:  **Negligent Misrepresentation**

Mr. Key alleges that Wal-Mart, through its training materials and through Jerome Ellis, his immediate supervisor, directed Vision Center employees to ask questions regarding pre-testing of customers of the resident Optometrist. During the relevant time period Dr. Anthony Gordon was the resident optometrist. Mr. Key further alleges that he was discharged at least in part for having done exactly what he was directed to do -- asking Dr. Gordon questions regarding the pre-testing of a customer.

To prevail on his claim, Mr. Key must prove by a preponderance of the evidence that:

(a)    Wal-Mart, through its training materials and management, made representations to him regarding pre-testing and directing him to ask Dr. Gordon questions;

(b)    the representations were made as statements of fact;

(c)    the representations were false;

(d)    Wal-Mart knew, or should have known, that such representations were false at the time that they were made;

(e)    Mr. Key relied on such statements;

(f)    Mr. Key's reliance was justifiable in light of all the circumstances; and

(g)    Mr. Key has suffered damages as a result of such reliance.[45]

---

[45] *Foy v. Pratt & Whitney Group*, 127 F.3d 229, 223 (2d Cir. 1997); *Retrofit Partners I, L.P. v. Lucas Industries Inc.*, 201 F.3d 155, 162 (2d Cir. 2000); *Williams Ford, Inc. v. Hartford Courant Co.*, 232 Conn. 559, 575, 657 A. 2d 212, 220 (1995); *D'Ulisse-Cupo v. Board of Dirs of Notre Dame High Sch.*, 202 Conn. 206, 217-18, 520 A2d 217, 223 (1987) *quoting* Restatement Second of Torts § 552 (1979).

If, after weighing all the evidence and drawing all reasonable inferences therefrom, you find that Mr. Key sustained his burden of proof by a preponderance of evidence on each o f these elements, then you must find for Mr. Key.  If, however, Mr. Key fails to prove any of these elements by a preponderance of the evidence, then you must find for Wal-Mart.

To be a misrepresentation, the statement "must consist of a statement of a material past or present fact. . . ."  Personal predictions and statements of opinion are not representations.[46]  A representation regarding a present intention to do something in the future is a statement of present fact.[47]

If you determine that Wal-Mart did not make any representations to Mr. Key directing him to ask Dr. Gordon questions regarding pre-testing, you must return a verdict for Wal-Mart.

If you determine that Wal-Mart did make representations to Mr. Key directing him to ask Dr. Gordon questions regarding pre-testing, you must then determine whether those representations contained false information.

If you find that there were representations which contained false information, you must then consider whether Wal-Mart knew, or should have known at the time the representations were made, that they contained false information.[48]

---

[46] *Radley v. Eastman Kodak Co.*, 19 F.Supp. 89, 99 (W.D.N.Y. 1998), *aff'd.* 199F.3d 1323 (2d Cir. 1999) (Table); *Yurevich*, 51 F Supp.2d at 152 *quoting Omega Engineering, Inc. v. Eastman Kodak Co.*, 908 F. Supp. 1084, 1097 (D. Conn. 1995).

[47] *Bassetti v. East Haven Board of Educ.*, 2001 WL 811 702*5 (Conn. Super. June 19, 2001, Blue, J.).  (Copies of unreported cases are attached hereto as Exhibit A).

[48] *Barbuto v. William Backus Hosp.*, 1995 WL 235068 *6 (Conn. Super. April 13, 1995, Hendel, J.) *citing Richard v. A. Waldman & Sons, Inc.*, 155 Conn. 343, 346 (1967)).

If you find that Mr. Key relied on the representations made by Wal-Mart, you must then determine whether such reliance was "justifiable" or "reasonable."[49]

If you find that Mr. Key's reliance was justifiable or reasonable, you must then determine whether Mr. Key suffered damages as a result of his reliance.

In other words, if you find that Wal-Mart directed Mr. Key to ask Dr. Gordon questions regarding pre-testing customers, and then terminated his employment for having asked such questions, you must find for Mr. Key on his claim of negligent misrepresentation.[50]

---

[49] *See Manning v. Cigna Corp.*, 807 F.Supp. 889, 897 (D. Conn. 1991); *D'Ulisse-Cupo*, 202 Conn. at 217-18, 520 A.2d at 223.

[50] *Craine v. Trinity College*, 259 Conn. 625, 661-62, 791 A.2d 518 (2002).

**Plaintiff's Request**:   **Negligent Misrepresentation -- Damages**

Mr. Key carries the burden of proving the amount of his damages.  In this case, the amount of damages, if warranted, would be the amount of money Mr. Key lost as a result of his justifiable or reasonable reliance upon the information received from Wal-Mart.[51]   Therefore, you should determine what amount of money Mr. Key would have received, absent such reliance. This amount may include back pay and front pay  If you find that Mr. Key is entitled to monetary damages, you must determine the amount of damages due Mr. Key based upon the evidence.

In addition, you may award Mr. Key non-economic damages, including emotional distress, inconvenience and mental anguish if you find that they were caused by Wal-Mart's negligent misrepresentation.  No evidence of the monetary value of such intangible things as pain and suffering has been or need be introduced into evidence.  It is not the value you are trying to determine, but an amount that will fairly compensate Mr. Key for those claims of damages. Medical evidence is not required to support a claim for emotional distress. There is no exact standard to be applied; any such award should be fair and just in light of the evidence.  You may not award damages based on sympathy, speculation, or guesswork.  On the other hand, the

---

[51] *D'Ulisse-Cupo*, 202 Conn. at 218, 520 A.2d at 223.

law does not require that Mr. Key prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.[52]

P:\lit\pjc\523818\001\00045843.DOC

---

[52] *Opielowski Brouwer v. Haddam Hills Academy*, No. CV990087906S, 2002 WL 180974 (Conn. Super. Jan 11, 2002) (Shapiro, J.).

EXHIBIT C.1

PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE
CERTAIN TESTIMONY

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARVIN KEY, | : | |
| | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:03CV144 (RNC) |
| | : | |
| v. | : | |
| | : | |
| WAL-MART, INC. and | : | |
| DR. ANTHONY GORDON, | : | |
| | : | |
| Defendants. | : | MAY 2, 2005 |

## PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE CERTAIN TESTIMONY

Plaintiff, by and through undersigned counsel, hereby moves the Court for an Order precluding the introduction by Defendant of the following witnesses:  Phyllis Parmenter, Tina Frank, Terri Johannassen, Wilma Pelletier, Temple Dasitra, Tim Angell and Dylan Lesnewski; and further to limit testimony by Dr. Anthony Gordon and Jenilu Zboray to the incident with Dr. Gordon, which Ms. Zboray witnessed, on April 27, 2001.

The grounds for this motion are as more fully set forth in the accompany memorandum of law.

Done at Bridgeport, Connecticut this 2nd day of May, 2005.

Pamela J. Coyne
DURANT, NICHOLS, HOUSTON,
HODGSON & CORTESE-COSTA, P.C.
1057 Broad Street
Bridgeport, CT  06604
(203)366-3438
Federal Bar No. ct22941
ATTORNEYS FOR PLAINTIFF

### CERTIFICATION

This is to certify that I have caused to be served the foregoing via U.S. Mail, certified mail, return receipt requested, this 2nd day of May, 2005 to all counsel and pro se parties as follows:

Joel Finger, Esq.
Brown Raysman Millstein Felder & Steiner, LLP
900 Third Avenue
New York, NY 10022

Kristi Mackin, Esq.
Mitchell L. Fishberg, Esq.
Brown Raysman Millstein Felder & Steiner, LLP
City Place II
10th Floor
185 Asylum Street
Hartford, CT  06103


Pamela J. Coyne

P:\lit\pjc\523818\001\00046351.DOC

- 3 -

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARVIN KEY,                          :
                                     :        CIVIL ACTION NO.
          Plaintiff,                 :        3:03CV144 (RNC)
                                     :
v.                                   :
                                     :
WAL-MART, INC. and                   :
DR. ANTHONY GORDON,                  :
                                     :
          Defendants.                :        MAY 2, 2005

PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION *IN LIMINE*
TO PRECLUDE CERTAIN TESTIMONY

Plaintiff, Marvin Key, hereby submits this Memorandum of Law in Support of his Motion in Limine. Mr. Key seeks to preclude all testimony by Phyllis Parmenter, and testimony by Dr. Anthony Gordon and by Jenilu Zboray, except as it may pertain to the incident with Dr. Gordon that Ms. Zboray witnessed on April 27, 2001. Mr. Key further seeks to preclude testimony by Wal-Mart employees from Bentonville, Arkansas, Tina Frank and Terri Johannassen. Finally, Mr. Key seeks to preclude testimony by purported Wal-Mart customers, Wilma Pelletier, Temple Dasitra, Tim Angell and Dylan Lesnewski.

## I.    PHYLLIS PARMENTER SHOULD BE PRECLUDED FROM TESTIFYING AT TRIAL

Defendant, Wal-Mart, in Section 10 of the Joint Trial Memorandum identified Phyllis Parmenter as a potential witness at trial. Wal-Mart indicated that Ms. Parmenter would testify "regarding her experiences as an optician in the Vision Center and as Plaintiff's co-worker," and

"other aspects of her experiences with Plaintiff and other individuals in the North Windham Wal-Mart and Plaintiff's claims." (*See* Joint Trial Memorandum, Section 10, ¶ 8.)

At all relevant times, Phyllis Parmenter was an Optician at Wal-Mart's Vision Center in the North Windham store. During the relevant time period, Wal-Mart had two licensed Opticians on staff and required an Optician to be on duty in order to open the Vision Center for business. Mr. Key was the other Opticians. Thus, Ms. Parmenter and Mr. Key worked together infrequently, and she has little or no first-hand knowledge of Mr. Key's performance. Further, as his co-worker and equal, she was not in a position to evaluate Mr. Key, or to discipline or recommend discipline. Nor was she privy to the personnel files disciplinary records of other workers at the Vision Center. Neither her experiences with Mr. Key, nor her opinion of Mr. Key, bear any relationship to Wal-Mart's decision to terminate his employment. *See Johnson v. City of Fort Wayne*, 91 F.3d 922, 936 (7th Cir. 1996) (stating that co-workers' opinions have no bearing on decisionmakers' opinions).

Accordingly, any testimony offered by Ms. Parmenter would be based on her own speculation and/or opinion of her co-workers' personalities and performance. Further, her testimony would largely consist of inadmissible hearsay and/or would be irrelevant to the issues in dispute. Ms. Parmenter's should not be allowed to testify at trial.

Finally, the proffered evidence may easily confuse and/or mislead the jury and would be a waste of time. *See* Fed. R. Evid. 403 (stating that even if relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless

presentation of evidence"). Due to the nature of the dispute between the parties herein, which is specific to Mr. Key's claims of discrimination, retaliation and negligent misrepresentation and Wal-Mart's purported reason for its actions and the disciplinary record created by his supervisor Jerry Ellis against him, the value of Ms. Parmenter's testimony adds little at best, but certainly has the potential of confusing or misleading the jury, and would be a waste of this Court's time.

Ms. Parmenter simply did not play a role in this matter, and delving into her experiences with Mr. Key and her personal motivation and biases would unnecessarily delay the proceedings. Ms. Parmenter should not be allowed to testify at trial for any reason.

## II.   DR. GORDON AND MS. ZBORAY SHOULD BE LIMITED TO TESTIMONY REGARDING THE APRIL 27, 2001 INCIDENT

Wal-Mart also identified Jenilu Zboray and Dr. Anthony Gordon as potential witnesses at trial. (*See* Joint Trial Memorandum, Section 10, ¶¶ 1 and 9.) Wal-Mart indicated that Ms. Zboray would testify "regarding her experiences as an optician in the Vision Center and as Plaintiff's co-worker," and "other aspects of her experiences with Plaintiff and other individuals in the North Windham Wal-Mart and Plaintiff's claims." (*See id.*, ¶ 9.) Wal-Mart indicated that Dr. Gordon would testify regarding his independent contractor status, the incident on April 27, 2001 which he was party to, as well as "Plaintiff's general work performance. . . . his work at Wal-Mart's Vision Center and other aspects of his experiences with Plaintiff and other individuals in the North Windham Wal-Mart." (*See id.*, ¶ 1.)

Similar to the foregoing argument regarding Ms. Parmenter, neither Dr. Gordon nor Ms. Zboray, are qualified to offer their opinions regarding Mr. Key's work performance. Neither was

- 3 -

in a position to evaluate his performance, or discipline him or recommend discipline.  Neither was privy to employee personnel file or employee disciplinary records.  Accordingly, testimony by either regarding Mr. Key's general work performance would be in the form of an unqualified opinion, inadmissible hearsay and/or irrelevant to the issues in dispute.  *See Johnson*, 91 F.3d at 936.

Dr. Gordon testified under oath that he had no responsibility or control over the Wal-Mart employees, including Mr. Key.  (Gordon dep., pp. 33-34).[1]  Dr. Gordon had no idea who supervised the Opticians or Optician Apprentices, who pre-tested his patients.  (*Id.*, pp. 51-52).  Dr. Gordon had no idea what the Wal-Mart employees' job responsibilities entailed.  (*Id.*, pp. 55-56).  Dr. Gordon had no idea what licenses the Wal-Mart employees had or what they were, or were not, qualified to do.  (*Id.*, p. 58-59).  Dr. Gordon testified:

> Q:  Okay.  During the time that you've provided services at the North Windham store, have you provided any of the Wal-Mart employees with training on any of these machines?
> A:  That's not my duty to do that.
> Q:  Have you taken any steps to see whether the testing on these machines is being done properly by the Wal-Mart employees?
> A:  It's not my responsibility to do that.  (*Id.*, p. 42).

> \* \* \*

> Q:  Are you ever involved in that pretesting in any way?
> A:  No.  Not that I recall.
> Q:  Is there anyone who oversees the Wal-Mart employees in performing that pretesting, if you know?
> A:  That's Wal-Mart's responsibility.

---

[1]     Deposition trans. of Dr. Gordon (hereinafter "Gordon Dep."), cited pages attached as Exhibit 12.

Q: Well, based on your experience working there, have you observed anyone who oversees their work in that regard?

A: Again, that would be Wal-Mart's responsibility.

Q: Okay, but I'm asking about your own observation of what goes on in the Vision Center.

A: I don't know who supervises who. In the sense that who trained who, and there's a supervisor there who is a manger. (*Id.*, pp. 51-52).

Clearly, Dr. Gordon has absolutely no knowledge of Mr. Key's (or any other employee's) "general work performance." *See* Fed. R. Evid. 602. Any testimony offered by Dr. Gordon in this regard would necessarily be based on speculation, inadmissible hearsay, or be in the form of an opinion by a lay witness -- in any event, it is inadmissible. *See* Fed. R. Evid. 402, 602, 701, 802.

Ms. Zboray was an Optician Apprentice during Mr. Key's employment with Wal-Mart. As such, she was subordinate to Mr. Key and the other licensed Optician at the Vision Center. She was not in a position to assess Mr. Key's skills or general work performance. Nor was she privy to any employee personnel files or employee disciplinary records. Accordingly, any testimony offered by Ms. Zboray would be inadmissible as speculation and her opinion of her co-workers' personalities and performance. *See* Fed. R. Evid. 701. Further, her testimony would largely consist of inadmissible hearsay and/or would be irrelevant to the issues in dispute. *See* Fed. R. Evid. 402, 602, 701, 802.

Because neither Dr. Gordon nor Ms. Zboray are able to offer admissible evidence regarding Mr. Key's work performance, and neither is privy to his discipline records or the actual reasons behind the disciplinary record, their testimony on these issues clearly has great potential

to confuse or mislead the jury, and would be nothing more than a waste of this Court's time. Accordingly, it should not be allowed for any reason.

Notwithstanding the foregoing, Dr. Gordon was a party to the incident on April 27, 2001, and Ms. Zboray was a witness. Wal-Mart claims that Mr. Key was discharged because of the incident on April 27, 2001, and therefore, their testimony regarding that one incident would be relevant to the issues in dispute and should be allowed by this Court.

### III.    WAL-MART REGIONAL MANAGERS FROM BENTONVILLE, ARKANSAS SHOULD BE PRECLUDED FROM TESTIFYING AT TRIAL

In its Joint Trial Memorandum, Wal-Mart identified two individuals from Bentonville, Arkansas to testify at trial -- Tina Frank, Vision Center Regional Manager, and Terri Johannassen, Vision Center Regional Personnel Manager. (*See* Joint Trial Memorandum, Section 10, ¶¶ 7-8.) Wal-Mart never identified either Ms. Frank or Ms. Johannassen as individuals "likely to have discoverable information" pursuant to Fed. R. Civ. P. 26. Despite this, Wal-Mart now claims that these two individuals from Arkansas will offer testify "to Wal-Mart's policies and procedures and other matters relating to Plaintiff's claims."

Neither Ms. Frank nor Ms. Johannassen were Regional Managers during Plaintiff's employment with Wal-Mart. Neither played a role in Plaintiff's employment or termination of employment with Wal-Mart. Any testimony to be offered by either one of these individuals is not only irrelevant to Plaintiff's period of employment, but is necessarily based on hearsay. See Fed. R. Evid. 402, 602, 701, 802. Finally, as to controlling Wal-Mart policies, whatever arguably relevant policies they may be knowledgeable about, their testimony would be

- 6 -

cumulative and a waste of this Court's time. *See* Fed. R. Evid. 403. Neither Ms. Frank nor Ms. Johannassen should be allowed to testify at trial.

## IV. PURPORTED CUSTOMERS, HARRISON NGUYEN, KIM NGUYEN, WILMA PELLETIER, TEMPLE DASITRA, TIM ANGELL AND DYLAN LESNEWSKI SHOULD BE PRECLUDED FROM TESTIFYING AT TRIAL

Of the nine purported former customers identified by Wal-Mart as witnesses at trial, only three can possibly offer admissible and/or relevant testimony. Plaintiff acknowledges that Lorraine King and Maria Ortiz were specifically identified in the Coaching for Improvement Form dated November 4, 2000, which Wal-Mart claims was the last step before discharge. Plaintiff further acknowledges that Wal-Mart claims that he was discharged due to a report written by Huong Nguyen, even though he didn't see the report until August 13, 2003 -- more than two years after his discharge. Therefore, subject to an appropriate foundation and the rules of evidence, Plaintiff agrees to the introduction of Ms. King, Ms. Ortiz and Ms. Nguyen as witnesses.

The remaining purported customers -- Harrison Nguyen, Kim Nguyen, Wilma Pelletier, Temple Dasitra, Tim Angell and Dylan Lesnewski -- should not be allowed to testify, as none were disclosed at any time by Wal-Mart as individuals "likely to have discoverable information" pursuant to Fed. R. Civ. P. 26. Further, to Plaintiff's knowledge none was ever identified to Plaintiff as having had "experiences" with him. Accordingly, not one of the remaining customers would be in a position to offer relevant first-hand testimony regarding Plaintiff. *See* Fed. R. Evid. 402, 602, 701, 802. None of these customers were a factor in Wal-Mart's discipline and/or discharge of Mr. Key, and exploring their experiences at Wal-Mart and their

personal biases for and against certain individuals and/or groups would unnecessarily delay the proceedings herein.

Further, to the extent that the Wal-Mart managers will testify to Plaintiff's work performance, further testimony by these undisclosed purported customers would be cumulative and a waste of this Court's time. *See* Fed. R. Evid. 403. Each one should be precluded from testifying.

## V.    CONCLUSION

For the foregoing reasons, Mr. Key respectfully requests this Court to enter an order precluding Wal-Mart from introducing Phyllis Parmenter, Tina Frank, Terri Johannassen, Harrison Nguyen, Kim Nguyen, Wilma Pelletier, Temple Dasitra, Tim Angell and Dylan Lesnewski, as witnesses as trial; and limiting testimony by Dr. Anthony Gordon and Jenilu Zboray to the facts related to the incident on April 27, 2001, which Dr. Gordon was party to, and Ms. Zboray was a witness.

Done at Bridgeport, Connecticut this 2nd day of May, 2005.

Pamela J. Coyne
DURANT, NICHOLS, HOUSTON,
HODGSON & CORTESE-COSTA, P.C.
1057 Broad Street
Bridgeport, CT  06604
(203)366-3438
Federal Bar No. ct22941
ATTORNEYS FOR PLAINTIFF

- 8 -

## CERTIFICATION

This is to certify that I have caused to be served the foregoing via U.S. Mail, certified mail, return receipt requested, this 2nd day of May, 2005 to all counsel and pro se parties as follows:

Joel Finger, Esq.
Brown Raysman Millstein Felder & Steiner, LLP
900 Third Avenue
New York, NY 10022

Kristi Mackin, Esq.
Mitchell L. Fishberg, Esq.
Brown Raysman Millstein Felder & Steiner, LLP
City Place II
10th Floor
185 Asylum Street
Hartford, CT 06103


Pamela J. Coyne

P:\lit\pjc\523818\001\00046281.DOC